## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

      Plaintiff,

v.                                Cause No.

THE UNIVERSITY OF NEW MEXICO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
individually and in his official capacity,

      Defendants.

## DEFENDANTS' NOTICE OF REMOVAL

      Defendants Board of Regents of the University of New Mexico, Garnett Stokes, Camille Carey, Francie Cordova, Angela Catena, Sara M. Cliffe, Emma Rodriguez, and Kevin Gick (herein collectively "Defendants") by and through undersigned counsel, the University of New Mexico Office of University Counsel (Patrick J. Hart) respectfully file their Notice of Removal in the above-entitled action and as grounds therefore state:

      1.     This action was originally commenced on December 31, 2019, in the Second Judicial District Court in the County of Bernalillo for the State of New Mexico, as Case Number D-202-CV-2019-10058 (the "State Court Action"), and is now pending therein. The State Court Action was initiated by a Complaint titled "Complaint for Injunctive and Declaratory Relief and

Damages" (hereafter "Plaintiff's Complaint"). *See* Plaintiff's Complaint, attached hereto as Exhibit A. On the same date, Plaintiff also filed: "Plaintiff's Verified Emergency Motion for Temporary Restraining Order and Application for Preliminary Injunction", Ex. A-1; "Plaintiff's Memorandum in Support of His Verified Emergency Motion for Temporary Restraining Order and Application for Preliminary Injunction", Ex. A-2; "Certificate of Non-Arbitration", Ex. A-3; "Six Person Jury Demand", Ex. A-4; "Request For Expedited Hearing", Ex. A-5; and, "Proposed Notice of Hearing", Ex. A-6.

2.      Paragraph 1 of Plaintiff's Complaint states, "[t]his action is for due process violations under the New Mexico Constitution, Art. II, § 18 and under the Fourteenth Amendment to the United States Constitution brought pursuant to 42 U.S.C. §1983 and according to 28 U.S.C. § 2201 and NMSA 197, §§ 44-6-1 through 15." Ex. A. Count I of Plaintiff's Complaint asserts three separate causes of action under the New Mexico Constitution, the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983. Count II seeks injunctive relief, Count III requests declaratory relief according to 28 U.S.C. § 2201 and NMSA 1978 § 44-6-1, Count IV asserts breach of contract, and Count V asserts a claim for breach of the covenant of good faith and fair dealing.

3.      Consequently, Plaintiff's Complaint sets forth a claim or right arising under the Constitution and laws of the United States and/or a separate and independent claim or cause of action within the jurisdiction conferred on this Court by 28 U.S.C. § 1331. Therefore, this Court has original jurisdiction over this action pursuant to the jurisdiction conferred on this Court by 28 U.S.C. §§ 1331, and 1367 and the action may, therefore, be removed to this Court pursuant to 28 U.S.C. §§ 1441, 1443, 1446, and D.N.M.LR-Civ. 81.1(a).

4.     Plaintiff has not effectuated service of Plaintiff's Complaint on any Defendant. Plaintiff notified the Office of University Counsel of the State Court Action by electronic mail after 5 p.m. on December 31, 2019. Defendants on or about the same date received notice of the State Court Action. This removal is timely and proper as the Complaint seeks remedies under a federal question, and Defendants have initiated this removal within the required 30 days under 28 U.S.C. §1446(b)(1)-(2).  All Defendants consent to removal of the State Court Action.

5.     Pursuant to 28 U.S.C. §1446(d), notice with the State Court will be timely filed.

6.     Defendants reserve the right to supplement this Notice of Removal under 28 U.S.C. §11653 and D.N.M. LR-Civ. 81.1(a), which authorize supplementation of a removal within thirty (30) days of removal.

WHEREFORE, the Defendant respectfully files this Notice of Removal to remove the above-entitled action from the Second Judicial District for the State of New Mexico to this Court.

Respectfully submitted,


UNIVERSITY OF NEW MEXICO
OFFICE OF UNIVERSITY COUNSEL

By: ___/s/ Patrick J. Hart_____
Patrick J. Hart
Office of University Counsel
University of New Mexico
1 University of New Mexico
MSC05 3440
Albuquerque, NM 87131-0001
Phone: (505) 277-3443
pahart@salud.unm.edu

I hereby certify that on January 9, 2020, a true and correct copy of the foregoing pleading was served on the following counsel of record via electronic mail:

Carter B. Harrison, IV
Nicholas T. Hart
1001 Luna Circle NW
Albuquerque NM 87102
(505)295-3261
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

Attorneys for Plaintiff


_____/s/ Patrick J. Hart_____
Patrick Hart

**FILED**
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/31/2019 9:39 AM**
**James A. Noel**
**CLERK OF THE COURT**
**Blair Sandoval**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

      Plaintiff,

      v.

No. _D-202-CV-2019-10058_

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

      Defendants.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

      Plaintiff Nick Vincent Flor brings this Complaint for Injunctive and Declaratory Relief and

Damages against Defendants.  In support of his Complaint, Plaintiff states as follows:

      1.      This action is for due process violations under the New Mexico Constitution, Art.

II, § 18 and under the Fourteenth Amendment to the United States Constitution brought pursuant

to 42 U.S.C. § 1983 and according to 28 U.S.C. § 2201 and NMSA 1978, §§ 44-6-1 through 15.

### Jurisdiction and Venue

      2.      Jurisdiction is proper in this Court according to the New Mexico Constitution, art.

VI, § 13, and because this Court has subject matter jurisdiction over all claims brought before it,



including Plaintiff's claims according to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and NMSA 1978, §§ 44-6-1 through 15.

3.      Venue is proper in this Court because the facts and circumstances underlying the claims, including all acts or omissions, arose or occurred in Albuquerque, Bernalillo County, New Mexico and because Defendants are a governmental entity and individuals operating in their individual and official capacities in Bernalillo County.  NMSA 1978, § 38-3-1.

## Parties

4.      Plaintiff Nick Vincent Flor is an Associate Professor with the University of New Mexico's Anderson School of Management.  He is a resident of Bernalillo County in the State of New Mexico.

5.      Defendant University of New Mexico is a governmental entity, which provides education and educational services to students within the State of New Mexico, which for all actions relevant to this Complaint, occurred in Bernalillo County.

6.      Defendant University of New Mexico is managed by Defendant Board of Regents of the University of New Mexico.  Defendant Board of Regents of the University of New Mexico is entitled to sue and be sued, and has the power and duty to enact laws, rules, and regulations for the governance of the University of New Mexico.  NMSA 1978, § 21-7-1, *et seq.* The Board of Regents and its members are being sued in both their official and individual capacities.

7.      Defendant Board of Regents has general supervisory control of the University and of the actions and inactions of its employees, officers, and agents acting in their official capacity on behalf of the University of New Mexico.

8.      Defendant Garnett S. Stokes is, and was at all times relevant to this Complaint, the President of the University of New Mexico.  Upon information and belief, Defendant Stokes is a

resident of Bernalillo County, State of New Mexico. Defendant Stokes is being sued in both her official and individual capacities.

9.      Defendant Camille Carey is, and was at all times relevant to this Complaint, an employee of the University of New Mexico, where is he employed as the Vice Dean of the School of Law. Defendant Carey was a party that imposed the sanction that is at issue in this Complaint. Upon information and belief, Defendant Carey is a resident of Bernalillo County, State of New Mexico. Defendant Carey is being sued in both her official and individual capacities.

10.      Defendant Francie Cordova is the Director of the Office of Equal Opportunity at the University of New Mexico. Upon information and belief, Defendant Cordova is a resident of Bernalillo County, State of New Mexico. Defendant Cordova is being sued in both her official and individual capacities.

11.      Defendant Angela Catena is the Title IX Coordinator within the Office of Equal Opportunity with the University of New Mexico. Upon information and belief, Defendant Catena is a resident of Bernalillo County, State of New Mexico. Defendant Catena is being sued in both her official and individual capacities.

12.      Defendant Sara M. Cliffe is an OEO Investigator within the Office of Equal Opportunity with the University of New Mexico. She was the primary investigator related to allegations brought against Plaintiff which are the subject of this Complaint. Upon information and belief, Defendant Cliffe is a resident of Bernalillo County, State of New Mexico. Defendant Cliffe is being sued in both her official and individual capacities.

13.      Defendant Emma Rodriguez is an attorney with the University of New Mexico's Office of University Counsel. She was the primary attorney within that office advising and representing Defendant Camille Carey during the sanctioning process for Plaintiff and continues

3

to represent Defendant Carey while Plaintiff appeals that sanction. Defendant Rodriguez serves in this role despite the fact that she possesses a non-waivable conflict of interest.

  14. Defendant Kevin Gick is an attorney with the University of New Mexico's Office of University Counsel. Defendant Gick currently represents the University's Peer Review Committee, who serve as the neutral review board tasked with determining whether Plaintiff's sanction is appropriate. Defendant Gick serves in this role despite the fact that he possesses a non-waivable conflict of interest.

<strong>Factual Background</strong>

  15. On May 9, 2018, Plaintiff had a brief, in-person interaction with Jane Doe, a graduate student at the University of New Mexico.

  16. Jane Doe never took any classes with Plaintiff.

  17. Plaintiff had never met Jane Doe before this brief interaction.

  18. Plaintiff and Jane Doe did not work on any research projects together.

  19. Plaintiff did not serve as an academic advisor for Jane Doe.

  20. Therefore, Plaintiff and Jane Doe were never in a situation in which Plaintiff would have supervised, advised, graded, or otherwise interacted in any professional situation with Jane Doe.

  21. This brief in-person interaction, however, resulted in e-mail exchanges between Plaintiff and Jane Doe.

  22. Those e-mail exchanges eventually became flirtatious and explicit in nature.

  23. Nearly all of these e-mails were exchanged through Plaintiff's personal e-mail account rather than his University issued e-mail account.

4

24.     In addition to the flirtatious e-mail exchanges, Jane Doe had asked Plaintiff about possible paid research opportunities related to Plaintiff's research.

25.     Plaintiff informed Jane Doe that he had some research money remaining, but that it was limited.

26.     Plaintiff nevertheless inquired with his Department about any remaining grant money he had so that he could extend a paid research opportunity to Jane Doe.

27.     Plaintiff confirmed that he had a limited amount of grant money remaining, but nevertheless extended an offer to Jane Doe to perform a small number of hours of paid research work.

28.     Jane Doe rejected the research opportunity because it did not have a sufficient number of available paid hours.

29.     A few weeks later, Plaintiff decided to stop all e-mail communication with Jane Doe. Plaintiff, who is married, did so because he believed the e-mail exchanges to be inappropriate for a married man.

30.     After Plaintiff cut off all e-mail communication with Jane Doe, Jane Doe began threatening Plaintiff, stating that she would share their e-mails with Plaintiff's Department Chair at the University and with members of the faculty and administration at the University.

31.     Jane Doe also began a series of harassing text messages, sending more than one hundred text messages on a single day.

32.     Those text messages demanded that Plaintiff respond otherwise Jane Doe would reveal the e-mails she exchanged with Plaintiff to the University community, including Plaintiff's supervisors and colleagues.

33.     This would have caused great embarrassment to Plaintiff.

34.     Plaintiff eventually determined that he had no choice but to disclose to his Department Chair that he was receiving threatening and harassing text messages from a graduate student. Plaintiff also disclosed that he had exchanged flirtatious, explicit e-mails with Jane Doe.

35.     After disclosing the harassment and threats he was receiving from Jane Doe, Plaintiff's Department Chair reported the issues to the University's Office of Equal Opportunity.

36.     Plaintiff then filed a complaint against Jane Doe with the Office of Equal Opportunity.

37.     When Jane Doe was informed that Plaintiff had filed a complaint against her, Jane Doe filed a separate complaint alleging that Plaintiff had engaged in quid pro quo sexual harassment because there was a power differential between them.

38.     Plaintiff fully cooperated in the investigation.

39.     Jane Doe, however, knowingly lied and presented false information to the University.

40.     Following a brief investigation, the University determined that Plaintiff had violated the University's policies regarding quid pro quo sexual harassment and that Plaintiff violated the University's Title IX policy.

41.     Before this final determination, Plaintiff was given a letter with preliminary findings.

42.     He was given the opportunity to respond to that letter, which he did.

43.     Plaintiff, however, was not given the opportunity to attack the proposed findings in a hearing.

44.     Plaintiff was also not given the opportunity to cross-examine any of the witnesses that were interviewed by the University.

45.     Plaintiff appealed the determination to the President of the University, who denied his appeal.

46.     Plaintiff was not given a hearing or the opportunity to cross-examine witnesses on appeal.

47.     Plaintiff then appealed the determination to the Board of Regents of the University of New Mexico, who denied his appeal.

48.     Plaintiff was not given a hearing or the opportunity to cross-examine witnesses during this appeal.

49.     Plaintiff has since been informed that he will be suspended for one year without pay as a result of these findings.

50.     In addition to being suspended for one year from his position, Plaintiff is prohibited from working for more than 39 days for any employer other than the University, otherwise he would have to resign his employment.

51.     The University's sanction, therefore, requires Plaintiff, who is the sole wage earner for his family, to either not work for an entire year and earn no income, or to quit.

52.     The University's sanction also prohibits Plaintiff from stating that he is associated with the University of New Mexico if he publishes any of his research this year.

53.     This prohibition results in Plaintiff having to violate the terms of his research grants, which total more than $1 million, because those grants require him to publish his findings and being associated with a University.

54.     The University also has informed organizations that have given Plaintiff a research grant that Plaintiff was found to have violated the University's quid pro quo sexual harassment and Title IX policies.

7

55.     These disclosures, which were made before Plaintiff exhausted his appeals and without given Plaintiff a hearing or the right to cross-examine his accuser, unlawfully disparage Plaintiff in a manner which prevents Plaintiff from obtaining similar research grants in the future.

56.     This punishment was imposed despite the fact that Plaintiff was deprived of a hearing.

57.     This punishment was imposed despite the fact that Plaintiff was never given an opportunity to confront his accuser.

58.     This punishment was imposed despite the fact that Plaintiff was never given a meaningful appeal of the University's findings against him.

### Plaintiffs Current Attempt to Appeal

59.     Plaintiff is still attempting to appeal the sanction which has been imposed on him by seeking a hearing with the University's Peer Review Committee.

60.     Such an appeal only allows Plaintiff to challenge the sanction imposed on him.  It does not allow Plaintiff to challenge the finding of a policy violation.

61.     During this process, Plaintiff is prohibited from being represented by counsel.

62.     Despite this fact, the Peer Review Committee is being represented by an attorney from the Office of University Counsel, Kevin Gick.

63.     In addition, the University's sanction will be defended by Camille Carey, who is the Vice Dean of the School of Law.

64.     Professor Carey was the individual who determined that Plaintiff should be suspended for one year.

65.     Professor Carey, however, is an experienced litigator, having served as an attorney with the Legal Aid Society of New York City before becoming a law professor.

8

66.     In order to level the playing field, Plaintiff requested that he be represented by an attorney at the Peer Hearing.

67.     The University denied the request.

68.     Upon information and belief, the individual that denied the request was Kevin Gick, an attorney with the Office of University Counsel.

69.     Kevin Gick, however, possesses a conflict of interest in the proceedings because another attorney with the Office of University Counsel, Emma Rodriguez, is serving as primary attorney for Vice Dean Camille Carey.

70.     Therefore, the University has created a regime where its attorneys are representing both the individual seeking to defend the University's actions and the allegedly neutral individuals who are supposed to determine if the University properly sanctioned Plaintiff.

71.     This arrangement is a further deprivation of Due Process and of Plaintiff's constitutional rights.

72.     While Plaintiff has actively sought to hold such a hearing, the Peer Hearing will not be held before his suspension begins.

73.     Therefore, Plaintiff will be suspended for one-year effective January 1, 2020.

74.     That suspension will commence without Plaintiff being given a hearing or the right to cross-examine his accuser.

## COUNT I – VIOLATION OF DUE PROCESS IN VIOLATION OF ARTICLE II, § 18 OF THE NEW MEXICO CONSTITUTION, FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND 42 U.S.C. § 1983

75.     Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

9

76.     Article II, Section 18 of the New Mexico Constitution provides, in relevant part, that "[n]o person shall be deprived of life, liberty or property without due process of law[.]"

77.     The Fourteenth Amendment of the United States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law."

78.     Plaintiff has a protected property right in his continued employment with the University of New Mexico, of which he cannot be deprived of by the state without due process.

79.     Plaintiff has a protected right to due process of law in any disciplinary proceedings related to that employment.

80.     Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived of by the state without due process.

81.     Plaintiff was entitled to process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussion he was facing, especially when the allegations are of violations of the University's sexual harassment and sexual violence policies, which will result in a severe sanction that will have lifelong ramifications for Plaintiff.

82.     Plaintiff's employment with the University was suspended for one year without being afforded due process, including, but not limited to, the following:

a.      Meaningful notice of the allegations, to include notice of the severity of the sanction, the alleged violation, and the limitations placed on sexual harassment findings and hearings;

b.      A meaningful opportunity to be heard, to include the opportunity to resond, explain, and defend against the allegations brought against him;

10

      c.      Allowing Plaintiff the opportunity to confront witnesses, to include allowing Plaintiff the opportunity to hear, respond to, and question and cross-examine witnesses, including his accuser,

      d.      Identification of all of the evidence and witnesses relied upon by Defendants;

      e.      Meaningful and unbiased university policies and procedures;

      f.      Affording UNM employees adequate and appropriate training of methods for investigating allegations of sexual misconduct;

      g.      A prompt, thorough, and impartial investigation;

      h.      An impartial and unbiased party to determine "Probable Cause;"

      i.      An impartial hearing to determine "Probable Cause;"

      j.      Following polices and procedures regarding the investigation and sanctioning of faculty alleged to have engaged in sexual harassment;

      k.      Allowing Plaintiff's Counsel to represent Plaintiff's interests throughout the investigatory and sanctioning process, to include allowing Plaintiff's counsel to make argument, to examine witnesses, directly or by written questions, to speak on behalf of Plaintiff, or to take any other action as counsel for Plaintiff; and

      l.      Instituting policies and procedures that protect the interests of both the accused faculty member and the accuser.

      83.      If Defendant utilized additional process and procedures, then there would have been a finding by Defendants that the alleged misconduct at issue had not occurred.

      84.      Defendant Cliffe, with the approval and supervision of Defendants Cordova and Catena, conducted an investigation that was reckless and grossly negligent.

      85.      Defendant Cliffe, was the investigator, fact-finder, and decision maker.

86.     Defendants created a policy, pattern, and practice which deprived Plaintiff of a fair and impartial investigation, finding of probable cause, an appeal, and further failed to ensure training in the legal and appropriate methods of investigating allegations of sexual harassment.

87.     Defendants agreed to, approved, and ratified this unconstitutional conduct.

88.     It would have been plainly obvious to a reasonable official that the actions and inactions complained of in this Complaint would deprive or lead to the deprivation of Plaintiff's state and federal constitutional rights.

89.     Defendants have a custom and practice of disregarding and violation faculty members' constitutional rights.

90.     Defendants have a custom and practice of failing to afford basic due process protections to faculty members accused of sexual harassment.

91.     Defendant's actions and inactions described above were fundamentally unfair to Plaintiff, unduly prone to false findings of sexual harassment and policy violations, and were arbitrary and capricious.

92.     Defendants' conduct was so egregious as to shock the conscience.

93.     There is no reational relationship between Plaintiff's actual conduct and the discipline imposed on him by Defendants.

94.     In deprivingPlaintiff of his protected due process rights, including his liberty interest in his good name, reputation, honor and integrity, the opportunity to pursue employment, and his protected property interest in his continued employment, Defendants violated Plaintiff's right to due process in violation of Article II, Section 18 of the New Mexico Constitution and of the Fourteenth Amendment to the United States Constitution.

95.     Defendants have no sufficient justification for abridging Plaintiff's due process rights.

96.     Defendants, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

97.     At all times relevant, Plaintiff had a clearly established right to due process of law which is a reasonable public official would have known.

98.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered injury and damages to include, but not limited to: suspension for one year from his employment with the University of New Mexico, denial of other employment opportunities because of University policy, loss of wages, loss of future employment opportunities, a permanent finding of sexual harassment and violation of the University's sexual violence policy on Plaintiff's personnel records, damage to Plaintiff's reputation and standing in the community, loss of career opportunities and earnings capacity, mental and emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

99.     Plaintiff is entitled to relief against Defendants as requested in this Complaint.

## COUNT II – INJUNCTIVE RELIEF

100.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

101.    The allegations of sexual harassment and Defendant's erroneous finding of probable cause resulted in permanent, life-long sanctions against Plaintiff which are quasi-criminal in nature.  Plaintiff's reputation and good name, both personally and professionally, has been

13

tarnished—if not destroyed—due to UNM's biased and inadequate adjudication of the claims against him.

102.   As a result of these significant due process violations, Plaintiff suffered and continues to suffer ongoing harm and irreparable injury and damage to his employment and future employment prospections, and therefore is entitled to injunctive relief, including a reversal of the outcome and findings of the UNM investigation, expungement of Plaintiff's personnel file reflecting the improper findings, discipline, and sanction, production of verification of such expungement to Plaintiff, prohibiting UNM from disclosing Plaintiff's personnel files reflecting the finding of a policy violation and discipline, and lifting of the one-year suspension so that Plaintiff may return to work at UNM.

103.   As a result of the foregoing, Plaintiff is entitled to injunctive relief against Defendants as requested in this Complaint.

## COUNT III – REQUEST FOR DECLARATORY RELIEF ACCORDING TO 28 U.S.C. § 2201 AND NMSA 1978, § 44-6-1

104.   Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein

105.   An actual controversy exists between Plaintiff and Defendants regarding Defendants' investigative and sanctioning process of male students accused of sexual misconduct.

106.   Plaintiff seeks a judicial determination, according to the Declaratory Judgment Act and the New Mexico Declaratory Judgment Act, that the investigative and sanctioning process utilized by Defendants are unconstitutional, improper, and violative of Plaintiff's rights, and as such, inadequate and invalid as a matter of law.

107.   Plaintiff also seeks a judicial determination, according to the Declaratory Judgment Act and the New Mexico Declaratory Judgment Act, that the Pear Review appeal process is

14

unconstitutional, improper, and violative of Plaintiff's rights, and as such, inadequate and invalid as a matter of law.

108.    Plaintiff also seeks a judicial determination, according to the Declaratory Judgment Act and the New Mexico Declaratory Judgment Act, that the Office of University Counsel's representation of the University in the sanctioning and review process that Plaintiff has undergone presents such a clear conflict of interest that results in the process being unconstitutional, improper, and violative of Plaintiff's rights, and as such, inadequate and invalid as a matter of law.

109.    A judicial determination resolving this actual controversy is necessary and appropriate at this time.

110.    Due to Defendants' actions and inactions as alleged herein, Plaintiff has suffered, and will continue to suffer, irreparable injury.

111.    Plaintiff does not have an adequate remedy at law.

112.    As a result of the foregoing, Plaintiff is entitled to declaratory relief against Defendants as requested in this Complaint.

## COUNT IV – BREACH OF CONTRACT

113.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein

114.    Defendant UNM, acting through its Board of Regents and employees, created express contracts when Plaintiff accepted an offer of employment at UNM as a faculty member and when Plaintiff was granted tenure as an Associate Professor at UNM.

115.    Plaintiff did so in reliance on the understanding and reasonable expectation that UNM would fairly and without bias implement and enforce the provisions and policies set forth in its official publications.

15

116.    Defendant University committed several breaches of its express agreements with Plaintiff. A non-exhaustive list of UNM's breaches include the following:

m.    Failing to abide by its policies and procedures;

n.    Failing to conduct a fair and impartial investigation and hearing;

o.    Failing to provide fair and impartial sanctioning process;

p.    Failing to provide adequate due process, to include the right to a hearing, to confront witness, and to confront one's accuser;

q.    Failing to adequately and properly consider and weigh evidence; and

r.    Failing to allow adequate representation during the investigative, sanctioning, and appeals processes.

117.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, emotional distress, loss of educational, professional and career opportunities, injuries, and other direct and consequential damages.

118.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

**COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

119.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein

120.    Defendant University's express contracts with Plaintiff included an implied covenant of good faith and fair dealing which implicitly guaranteed that any investigatory and disciplinary proceedings would be conducted with basic fairness.

121.    Defendant University, acting through Defendants, acted in bad faith when it failed to provide adequate due process to safeguard Plaintiff's interests in his education.

16

122.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, emotional distress, loss of educational, professional and career opportunities, injuries, and other direct and consequential damages.

123.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, costs, and disbursements.

### Prayer for Relief

Plaintiff respectfully requests:

A.    Injunctive relief to redress the injuries proximately and directly caused by Defendants'' conduct as stated in this Complaint, including the issuance of an order (1) enjoining Defendants from imposing the sanction on Plaintiff; (2) enjoining Defendants from disclosing Plaintiff's employment records reflecting the finding of a policy violation and/or reflecting discipline during the pendency of this action; (3) requiring Defendants to expunge the improper finding of a policy violation and improper imposition of a sanction from Plaintiff's employment records and providing Plaintiff with confirmation of such expungement; and (4) requiring Defendants to allow Plaintiff to return to his work as an Associate Professor with the University's Anderson School of Management.

B.    Declaratory relief, including a declaration that the investigative and sanctioning process used by Defendants are unconstitutional, improper, and violative of Plaintiff's rights;

C.    Damages in an amount to be determined at trial;

D.    An award of Plaintiff's attorneys' fees and costs;

E.    An award of Plaintiff's attorneys' fees and costs according to 42 U.S.C. § 1988;

F.    And any other and further relief as the Court deems just and proper.

Respectfully submitted,

**HARRISON & HART, LLC**

By: */s/ Nicholas T. Hart*
Carter B. Harrison, IV
Nicholas T. Hart
1001 Luna Circle NW
Albuquerque, NM 87102
T: (505) 295-3261
F: (505)
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*

18

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

       Plaintiff,

    v.

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

       Defendants.

No.  D-202-CV-2019-10058

### PLAINTIFF'S VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION

       Plaintiff respectfully moves, according to Rule 1-066, NMRA, this Court for a Temporary Restraining Order and contemporaneously apply for a Preliminary Injunction enjoining Defendants from imposing a one-year suspension without pay Plaintiff without Due Process. The purpose of this Motion is to prevent the immediate and irreparable harm that would occur should Mr. Flor be suspended from his employment for one year.

       Plaintiff seeks an order of the District Court 1) enjoining Defendants from suspending Plaintiff for one year, without pay, from his employment as an Associate Professor with the



EXHIBIT

A-1

University of New Mexico's Anderson School of Management, and 2) enjoining Defendants from continuing to deprive Plaintiff of his right to due process during his attempts to appeal the sanction which will be imposed on January 1, 2020. In support of this Motion, Plaintiff submits the accompanying Memorandum of Law.

Counsel certifies, according to Rule 1-066(B)(2) that on December 31, 2019, Plaintiff gave electronic notice, through e-mail to the Office of University Counsel of this pleading.

Respectfully submitted,

**HARRISON & HART, LLC**

By: */s/ Nicholas T. Hart*
Carter B. Harrison, IV
Nicholas T. Hart
1001 Luna Circle NW
Albuquerque, NM 87102
T: (505) 295-3261
F: (505)
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*

SUBSCRIBED AND SWORN TO before me this 31st day of December, 2019, by Nick Vincent Flor.

Notary Public

My commission expires:

06|13|2020

OFFICIAL SEAL
LISA JARAMILLO
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires 06|13|2020

2

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the State of New Mexico's Tyler/Odyssey E-File & Serve System on December 31, 2019, and that a copy of the foregoing will be served on Defendants via e-mail.

*/s/ Nicholas T. Hart*
Nicholas T. Hart

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
12/31/2019 5:19 PM
James A. Noel
CLERK OF THE COURT
Thomas Wilson

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

       Plaintiff,

      v.                               No. D-202-CV-2019-10058

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

       Defendants.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTION

    Plaintiff submits the following memorandum of law in support of his Verified Motion for a Temporary Restraining Order and Preliminary Injunction.

### Relevant Facts and Background

    Plaintiff is an Associate Professor with the University of New Mexico's Anderson School of Management.  In May of 2018, Plaintiff began exchanging e-mail communications with Jane Doe, a graduate student at the University of New Mexico.  While she was a graduate student at the University of New Mexico, Jane Doe was 35 years old, was not a student of Plaintiff, was not



EXHIBIT
A-2

employed by Plaintiff, and did not receive any academic supervision or advisement from Plaintiff. Put simply, Plaintiff had no supervisory, academic, or professional interactions with Jane Doe. These e-mail communications later became flirtatious and sexually explicit. After a few weeks of exchanging such communications, Plaintiff decided to stop exchanging e-mail communications with Jane Doe. Rather than acquiescing to Plaintiff's request to cease e-mail communications, Jane Doe began sending a series of threatening and harassing e-mails and text messages, through which Jane Doe threatened to send all the e-mail communications she had with Plaintiff to other University faculty and to Plaintiff's supervisors. Because of these communications, Plaintiff reported the harassment and the previous e-mail exchanges to his Department Chair, who reported the same to the University's Office of Equal Opportunity.

Plaintiff eventually filed a complaint against Jane Doe with the Office of Equal Opportunity, and Jane Doe filed her own complaint alleging that Plaintiff engaged in quid pro quo sexual harassment and violations of Title IX. The University found in Jane Doe's favor, and suspended Plaintiff for one year without pay. The University, however, did so without giving Plaintiff the opportunity to respond during a hearing, present evidence of his defense, or the opportunity to confront his accuser. Therefore, the University has essentially deprived Plaintiff of his continued employment with the University without the due process of law.

Moreover, Plaintiff is currently seeking to overturn the sanction imposed against him through the University's peer review proceedings. Those proceedings, however, are riddled with further violations of Plaintiff's Due Process rights and with conflicts of interest. For example, the University's decision to suspend Plaintiff will be defended by Vice Dean Camille Carey, a professor with the School of Law, who is an experienced litigator. In contrast, Plaintiff requested to be represented by counsel but was told that he could not be represented by counsel during the

2

hearing.  Moreover, Vice Dean Carey is represented by an attorney from the University Counsel's

Office, Emma Rodriguez, while the members of the Peer Review Committee hearing the appeal,

are represented by another lawyer from the University Counsel's Office, Kevin Gick.  In other

words, the Office of University of Counsel is advising both the individual seeking to impose and

defend the one-year suspension while also advising the individuals who are supposed to be neutral

arbiters reviewing that sanction. Such a situation presents a non-waivable conflict of interest that

further deprives Plaintiff of Due Process.

**Argument**

Rule 1-066(B)(1), NMRA states that the Court may issue a temporary restraining order if

"it clearly appears from specific facts shown by affidavit or by verified complaint that immediate

and irreparable injury, loss or damage will result to the applicant before the adverse party or his

attorney can be heard in opposition."  In this case, and as discussed in detail in Plaintiff's affidavit,

which is attached as Exhibit A, and the Declaration of Samantha Harris, which is attached as

Exhibit B, Plaintiff meets all criteria for the issuance of a temporary restraining order.  Specifically,

he will suffer irreparable injury, loss or damage in the form of lost wages, benefits, and cancelled

grants if the disciplinary actions proposed by the University are allowed to go into effect or stay

in effect for any significant period of time.

In addition to a temporary restraining order, this Court should also issue a preliminary

injunction of the same nature, as Plaintiff is able to meet each of the elements required for such an

order.  To receive a preliminary injunction, Plaintiff must, and can, demonstrate that he will (1)

"suffer irreparable injury unless the injunction is granted; (2) the threatened injury outweighs any

damages the injunction might cause the defendant; (3) issuance of the injunction will not be

adverse to the public's interest; and (4) there is a substantial likelihood plaintiff will prevail on the

3

merits." *LaBalbo v. Hymes*, 1993-NMCA-010, ¶ 11, 115 N.M. 314, 850 P.2d 1017.  In considering

whether to issue a preliminary injunction, the Court considers several factors, including: "(1) the

character of the interest to be protected; (2) the relative adequacy to the plaintiff of an injunction,

when compared to other remedies; (3) the interests of third parties; (4) the practicability of granting

and enforcing the order; and (5) the relative hardship likely to result to the defendant if granted

and to the plaintiff if denied."  *Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, 128

N.M. 611.

Plaintiff's motion fulfills all of these elements, and each of the factors weigh in favor of

issuing the injunction.  For example, Plaintiff will suffer irreparable injury if an injunction is not

granted.  Litigation in these types of cases often takes years.  For example, a similar case involving

a student, *Lee v. University of New Mexico*, was filed in 2017 in federal court.  Litigation is still

ongoing as of today.  Allowing the University to suspend Plaintiff for an entire year will result in

Plaintiff not only losing out on wages and benefits but also will result in Plaintiff being unable to

meet the terms of his research grants.  If Plaintiff is unable to meet the terms of his research grants,

those grants will be cancelled, and Plaintiff will likely be unable to receive any other research

grants in the future, greatly disrupting Plaintiff's ability to advance in his career and be a

productive, contributing member of the University community.

Issuance of the injunction is in the public interest as there is a significant public interest in

protecting the due process rights of state employees.  This is especially so because New Mexico

law makes clear that "non-probationary public employees, who may be discharged only for good

cause and by way of due-process grievance procedures, have constitutionally protected property

interest in the right to continued employment."  *Jenkins v. Bd. of the Las Cruces Public Sch. Dist.*,

2008 U.S. Dist. LEXIS 108744, *18 (D.N.M. Nov. 25, 2008).  This is especially so for tenured

professors. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) ("Because Professor Tonkovich was a tenured professor, he possessed a property interest deserving of procedural due process rights."). Therefore, it would be in the public interest to issue a Temporary Restraining Order and Preliminary Injunction because doing so would safeguard a constitutionally-protected property interest which can only be deprived if the holder of the right is afforded proper process.

There exists a substantial likelihood that Plaintiff will prevail on the merits of his claim. It is well-established that constitutional due process requires a hearing, and an opportunity to cross-examine witnesses. "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal citations and quotations omitted). *See also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, n. 7 (1972) ("While many controversies have raged about . . . the Due Process Clause . . . it is fundament that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate (a protected) interest . . ., it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective.") (internal quotations and citations omitted). This is especially so for Plaintiff, who is a public university faculty member with tenure. *See Tonkovich*, 159 F.3d at 517-18. *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (holding that due process requires "some kind of hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment") (internal citation and quotations omitted). And the necessity of a hearing to provide due process is even more important in cases like this one which require credibility determinations between the accuser and the accused. For example, in a recent case brought by a student against the University of New Mexico, the District of New Mexico refused to dismiss the lawsuit because the student's allegations "plausibly support[ed] a finding that his

sexual misconduct investigation resolved into a problem of credibility such that a formal or evidentiary hearing, to include the cross-examination of witnesses and presentation of evidence in his defense, is essential to basic fairness." *Lee v. Univ. of N.M.*, No. 1:17-cv-01230, at *2-3 (D.N.M. Sept. 20, 2018). *See also Norris v. Univ. of Colo. -Boulder*, 362 F. Supp. 3d 1001, (D. Colo. 2019) ("[W]ith the credibility of the parties in the investigation at issue, the lack of a full hearing with cross-examination provides evidence supporting a claim for a violation of his due process rights.").

In this case, Plaintiff was deprived of the opportunity to present a defense, deprived of the opportunity to present witnesses with exculpatory information, deprived of the opportunity have a hearing at which he would be heard, and deprived of the opportunity to confront or cross-examine his accuser. There is little doubt that Plaintiff was deprived of due process.

Finally, Defendants will be unable to demonstrate a compelling state interest underlying its failure to provide Plaintiff due process. There can be no compelling state interest in denying a public employee due process when depriving them of a property right. Therefore, the Court should grant this motion and issue a temporary restraining order and preliminary injunction.

### Notice to Defendants

In accordance with Rule 1-066(B)(1), counsel certifies that on December 31, 2019, Counsel gave electronic notice, via e-mail, to Defendants of this pleading.

### Conclusion

Plaintiff respectfully moves this Court for the issuance of a Temporary Restraining Order 1) enjoining Defendants from implementing Plaintiff's one-year unpaid suspension, and 2) depriving Plaintiff of Due Process during the Peer Review hearing by ordering that Plaintiff can

be represented by counsel and that the Office of University Counsel must be recused from representing any party in the proceeding.

Respectfully submitted,

**HARRISON & HART, LLC**

By: */s/ Nicholas T. Hart*
Carter B. Harrison, IV
Nicholas T. Hart
1001 Luna Circle NW
Albuquerque, NM 87102
T: (505) 295-3261
F: (505)
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*

SUBSCRIBED AND SWORN TO before me this 31st day of December, 2019, by Nick Vincent Flor.

_____
Notary Public

My commission expires:

06|13|2020

OFFICIAL SEAL
LISA JARAMILLO
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires 06|13|2020

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the State of New Mexico's Tyler/Odyssey E-File & Serve System on December 31, 2019, and that a copy of the foregoing will be served on Defendants via e-mail.

*/s/ Nicholas T. Hart*
Nicholas T. Hart

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

    Plaintiff,

  v.            No. D-202-CV-2019-10058

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

    Defendants.

## AFFIDAVIT OF NICK VINCENT FLOR

I, Nick Vincent Flor, being duly sworn, state as follows:

1.  My name is Nick Vincent Flor.  I am the plaintiff in this matter.

2.  I am currently an Associate Professor of Management at the University of New Mexico's Anderson School of Management.

3.  I hold a Ph.D. and Masters in Cognitive Science and Bachelor's in Computer Science—all from the University of California San Diego.

4.  Prior to being employed by the University of New Mexico, I was a faculty member at Carnegie Mellon University's Graduate School of Industrial Administration.

Exhibit A

5.      Prior to academia, I spent a decade at Hewlett Packard as a Software Engineer & Project Leader.

6.      Currently, my research interests lie in the application of 3D Virtual Worlds to Education, and I am the Director of the Reality Augmented Virtual Environments (RAVE) Lab at UNM.

7.      I have never been disciplined or received a poor employee evaluation during my entire employment at the University of New Mexico.

8.      In fact, since joining the University of New Mexico, I have received and continue to hold tenure as a faulty member in the Anderson School of Management.

9.      In May of 2018, I met for the first time a graduate student who is referred to as Jane Doe for the purposes of this case.  The entire interaction with Jane Doe was less than five minutes and cordial.

10.     Jane Doe has never been a student in one of my classes.

11.     I have never been an academic advisor for Jane Doe.

12.     I have never employed Jane Doe as a research assistant or some other worker for my research.

13.     After our initial interaction, Jane Doe and I began communicating through e-mail.

14.     Those communications started through my University e-mail, but the overwhelming majority occurred through my personal e-mail address.

15.     These e-mails eventually became flirtatious and sexually explicit in nature.

16.     Every e-mail between Jane Doe and myself was consensual.

2

17.    She sent over a thousand e-mails to me and never stated that she felt that she was coerced or that she felt that she was required to e-mail with me.  In fact, Jane Doe initiated the e-mail communications between us.

18.    After a few weeks, I decided that I no longer wanted to engage in these e-mail communications with Jane Doe.  I decided to no longer do so because I am married, and I was no longer comfortable engaging in such communications.

19.    After I cut off e-mail communication with Jane Doe, she began threatening and harassing me.

20.    For example, Jane Doe would send e-mails saying that if I did not respond or reinitiate e-mail communication with her, then she would publicly disclose our e-mails to other faculty members, colleagues, and my supervisors at the University of New Mexico.

21.    Jane Doe's harassment and threats escalated until the point that she sent more than 100 text messages in a single day stating that she would disclose our private communications if I did not respond.

22.    Because of those threats, I felt like I had no choice but to go to my Department Chair, and disclose to her that I was being threatened and harassed by a University graduate student.

23.    My Department Chair made the determination that this information had to be turned over to the University's Office of Equal Opportunity, specifically to the Title IX coordinator.

24.    Following this disclosure, I filed a complaint against Jane Doe with the Office of Equal Opportunity at the University.

25.    After my complaint was filed, it is my understanding that an employee of the University approached Jane Doe.

26.     At that point, Jane Doe stated for the first time that I sexually harassed her.

27.     Jane Doe then filed a complaint against me, alleging that I engaged in quid pro quo sexual harassment and that I violated Title IX in my interactions with her.

28.     The Office of Equal Opportunity accepted jurisdiction over the complaint.

29.     It was my understanding at that time, that because of the nature of the complaint made against me, I could face severe discipline, up to and including termination from the University of New Mexico.

30.     The University eventually began the investigation process regarding Jane Doe's complaint against me.

31.     It is that investigation process, and subsequent disciplinary process, which I allege in the Complaint for this matter did not afford me due process.

32.     During the investigation process, I was asked to provide the names of potential witnesses that the University should interview.

33.     Despite my suggestions, the University refused to interview several of my proposed witnesses and rejected much of the information I submitted in support of my defense.

34.     Many of the witnesses which the University refused to interview were individuals that had similar interactions with Jane Doe, and witnesses that had information directly related to her credibility.

35.     Nevertheless, the University did not interview them.

36.     Moreover, I was never afforded an opportunity to have a hearing at which I could submit evidence, present a defense, or cross-examine or confront my accuser.

37.     It is my understanding that University policy does not allow for such a hearing.

4

38.     Eventually, the University determined that Jane Doe's complaint had merit and found me to be in violation of the University's sexual harassment and Title IX policies.

39.     This finding happened without a hearing.

40.     After the finding, I was subjected to the sanctions process.

41.     For reasons that are unclear to me, my Department Chair and the Dean of the school where I teach were recused from imposing the sanction.

42.     Instead, the record was reviewed by Camille Carey, the Vice Dean of the School of Law.

43.     Dean Carey did not hold a hearing, allow me to present evidence or witnesses, or give me an opportunity to confront my accuser.

44.     Rather, she simply reviewed the record and imposed a sanction of a one-year suspension without pay.

45.     While she imposed a one-year suspension, and did not recommend that I be terminated, such a suspension is effectively a termination.

46.     This is because Regents Policy Manual Section 5.5: Outside Employment prohibits limits any non-University employment to 39 days per contract year. The University communicated to me that this policy applied while I am suspended.  In other words, the University has proposed suspending me for one year, but has also stated that I cannot work for any other employer for more than 39 days during my suspension.

47.     Because of this, I appealed the decision to the President of the University, Garnett S. Stokes.  That appeal was denied.

48.     I then appealed the decision to the Board of Regents of the University of New Mexico.  That appeal was denied.

5

49.     This suspension is scheduled to commence on January 1, 2020.

50.     In addition to wages that I will lose by being suspended for one year, which are equal to approximately $145,000, I will be harmed in other ways.

51.     For example, while I will be able to maintain my University health insurance, I will be forced to pay both the employee and employer contributions in order to keep it.

52.     Moreover, I am the recipient of over $1 million in research grants.

53.     Currently, those grants are from the United States Government and the National Science Foundation.

54.     Those grants require that I work towards completion of the goals outlined in the grant over the next year.  I will be unable to do so because of the suspension.

55.     Those grants also require that I publish my research in an academic journal, and that I do so as a faculty member affiliated with a University.  Because of the suspension, I will be unable to meet that goal.

56.     Failure to meet these requirements of the grants will likely result in the grants being terminated.  If these grants are terminated, I am unlikely to ever receive a grant again, which will significantly harm my ability to continue my research, advance in my career, and be an active faculty member at the University of New Mexico.

57.     Because of the possibility of this harm, I have also sought review of the sanction by the Peer Review Committee at the University of New Mexico.

58.     This committee is comprised of other University faculty members.

59.     The committee cannot review the finding of a policy violation, but it can review whether the one-year suspension is appropriate.

60.     That committee, however, has also follows a flawed process.

61.     For example, the committee receives legal counsel from the Office of University Counsel.  The attorney in that office advising the committee is Kevin Gick.

62.     At the same time, the University has the opportunity to defend before the committee the sanction which it has imposed.

63.     As part of that defense, Vice Dean Carey will present evidence and have an opportunity to cross-examine my witnesses.

64.     Vice Dean Carey, however, is not only a law professor.  A quick review of her biography and CV shows that she was a litigator with the Legal Aid Society of New York in New York City, where she served as an Equal Justice Works Fellow, Mayer Brown Fellow, and Staff Attorney.

65.     Therefore, the University will be represented at hearing by an experienced litigator.

66.     Because of this, I requested that the University allow me to be represented by my attorney at the hearing.

67.     That request has been denied.

68.     Moreover, it has come to my attention that Vice Dean Carey is being advised and represented by Emma Rodriguez, who is also an attorney with the Office of University Counsel.

69.     Therefore, both the University official defending the sanction and the University faculty members serving as neutral decision makers regarding that sanction are being advised by lawyers from the same office.

70.     The facts are derived from personal knowledge and form the basis for my Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction.

71.     All of the foregoing facts are true to the best of my knowledge.

7

Nick Flor

　　　　SUBSCRIBED AND SWORN TO before me this 31st day of December, 2019, by Nick Flor.

Notary Public

My commission expires:

08/13/2020

OFFICIAL SEAL
LISA JARAMILLO
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires 08/13/2020

8

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

       Plaintiff,

v.                              No. D-202-CV-2019-10058

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

       Defendants.

## DECLARATION OF SAMANTHA HARRIS

    I, Samantha Harris, according to Rule 1-011, NMRA, declare as follows, under penalty of

perjury:

    1.    I am an attorney and currently employed as the Vice President for Procedural

Advocacy with FIRE, otherwise known as the Foundation for Individual Rights in Education.

    2.    FIRE is a nonpartisan, nonprofit organization dedicated to defending liberty,

freedom of speech, due process, academic freedom, legal equality, and freedom of conscience on

America's college campuses.

# Exhibit B

1

3.      I received my undergraduate degree in Politics from Princeton University, from which I graduated in 1999.

4.      Subsequently, I obtained my law degree from the University of Pennsylvania Law School in 2002. After finishing my legal education, I clerked for the Honorable Jay C. Waldman of the United States District Court for the Eastern District of Pennsylvania.

5.      Following my clerkship, I was employed as a litigation associate at the law firm Pepper Hamilton, LLP.

6.      I then joined FIRE in 2005, where I advise students, faculty, administrators, and attorneys on issues of free speech and due process on campus.

7.      While not counsel for Dr. Flor, who is the plaintiff in this case, I am fully aware of the facts and circumstances surrounding Dr. Flor's suspension from the University of New Mexico.

8.      I have reviewed the entire investigation file related to the University of New Mexico's investigation into Dr. Flor and the sanction imposed by them.

9.      I have also reviewed the process used to conduct that investigation, and the process used for the internal appeals taken by Dr. Flor since the sanction was announced.

10.     Those procedures are inadequate and amount to a deprivation of due process.

11.     As a tenured professor at the University of New Mexico, Dr. Flor is entitled to due process when potentially facing termination. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) ("Because Professor Tonkovich was a tenured professor, he possessed a property interest deserving of procedural due process protections."); *Jenkins v. Bd. of the Las Cruces Public Sch. Dist.*, 2008 U.S. Dist. LEXIS 108744, *18 (D.N.M. Nov. 25, 2008) ("Under New Mexico law, non-probationary public employees, who may be discharged only for good cause and by way

2

of due-process grievance procedures, have a constitutionally protected property interest in the right to continued employment.").

12.     While the amount of process to be afforded to a tenured professor varies depending on the circumstances, cases such as this one, which alleges sexual harassment, turn on the credibility of the parties.  Therefore, constitutional due process requires, at minimum, a hearing and an opportunity to cross-examine witnesses.  *See, e.g., Lee v. University of New Mexico*, No. 1:17-cv-01230, at *2-3 (D.N.M. Sept. 20, 2018) (Browning, J.) (holding that a UNM student had sufficiently plead a due process violation because "his sexual misconduct investigation resolved into a problem of credibility such that a formal or evidentiary hearing, to include the cross-examination of witnesses and presentation of evidence in his defense, is essential to basic fairness"); *Norris v. Univ. of Colo. – Boulder,* 362 F. Supp. 3d 1001 (D. Colo. 2019) ("[W]ith the credibility of the parties in the investigation at issue, the lack of a full hearing with cross-examination provides evidence supporting a claim for a violation of his due process rights.").

13.     After a review of the investigation reports, it is clear that credibility is a significant factor in Dr. Flor's case.

14.     For example, my understanding is that Jane Doe has a history of erratic behavior with UNM faculty, and that Dr. Flor was not the first faculty member to file a harassment complaint against her.

15.     In addition, another professor who did not file a formal complaint against her cut off communications with her after becoming uncomfortable with the nature of her communications.  Jane Doe filed a complaint against that professor as well.

16.    Had Dr. Flor been given the opportunity to ask questions of Jane Doe or of these witnesses during a proper hearing, he might have been able to call in question her credibility in this case—but UNM provided him no such opportunity.

17.    Not only was Dr. Flor unable to confront his accuser in any meaningful way (such as by cross-examining her or even by posing questions through a hearing panel), the University did not even interview many of the individuals who Flor believed might have critical exculpatory information.

18.    These egregious denials of due process led to a finding of responsibility in his case that is wholly unsupported by the evidence.

19.    I declare under penalty of perjury that the foregoing is true and correct.


Executed this 31st day of December, 2019.


Samantha Harris

4

**FILED**
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/31/2019 9:39 AM**
**James A. Noel**
**CLERK OF THE COURT**
**Blair Sandoval**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

     Plaintiff,

    v.                                                    No. _____ D-202-CV-2019-10058

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

     Defendants.

## CERTIFICATE OF NON-ARBITRATION

    Plaintiff Nick Flor certifies, according to Local Rule 2-603, that this matter is not subject

to the Second Judicial District Court's Court-Annexed Arbitration Program because it seeks

damages in excess of $25,000 and because it seeks injunctive relief.

                    Respectfully submitted,

                    **HARRISON & HART, LLC**

                    By: */s/ Nicholas T. Hart*
                    Carter B. Harrison, IV
                    Nicholas T. Hart
                    1001 Luna Circle NW
                    Albuquerque, NM 87102



T: (505) 295-3261
F: (505)
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the State of New Mexico's Tyler/Odyssey E-File & Serve System on December 31, 2019, and that a copy of the foregoing will be served on Defendants along with a copy of the file-stamped lawsuit in this matter.

*/s/ Nicholas T. Hart*
Nicholas T. Hart

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
12/31/2019 9:39 AM
James A. Noel
CLERK OF THE COURT
Blair Sandoval

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

      Plaintiff,

    v.

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

      Defendants.

No.     D-202-CV-2019-10058

## SIX-PERSON JURY DEMAND

    Plaintiff Nick Flor demands a jury trial on all issues of facts raised in the Complaint filed

in this matter and requests a six-person jury.

                    Respectfully submitted,

                    **HARRISON & HART, LLC**

                    By: */s/ Nicholas T. Hart*
                    Carter B. Harrison, IV
                    Nicholas T. Hart
                    1001 Luna Circle NW
                    Albuquerque, NM 87102
                    T: (505) 295-3261
                    F: (505)



EXHIBIT
A-4

carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the State of New Mexico's Tyler/Odyssey E-File & Serve System on December 31, 2019, and that a copy of the foregoing will be served on Defendants along with a copy of the file-stamped lawsuit in this matter.

*/s/ Nicholas T. Hart*
Nicholas T. Hart

**FILED**
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/31/2019 5:19 PM**
**James A. Noel**
**CLERK OF THE COURT**
**Thomas Wilson**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

      Plaintiff,

    v.                        No. D-202-CV-2019-10058

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

      Defendants.

## REQUEST FOR EXPEDITED HEARING

1. Assigned Judge:               The Honorable Benjamin Chavez

2. Type of Case:                Civil

3. Jury: <u>XX</u>      Non-Jury   _____

4. Date of Hearing Presently Set:    None

5. Motions to Be Heard:        Plaintiff's Verified Emergency Motion for a TRO
   and Preliminary Injunction

6. Estimated Time for Hearing    1 hour

7. Attorneys Entitled to Notice:    University of New Mexico Office of University
   Counsel, MSC05 3440, 1 University of New Mexico, Albuquerque, NM 87131



**EXHIBIT**
**A-5**

Respectfully submitted,

**HARRISON & HART, LLC**

By: */s/ Nicholas T. Hart*
Carter B. Harrison, IV
Nicholas T. Hart
1001 Luna Circle NW
Albuquerque, NM 87102
T: (505) 295-3261
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the State of New Mexico's Tyler/Odyssey E-File & Serve System on December 31, 2019, and that a copy of the foregoing will be served on Defendants along with a copy of the file-stamped lawsuit in this matter.

*/s/ Nicholas T. Hart*
Nicholas T. Hart

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

NICK VINCENT FLOR,

           Plaintiff,

    v.                                    No. D-202-CV-2019-10058

THE UNIVERSITY OF NEW MEXCO,
a public university, THE BOARD OF
REGENTS OF THE UNIVERSITY OF
NEW MEXICO, individually and in their
official capacities, GARNETT S.
STOKES, individually and in her official
capacity, CAMILLE CAREY, individually
and in her official capacity, FRANCIE
CORDOVA, individually and in her
official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, EMMA
RODRIGUEZ, individually and in her
official capacity, and KEVIN GICK,
Individually and in his official capacity,

           Defendants.

## [PROPOSED] NOTICE OF HEARING

A hearing in this matter is set before the HONORABLE BENJAMIN CHAVEZ as follows:

Date of Hearing:_____

Time of Hearing:_____

Length of Hearing:_____1 hour_____

Place of Hearing:_____

Matter(s) to be heard:  Plaintiff's Motion for a Temporary Restraining Order



THE HONORABLE BENJAMIN CHAVEZ


By_____

**PARTIES ENTITLED TO NOTICE:**

Nicholas T. Hart
Carter B. Harrison, IV
Harrison & Hart, LLC
1001 Luna Circle NW
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com
carter@harrisonhartlaw.com

*Attorney for Plaintiff*

University of New Mexico Office of University Counsel
MSC05 3440
1 University of New Mexico
Albuquerque, NM 87131

*Attorneys for Defendants*

2