IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

      Plaintiff,

   v.

THE UNIVERSITY OF NEW MEXICO,
a public university, CAMILLE CAREY,
individually and in her official capacity,
ANGELA CATENA, individually and
in her official capacity, SARA M.
CLIFFE, individually and in her official
capacity, and EVA CHAVEZ,

      Defendants.

No. 1:20-cv-00027-JAP-LF

JURY TRIAL DEMANDED

**FIRST AMENDED COMPLAINT**

Plaintiff Nick Vincent Flor brings this First Amended Complaint for Injunctive and Declaratory Relief and Damages against Defendants.  In support of his Complaint, Plaintiff states as follows:

1.     This action is for due process violations under the New Mexico Constitution, Art. II, § 18 and under the Fourteenth Amendment to the United States Constitution brought pursuant to 42 U.S.C. § 1983, for violations of Title IX, 20 U.S.C. §§ 1681 *et seq.*, for a declaratory judgment according to 28 U.S.C. § 2201, and under the common law.

**Jurisdiction and Venue**

2.     Jurisdiction is proper in this Court because this Complaint presents claims raising a federal question under 28 U.S.C. § 1331, and because it raises state law and common law claims which fall within this Court's supplemental jurisdiction according to 28 U.S.C. § 1367.

3.     Venue is proper in the District of New Mexico under 28 U.S.C. § 1391, because all Defendants are residents of the State in which this judicial district is located and because a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## Parties

4.      Plaintiff Nick Vincent Flor is an Associate Professor with the University of New Mexico's Anderson School of Management.  He is a resident of Bernalillo County in the State of New Mexico.

5.      Defendant University of New Mexico is a governmental entity that provides educational services to students within the State of New Mexico, which for all actions relevant to this Complaint, occurred in New Mexico.  Defendant University of New Mexico receives federal funding as part of those activities.

6.      Defendant Camille Carey is, and was at all times relevant to this Complaint, an employee of the University of New Mexico, where she is employed as the Vice Dean of the School of Law.  Defendant Carey was the party that imposed the sanction that is at issue in this Complaint. Upon information and belief, Defendant Carey is a resident of Bernalillo County, State of New Mexico.  Defendant Carey is being sued in both her official and individual capacities.

7.      Defendant Angela Catena is the Title IX Coordinator within the Office of Equal Opportunity at the University of New Mexico.  Upon information and belief, Defendant Catena is a resident of Bernalillo County, State of New Mexico.  Defendant Catena is being sued in both her official and individual capacities.

8.      Defendant Sara M. Cliffe is an OEO Investigator within the Office of Equal Opportunity at the University of New Mexico.  She was an investigator of the allegations brought against Plaintiff which are the subject of this Complaint. Upon information and belief, Defendant

Cliffe is a resident of Bernalillo County, State of New Mexico.  Defendant Cliffe is being sued in both her official and individual capacities.

9.     Defendant Eva Chavez is an individual, a graduate student at the University of New Mexico's Anderson School of Management, and a resident of the State of New Mexico.

## Factual Background

10.    On May 9, 2018, Plaintiff had a brief, in-person interaction with Defendant Eva Chavez, a graduate student at the University of New Mexico.

11.    Defendant Chavez never took any classes with Plaintiff.

12.    Plaintiff had never met Defendant Chavez before this brief interaction.

13.    Plaintiff and Defendant Chavez did not work on any research projects together.

14.    Plaintiff did not serve as an academic advisor for Defendant Chavez.

15.    Therefore, Plaintiff and Defendant Chavez were never in a situation in which Plaintiff would have supervised, advised, graded, or otherwise interacted in any professional situation with Defendant Chavez.

16.    This brief in-person interaction, however, led to e-mail exchanges between Plaintiff and Defendant Chavez.

17.    Those e-mail exchanges eventually became flirtatious and explicit in nature.

18.    Nearly all of these e-mails were exchanged through Plaintiff's personal e-mail account rather than his University-issued e-mail account.

19.    In addition to the flirtatious e-mail exchanges, Defendant Chavez had asked Plaintiff about possible paid research opportunities related to Plaintiff's research.

20.    Plaintiff informed Defendant Chavez that he had some research money remaining, but that it was limited.

21.     Plaintiff nevertheless inquired with his Department about any remaining grant money he had so that he could extend a paid research opportunity to Defendant Chavez.

22.     Plaintiff confirmed that he had a limited amount of grant money remaining, but nevertheless extended an offer to Defendant Chavez to perform a small number of hours of paid research work.  That research work equated to less than $800 worth of work, which was to be performed over the course of 4 weeks, during which Defendant Chavez would have worked only 8 hours a week.

23.     Defendant Chavez rejected the research opportunity because it did not offer a sufficient number of available paid hours.

24.     Plaintiff later stopped all e-mail communication with Defendant Chavez.  Plaintiff, who is married, did so because he believed the e-mail exchanges to be inappropriate for a married man.

25.     Defendant Chavez sent Plaintiff 3,258 messages, including 134 messages of an implicit or explicit sexual nature.

26.     Plaintiff sent Defendant Chavez 2,218 messages, including 69 messages of an implicit or explicit sexual nature.

27.     The messages including implicit or explicit sexual content sent by Plaintiff were limited to a period of only six days.

28.     Not one e-mail or message was sent by either party stating that the sexual messages were unwanted or unwelcome.

29.     Not one e-mail message predicates the prospect of a job opportunity or work project on the sending of or participation in sending sexually explicit e-mail messages.

30.     After Plaintiff cut off all e-mail communication with Defendant Chavez, Defendant Chavez began threatening Plaintiff, stating that she would share their e-mails with Plaintiff's department chair at the University and with members of the faculty and administration at the University.

31.     Defendant Chavez also began a series of harassing text messages, at one point sending more than 100 text messages on a single day.

32.     Those text messages demanded that Plaintiff respond otherwise Defendant Chavez would reveal the e-mails she exchanged with Plaintiff to the University community, including Plaintiff's supervisors and colleagues.

33.     This would have caused great embarrassment to Plaintiff.

34.     Plaintiff eventually determined that he had no choice but to disclose to a fellow faculty member, Mary Margaret Rogers, that he was receiving threatening and harassing text messages from a graduate student. Plaintiff also disclosed that he had exchanged flirtatious, explicit e-mails with Defendant Chavez.

35.     After Plaintiff disclosed the harassment and threats he was receiving from Defendant Chavez, Dr. Rogers reported the issues to the University's Office of Equal Opportunity.

36.     Dr. Rogers also filed a complaint against Defendant Chavez on behalf of Plaintiff with the Office of Equal Opportunity.

37.     When Defendant Chavez was informed that Plaintiff had filed a complaint against her, Defendant Chavez filed a separate complaint alleging that Plaintiff had engaged in quid pro quo sexual harassment because there was a power differential between them.

38.     Plaintiff fully cooperated in the investigation.

39.     Defendant Chavez, however, knowingly lied and presented false information to the University.

40.     The University then set out to investigate the complaints filed by Plaintiff and Defendant Chavez.

41.     The University initially appointed an independent investigator who was not employed by the University.

42.     That independent investigator was Ben FitzSimons.

43.     That independent investigator included the job title OEO Investigator on all correspondence related to this matter.

44.     That independent investigator prepared an investigation report.

45.     That investigation report was then sent to Plaintiff and Defendant Chavez on November 28, 2018, at which time Plaintiff and Defendant Chavez were allowed to prepare a response to the investigation report.

46.     That investigation report detailed testimony given to Mr. FitzSimons by witnesses who he interviewed, but the report did not identify the names of those witnesses.

47.     The failure to identify witnesses deprived Plaintiff of the opportunity to fully respond to the testimony from those witnesses.

48.     Without explanation, Mr. FitzSimons was removed as the investigator after he prepared that investigation report.

49.     Upon information and belief, Mr. FitzSimons was removed as the investigator because he intended to find that Plaintiff did not violate University policy.

50.     Nowhere in University policy does it state that the Office of Equal Opportunity may replace an investigator assigned to a case because of a disagreement regarding that investigator's findings.

51.     After the removal of Mr. FitzSimons, Defendant Cliffe was appointed as the OEO investigator for those complaints.

52.     Defendant Cliffe then took the investigation findings prepared by Mr. FitzSimons and prepared a preliminary letter of determination.

53.     A preliminary letter of determination includes the results of the Office of Equal Opportunity investigation, including the University's proposed findings regarding potential policy violations.

54.     Defendant Cliffe's preliminary determinations included findings that Plaintiff's interactions with Defendant Chavez violated the University's sexual harassment policy and anti-retaliation policy, but that Defendant Chavez did not violate the University's sexual harassment policy or anti-retaliation policy.

55.     The preliminary letter of determination then gave Plaintiff five days to offer new evidence not previously submitted to the Office of Equal Opportunity throughout its investigation.

56.     Following the investigation report and preliminary letter of determination, Plaintiff asked that the Office of Equal Opportunity interview twelve witnesses.

57.     Three of those witness—James Cormier, Raj Mahto, and Harold Chang—had submitted complaints alleging that Defendant Chavez engaged in inappropriate and retaliatory behavior, including allegations of filing false complaints against individuals when she did not get what she wanted from those individuals, with various University offices and officials.

58.     Three of those witnesses—Tammy Cline, Vanessa Cline, and Robin Love—would have testified during their interviews that Defendant Chavez never had a job contract with the University that was taken away and that Defendant Chavez rejected Plaintiff's job offer.

59.     Six of those witnesses—Randi Silva, Adrienne Neff, Kim Huynh, Nicole Jaramillo-Martinez, Melinda Mesibov, and Erin Maestas—were expected to provide testimony regarding Plaintiff's interactions with students and other information germane to the allegations of sexual harassment.

60.     Defendant Cliffe and the Office of Equal Opportunity refused to interview any of Plaintiff's proposed witnesses.

61.     One of those witnesses, Raj Mahto, did submit a written statement to the Office of Equal Opportunity.  That statement offered to provide further written evidence supporting his statement.  Defendant Cliffe and the Office of Equal Opportunity refused to accept or review that further written evidence.

62.     Defendant Cliffe, Defendant Catena, and the Office of Equal Opportunity later issued a final letter of determination, in which they determined that Plaintiff had violated University policy.

63.     Neither Defendant Cliffe, Defendant Catena, nor Defendant University afforded Plaintiff a hearing before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

64.     Neither Defendant Cliffe, Defendant Catena, nor Defendant University afforded Plaintiff the opportunity to cross-examine any of the witnesses that were interviewed by the University before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

65.     Neither Defendant Cliffe, Defendant Catena, nor Defendant University afforded Plaintiff the opportunity to present a full and complete defense regarding the allegations brought against him before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

66.     Neither Defendant Cliffe, Defendant Catena, nor Defendant University afforded Plaintiff the opportunity to present have interviewed witnesses of his choose, all of which possessed relevant information, before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

67.     Neither Defendant Cliffe, Defendant Catena, nor Defendant University afforded Plaintiff a fair and equitable investigation before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

68.     Neither Defendant Cliffe, Defendant Catena, nor Defendant University afforded Plaintiff the opportunity to see all evidence used against him before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

69.     Defendant Cliffe, Defendant Catena, and Defendant University refused to consider, instead excluding, exculpatory evidence before issuing their findings that Plaintiff violated the University's sexual harassment and retaliation policies.

70.     After Defendant Cliffe, Defendant Catena, and Defendant University issued the final letter of determination, Plaintiff appealed that determination to the President of the University.

71.     The President of the University denied Plaintiff's appeal.

72.     Plaintiff then appealed Defendant Cliffe, Defendant Catena, and Defendant University's determination to the Board of Regents of the University of New Mexico.

73.   The Board of Regents of the University of New Mexico declined to consider the appeal.

74.   At no time during the appeal process was Plaintiff afforded a hearing, an opportunity to present a full and complete defense, an opportunity to cross examine witnesses, an opportunity to have witnesses of his choice testify, an opportunity to present exculpatory evidence, or the opportunity to view all evidence collected against him.

75.   The University then commenced the process to sanction Plaintiff for violating University policy.

76.   The process for sanctioning tenured faculty members for violating University policy is contained in University Policy C07.

77.   University Policy C07 requires that, after a finding of a policy violation, an individual's Department Chair makes a sanctioning decision, and if that decision includes a suspension, then an individual's Dean must review and approve the proposed sanction before it is imposed.

78.   Pursuant to this policy, University Senior Vice Provost Barbara Rodriguez appointed Plaintiff's Department Chair, Dr. Mary Margaret Rogers, to review the determinations of Defendant Cliffe, Defendant Catena, and Defendant University and decide what, if any sanction, should be imposed.

79.   Dr. Rogers reviewed Defendant Cliffe, Defendant Catena, and Defendant University's preliminary letter of determination and final letter of determination.

80.   After reviewing those documents, Dr. Rogers prepared a proposed sanction.

81.   That proposed sanction was training and other corrective measures but did not include a recommendation that Plaintiff be suspended.

82.   Dr. Rogers then sent her proposed sanction to Senior Vice Provost Barbara Rodriguez and Defendant Catena.

83.   Dr. Rogers was required to share her proposed sanction with Defendant Catena and Senior Vice Provost Barbara Rodriguez before imposing her proposed sanction.

84.   Dr. Rogers was required to share her proposed sanction with Defendant Catena and Senior Vice Provost Rodriguez before imposing it even though University policy does not require that she do so.

85.   Dr. Rogers was required to share her proposed sanction before imposing it even though University policy gives the Department Chair the sole responsibility for determining the proposed sanction, with review and approval only by the Dean of the individual to be sanctioned.

86.   Defendant Catena disagreed with the proposed sanction of Plaintiff.

87.   Defendant Catena believed that the sanction was not harsh enough and believed that Plaintiff should receive a more punitive sanction then the sanction proposed by Dr. Rogers.

88.   Defendant Catena then prepared a letter or memorandum to Senior Vice Provost Rodriguez explaining her opinion that Dr. Rogers' proposed sanction was not severe enough.

89.   Senior Vice Provost Rodriguez agreed with Defendant Catena that Dr. Rogers' proposed sanction was not harsh enough.

90.   In fact, at a later proceeding at the University, Senior Vice Provost Rodriguez testified that she believed that Plaintiff should be terminated.

91.   Neither Defendant Catena nor Senior Vice Provost Rodriguez possessed the ability to sanction Plaintiff for the alleged policy violations.

92.   Defendant Catena and Senior Vice Provost Rodriguez then set out to deprive Plaintiff of the process guaranteed to him under University Policy C07 and remove Dr. Rogers as

the sanctioning party by alleging that Dr. Rogers had a conflict of interest prohibiting her from serving as the sanctioning party.

93.     The alleged conflict of interest held by Dr. Rogers was based upon three facts: 1) that Dr. Rogers initially reported conduct that was part of the investigation to the Office of Equal Opportunity; 2) that Dr. Rogers was later sanctioned by the University for failing to report Plaintiff's alleged sexual misconduct earlier than she had reported it; and 3) that Dr. Rogers expressed an inability to be impartial in a separate investigation regarding Defendant Chavez.

94.     Those justifications were pretextual.

95.     The University did not in fact have any legitimate concern regarding any potential conflicts of interest held by Dr. Rogers.

96.     First, the University knew that Dr. Rogers was the individual that reported alleged misconduct by Plaintiff and Defendant Chavez to the Office of Equal Opportunity before she was tasked with sanctioning Plaintiff.

97.     Neither Defendant Catena nor Senior Vice Provost Rodriguez had any concern regarding those initial reports at the time Dr. Rogers was tasked with sanctioning Plaintiff.

98.     Moreover, while Dr. Rogers was sanctioned by the University for failing to report alleged misconduct by Plaintiff and Defendant Chavez earlier than she had done, that sanction was not imposed until after Dr. Rogers had prepared and distributed her proposed sanction.

99.     Additionally, Dr. Rogers' comments regarding her ability to be objective regarding a separate investigation regarding Plaintiff and Defendant Chavez were made after she was

sanctioned by the University, and after Dr. Rogers had prepared and sent her proposed sanction of Plaintiff.[1]

100.    Actions taken by the University after Dr. Rogers prepared and distributed her proposed sanction, and Dr. Rogers' reaction to those actions, cannot legitimately serve as the basis for an alleged conflict of interest.

101.    Nevertheless, Defendant Catena and Senior Vice Provost Rodriguez determined that Dr. Rogers could no longer serve as the individual responsible for sanctioning Plaintiff.

102.    Senior Vice Provost Rodriguez then refused to appoint as a substitute sanctioner any department chair associated with the Anderson School of Management, which is the school Plaintiff is affiliated with.

103.    Senior Vice Provost Rodriguez later appointed Defendant Carey, who is the Vice Dean of the Law School, as the sanctioning party.

104.    Defendant Carey conferred with Defendant Catena after she was tasked with sanctioning Plaintiff.

105.    In that meeting, Defendant Catena gave Defendant Carey guidance regarding the review of the University's findings of policy violations.

106.    During that meeting, Defendant Catena provided Defendant Carey with a handbook prepared by an organization called ATIXA.

107.    That handbook was regarding the sanctioning of students for Title IX violations.

---

[1] That investigation concerned whether Plaintiff had violated University Policy 2215, which requires a University Professor to disclose to the University, by filing a form, if the professor is having a sexual relationship with a student. That investigation occurred after Dr. Rogers proposed her sanction. That investigation found that Plaintiff did not violate Policy 2215.

108.    That handbook did not include any guidance regarding sanctioning faculty members for alleged violations of a University's sexual harassment or retaliation policies.

109.    Defendant Catena and Senior Vice Provost Rodriguez also provided Defendant Carey with two previous sanctions of University professors for alleged violations of the same policies.

110.    Those sanctions were for sexual misconduct which included actual, physical sexual relationships between faculty members and students.

111.    Defendant Catena and Senior Vice Provost Rodriguez provided those previous sanctions as comparators for Dean Carey to use when sanctioning Plaintiff.

112.    Those previous sanctions, however, were not comparable because they were based upon physical sexual relationships between faculty and students.  In contrast, Plaintiff was alleged to have violated policy based upon a brief series of e-mail communications with a 35-year-old woman who was neither his student, his employee, nor his advisee.

113.    Moreover, these materials were not provided by Defendant Catena and Senior Vice Provost Rodriguez to Dr. Rogers.

114.    Defendant Carey later decided to impose a one-year suspension, without pay.

115.    In addition to being suspended for one year from his position, Plaintiff is prohibited by the University's Outside Employment policy from working for more than 39 days for any employer other than the University, otherwise he would have to resign his employment.

116.    While the University's Outside Employment policy does not state that it applies to employees under suspension, the University has made clear to Plaintiff that it expects him to abide by it.

117.    Upon information and belief, this is an effort to effectively terminate Plaintiff without going through the procedures normally required to terminate a tenured faculty member.

118.    Defendant Carey's sanction, therefore, requires Plaintiff, who is the sole wage earner for his family, to either not work for an entire year and earn no income, or to quit.

119.    Defendant Carey's sanction also prohibits Plaintiff from stating that he is associated with the University of New Mexico if he publishes any of his research this year.

120.    This prohibition results in Plaintiff having to violate the terms of his research grants, which total more than $1 million, because those grants require him to publish his findings as associated with a University.

121.    Defendant Carey imposed this sanction without affording Plaintiff the opportunity to have a hearing, to confront and cross-examine witnesses, to present a full and complete defense, to submit exculpatory evidence, or to review all of the evidence collected against him.

122.    Pursuant to Policy C07, Defendant Carey consulted with Plaintiff's Dean, Interim Dean Shawn Berman of the Anderson School of Management, before imposing her sanction.

123.    Interim Dean Berman was determined by Senior Vice Provost Rodriguez to be a non-conflicted official capable of being objective when reviewing the sanction that Defendant Carey wished to impose.

124.    This determination was made despite the fact that Dean Berman, like Dr. Rogers, had also reported alleged misconduct by Plaintiff and Defendant Chavez to the Office of Equal Opportunity.

125.    This determination was made despite the fact that Dean Berman, like Dr. Rogers, had been sanctioned by the University for failing to report that alleged misconduct earlier.

126.    In contrast to Dr. Rogers, however, Dean Berman was sanctioned for the failure to report before he was tasked with reviewing and approving Defendant Carey's chosen sanction.

127.    If the University had a serious concern about potential conflicts of interest, then Dean Berman, like Dr. Rogers, should have been precluded from reviewing and approving Defendant Carey's chosen sanction.

128.    Rather, Dean Berman's participation in this process confirms that Defendant Catena and Senior Vice Provost Rodriguez did not have a legitimate concern that Dr. Rogers possessed a conflict of interest.

129.    The University later informed organizations that had awarded research grants to Plaintiff that Plaintiff was found to have violated the University's quid pro quo sexual harassment and Title IX policies.

130.    These disclosures, which were made before Plaintiff had exhausted his appeals and without giving Plaintiff a hearing or the right to cross-examine his accuser, unlawfully disparage Plaintiff in a manner which prevents Plaintiff from obtaining similar research grants in the future.

131.    A news article was later published by Reason, which is an independent news organization, through which a reporter detailed the University's findings against Plaintiff.

132.    That article alleged that the University failed to afford Plaintiff due process.

133.    That article also discussed the Office of Equal Opportunity investigation into Plaintiff but did not identify Defendant Chavez as the individual that filed a complaint against Plaintiff.

134.    Rather, that article referred to Defendant Chavez as "Julia."

135.    The University's actions, as detailed in this lawsuit, were later the subject of a nationally syndicated column written by Diane Diamond.

136.    That column also discussed the allegations contained in this lawsuit.

137.    That column also did not identify Defendant Chavez as the individual that filed a complaint against Plaintiff.

138.    Plaintiff later filed a lawsuit challenging this suspension.

139.    That lawsuit was filed on December 31, 2019 in the Second Judicial District Court.

140.    At the same time, Plaintiff filed a motion for a temporary restraining order in an attempt to stop Defendant Carey's proposed sanction from taking effect.

141.    That lawsuit and motion were then subject to news coverage by local news organizations, including the Albuquerque Journal.

142.    Neither the initial lawsuit nor the news coverage regarding the lawsuit identified Defendant Chavez as the individual that filed a complaint against Plaintiff.

143.    Despite the fact that Defendant Chavez was never publicly identified as the individual that filed a complaint against Plaintiff, Defendant Chavez filed a complaint with the Office of Equal Opportunity alleging that Plaintiff retaliated against her through the filing of this lawsuit and the related media coverage of this matter.

144.    Specifically, Defendant Chavez contended that the media coverage of this matter made it impossible for her to complete her coursework because the media coverage made it possible for individuals to identify her as the person who filed a complaint against Plaintiff.

145.    Defendant Chavez made these allegations despite the fact that no news coverage or public court filing submitted by Plaintiff identified Defendant Chavez as the complainant.

146.    Nevertheless, the University accepted jurisdiction of Defendant Chavez's retaliation complaint.

147.    The University is currently investigating the allegations contained in Defendant Chavez's retaliation complaint.

### Peer Committee Hearing to Review Plaintiff's Sanction

148.    On February 21, 2020, Plaintiff underwent his final opportunity to appeal the sanction imposed upon him through a hearing with the University's Peer Review Committee.

149.    Such an appeal, however, only allowed Plaintiff to challenge the sanction imposed on him.

150.    That appeal did not allow Plaintiff to challenge Defendant Cliffe, Defendant Catena, and Defendant University's findings that Plaintiff violated the University's sexual harassment and retaliation policies.

151.    During that hearing, Plaintiff was prohibited from being represented by counsel.

152.    That prohibition existed despite the fact that the sanction was defended by Defendant Carey, who is a law professor and practicing attorney.

153.    That prohibition also existed despite the fact that Defendant Carey was allowed to submit formal legal motions, such as her motion to exclude evidence submitted by Plaintiff.

154.    That prohibition also existed despite the fact that Defendant Carey sought to apply the New Mexico Rules of Evidence to that proceeding.

155.    In order to be given a fairer hearing, Plaintiff requested that he be represented by an attorney at the Peer Hearing.

156.    The University denied the request.

157.    Plaintiff has yet to be notified of any decision by the Peer Review Committee.

158.    Plaintiff has not been notified about a date by which the Peer Review Committee will make a decision regarding his appeal of Defendant Carey's sanction.

**Defendant Chavez's Actions**

159.    After Plaintiff was determined to have violated University policy, Defendant Chavez filed a petition in the Second Judicial District Court in New Mexico seeking a domestic violence restraining order against Plaintiff.

160.    Defendant Chavez's petition contended that she should be awarded a domestic violence restraining order prohibiting Plaintiff from contacting her because the University had found that Plaintiff violated the University's sexual harassment and retaliation policies.

161.    As part of those proceedings, Defendant Chavez attached significant portions of the record of the Office of Equal Opportunity's investigation into alleged misconduct by Defendant Chavez and Plaintiff.

162.    Defendant Chavez, however, selectively excluded portions of that investigation file which were exculpatory to Plaintiff.

163.    Plaintiff later filed a motion asking to seal those records from the public.

164.    Defendant Chavez opposed that motion to seal, stating that because Plaintiff was a professor at a public university, the public had a right to know that Plaintiff was found to have violated the University's sexual harassment and retaliation policies.

165.    The filing of those documents and the opposition to sealing those documents was a transparent attempt to publicly shame Plaintiff.

166.    The filing of the petition and the filing of Office of Equal Opportunity investigation documents as exhibits during those proceedings was an attempt by Defendant Chavez to skirt the Office of Equal Opportunity's confidentiality rules.

167.    Defendant Chavez took those actions because she knew that any other disclosure of the Office of Equal Opportunity record would be unlawful retaliation.

168.     The Second Judicial District Court later rejected that petition for a temporary restraining order, finding that the petition had no merit.

169.     Defendant Chavez therefore used the judicial process to embarrass and shame Plaintiff rather than to pursue meritorious claims for relief.

## COUNT I – DEPRIVATION OF DUE PROCESS IN VIOLATION OF ARTICLE II, § 18 OF THE NEW MEXICO CONSTITUTION, FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND 42 U.S.C. § 1983 AGAINST DEFENDANTS UNIVERSITY, CLIFFE, CATENA, AND CAREY

170.     Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

171.     Article II, Section 18 of the New Mexico Constitution provides, in relevant part, that "[n]o person shall be deprived of life, liberty or property without due process of law[.]"

172.     The Fourteenth Amendment of the United States Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law."

173.     Plaintiff has a protected property interest in his continued employment with the University of New Mexico, of which he cannot be deprived of by the state without due process of law.

174.     Plaintiff has a protected right to due process of law in any disciplinary proceedings related to that employment.

175.     Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived of without due process of law.

176.     Plaintiff was entitled to process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussions he was facing, especially when the allegations are of violations of the University's sexual harassment and sexual violence policies, which will result in a severe sanction that will have lifelong ramifications for Plaintiff.

177.    Plaintiff's employment with the University was suspended for one year without Plaintiff being afforded clearly established due process protections, including, but not limited to, the following:

a.    Meaningful notice of the allegations, to include notice of the severity of the sanction and the alleged violation;

b.    A meaningful opportunity to be heard, to include the opportunity to respond to, explain, and defend against the allegations brought against him;

c.    The opportunity to confront witnesses, to include allowing Plaintiff the opportunity to hear, respond to, and question and cross-examine witnesses, including his accuser;

d.    Identification of all of the evidence and witnesses relied upon by Defendants;

e.    Meaningful and unbiased university policies and procedures;

f.    Affording UNM employees adequate, appropriate, and unbiased training in methods for investigating allegations of sexual misconduct;

g.    A prompt, thorough, and impartial investigation;

h.    An impartial hearing;

i.    Following established University policies and procedures regarding the investigation and sanctioning of faculty alleged to have engaged in sexual harassment;

j.    Allowing Plaintiff's Counsel to represent Plaintiff's interests throughout the investigatory and sanctioning process, to include allowing Plaintiff's counsel to make argument, to examine witnesses, directly or by written questions, to speak on behalf of Plaintiff, or to take any other action as counsel for Plaintiff; and

k.    Instituting policies and procedures that protect the interests of both the accused faculty member and the accuser.

178.    If Defendant utilized additional process and procedures, then there would have been a finding by Defendants that Plaintiff had not committed the alleged misconduct at issue.

179.    Defendant Cliffe, with the approval and supervision of Defendant Catena, conducted an investigation that was reckless and grossly negligent.

180.    Defendant Cliffe was the investigator, factfinder, and decision maker.

181.    Defendant Catena's interference with the investigation and sanctioning process deprived Plaintiff of due process.

182.    Defendant Carey's actions throughout the sanctioning process deprived Plaintiff of due process.

183.    Defendants created a policy, pattern, and practice which deprived Plaintiff of a fair and impartial investigation, a hearing, an appeal, and further failed to ensure training in the legal and appropriate methods of investigating allegations of sexual harassment.

184.    Defendants agreed to, approved, and ratified this unconstitutional conduct.

185.    It would have been plainly obvious to a reasonable official that the actions and inactions complained of in this Complaint would deprive or lead to the deprivation of Plaintiff's state and federal constitutional rights.

186.    Defendants have a custom and practice of disregarding and violating faculty members' constitutional rights.

187.    Defendants have a custom and practice of failing to afford basic due process protections to faculty members accused of sexual harassment.

188.    Defendants' actions and inactions described above were fundamentally unfair to Plaintiff, unduly prone to false findings of sexual harassment and policy violations, and were arbitrary and capricious.

189.   Defendants' conduct was so egregious as to shock the conscience.

190.   There is no rational relationship between Plaintiff's actual conduct and the discipline imposed on him by Defendants.

191.   In depriving Plaintiff of his protected due process rights, including his liberty interest in his good name, reputation, honor and integrity, the opportunity to pursue employment, and his protected property interest in his continued employment, Defendants violated Plaintiff's right to due process in violation of Article II, Section 18 of the New Mexico Constitution and the Fourteenth Amendment to the United States Constitution.

192.   Defendants have no sufficient justification for abridging Plaintiff's due process rights.

193.   Defendants, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

194.   At all times relevant, Plaintiff had a clearly established right to due process of law of which a reasonable public official would have known.

195.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered injury and damages to include, but not limited to: suspension for one year from his employment with the University of New Mexico, denial of other employment opportunities because of University policy, loss of wages, loss of future employment opportunities, a permanent finding of sexual harassment and violation of the University's sexual violence policy on Plaintiff's personnel records, damage to Plaintiff's reputation and standing in the community, loss of career opportunities and earnings capacity, mental and emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

196.    Plaintiff is entitled to relief against Defendants, including but not limited to damages, punitive damages, and reimbursement of attorneys' fees and costs, as requested in this Complaint.

## COUNT II – INJUNCTIVE RELIEF AGAINST DEFENDANTS UNIVERSITY, CLIFFE, CATENA, AND CAREY ACCORDING TO 42 U.S.C. § 1983

197.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

198.    The allegations of sexual harassment and Defendant's erroneous finding of probable cause resulted in permanent, life-long sanctions against Plaintiff that are quasi-criminal in nature.  Plaintiff's reputation and good name, both personally and professionally, have been tarnished—if not destroyed—by UNM's biased and inadequate adjudication of the claims against him.

199.    As a result of these significant due process violations, Plaintiff suffered and continues to suffer ongoing harm and irreparable injury and damage to his employment and future employment prospects, and therefore is entitled to injunctive relief, including a reversal of the outcome and findings of the UNM investigation; expungement of Plaintiff's personnel file reflecting the improper findings, discipline, and sanction; production of verification of such expungement to Plaintiff; a prohibition on UNM disclosing Plaintiff's personnel files reflecting the finding of a policy violation and discipline, and lifting of the one-year suspension so that Plaintiff may return to work at UNM.

200.    As a result of the foregoing, Plaintiff is entitled to injunctive relief, and reimbursement for attorneys' fees and costs, against Defendants as requested in this Complaint.

**COUNT III – REQUEST FOR DECLARATORY RELIEF ACCORDING TO 28 U.S.C. §
2201 AGAINST DEFENDANTS UNIVERSITY, CLIFFE, CATENA, AND CAREY**

201.     Plaintiff incorporates the allegations contained in all preceding paragraphs as if set
forth fully herein.

202.     An actual controversy exists between Plaintiff and Defendants regarding
Defendants' investigative and sanctioning process of male faculty accused of sexual misconduct.

203.     Plaintiff seeks a judicial determination, according to the Declaratory Judgment Act,
that the investigative and sanctioning processes utilized by Defendants are unconstitutional,
improper, and violative of Plaintiff's rights, and as such, inadequate and invalid as a matter of law.

204.     Plaintiff also seeks a judicial determination, according to the Declaratory Judgment
Act, that the Peer Review appeal process is unconstitutional, improper, and violative of Plaintiff's
rights, and as such, inadequate and invalid as a matter of law.

205.     A judicial determination resolving this actual controversy is necessary and
appropriate at this time.

206.     Due to Defendants' actions and inactions as alleged herein, Plaintiff has suffered,
and will continue to suffer, irreparable injury.

207.     Plaintiff does not have an adequate remedy at law.

208.     As a result of the foregoing, Plaintiff is entitled to declaratory relief against
Defendants as requested in this Complaint.

**COUNT IV – VIOLATION OF TITLE IX BY DEFENDANT UNIVERSITY**

209.     Plaintiff incorporates the allegations contained in all preceding paragraphs as if set
forth fully therein.

210.     Title IX of the Education Amendments of 1972 provides, in relevant part, that "[n]o
person in the United States shall, on the basis of sex, be excluded from participation in, be denied

the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance."

211.    Defendant University of New Mexico is an institution of higher education that receives federal funding.

212.    Defendant University has promulgated its Title IX Policy, as well as its related sexual harassment, retaliation, and Office of Equal Opportunity policies, among others, to comply with Title IX and its implementing regulations, 34 C.F.R. 106.1 *et seq.*, and with the Clery Act and its implementing regulations, 34 C.F.R. 668.1 *et seq.*

213.    Challenges against university disciplinary proceedings for sex discrimination against faculty members fall into two categories: (1) "erroneous outcome" cases, in which the claim is that a plaintiff was innocent and wrongly found responsible for an offense because of gender bias as a motivating factor behind the erroneous findings; and (2) "selective enforcement" cases, in which a plaintiff asserts that, regardless of the outcome or the faculty member's guilt or innocence, the severity of the penalty and/or conduct of the proceeding was affected by the faculty member's gender.

214.    In Plaintiff's case, the "erroneous outcome" of his case is demonstrated by Defendants' actions depriving Plaintiff of his rights, including without limitation the right to a hearing; the right to question witnesses; the right to unbiased decision makers; the right to submit written statements from witnesses in his own defense; the right to a fair and equitable investigation and decision; the right to see all evidence used against him during the investigation; the right to present exculpatory evidence in his favor; the right to present a full and complete defense; and the right to not be prejudged guilty and suspended in violation of University policy.

215.    Bias is demonstrated in this case because both Plaintiff and Defendant Chavez sent sexually explicit communications, yet only Plaintiff was found to have violated University policy.

216.    Bias is demonstrated in this case because Plaintiff was found to have improperly retaliated against Defendant Chavez, even though Defendant Chavez threatened to disclose all of her communications with Plaintiff to his colleagues at the University.

217.    Bias is demonstrated in this case because Plaintiff was denied the opportunity to file a retaliation complaint against Defendant Chavez when she filed a petition for a temporary restraining order, yet the University accepted jurisdiction of a retaliation complaint filed by Defendant Chavez based upon the filing of this lawsuit.

218.    Bias is demonstrated in this case by the fact that the Office of Equal Opportunity refused to interview or talk with any of Plaintiff's proposed witnesses, while interviewing and talking with Defendant Chavez's proposed witnesses.

219.    Bias is demonstrated in this case because the Office of Equal Opportunity excluded exculpatory evidence submitted by Plaintiff.

220.    Bias is demonstrated in this case because the only witnesses to be found to not have credible or relevant information were those witnesses identified by Plaintiff.

221.    Defendant University has promoted and fostered an atmosphere of public pressure within the University and has acquiesced to public pressure in the media and from federal and state government demanding more swift and severe reaction to female complainants of sexual harassment at the expense of male accused faculty members.

222.    Defendant University has also selectively enforced its Title IX and sexual harassment policies against Plaintiff as a male faculty member.

223.     Here, Defendants labored mightily in their judgment to credit Defendant Chavez's statements and evidence; to find that Plaintiff violated policy while Defendant Chavez did not even though both engaged in the same or similar conduct; to find that Plaintiff's initial claim of harassment was retaliatory because Defendant Chavez's threats to expose and embarrass Plaintiff were actually protected whistleblowing activity; and to find that Plaintiff had engaged in quid pro quo harassment despite clear written evidence establishing that Defendant Chavez declined the job offer because she was dissatisfied with the number of hours being offered.

224.     Plaintiff will also be able to show that Defendant University has engaged in a pattern and practice of selectively enforcing Title IX.   On information and belief, Defendant University has initiated complaints against male faculty members while not initiating similar complaints against female faculty members.   In fact, only three other faculty members have been disciplined for violations of the University's sexual harassment policy other than Plaintiff.   All three were men.

225.     In addition, Plaintiff has a retaliation claim.   Defendant University retaliated against Plaintiff for the filing of this Complaint by bringing an additional investigation against him because of the press coverage related to the filing of this lawsuit.

226.     Plaintiff has been irreparably harmed by having his employment effectively terminated.

227.     Plaintiff has suffered reputational harm, been threatened with further retaliatory action by Defendant Chavez, and will suffer diminished income and future career opportunities due to the University's findings and sanction.

228.    Because of this conduct, Defendant University is liable to Plaintiff under Title IX, and Plaintiff is entitled to damages, injunctive relief, and reimbursement of his attorneys' fees and costs.

**COUNT V – BREACH OF CONTRACT BY DEFENDANT UNIVERSITY**

229.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

230.    Defendant University, acting through its Board of Regents and employees, created express contracts when Plaintiff accepted an offer of employment as a faculty member and when Plaintiff was granted tenure as an Associate Professor at the Anderson School of Management.

231.    Plaintiff accepted the offers of employment and tenure in reliance on the understanding and reasonable expectation that Defendant University would fairly and without bias implement and enforce the provisions and policies set forth in its official publications.

232.    Defendant University committed several breaches of its express agreements with Plaintiff. A non-exhaustive list of those breaches includes the following:

a.    Failing to abide by its policies and procedures;

b.    Failing to conduct a fair and impartial investigation and hearing;

c.    Failing to provide a fair and impartial sanctioning process;

d.    Failing to provide adequate due process, to include the right to a hearing, to confront witnesses, and to confront one's accuser;

e.    Failing to adequately and properly consider and weigh evidence; and

f.    Failing to allow adequate representation during the investigative, sanctioning, and appeals processes.

233.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, emotional distress, loss of educational, professional and career opportunities, injuries, and other direct and consequential damages.

234.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, and costs.

## COUNT VI – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING BY DEFENDANT UNIVERSITY

235.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

236.    Defendant University's express contracts with Plaintiff included an implied covenant of good faith and fair dealing which implicitly guaranteed that any investigatory and disciplinary proceedings would be conducted with basic fairness.

237.    Defendant University, acting through Defendants, acted in bad faith when it failed to provide adequate due process to safeguard Plaintiff's interests in his education.

238.    As a direct and proximate result of the above conduct, Plaintiff sustained significant damages, including, without limitation, emotional distress, loss of educational, professional and career opportunities, injuries, and other direct and consequential damages.

239.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, costs, and disbursements.

## COUNT VII – MALICIOUS ABUSE OF PROCESS BY DEFENDANT CHAVEZ

240.    Plaintiff incorporates the allegations contained in all preceding paragraphs as if set forth fully herein.

241.    Defendant Chavez initiated a judicial proceeding against Plaintiff when she filed a petition seeking a domestic violence restraining order.

242.     Defendant Chavez filed that action for the improper purposes of humiliating, embarrassing, and shaming Plaintiff.

243.     Defendant Chavez filed that petition to achieve an illegitimate end, namely the public disclosure of documents related to a confidential proceeding and retaliation against Plaintiff taken under the guise of a judicial proceeding so that she could not be disciplined for retaliating against Plaintiff.

244.     That petition was without merit.

245.     The court denied Defendant Chavez's petition for a domestic violence restraining order.

246.     Plaintiff suffered damages as a result of Defendant Chavez's actions in the form of attorneys' fees, reputational harm, and other damages.

## Prayer for Relief

Plaintiff respectfully requests:

A.     Injunctive relief to redress the injuries proximately and directly caused by Defendants' conduct as stated in this Complaint, including the issuance of an order (1) enjoining Defendants from imposing the sanction on Plaintiff; (2) enjoining Defendants from disclosing Plaintiff's employment records reflecting the finding of a policy violation and/or reflecting discipline during the pendency of this action; (3) requiring Defendants to expunge the improper finding of a policy violation and improper imposition of a sanction from Plaintiff's employment records and providing Plaintiff with confirmation of such expungement; and (4) requiring Defendants to allow Plaintiff to return to his work as an Associate Professor with the University's Anderson School of Management.

B.      Declaratory relief, including a declaration that the investigative and sanctioning

processes used by Defendants are unconstitutional, improper, and violative of Plaintiff's rights;

C.      Damages in an amount to be determined at trial;

D.      Punitive damages;

E.      Pre-judgment and post-judgment interest as allowable by law;

F.      An award of Plaintiff's attorneys' fees and costs;

G.      And any other and further relief as the Court deems just and proper.


Respectfully submitted,

**HARRISON & HART, LLC**

By: */s/ Nicholas T. Hart*
Carter B. Harrison, IV
Nicholas T. Hart
1001 Luna Circle NW
Albuquerque, NM 87102
T: (505) 295-3261
F: (505) 341-9340
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Attorneys for Plaintiff*