IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

    Plaintiff,

v.                                                               No. 1:20-cv-00027-JAP-LF

THE UNIVERSITY OF NEW MEXICO,
a public university, CAMILLE CAREY,
individually and in her official capacity,
ANGELA CATENA, individually and
un her official capacity, SARA M.
CLIFFE, individually and in her official
capacity, and EVA CHAVEZ,

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS THE UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA M. CLIFFE**

The central issue presented by motion is whether Plaintiff has shown a likelihood of success on the merits—by raising factual or legal questions going to the merits which are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and more deliberate investigation—that he was deprived of due process and was subjected to an investigation and disciplinary process that were tainted by gender bias following allegations of sexual harassment. Defendants' response offers mostly conclusory statements, devoid of substantive analysis, that Plaintiff failed to meet the burden for issuing a temporary restraining order. But Defendants' response completely ignores that an allegation of sexual harassment, and the mere fact of being investigated for such an allegation, "carries a unique stigma in our society." *Ortega v. O'Connor*, 146 F.3d 1149, 1165 (9th Cir. 1998)

1

Most tellingly, Defendants do not cite a single case addressing the process owed to those accused of sexual harassment or sexual misconduct. It is not hard to see why: emerging case law mandates heightened due process during such disciplinary proceedings, including the right to cross-examine one's accuser and the right to present a defense and witnesses of one's choosing. *See Lee v. University of New Mexico,* 2020 WL 1515381, at *36 (D.N.M. Mar. 30, 2020) ("The Due Process Clause requires at a minimum that UNM's factfinder ask the complaining student questions—in person—that the accused student or his counsel has submitted."). Defendants' position that the law provides otherwise simply cannot be reconciled with the case law from this Court and from other Circuits.

Finally, Defendants contend that, despite this now settled law, they must be given the freedom "to sanction an employee who threatens the education of a student." *See* Response at 24. This case, however, is not about a University that seeks the freedom to unilaterally discipline faculty members. It is, instead, about a tenured Associate Professor's right to the core guarantees of due process and to be free from arbitrary discipline based upon his gender. Allowing Defendants to void Plaintiff's constitutionally protected interest in his continued employment before providing a proper opportunity to be heard would rob faculty members who devoted their careers to the University of the very thing that tenure promises: the right to a fair and equitable process when allegations of misconduct are levied against them. Plaintiff's motion for a temporary restraining order should be granted.

**I.   Plaintiff does not seek a mandatory restraining order.**

Defendants first asserts that Plaintiff must meet a heightened burden before the issuance of a temporary restraining order, contending that Plaintiff seeks the "disfavored" remedy of a mandatory restraining order. *See* Response at 17. The basis for that assertion is that the requested

relief "would force Defendants to act in a particular way." *Id.*  As the Tenth Circuit and this Court have recognized, however, an injunction or restraining order that prohibits the continuing breach of some duty "is not automatically within or outside of the disfavored classification." *Navajo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell*, 100 F. Supp. 3d 1122, 1170 (D.N.M. 2015).  Nor does a preliminary injunction prohibiting the continuation of conduct that gave rise to the legal challenge become mandatory merely because the enjoined party must take some type of affirmative action to comply.  *See Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

"The most important factor in determining whether a preliminary injunction is mandatory . . . is the negligible chance that the Court will find itself having to perpetually supervise the preliminary injunction."  *Navajo Health Foundation*, 100 F. Supp. 3d at 1170.  Defendants' contend that prohibiting them from enforcing the sanction imposed on Plaintiff and allowing him to return to his duties as an Associate Professor with the Anderson School of Management will require such supervision.  *See* Response at 17 ("It is anticipated that disagreement will arise as to whether Plaintiff's teaching duties and/or committee assignments were reinstated in a like manner as Plaintiff's pre-sanction status.").  Whether the University is complying with the requested restraining order and injunction, however, will be readily ascertainable because prohibiting Defendants from enforcing the sanction will allow Plaintiff to return to routine activities.  Plaintiff's return to routine activities should not require court supervision.

Some supervision of a temporary restraining order or preliminary injunction is inevitable. *See Navajo Health Foundation*, 100 F. Supp. 3d at 1170 (explaining that "[a]ny preliminary injunction, of course, might end up placing the Court in [the] a role" to enforce its order).  The Court, however, should trust that the University could follow an order prohibiting it from

3

disciplining Plaintiff. And the Court should trust that the Defendants will have no problem following an order of a federal court to allow Plaintiff to return to his teaching, research, and academic duties. Plaintiff motion, therefore, seeks a prohibitory rather than a mandatory injunction.

**II.    Plaintiff has met his burden to show a likelihood of success on the merits of his due process claim.**

Defendants' next contend that Plaintiff was afforded proper and adequate process because he was permitted to submit documentary evidence to the University's investigator, identify potential witnesses as part of the investigation into Defendant Chavez's allegations, and went through the faculty peer hearing process. *See* Response at 19-20. This argument, advanced without citing to or addressing a single case discussing due process in disciplinary proceedings for sexual harassment or misconduct, finds no support in the law.

In this case, Plaintiff was notified of Defendant Chavez's allegations, after which the University's Office of Equal Opportunity conducted an investigation. Plaintiff discussed the allegations with the Office of Equal Opportunity investigator, submitted documentary evidence to that investigator, and identified potential witnesses. Plaintiff was not, however, afforded the right to cross-examine Defendant Chavez, whether personally or through submitted questions. The Office of Equal Opportunity then provided Plaintiff with a draft report detailing the evidence it accepted. That investigation report also stated that the Office of Equal Opportunity determined that it was not necessary to interview any witnesses because the communications between Plaintiff and Defendant Chavez were written and accepted into the record.

The Office of Equal Opportunity then issued a preliminary letter of determination, which notified Plaintiff that it proposed a finding that Plaintiff violated University policy. Plaintiff prepared and submitted a detailed response to those preliminary findings, and identified seven

witnesses to be interviewed.  Those witnesses had similar prior interactions with Defendant Chavez, who would testify regarding Defendant Chavez's credibility, and would testify that Defendant Chavez had a history of making false allegations to achieve a goal when other faculty members rejected her requests.  The Office of Equal Opportunity refused to interview all but one of those witnesses, determining that they did not have any information that was relevant to the investigation, and rejected as irrelevant the statement of the only interviewed witness.  The Office of Equal Opportunity then issued a final letter of determination, which formally found that Plaintiff's actions violated University policy and referred him to be sanctioned.

Plaintiff later exercised his ability to appeal the findings to the President of the University and the Board of Regents of the University.  Plaintiff, however, was never afforded the opportunity to have a hearing during which he could formally challenge the allegations made against him.  After his appeals were denied, the sanction became final, allowing Plaintiff a final appeal to a faculty peer hearing.  Defendants concede that this hearing, which was conducted by three University faculty members and allowed for the introduction of evidence and cross-examination of witnesses, "was not to assess the validity of the findings" made by the Office of Equal Opportunity, but was only to "evaluate[] the legitimacy of the sanction." *See* Response at 20.  In other words, Plaintiff was prohibited from challenging the allegations made against him, presented a defense to the allegations made against him, or confronting his accuser regarding her allegations at the only hearing he was provided.  The peer hearing panel affirmed the sanction.

Nearly identical processes have been found by to violate due process during campus disciplinary proceedings regarding allegations of sexual harassment or misconduct.  For example, in *Doe v. Pennsylvania State University*, 276 F. Supp. 3d 300 (M.D. Penn. 2017), a student filed a motion for a temporary restraining order and preliminary injunction seeking to bar the defendant

from enforcing an order that he not attend any classes and participating in the same pre-med program as his accuser.  Like in this case, the *Penn State* plaintiff was notified of the allegations against him, and those allegations were investigated by a University investigator.  *Id.* at 303.  And like in this case, the *Penn State* plaintiff denied the allegations, met with the investigator, provided a statement to the investigator, submitted documentary evidence to the investigator, and identified potential witnesses for the investigator to interview.  *Id.* at 304.  The *Penn State* plaintiff was given a letter containing preliminary findings that his conduct violated University policy.  *Id.*  This letter is similar to the preliminary letter of determination sent to Plaintiff in this case.  Like Plaintiff, the *Penn State* plaintiff provided a response to the preliminary letter, after which it was found that the student violated University policy through the issuance of a final letter.  *Id.* The *Penn State* plaintiff was then sanctioned.  *Id.*

In contrast to the Defendants actions in this case, however, , the *Penn State* plaintiff was then given the opportunity to reject the sanction and request a formal hearing to "[c]ontest the charge" and review the sanction.  *Id.* at 305.  That hearing took place before any determination that the *Penn State* plaintiff violated policy or should be sanctioned was finalized.

At that hearing, the *Penn State* plaintiff submitted twenty-two questions for the hearing panel to ask his accuser.  *Id.*   The panel refused to ask all but three of the questions, determining that his questions were irrelevant.  *Id.*  The panel affirmed the sanction, after which the *Penn State* plaintiff exercised his final appeal, which was also denied.  The *Penn State* plaintiff then sued and filed a motion for a temporary restraining order and preliminary injunction.  *Id.* at 307.

The district court granted the motion, concluding that the University's process for investigating and sanctioning the plaintiff violated due process.  Specifically, the district court determined that "Penn State's failure to ask the questions submitted by [the Plaintiff] may

6

contribute to a violation of [the Plaintiff's] right to due process as a significant and unfair deviation from its procedures." *Id.* at 309. This deviation from the University's procedure amounted to a denial of "the opportunity to meaningfully cross examine and confront [the plaintiff's] accuser." *Id.* The same is true in this case.

Similarly, in *Lee v. University of New Mexico*, this Court held that that University's refusal to allow a student accused of sexual misconduct "the opportunity to cross-examine witnesses . . . hindered both [the student's] ability to present evidence and [the University's] ability to assess credibility." 2020 WL 1515381, at *34. This was because credibility was an issue in that case, and because the student denied the allegations. In such a circumstance, the "opportunity to point out flaws in the complainant's statement" is necessary because "not permitting any cross-examination violates Due Process." *Id.,* at *34-35*. Like in *Lee,* Plaintiff was afforded no such opportunity in this case.

Moreover, in *Lee*, this Court determined that the University's policy allowing the accused to only present an oral defense during a meeting with the University's investigator, rather than through a hearing, violated due process. *Id.* at *35. Specifically, the University's failure to "provide [the student] with a hearing before issuing its [preliminary letter of determination]," and the University only allowing the student limited opportunities to provide evidence after the preliminary determination, resulted in a "[l]imiting [of the] accused from presenting any argument" at all, thus violating the guarantee of due process. *Id.*

The same conclusion was reached in *Nokes v. Miami University,* 2017 WL 3674910, at *12 (S.D. Ohio Aug. 25, 2017). Like Plaintiff, the plaintiff in *Nokes* was deprived of the ability to cross-examine his accuser, and after filing a lawsuit saying his suspension deprived him of due process, filed a motion for a temporary restraining order. In reviewing that motion, the district

7

court determined that the plaintiff was likely to succeed on the merits of his due process claim because. And in *Doe v. University of Connecticut*, a district court granted a motion requesting a mandatory temporary restraining order, finding that the plaintiff had met even a heightened burden of showing a likelihood of success on the merits, when he was denied the opportunity to have his questions about his accuser's testimony asked during a hearing, denied the opportunity to cross-examine witnesses against him, and denied the ability to present witnesses of his choosing in his defense.  2020 WL 406356, at *4-5 (D. Conn. Jan. 23, 2020).

As in the *Penn State, Lee,* and *University of Connecticut* cases, "[t]his case involves a severe sanction, a 'he said/she said' dispute hinging on the credibility of [Defendant Chavez] and the Plaintiff, and important procedural shortcoming in exploring the critical issue of credibility." *Univ. of Connecticut*, 2020 WL 406356 at *5.  Plaintiff has exceeded the burden necessary to show that he is likely to succeed on the merits of his due process claim.  The Court should grant this motion.

### III. Plaintiff has met his burden to show a likelihood of success on the merits of his Title IX claim.

Defendants' sole response to the Title IX arguments included in Plaintiff's motion is that Plaintiff "presents no evidence whatsoever to support this purported gender-bias theory." Response at 22.  That response, however, ignores direct quotations from University policies favoring sexual harassment complainants and ignoring respondents.  That response ignores the disparate treatment of Plaintiff, who was punished for engaging in the same conduct that was relied upon to exonerate Defendant Chavez of any wrongdoing.  That response ignores that other University investigations determined that the communications between Plaintiff and Defendant Chavez were welcome and did not violate University policy.  That response ignores that Plaintiff is being investigated for violating University policy because he allegedly discussed his case with

8

the press, while Defendant Chavez was not investigated for similar actions. That response ignores that Defendant Chavez's testimony was credited while Plaintiff's statement was not, and that no male witness statements were accepted into the record. And that response ignores the sham sanctioning procedure employed by the University which sent a clear message to all administrators involved in reviewing the investigation into Plaintiff's action: discipline Plaintiff severely or be disciplined yourself. Plaintiff has met the burden of establishing that the University conducted a biased investigation and disciplinary process, and that he is likely to succeed on the merits of his erroneous outcome and selective enforcement claims under Title IX.

   IV.   **Plaintiff will be irreparably harmed if Defendants' are not prohibited from enforcing the sanction and issuing a Temporary Restraining Order and Preliminary Injunction is in the public interest and will not harm Defendants.**

Defendants' fail to respond substantively to Plaintiff's arguments regarding irreparable harm and the balancing of interests, asserting that because Plaintiff's motion fails to show a likelihood of success on the merits it fails to meet the other prongs of the temporary restraining order analysis, and then stating that the Defendant has an overriding interest in being "permitted to sanction an employee who threatens the education of a student." Response at 24. While there is no doubt that Defendants' have an interest in disciplining faculty members that engage in misconduct, that interest must give way to the public's and Plaintiff's interest in ensuring that discipline follows investigations and procedures free from gender bias and is imposed following sufficient due process. *See Gebin v. Mineta,* 239 F. Supp. 2d 967, (C.D. Cal. 2002) (finding that "the public interest will be advanced by" issuing a preliminary injunction when doing so would prevent an action that "could constitute a constitutional deprivation"); *Fox Valley Reproductive Health Care Center, Inc. v. Arft*, 446 F. Supp. 1072, 1075 (E.D. Wisc. 1978) (concluding, when granting a preliminary injunction, that "[t]he public's interest lies in the enforcement of that which

is mandated by the Constitution"). *C.f. Knoch v. University of Pittsburgh,* 2016 WL 4570755, at *9 (W.D. Pa. Aug. 31, 2016) (finding this factor to be, at most neutral, because "[w]hile the public's interest in pursuing education free of constitutional violations is undeniable, (citation omitted), an educational institution's authority to make disciplinary decisions without having to resort to court intervention is a substantial public interest.").

## Conclusion

Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction should be granted.

Respectfully submitted,

*/s/ Nicholas T. Hart*

Carter B. Harrison IV
Nicholas T. Hart
Harrison & Hart, LLC
1001 Luna Circle NW
Albuquerque, NM 87102
(505) 295-3261
carter@harrisonhartlaw.com
nick@harrisonhartlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that Plaintiff's Reply in Support of his Motion for a Temporary Restraining Order and Preliminary Injunction Against Defendants the University of New Mexico, Camille Carey, Angela Catena, and Sara Cliffe was filed with the District of New Mexico's CM/ECF e-filing system on April 1, 2020, which caused service upon all parties through counsel of record.

*/s/ Nicholas T. Hart*
Nicholas T. Hart