IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

    Plaintiff,

v.                                           Cause No. 1:20-cv-00027-JAP-LF

THE UNIVERSITY OF NEW MEXICO;
CAMILLE CAREY, individually
and in her official capacity, ANGELA CATENA,
individually and in her official capacity,
SARA M. CLIFFE, individually
and in her official capacity, and EVA CHAVEZ,

    Defendants.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Defendants Board of Regents of the University of New Mexico, misidentified in the First Amended Complaint as the University of New Mexico, Camille Carey, Angela Catena, and Sara M. Cliffe (collectively "UNM Defendants"), by and through their attorneys, Conklin, Woodcock & Ziegler, P.C., submit their Response to Plaintiff's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 39) ("Objections"). The NMT Defendants request that Plaintiff's Objections be overruled and that the Proposed Findings and Recommended Disposition (Doc. 36) ("PFRD") be adopted.

### ARGUMENT

**I.**     **Plaintiff's objections to the standard of review should be overruled as the PFRD is based upon the finding that Plaintiff has not satisfied the standard requirements for an injunction.**

Plaintiff objects to the PFRD on the basis that the Magistrate Judge created error by not making a specific finding as to whether the injunction sought by Plaintiff was prohibitory or

mandatory in nature. *See* Objections, pp. 2-3. While a mandatory or prohibitory injunction falls into a class of injunctions that are disfavored such that "the moving party faces a heavier burden on the likelihood-of-success-on-the-merits," the Court did not hold Plaintiff to this heightened standard. *Free the Nipple-Fort Collins v. city of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Rather, the PFRD was based upon a finding that "Prof. Flor has not satisfied the *standard requirements* for an injunction." *See* PFRD, p. 14 (emphasis added).

Thus, under the usual standard of review applicable to preliminary injunctions, Plaintiff is not entitled to the requested relief. *Id.* If Plaintiff has not carried his burden to establish an entitlement to a preliminary injunction under the standard requirements for an injunction, he certainly did not carry his burden under a heightened standard of review. Plaintiff's Objections to the standard of review are properly overruled.

## II. Plaintiff's objections should be overruled as he failed to meet his burden to establish an entitlement to a preliminary injunction.

As noted in the PFRD, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *See* PFRD, p. 13 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original)). To meet his burden, Plaintiff must make a clear showing that:

> (1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

*See* PFRD, pp. 13-14 (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)) (alterations omitted)). The findings of the PFRD should be adopted and Plaintiff's Objections overruled as Plaintiff has not made a clear showing that he is entitled to a preliminary injunction.

### A. Likelihood of Success on the Merits – Due Process

Plaintiff raises three objections to the PFRD with respect to the Court's analysis of his likelihood of success of his due process claim: 1) Plaintiff objects to the finding that Plaintiff was not entitled to an in-person hearing before he was suspended by Defendants; 2) Plaintiff objects to the finding that Plaintiff was not entitled to probe the credibility of his accuser; and 3) Plaintiff objects to the finding that he received adequate post-deprivation process. Each of these objections are properly overruled as they are not based on established Supreme Court of Tenth Circuit precedent discussing due process protections in public employment.

As noted in the PFRD, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *See* PFRD, pp. 16-17 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted)). In the context of a government employee, due process requires a pre-deprivation hearing requiring "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." *See* PFRD, p. 17 (citing *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (brackets, quotation, and citation omitted)). "A full evidentiary hearing is not required," but rather, the employee must "be given notice and an opportunity to respond." *Id.* As set forth in the PFRD, Plaintiff had notice of the allegations against him (a fact he concedes), and multiple opportunities to respond to the allegations against him such that the minimum requirements of due process were likely satisfied. *Id.*, p. 18. Additionally, as noted in the PFRD, Plaintiff likely received adequate post-deprivation process by virtue of the appeal process and the peer review hearing, as Plaintiff was able in an evidentiary hearing "to attack the process by which the University took adverse employment action against him." *Id.*, pp. 19-20.

In his objections, as well as his original motion seeking a preliminary injunction, Plaintiff fails to set forth any applicable Tenth Circuit or U.S. Supreme Court authority at odds with the well-established constitutional due process protections applicable in the public employment context set forth in the PFRD. Instead, Plaintiff relies upon a single factually inapposite case from the District of New Mexico and several factually inapposite, non-binding cases from jurisdictions other than the Tenth Circuit involving allegations of student v. student sexual misconduct. *See* Objections, pp. 4-12. Plaintiff's objections are properly overruled.

For instance, Plaintiff relies upon *Lee v. University of New Mexico*, 2020 WL 15153581 (D. N.M. March 30, 2020) and argues that the *Lee* court held that due process protections required a full evidentiary hearing to support his argument that he should have received a full evidentiary hearing. *Id.*, p. 4. The *Lee* decision cannot be construed as broadly as suggested by Plaintiff.

In *Lee*, the court was tasked with deciding a Rule 12(b)(6) motion to dismiss to determine whether Lee had stated a plausible claim for violations of due process following a purportedly flawed investigation. *Lee*, at * 1. There, Lee was a graduate student accused of sexual misconduct by a fellow student, and these allegations were investigated by the Office of Equal Opportunity ("OEO") of the University of New Mexico. *Lee*, at * 3. While the court ultimately determined that Lee had stated a plausible claim for due process violations associated with the OEO investigation, this ruling was based upon facts unique to that case that are not present here. First, the decision was rendered in a student disciplinary proceeding involving allegations of sexual misconduct, not an employer/employee relationship. *Id.* This distinction is critical based upon well-established precedent discussing due process protections in the public employment context. *See* PFRD, pp. 16-17 (collecting cases). Plaintiff fails to direct this Court to any authority from the Tenth Circuit or the Supreme Court discussing the due process clause in public employment disputes that is contrary to the cases set forth in the PFRD. *See* Objections, pp. 4-12.

Second, because *Lee* involved allegations of sexual misconduct against a student, the court placed great significance on the plaintiff's inability to cross-examine the accuser or any other witness noting that "[*i*]*n the context of student disciplinary proceedings*, 'courts appear to recognize that denial of any opportunity to challenge the credibility of adverse witnesses may deprive an accused *university student* of due process *if the witness's credibility is in issue and the witness is testifying on facts critical to the case.*'" *Lee*, at *34 (emphasis added). Because the accuser and Lee had made verbal contradictory statements, the *Lee* court determined that "credibility [was] an issue," such that allegations of lack of cross-examination was enough to state a plausible due process violation. *Id.* Further, the court expressed concern that the credibility of other witnesses was not assessed by the factfinder when three individuals with OEO assessed witness credibility, while not interviewing each witness. *Lee*, at * 35.

As recognized by the PFRD, witness credibility is not an issue here. *See* PFRD, pp. 20-21. In the OEO investigation of the allegations against Plaintiff, the OEO issued a draft report summarizing the evidence collected, a Preliminary Letter of Determination ("PLOD") summarizing the evidence collected and preliminary findings, and a Final Letter of Determination ("FLOD") finding that Plaintiff had committed policy violations. The evidence collected in the investigation and relied upon to reach its findings consisted of thousands of written communications exchanged between Plaintiff and Defendant Chavez. Accordingly, "the parties and the Court have a detailed record of the communications between Prof. Flor and Ms. Chavez. This is not a case where the only evidence is one party's word against the other's." *Id.*, p. 21. While Plaintiff tries to argue that Ms. Chavez's credibility is at issue because the veracity of her initial complaint should have been tested, a review of the PLOD and FLOD demonstrates that the findings were not based on an interview of Ms. Chavez, but rather, on the review of the voluminous written communications exchanged between Plaintiff and Ms. Chavez. *Id.*, pp. 6-7 (citing to the

5

PLOD, "[Prof. Flor] has not challenged the authenticity of the communications. There can be no dispute that the conduct at issue was sexual in nature….[Prof. Flor] admitted to first making comments of an explicitly sexual nature. Further, OEO finds that the chronology of communications establishes that [Ms. Chavez's] receptiveness and reciprocation of [Prof. Flor's] sexual overtures was an implied term or condition of her hire by [Prof. Flor] as a graduate or project assistant."). The concerns raised in *Lee* are simply not present here. *See also Sutherland v. Tooele City* Corp, 91 F.App'x 632, 640 (10th Cir. 2004) (unpublished) ("due process is flexible and calls for such procedural protections as the particular situation demands.").

Third, in its plausibility analysis, the *Lee* court addressed factual allegations, which it was required to accept as true, stating that the investigators limited Lee's response to the allegations against him as he was interviewed in an "accusatory and hostile" manner, and while permitted to present new evidence, "he was not permitted to make any argument or present a theory of the case based upon these facts." *See Lee*, at * 35 ("UNM's decision to limit the accused's defense presentation also risks erroneous deprivation.") These facts, or similar facts, are not present here. Any concerns raised by the *Lee* opinion regarding the processes used by UNM in its OEO investigation is factually distinguishable.

Finally, Plaintiff's efforts to distinguish the authority set forth in the PFRD is misplaced and based upon an erroneous reading of those cases. *See* Objections, pp. 6-10; and *see e.g. Riggins v. Goodman*, 572 F.3d 1101, 1109 (10th Cir. 2019) (court rejected arguments by terminated employee that he received inadequate pre-termination based on his position that the hearings he was given took place after his termination because "he was given written notice of the charges against him, an explanation of the evidence, and several opportunities to present his side of the story. Our cases do not require a more elaborate process than that."); *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989) (Finding that "[t]he pretermination procedure…accorded with

6

the requirements established in *Loudermill*" because the plaintiff was given "oral notice of the charge against him" when he was confronted by his supervisor, and plaintiff had an opportunity to rebut the charges, "but chose instead to admit it."); and *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) (finding that a tenured professor received constitutionally adequate pre-transfer process when the professor was advised of the impending transfer, submitted two letters outlining his position objecting to the transfer, and met with the dean to discuss his position as the court "reject[ed] the suggestion that Dr. Hulen was entitled to a formal hearing – an evidentiary hearing – before being laterally transferred. It would be remarkable if such a hearing were constitutionally required, since the Constitution does not even require such a hearing before an employee is *fired*.") (emphasis in original).

In the original briefing and the Objections, Plaintiff failed to make a clear showing that he is likely to succeed on the merits of his due process claim. His Objections are properly overruled and the PFRD should be adopted.

**B. Likelihood of Success on the Merits – Title IX**

Plaintiff raised objections to the PFRD arguing that he *alleged facts* sufficient to proceed under both an erroneous outcome and selective enforcement theory under Title IX. Plaintiff's objections are without merit as is required to set forth record evidence to show that he has a likelihood of success under either theory. *See* PFRD, p. 15 ("In order to satisfy the likelihood-of-success-on-the-merits factor, 'the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought.'") (citing to *Automated Mktg. Sys., Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir. 1972). Plaintiff did not meet this standard and did not carry his burden. His objections are properly overruled.

1. **Erroneous outcome**

Under the first element of an erroneous outcome claim, Plaintiff must make a prima facie showing of evidence "to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *See* PFRD, p. 22 (citing to *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018). In addressing this element, the PFRD noted that Plaintiff's "erroneous outcome claim is premised on his constitutional due process claim," in that "[h]e again asserts that 'he was not afforded due process in that he was not given a hearing, an opportunity to present his own defense, or an opportunity to cross-examine his own accuser.'" *See* PFRD, p. 22. Because Plaintiff did not establish a likelihood of success on his constitutional due process claim, he failed "to establish a prima facie case for his erroneous outcome claim." *Id.*

Plaintiff argues that the PFRD improperly applied a constitutional due process standard with respect to the "articulable doubt" standard for an erroneous outcome claim, but fails to set forth record evidence to establish any purported procedural flaws that would have cast doubt on the findings of the investigation separate and apart from the evidence relied upon to support his due process claim. First, Plaintiff complains about lack of witness interviews. However, as noted in the PLOD and FLOD and as recognized in the PFRD, the OEO findings were based upon a detailed review of written communications exchanged between Plaintiff and Defendant Chavez. *See* PFRD, pp. 6-7. Conducting interviews of any witness identified by Plaintiff would not have changed the outcome of the investigation as Plaintiff admitted the written communications were authentic and the written communications established a timeline of events that supported the policy violation against Plaintiff. *Id.*; and *see* FLOD, Doc. 22-5, pp. 1-3 (setting forth a detailed explanation of why additional witness interviews and additional Plaintiff introduced would not change the findings of the PLOD). Moreover, the OEO's determination not to interview a witness is not a procedural flaw in the process. *See* Draft Report, Doc. 22-2, pp. 1-2 ("The OEO has sole

discretion to determine which witnesses and documentation will be considered, the relevance of the information to the investigation, and what, if any weight and credibility to assign that information.").

Next, Plaintiff claims he *alleged* that the original investigator was removed from the case after he issued a draft report. While Plaintiff places great significance on this fact, he fails to set forth any evidence to demonstrate that this change was anything more than a personnel change. In his original briefing, Plaintiff suggested (without factual support) that the draft report favored Plaintiff. In his Objections, Plaintiff argued that while the draft report did not reach formal conclusions, it "took a more favorable tone towards Plaintiff than the final report issued by Defendant Cliffe." *See* Objections, p. 18. A review of the draft report does not support Plaintiff's argument. The draft report is a summarization of the evidence collected and contains no findings or conclusions. *See* Draft Report, Doc. 22-2. There is no evidence of a "favorable tone" towards Plaintiff. *Id.* Moreover, the draft report was countersigned by Defendant Cliffe, who became the assigned investigator. *Id.* Accordingly, this *allegation* is not based in fact and does nothing to question the impartiality of the process, nor set forth some type of procedural flaw affecting the proof relied upon by the OEO. *Id.*

The remaining objections of Plaintiff were addressed squarely by the Court's analysis in the PFRD regarding Plaintiff's claim that he was denied a hearing and an opportunity to confront Defendant Chavez. Because the PFRD concluded that a pre-deprivation in-person hearing was not required, and that Ms. Chavez's credibility was not at issue, Plaintiff cannot use these facts to support a conclusion that the investigation process was flawed and that such flaws affected the proof relied upon by the OEO.

For the second element of an erroneous outcome claim, Plaintiff must have evidence of "a particularized causal connection between the flawed outcome and gender bias." *See* PFRD, p. 22

(citing to *Baum,* 903 F.3d at 585.)  Plaintiff argues the Court improperly failed to address the second element and argues that he has set forth sufficient allegations to establish the causal connection. *See* Objections, pp. 19-20.  As noted by the PFRD, because Plaintiff failed to establish the first element, he cannot establish a causal connection between the purportedly flawed outcome and gender bias.  *See* PFRD, p. 22 fn. 10.  Plaintiff attempts to set forth evidence of purported gender bias relying upon factual allegations contained in the Complaint, which included allegations about a Department of Justice ("DOJ") investigation against OEO, and allegations that the OEO applied different standards in the OEO investigations of Flor v. Chavez and Chavez v. Flor.  Notably, these allegations were not supported by record evidence and Plaintiff makes no argument to causally connect these allegations to the subject OEO investigation.  *See* Objections, pp. 19-20.  The DOJ investigation focused on allegations of sexual misconduct and sexual violence occurring on campus between students and UNM's response to address issues.  As such, allegations about the existence of the DOJ investigation and monitoring, without more, does nothing to establish a causal connection.  *See* Objections, p. 19.  Likewise, the scope of the OEO investigations between Plaintiff and Defendant Chavez's misconduct was admittedly different as the OEO was investigating different allegations of sexual misconduct.  *See* PFRD, p. 23.  This different, in and of itself, is not evidence of gender bias.

Finally, with respect to both elements, it appears Plaintiff believes his burden of proof is satisfied if he states a plausible Title IX claim.  *See* Objections, pp. 17-20 and *see e.g. Norris v. University of Colorado, Boulder*, 362 F.Supp.3d 1001, 1011 (D. Colo. 2019) (under the *Twombly* and *Iqbal* standard alleging facts sufficient to state a plausible claim to show articulable doubt "is not an especially high bar, as this prong had been met often in recent cases where courts analyzed motions to dismiss"); and *Lee*, 2020 WL 1515381, at * 47 (ruling on a Motion to Dismiss).  This is not the appropriate standard of review to determine if Plaintiff has a substantial likelihood of

success for purposes of granting a preliminary injunction. *See* PFRD, p. 15. Plaintiff's Objections are properly overruled.

### 2. Selective Enforcement

With respect to a selective enforcement claim, Plaintiff must present evidence that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.*, pp. 22-23. In doing so, Plaintiff must identify "a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges." *Id.*, p. 23.

In objecting to the PFRD, Plaintiff argues that Defendant Chavez was a similarly situated comparator. In presenting this argument, Plaintiff fails to address the actual findings of the PFRD. *See* Objections, pp. 22-23. First, the PFRD found that with respect to the OEO investigation of Chavez v. Flor and the OEO investigation Flor v. Chavez, the investigations were not addressing "similar disciplinary charges." Thus, even if Plaintiff and Defendant Chavez were both faculty or both students, such that no inherent power imbalance existed, Defendant Chavez would not be a valid comparator to Plaintiff as the scope of the disciplinary charges against each was vastly different. *See* PFRD, pp. 23-24. Plaintiff's Objections do not address this evidentiary requirement to support his selective enforcement claims.

Next, the PFRD found that there was no evidence that Plaintiff was treated differently than Defendant Chavez with respect to a no contact directive between Plaintiff and Defendant Chavez and an OEO investigation involving Plaintiff's contact with the press. *Id.*, pp. 24-25. The PFRD noted that the record evidence established that Plaintiff actively spoke to the press, whereas any contact Ms. Chavez had with the press was based upon a "belief" of the Plaintiff. Accordingly, failing to investigate Ms. Chavez in this context while investigating the Plaintiff does not establish that Plaintiff was treated differently at all. *Id.* Plaintiff's Objections do not address this finding.

11

Instead, Plaintiff relies upon UNM Policy 2215 in an effort to show that there was not an inherent power differential between Plaintiff and Defendant Chavez. As noted above, this argument misses this mark. Additionally, Plaintiff's incomplete recitation of Policy 2215 has no applicability to the issues before the Court. Policy 2215 provides:

> The University normally has no interest in romantic or sexual consensual relationships involving members of the campus community. However, when such relationships occur *in educational or supervisory contexts*, they can present serious ethical concerns and compromise the University's academic and work environment, in part due to *an inherent power differential between the parties.* The relationships can lead to charges of sexual harassment and exploitation, especially when the relationships end, or cause third parties to have concerns about undue advantage or restricted opportunities. For these reasons, consensual relationships in which one party, the "superior," has a formal instructional, supervisory, evaluative, or advisory role over the other party, the "subordinate," must be disclosed in order to manage the actual or perceived conflicts of interest caused by the relationships and to mitigate adverse effects on third parties.
> \*       \*       \*
> A "superior" and "subordinate" mean the parties to a consensual relationship in which the superior exercises authority over the subordinate, such as teaching (including teaching assistants), supervising, evaluating, or advising.

*See* Administrative Policies and Procedures Manual – Policy 2215, attached as Exhibit A. Notably, the policy does not define those circumstances of "an inherent power imbalance" as explicitly as suggested by Plaintiff.

Further, Plaintiff's position is curious to say the least. Under his own reasoning if Ms. Chavez had accepted the project assistant position, Policy 2215 would have required Plaintiff to disclose the relationship. The fact that the employment opportunity was withdrawn by Plaintiff before Ms. Chavez accepted the offer does not negate the inherent power differential between the parties as tenured professor and graduate student. *See* PFRD, p. 6 (citing to PLOD, "The parties first discussed an employment relationship, then [Prof. Flor] initiated sexual overtures, and then

the parties exchanged intimate, personal, and overtly sexual communications. An employment relationship remained possible throughout all of the sexual communications until [Prof. Flor] first withdrew his romantic and sexual interest in [Ms. Chavez] and then, the assistantship opportunity.") The offer of employment presented by Plaintiff in the mix of an exchange of sexually explicit communications between a professor and student is what guided the OEO's concerns over the conduct of Plaintiff and the inherent power imbalance, and ultimately led to the finding of a policy violation. *Id.* Policy 2215 does not contradict or call into question the OEO's finding or its concern of an inherent power imbalance between a professor and student.

Plaintiff's Objections are properly overruled and the PFRD should be adopted.

### C. Irreparable Harm

The PFRD found that Plaintiff failed to establish irreparable harm. Plaintiff's Objections to these findings are properly overruled. Plaintiff continues to argue that irreparable harm is found when there is a showing of a deprivation of a constitutional right. As noted above and by the PFRD, Plaintiff has not established a likelihood of success for a constitutional due process violation. *See* PFRD, pp. 25-26. Further, Plaintiff continues to focus on purported damage to his reputation, which the Tenth Circuit has found can be remedied through money. *Id.*, p. 26. Plaintiff has not established irreparable harm. Plaintiff's Objections are properly overruled.

### D. Public Interest[1]

The PFRD found that Plaintiff failed to satisfy the public interest factor such that an injunction should be issued. Notably, the Court found that Plaintiff's showing under the public interest factor focused on his allegations of a constitutional deprivation and allegations of a Title IX violation. *See* PFRD, p. 28. Because Plaintiff failed to show a likelihood of success under

---

[1] Plaintiff raised no objections to the PFRD's findings on the "balance of harm" factor.

either theory of recovery, the public interest factor did not weigh in his favor. In his Objections, Plaintiff continues to argue that he has shown a likelihood of success under both his constitutional deprivation and Title IX theories, which is disputed and already rejected by the PFRD. *See* Objections, p. 26.

Conversely, the Court noted that the UNM Defendants established that "there is a strong public interest in their ability to protect students and sanction policy violators," and this public interest is recognized by the Tenth Circuit. *See* PFRD, p. 28. In his Objections, Plaintiff cites no authority and presents no argument in opposition to this finding. Accordingly, as set forth in the PFRD, "the public interest factor does not favor the granting of an injunction." *Id.* Plaintiff's Objections should be overruled.

## CONCLUSION

A preliminary injunction is an extraordinary remedy, which requires a clear showing by Plaintiff that he is entitled to the relief sought. Plaintiff has failed to meet his burden under all necessary elements. The UNM Defendants respectfully request an Order overruling Plaintiff's Objections and adopting the PFRD in its entirety, and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

CONKLIN, WOODCOCK, & ZIEGLER, P.C.

By: */s/ Alisa Wigley-DeLara*
    Alisa Wigley-DeLara
    320 Gold SW, Suite 800
    Albuquerque, NM 87102
    Tel. (505) 224-9160
    Fax (505) 224-9161
    awd@conklinfirm.com
    *Attorneys for UNM Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of May, 2020, the foregoing was filed electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means.

  /s/ *Alisa Wigley-DeLara*
Alisa Wigley-DeLara