IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

      Plaintiff,

v.   No. 1:20-cv-00027-JAP-LF

THE UNIVERSITY OF NEW MEXICO;
CAMILLE CAREY, individually and in her
official capacity; ANGELA CATENA,
individually and in her official capacity;
SARA M. CLIFFE, individually and in her
official capacity; and EVA CHAVEZ,

      Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HIS OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

By and large, Defendants' response fails to engage with the substance of Plaintiff's objections, instead restating the arguments made in its brief opposing Plaintiff's motion for preliminary injunction. To the extent that Defendants do address the arguments made in Plaintiff's objections, they rely on flawed and circular reasoning to dismiss those objections without meaningfully answering them.

    **I.**    **Plaintiff is Likely to Succeed on the Merits of His Due Process Claim**

        **A.**  *Lee v. University of New Mexico* **is directly applicable to this case.**

Defendants contend that Plaintiff has not set forth any applicable Tenth Circuit precedent holding that he was entitled to a live hearing, with an opportunity to confront Defendant Chavez, before being found responsible for sexual misconduct. In so arguing, Defendants claim that Plaintiff relies on "a single factually inapposite case" — this court's recent decision in *Lee v. University of New Mexico* — for the proposition that due process required the University to provide

1

him with a hearing. Doc. 44, at 4. Far from being inapposite, however, *Lee* is the most factually similar case to the case currently before the court. While Lee was a graduate student and Plaintiff is a faculty member, their claims were adjudicated under the same policy — the University's Discrimination Claims Procedure — that governs the adjudication of sexual misconduct claims whether brought against students, faculty, or staff. *Lee v. Univ. of N.M.*, ___ F. Supp. 3d ___, 2020 WL 1515381, *2 (D.N.M. Mar. 30, 2020). In *Lee,* the investigation followed this procedure by first having the University's Office of Equal Opportunity assign "an investigator to interview the complaining student, draft a statement of the allegations, and then provide the statement to the accused student." *Id.* The same initial steps were taken in this case. Next, the Office of Equal Opportunity investigator in *Lee* "ha[d] complete discretion to determine the investigation's scope, and to identify and to analyze the relevant documents and witnesses necessary to determine whether a policy violation occurred." *Id.* The same is true for Plaintiff. And "[d]uring the investigation that follow[ed], [the student in *Lee* was] neither aware of the identified witnesses, nor provided an opportunity to test the credibility and weight of the evidence that OEO receive[d]." *Id.* The investigation into Plaintiff was identical in this facet as well.[1]

After the investigation in *Lee* was complete, the Office of Equal Opportunity applied the preponderance of the evidence standard to determine whether the student in *Lee* "committed an act of sexual . . . misconduct in violation of [University] policy," and announced that finding through the issuance of a Preliminary Letter of Determination. *Id.* This standard and process was applied in this case as well, during which the Office of Equal Opportunity sought to determine

---

[1] The University refused to interview any witnesses, interviewing only Defendant Chavez and Plaintiff as part of its investigation. If it did, however, interview witnesses, there is no doubt that the University would have refused to disclose the identity of those witnesses as required by the Discrimination Claims Procedure.

whether Plaintiff, based upon a preponderance of the evidence, violated the University's quid pro quo sexual harassment and retaliation policies, and announced its initial findings through a Preliminary Letter of Determination. After receiving the Preliminary Letter of Determination, the student in *Lee* was "permitted to provide only 'new' information that the [Office of Equal Opportunity] had not previously considered." *Id.*  The same was true for Plaintiff. And in *Lee,* "[i]f the new evidence [was] unpersuasive, then the OEO [would issue] a Final Letter of Determination." *Id.*  The same standard applied to Plaintiff in the case, with the Office of Equal Opportunity rejecting his new evidence and issuing a Final Letter of Determination.

The student in *Lee* and Plaintiff were then afforded identical appeal rights. Those appeals were made to the Office of the University's President and the University's Board of Regents. *Id.* at *3. Both appeals were "discretionary," and limited review to "extraordinary cases." *Id.*  If the President or the Board of Regents refused the appeal, then the Final Letter of Determination was referred to a sanctioning authority, which in the case of the student in *Lee* was the Dean of Students and for Plaintiff in this case was his department chair. *Id.*

The only deviation between the student and faculty procedure is in the timing of the post-Final Letter of Determination hearing. The student in *Lee* was afforded a "sanctions hearing" to "determine the sanction to be imposed." *Id.*  During that hearing, it was assumed that the Final Letter of Determination was correct, and that hearing did not review the allegations against the student or reconsider whether there was a policy violation. *Id.*  At this hearing, the student in *Lee* was permitted to have an advisor present, but that "advisor [was] not authorized to speak on behalf of the individual they [were] advising." *Id.*  In contrast, Plaintiff did not receive a "sanctions hearing." Rather, Defendant Carey was permitted to impose a sanction of her own choosing without any hearing. Plaintiff then received a post-sanctions peer hearing, during which, just like

the student in *Lee,* he was able to challenge the sanction imposed, but not challenge the Office of Equal Opportunity's findings in the Final Letter of Determination. Like the student in *Lee*, Plaintiff was allowed to have an advisor present at this hearing, but his advisor was prohibited from speaking or advocating on his behalf.

All of the procedures that this court deemed flawed in *Lee* are the very same procedures that were used to adjudicate Plaintiff's case. It strains credulity to argue that because Plaintiff is a tenured faculty member, he is entitled to *fewer* procedural protections than a graduate student at the same university, and that a policy which has been held to violate students' constitutional rights is perfectly acceptable when applied to a faculty member, who – just like the student – has a protected "property interest deserving of procedural due process protections," *Tonkovich v. Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998). Indeed, courts and governmental agencies to consider the question of procedural rights in campus sexual misconduct proceedings have not drawn Defendants' desired bright line between faculty and students. In two recent faculty sexual misconduct cases, courts relied on analogous cases involving students to hold that public university faculty are, in fact, entitled to a hearing prior to the imposition of discipline. *See Frost v. Univ. of Louisville,* 392 F. Supp. 3d 793*,* 804-06 (W.D. Ky. 2019); *Smock v. Bd. of Regents of the Univ. of Mich.*, 353 F. Supp. 3d 651, 657-58 (E.D. Mich. 2018).

Similarly, the Department of Education's new Title IX regulations, released in May 2020, do not draw a distinction between students and faculty in terms of the procedural rights necessary to effectuate Title IX's requirement of a fair and equitable process. While these regulations go into effect on August 14, 2020 and are not retroactively applicable to Plaintiff's case, they are nonetheless persuasive authority. The new regulations specifically provide that "Employees should receive the same benefits and due process protections that students receive under these final

4

regulations, and these final regulations, including the due process protections in §106.45, apply to employees," and that "the Department cannot discern any meaningful justification to treat employees, including faculty, differently than students with respect to allegations of sexual harassment." 34 C.F.R. Part 106, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, at 1511, 1519. Under those regulations, due process protections include the right to a live hearing with the opportunity for cross-examination. 34 C.F.R. §106.45(b)(6)(i). Accordingly, when UNM revises its procedure to comply with the new Title IX regulations, which it must do by August 14, 2020, it will have to provide a live hearing with cross-examination to both students and faculty in Title IX proceedings.

### B. Defendant Chavez's credibility is a central issue in this case.

In a further attempt to discount *Lee*'s relevance, Defendants again fall back on their argument that the instant case does not involve a credibility dispute because of the existence of a "detailed record of the communications" between the parties. Doc. 44, at 5. But as noted in Plaintiff's Objections, this fundamentally misstates the nature of the credibility dispute. The central question is whether Defendant Chavez believed that her offer of employment was contingent upon her participation in sexually explicit emails with Plaintiff, and Defendant Chavez's credibility – specifically, her reported history of filing frivolous complaints with OEO against professors and administrators with whom she became angry or dissatisfied — is directly relevant to this question.

Plaintiff's contention is that Defendant Chavez angrily turned down his offer of employment — an employment offer that he explicitly continued to extend despite wishing to end the parties' intimate correspondence —  after he indicated that he wished to have a purely professional relationship going forward, and that Defendant Chavez only claimed otherwise once

5

he charged that she was harassing him with her attempts at blackmail. This is a wholly reasonable reading of the written correspondence between Plaintiff and Defendant Chavez, and determining which party's explanation is more likely accurate depends entirely on an assessment of the relative credibility of the two parties. Defendant Chavez's alleged history of filing unmeritorious OEO complaints is critical to this credibility assessment, and yet it is something Plaintiff was never able to address in his disciplinary proceeding. *See, e.g.*, *United States v. Velarde*, 485 F.3d 553, 562 (10th Cir. 2007) (defense entitled to cross-examine complainant about prior false accusations of sexual misconduct); *Redd v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 393, 402 (E.D.N.Y. 2013) (inquiry into witness's prior false stalking report "is highly probative of [the witness's] character for truthfulness"); *Little v. State*, 413 N.E.2d 639, 643 (Ind. App. 1980) ("[w]e believe that evidence of false accusations of similar sexual misconduct is admissible on the issue of the victim's credibility").

## II.     Plaintiff is Likely to Succeed on the Merits of His Title IX Claim

### A.     Plaintiff has set forth procedural flaws casting doubt on the outcome of the investigation.

Defendants argue that Plaintiff has not set forth evidence of procedural flaws that would cast articulable doubt on the outcome of his disciplinary proceeding "separate and apart from the evidence relied upon to support his due process claim." Doc. 44, at 8. In so arguing, Defendants fail to address Plaintiff's central argument: even if this court were to find that the procedural flaws detailed by Plaintiff did not rise to the level of a constitutional due process violation (which Plaintiff strenuously argues they do), this court should still find that those same procedural flaws were sufficient to cast articulable doubt on the outcome of Plaintiff's disciplinary proceeding. All of the procedural flaws noted by Plaintiff — the lack of a hearing, the lack of cross-examination, the refusal to interview exculpatory witnesses — have been held sufficient by courts around the

country to cast articulable doubt on the outcome of disciplinary proceedings, quite apart from any constitutional analysis. *See, e.g.*, *Doe v. N. Mich. Univ.*, 393 F. Supp. 3d 683, 698 (W.D. Mich. 2019); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018); *Collick v. William Paterson Univ.*, 2016 U.S. Dist. LEXIS 160359, *35 (D.N.J. Nov. 17, 2016). Notably, many of the procedural flaws Plaintiff complains of will, as of August 14, 2020, explicitly constitute violations of Title IX under the new regulations issued by the Department of Education last month.

Defendants also allege that Plaintiff was not prejudiced by their failure to interview witnesses he identified, because "the written communications established a timeline of events that supported the policy violation against Plaintiff." Doc. 44, at 8. But the timeline of the written communications *does not* support the policy violation against Plaintiff – in fact, the opposite is true. The timeline shows that Plaintiff continued to extend the offer of employment even after informing Defendant Chavez that he wished to discontinue exchanging intimate messages; that Defendant Chavez turned down the job offer; and that Defendant Chavez attempted to blackmail Plaintiff into continuing the intimate correspondence by threatening to send screenshots to individuals in his department if he did not accede to her demands. Given this, Plaintiff contends that if he had been afforded a fair process in which, among other things, his proposed witnesses were interviewed and he was allowed to question Defendant Chavez, he would have been able to demonstrate conclusively that he never conditioned the job offer on their intimate correspondence or retaliated against her in any way.

With regard to Defendants' contention that Plaintiff cannot "set forth any evidence to demonstrate that [the change in investigators] was anything more than a personnel change," *see* Doc. 44, p. 9, it is true that any concrete evidence relating to that change is in the sole possession of Defendants and could only be obtained by Plaintiff through discovery. But that is not a reason

7

for the court to overlook a significant procedural irregularity that may have determined the outcome of Plaintiff's disciplinary proceeding.

### B. Plaintiff has set forth sufficient evidence of gender bias.

Defendants' argument that Plaintiff has failed to set forth evidence of gender bias is also unavailing. The DOJ investigation that Plaintiff cites was already held by this court, in *Lee*, to have created "pressure to better respond to female complaints against male students, and not all sexual misconduct complaints against all students." *Lee*, 2020 WL 1515381, at 47. Plaintiff also cites information that all of the faculty members disciplined for violation of the university's sexual harassment policy have been male, and that in his case, the university reached a decision that was completely at odds with the written evidence in his case. Courts have held similar evidence sufficient, at the preliminary injunction stage, to support a claim of gender bias. *See Doe v. Rhodes Coll.*, No. 2:19-cv-02336, at 9-10 (W.D. Tenn. June 14, 2019). Defendants' belief that Plaintiff should, at this stage, be able to produce yet more specific evidence of bias is ironic given that all such information is in the exclusive possession of Defendants and is obtainable only through discovery.

### C. Defendant Chavez is a similarly situated comparator for Plaintiff's selective enforcement claim.

Defendants inexplicably state that Plaintiff, in focusing on the Magistrate Judge's analysis of the alleged power imbalance between himself and Defendant Chavez, "fails to address the actual findings of the PFRD" with regard to Plaintiff's selective enforcement claim. *See* Doc. 44, at 11. But the Magistrate's analysis of whether Defendant Chavez is a similarly situated comparator with regard to the parties' respective harassment claims focuses *entirely* on the difference between students and faculty, and not, as Defendants suggest, on the allegedly "vastly different" disciplinary charges involved. Indeed, with regard to their harassment claims, the Magistrate Judge

explicitly held that "Ms. Chavez, because of her status as a student, is not a proper comparator for Prof. Flor to rely on when making this claim." Doc. 36, p. 23. Defendants' argument is unavailing.

Similarly, Defendants' argument that the parties were not treated differently with regard to their alleged violations of the no-contact directive is unpersuasive. Plaintiff's claim stemmed from a meritless "domestic violence" petition that Defendant Chavez filed for the purpose of publicizing otherwise private documents under the guise of a judicial proceeding – a proceeding that is the subject of Plaintiff's malicious abuse of process claim against Defendant Chavez. To argue, as Defendants do, that Plaintiff's claim was based on nothing more than a subjective "belief" that Defendant Chavez was attempting to publicly humiliate, while hers was based on objective information, defies credulity.

Finally, in their effort to rehabilitate their claim that there is an inherent power differential between the parties – that is, between Plaintiff and a 33-year-old woman over whom he exercised no instructional, supervisory, evaluative, or advisory authority – Defendants erroneously claim that "the employment opportunity was withdrawn before Ms. Chavez accepted the offer." This is patently untrue. Defendant Chavez rejected Plaintiff's job offer by email on June 9, 2018, stating – in response to Plaintiff's effort to shift their correspondence in a platonic direction – that "I do not think we should do it" because "I'm wondering where our friendship even stands based off your responses to me," and because the job offered "such a small amount of money and hours when I already know for a fact I will work WAY more than 8 hours per week…." Document 22-1, at 16.

## CONCLUSION

The Proposed Findings and Recommended Disposition should not be followed. Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction should be granted.

Respectfully submitted,

*/s/ Nicholas T. Hart*

Carter B. Harrison, IV
Nicholas T. Hart
**HARRISON & HART, LLC**
1001 Luna Circle NW
Albuquerque, NM 87101
T: (505) 295-3261
F: (505) 341-9340
*carter@harrisonhartlaw.com*
*nick@harrisonhartlaw.com*

Samantha Harris
**MUDRICK & ZUCKER, P.C.**
325 Sentry Parkway
Building 5 West, Suite 320
Blue Bell, PA 19422
T: (610) 832-0100
F: (610) 279-3900
*samantha@mudrickzucker.com*

## **CERTIFICATE OF SERVICE**

    I certify that Plaintiff's Reply in Support of His Objections to Proposed Findings and Recommended Disposition was filed with the United States District Court for the District of New Mexico's CM/ECF e-filing system on June 1, 2020, which caused service upon all parties through counsel of record.

*/s/ Nicholas T. Hart*
Nicholas T. Hart