IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

      Plaintiff,

    v.                                  No. 1:20-cv-00027-JAP-LF

THE UNIVERSITY OF NEW MEXICO;
CAMILLE CAREY, individually and in her
official capacity; ANGELA CATENA,
individually and in her official capacity;
SARA M. CLIFFE, individually and in her
official capacity; and EVA CHAVEZ,

      Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA CLIFFE'S MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT**

Defendants, through their motion to partially dismiss Plaintiff's Amended Complaint, seek dismissal by attempting to review limited portions of the Complaint's allegations in a vacuum while disregarding the allegations as a whole.  In contrast to their reading of the Complaint, Plaintiff puts forth hundreds of specific, well-pled allegations that Defendants Camille Carey, Angela Catena, and Sara Cliffe engaged in conduct that violated his rights to procedural due process, under both theories of damages liability because of conduct taken in their individual capacity and for prospective injunctive relief according to *Ex parte Young* for conduct taken in their official capacity.  Plaintiff's Complaint also alleges sufficient factual matter to establish a written employment contract, and sufficiently alleges that Defendants breached that contract and their duty of good faith and fair dealing when they suspended Plaintiff by violating the University of New Mexico's written policies and procedures.  Defendants' motion to partially dismiss Plaintiff's First Amended Complaint should be denied.

## Factual Background

Through his First Amended Complaint, Plaintiff alleges that Defendants unlawfully deprived him of due process when they suspended him for one-year without pay following allegations of sexual harassment and retaliation brought against him by a thirty-three-year-old graduate student that was neither his student, employee, nor advisee.  Plaintiff also seeks a declaratory judgment under the Declaratory Judgment Act that Defendants actions and policies deprived him of due process, damages and injunctive relief for violations of Title IX,[1] and damages for breach of his implied employment contract and the duty of good faith and fair dealing.

Specifically, Plaintiff alleges that Defendants violated his due process in several ways during the investigation, determination, and sanctioning process.  Plaintiff alleges that after the initial collections of evidence and interviews, that Defendant University appointed Defendant Cliffe to investigate the complaints.  Doc. 17, ¶ 51.  Defendant Cliffe then prepared a preliminary letter of determination, during which she recommended a finding that Plaintiff violated the University's sexual harassment and retaliation policies.  *Id.*, ¶ 54.  Based upon Defendant Cliffe's initial finding that Plaintiff violated University policy, Plaintiff submitted a detailed response and a request that Defendant Cliffe interview twelve witnesses.  *Id.*, ¶ 56.  Three of those witnesses—James Cormier, Raj Mahto, and Harold Chang—had submitted complaints alleging that Defendant Chavez engaged in inappropriate and retaliatory behavior, including allegations of filing false complaints against individuals.  *Id.*, ¶ 57.  Defendant Cliffe refused to interview those witnesses. *Id.*, ¶ 60.  And in one instance, Defendant Cliffe refused to accept a written statement from one of the witnesses, finding that information related to Defendant Chavez's history of filing false complaints was not relevant to the issues under investigation.  *Id.*, ¶ 61.

---

[1] Defendants' motion does not seek dismissal of Plaintiffs' claims brought under Title IX.

At this point, Defendant University issued a final letter of determination concluding that Plaintiff violated the University's sexual harassment and retaliation policies.  Doc. 17, ¶ 62. Defendants Cliffe and Catena signed the final letter of determination.  *Id.*  Despite making the determination that Plaintiff violated University policy, neither Defendant Cliffe nor Defendant Catena afforded Plaintiff an in-person evidentiary hearing, granted Plaintiff the opportunity to cross-examine his accuser or meaningfully challenge her credibility, allowed Plaintiff to present a full and complete defense of his choosing, or interviewed witnesses with relevant and exculpatory information.  *Id.*, ¶¶ 63-69.

Plaintiff then appealed Defendant Cliffe and Defendant Catena's determination that he violated policy to the University's President and Board of Regents, both of which refused to hear the appeal.  *Id.*, ¶¶ 70-73.  Following this appeals process, Defendant University and Defendant Catena set out to sanction Plaintiff for the policy violations. At first, Defendant University and Defendant Catena, in concert with Senior Vice Provost Barbara Rodriguez, appointed Plaintiff's Department Chair, Mary Margaret Rogers, to review the final letter of determination and determine the sanction to be imposed.  *Id.*, ¶ 78.  This appointment was made according to University Policy C07, which states that a faculty member's department chair is responsible for imposing disciplinary actions after a finding that the faculty member violated University policy.  *Id.*, ¶ 76-77.

After reviewing the preliminary and final letters of determination, Dr. Rogers recommended that Plaintiff be censured and attend training.  Doc. 17, ¶ 81.  Dr. Rogers was direcred to share this proposed sanction with Defendant Catena and Senior Vice Provost Rodriguez before it became final.  *Id.*, ¶ 83.  This requirement was put into place even though no University policy stated that a department chair's chosen sanction was subject to review by Defendant Catena

in her role as the Title IX Coordinator or by Senior Vice Provost Rodriguez.  *Id.*, ¶ 84.  Upon receiving the proposed sanction of a censure and training, Defendant Catena wrote to Senior Vice Provost Rodriguez to state that she disagreed with the sanction and that a harsher, more punitive sanction was necessary.  *Id.*, ¶¶ 86-87.

Defendant Catena then set out on a course of conduct to illegitimately prevent Dr. Roger's from finalizing her proposed sanction.  Doc. 17, ¶ 92.  This was done by fabricating a conflict of interest calling into question Dr. Roger's partiality.  Specifically, Defendant Catena contended that Dr. Rogers could not be impartial because: (1)  she reported the communications between Plaintiff and Defendant Chavez to the Office of Equal Opportunity, which resulted in Plaintiff's discipline; (2) she was disciplined for not reporting those communications to the Office of Equal Opportunity sooner;  and (3) she supposedly expressed an inability to be impartial during a separate investigation involving Defendant Chavez after she submitted her proposed sanction.  *Id.*, ¶ 93. Defendant Catena, however, knew that Dr. Rogers reported the communications between Plaintiff and Defendant Chavez to the Office of Equal Opportunity at the time she was tasked with deciding Plaintiff's sanction and did not object at that time.  *Id.*, ¶ 97.  Moreover, while Dr. Rogers was disciplined for failing to report Plaintiff's communications with Defendant Chavez earlier, that disciplinary action was not imposed until after Dr. Rogers shared her proposed sanction.  *Id.*, ¶ 98. And the fact that Dr. Rogers expressed hesitancy to investigate a separate complaint regarding Defendant Chavez was not a basis for a conflict of interest because Dr. Rogers made that statement after she was disciplined, which in turn occurred after she issued her initial recommendation to censure Plaintiff.  *Id.*, ¶¶ 99-100.  Despite this, Defendant Catena and Senior Vice Provost Rodriguez nevertheless removed Dr. Rogers as the sanctioning authority for Plaintiff.  *Id.*, ¶ 101.

Senior Vice Provost Rodriguez then appointed Defendant Carey to review the final letter of determination and sanction Plaintiff.  Doc. 17, ¶ 103.  Defendant Catena met with Defendant Carey to discuss Defendant Carey's responsibilities in this role.  *Id.*, ¶ 104.  During that meeting, Defendant Catena gave Defendant Carey guidance to review and follow while determining Plaintiff's sanction.  *Id.*, ¶¶ 105-08.  Defendant Catena also provided Defendant Carey with letters detailing two previous sanctions for violations of the University's sexual harassment policy to use as comparators to Plaintiff's alleged misconduct.  *Id.*, ¶¶ 109, 111.  Those letters, however, detailed disciplinary actions imposed against faculty members accused of sexual misconduct involving actual sexual relationships with students, and therefore were inapposite to the allegations against Plaintiff.  *Id.*, ¶ 110, 112.  None of the prior disciplinary actions were based upon communications between a faculty member and graduate student that was not the faculty members student, advisee, or employee.

Defendant Carey eventually suspended Plaintiff for one year without pay.  Doc. 17, ¶ 116.  This sanction also prohibited Plaintiff from completing his research according to already awarded grants and from noting his association with the University in any scholarship published during that year.  *Id.*, ¶¶ 119-20.  "Defendant Carey imposed this sanction without affording Plaintiff the opportunity to have a hearing, to confront and cross-examine witnesses, to present a full and complete defense, to submit exculpatory evidence, or to review all of the evidence collected against him."  *Id.*, ¶ 121.

Defendant Carey was then required, according to University policy, to consult with Dean Shawn Berman, who was the interim dean of the Anderson School of Management, before finalizing the sanction.  *Id.*, ¶ 122.  Dean Berman also reported the communications between Plaintiff and Defendant Chavez to the Office of Equal Opportunity, and Dean Berman, like Dr.

Rogers, was also disciplined for not reporting those communications earlier.  *Id.*, ¶¶ 124-25.  Dean

Berman, however, was allowed to review the sanction recommended for Plaintiff even though

Dean Berman was disciplined *before* he reviewed the sanction.  *Id.*, ¶¶ 126-28.

Plaintiff later appealed the sanction, requiring that University to hold a faculty peer hearing

to review the sanction.  That hearing was held on February 21, 2020.  Doc. 17, ¶ 148.  During that

hearing, Plaintiff was allowed to present evidence to challenge the severity of the sanction, but

Plaintiff was specifically prohibited from challenging the findings made by the Defendant Catena

and Defendant Cliffe.  *Id.*, ¶¶ 149.  Therefore, as alleged in the complaint, Plaintiff was suspended

for one year without pay by Defendants even though he never received an in-person hearing

regarding the allegations against him, never had the opportunity to cross-examine or confront his

accuser, never had the opportunity to present a defense of his own choosing unfiltered by

Defendant Catena or Defendant Cliffe, was never allowed to challenge on the merits Defendant

Catena and Defendant Cliffe's findings before Defendant Carey imposed the sanction, and was

subjected to a sanctioning process that involved serious deviations from established University

policy so that Defendant Catena could impose the sanction of her choosing, rather than an

appropriate sanction in this case.

### Legal Standard

"[D]ismissal under Rule 12(b)(6) 'is a harsh remedy which must be cautiously studied, not

only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of

justice.'"  *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quoting *Duran v. Carris*, 238

F.3d 1268, 1270 (10th Cir. 2001)).  "In reviewing a motion to dismiss, this court must look for

plausibility in the complaint."  *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).  "Under

this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on

its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *Salopek v. Zurich Am. Life Ins. Co.*, 428 F. Supp. 3d 609, 616 (D.N.M. 2019) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

"[T]he Rule 12(b)(6) standard doesn't require a plaintiff to 'set forth a prima facie case for each element'" of every claim raised in the complaint.  *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).  Nor does "[t]he term 'plausible' . . . mean 'likely to be true.'"  *Salopek*, 428 F. Supp. 3d at 616 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2007).  Rather, a complaint need only include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Plaintiff's complaint meets this test for all claims challenged through Defendants' motion to dismiss.

## Argument[2]

I.      **Plaintiff's Complaint States a Plausible Claim for Violation of His Due Process Rights by Defendants Carey, Catena, and Cliffe in their individual capacities.**

---

[2] Defendants raise in a footnote that the Board of Regents of the University of New Mexico, rather than the University of New Mexico, is the proper party to be sued in this case. "Rule 15(a)of the Federal Rules of Civil Procedure provides that leave to amend should be freely given when justice so requires, and Rule 20 permits joinder of proper parties."  *Stagner v. UNUM Life Ins. Co. of Am.,* 2000 WL 36739966, at *4 (D.N.M. Apr. 4, 2000). Plaintiff, therefore, should be granted leave to amend the complaint to substitute the Board of Regents for the University of New Mexico, and any other individual necessary to effectuate Plaintiff's claims against the University, as a party for the University of New Mexico, because the balance of equities favors amendment.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Defendants contend only that the complaint fails to include specific allegations for each individual defendant that would give them "fair notice as to how Plaintiff believes they personally, intentionally deprived him of a civil right or why they may be subject to personal damages because of their alleged conduct."  Doc. 41, at 8-9.  And Defendants contend that Plaintiff has failed to set forth "fact specific allegations of conduct that demonstrates how the individually named Defendants purportedly violated Plaintiff's due process rights."[3]  Doc. 41, at 8. That is incorrect.

First, in arguing that Plaintiff failed to plead specific allegations related to the individual Defendants, Defendants rely only on the recitations in Count I, ignoring the particularized allegations set forth in the preceding paragraphs of the Complaint, all of which were incorporated by reference into the factual basis for Count I.  Defendants attempt to limit review of the allegations related to Count I only to those contained in the recitation of the claim, and not in the preceding paragraphs of the complaint, is improper and contrary to well-settled law requiring that a complaint be examined as a whole when determining whether it states a plausible claim for relief.  *See Pirillo v. PNC Mortgage Corp.,* 2012 WL 761607, at * 2 (N.D. W. Va. Mar. 7, 2012) ("The Court, however, does not read portions of the complaint in a vacuum; rather . . . the complaint must be read as a whole."); *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 1987 WL 6862, at *5 (N.D.

---

[3] Defendants do not contend that Plaintiff has failed to present sufficient allegations that he has a property interest in his continued employment and reputation.  Therefore, Plaintiff does not address whether Plaintiff has properly pled sufficient facts regarding that element of the due process analysis.

Ill. Feb. 17, 1987) (explaining that one count of the complaint "should not be read in a vacuum, but rather should be taken in the context of the complaint as a whole").

As recognized by this court and numerous others, Plaintiff's allegations are more than sufficient to sustain a procedural due process claim against the Individual Defendants. *See, e.g., Lee v. Univ. of N.M.*, ___ F. Supp. 3d ____, 2020 WL 1515381, at *2 (D.N.M. Mar. 30, 2020) (holding that the plaintiff stated a plausible claim that a University of New Mexico Investigator, Title IX coordinator, and sanctioning party violated a student's due process rights). *See also Doe v. Pa. State Univ.*, 2018 WL 317934, at *4 (M.D. Pa. Jan. 8, 2018) (finding student plaintiff had adequately pled due process claim against Title IX coordinator and investigator for various "constitutional violations '[i]n the course of [the] investigation and adjudication'"). With regard to Defendant Cliffe, the Complaint alleges that in her role as investigator, she "refused to interview any of Plaintiff's witnesses," and additionally refused to even accept a written statement submitted by one of those witnesses. Doc. 17, at 8. Plaintiff's Complaint also alleges that Cliffe deprived him of the opportunity to confront and cross-examine his accuser. *Id.* It has already been determined that such allegations, if true, make out a violation of due process in the campus disciplinary context. *See Lee,* 2020 WL 1515381, at *34 (finding that the plaintiff presented a plausible claim for violation of due process because his "inability to cross-examine his accuser hindered both his ability to present evidence and UNM's ability to assess witness credibility"). *See also Doe v. Univ. of Conn.*, 2020 WL 406356, at *4 (D. Conn. Jan. 23, 2020) (granting a temporary restraining order and preliminary injunction after determining that a plaintiff was likely to succeed on the merits of his due process claim, because his due process may have been violated by investigator's exclusion of witnesses who "were prepared to offer testimony that would tend to undermine [the complainant's] credibility"). Plaintiff's Complaint further alleges that Defendant

Cliffe denied Plaintiff the opportunity to see all of the evidence against him before finding him responsible for harassment, and that she excluded relevant, exculpatory evidence from her final letter of determination. *See* Doc. 17, at 9. The Complaint then alleges that Defendant Cliffe denied Plaintiff any opportunity to have a hearing, or to question witnesses or his accuser, prior to finding him responsible. *Id.*, at 8. These actions, taken according to the same University policy, have already been held to state a plausible due process claim. *See Lee*, 2020 WL 1515381, at *35 (finding that the University of New Mexico placed plaintiff at a heightened risk of deprivation of due process, because "[l]imiting an accused from presenting any argument after an initial ruling or placing potentially new evidence into context suggests that the [University] prioritized administrative efficiency over a rigorous fact-finding process").

With regard to Defendant Catena, the Complaint alleges that she required Plaintiff's department chair, Mary Margaret Rogers, to share her proposed sanction with Defendant Catena even though University policy gives the department chair the sole responsibility for determining the proposed sanction. Doc. 17, at 11. This adequately states a claim that Defendant Catena violated Plaintiff's due process rights. *See, e.g., Doe v. DiStefano*, 2018 WL 2096347, at *7 (D. Colo. May 7, 2018) (nothing that "an allegation of failure to follow stated procedures" is relevant to a procedural due process analysis). The Complaint further states that because Defendant Catena believed Dr. Rogers' proposed sanction was insufficient, Defendant Catena endeavored to have Dr. Rogers removed as the sanctioning party by erroneously alleging that Dr. Rogers had a conflict of interest. Doc. 17, at 11-12. Additionally, the Complaint states that as the Title IX coordinator, Defendant Catena is jointly responsible, along with Defendant Cliffe, for the procedural shortcomings of Plaintiff's Title IX proceeding, especially because she signed and approved of the finding that Plaintiff violated University policy without affording him the right to a hearing, the

right to cross-examine and confront witnesses, or the right to present a full and fair defense. *Id.*, at 8-9. Such actions are sufficient to state a plausible claim for relief against Defendant Catena in her individual capacity. *See Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006) (holding that there is individual liability under § 1983 for those who proximately caused an injury, and the fact that the "conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant]").

Finally, with regard to Defendant Carey, the Complaint alleges that she imposed an extreme sanction that, in addition to suspending Plaintiff without pay for a year, prohibits him from working more than 30 days for any outside organization. Plaintiff alleges that by depriving him of an opportunity to earn any income during his suspension, Defendant Carey was attempting to effectively terminate Plaintiff without having to go through any of the normal procedures required to terminate a tenured faculty member. Doc. 17, at 14-15. This is sufficient to state a claim as to Defendant Carey. *See Lee*, 2020 WL 1515381, at *5 (noting, in discussion of due process claim against a UNM administrator who issued sanctions, that the harsh sanction caused "damages to [the plaintiff's] academic and professional reputation"); *Doe v. DiStefano*, 2018 WL 2096347, at *7 (failure to follow internal policies relevant to due process claim). Moreover, the Complaint alleges that Defendant Carey, like Defendant Catena and Defendant Cliffe, failed to afford Plaintiff an in-person hearing, the ability to confront or cross-examine his accuser, or the right to present a full and complete defense prior to imposing the sanction.

It is well-established that government actors are liable under § 1983 "for the harm proximately caused by their conduct." *Martinez v. Carson,* 697 F. 3d 1252, 1255 (10th Cir. 2012) (citing *Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 2006)). Here, Plaintiff has pled sufficient facts establishing that Defendants Cliffe, Catena, and Carey engaged in individual conduct

depriving Plaintiff of his right to procedural due process because their actions prevented Plaintiff from having a sufficient opportunity to be heard and present a defense.  Defendants' motion should be denied.[4]

## II.    Plaintiff's Complaint States a Plausible Claim for Prospective Injunctive Relief Remedy Continuing and Future Harm Against Defendants Carey, Catena, and Cliffe in their official capacities.

In its motion, Defendants "acknowledge that a claim for prospective injunctive relief against the Individual Defendants in their official capacity is theoretically viable." Doc. 41, at 12. This is based upon the exception set forth in *Ex parte Young,* 209 U.S. 123 (1908), allowing a plaintiff to sue the state and a state official in their official capacity for prospective, injunctive relief from violations of federal law.  *See also Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989) (explaining that a "state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State").  To receive prospective injunctive relief under § 1983, Plaintiff must plead sufficient facts to show that the alleged constitutional violations resulted in present adverse effects or some credible threat of future injury.  *See Smith v. Bd. of Regents of the*

---

[4] Count I of the Complaint seeks money damages against the Individual Defendants for violation of Plaintiff's constitutional due process rights, and as such was intended to state a claim against the Individual Defendants in their individual capacities.  Count II seeks prospective injunctive relief against the Individual Defendants in their official capacity.  To the extent that Counts I and II could be construed as seeking relief against Defendant University of New Mexico under § 1983, Plaintiff concedes that such claims should be dismissed against Defendant University of New Mexico only, although Plaintiff intends to add any further additional parties that are necessary to carry out the injunctive relief requested under this Count. Plaintiff also concedes that he cannot maintain a claim through § 1983, or the New Mexico Tort Claims act, against Defendants for damages because of violations of the New Mexico Constitution.  Defendant University of New Mexico, however, is named as a defendant for the purposes of Plaintiff's Title IX claim, which is not subject to this motion, and for Plaintiff's common law claims, stated in Counts V and VI of the Complaint.

*Univ. of N.M.,* 2011 WL 13289837, at *4 (D.N.M. Mar. 29, 2011).  Plaintiff's complaint meets this test.[5]

First, the Complaint contends that the "allegations of sexual harassment and Defendants' erroneous finding of probable cause resulted in permanent, life-long sanctions against Plaintiff that are quasi-criminal in nature."  Doc. 17, ¶ 198.  The complaint also alleges that the deprivation of due process "tarnished" his "reputation and good name, both personally and professionally."  *Id.* This includes sending communications to organizations that awarded Plaintiff research grants stating that Plaintiff has been found to have violated the University's sexual harassment and retaliation policies.  Moreover, the existence of the suspension, which Plaintiff is currently serving, and the fact that it is noted in Plaintiff's personnel file that he violated University policy, is sufficient to show he is suffering current and continuing harm because he was deprived of due process. *Id.*, ¶ 199. To remedy this harm, Plaintiff asks that the Court enjoin Defendants to reverse "the outcome and findings of the UNM investigation; expunge[] . . . Plaintiff's personnel file reflecting the improper findings, discipline, and sanction; produce[] . . . verification of such expungement . . .; prohibit[] . . . UNM [from] disclosing Plaintiff's personnel file reflecting the finding of a policy violation and discipline; and lift[] . . . the one-year suspension so Plaintiff may return to work at UNM." *Id.*, ¶ 199.  These allegations state a plausible claim for prospective injunctive relief.

---

[5] Defendants do not contend that Plaintiff's claim for prospective injunctive relief fails because the State of New Mexico is a substantial party in interest or because Plaintiff is seeking to remedy past harm. *See Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 976 (10th Cir. 2001) (explaining that *Ex parte Young* claims are properly brought against "state officials even if they claim to be acting under valid state law because, if the officials' conduct constitutes a continuing violation of federal law, the state cannot cloak their actions with state authority or state immunity") (internal quotations and citations omitted). Nor does the motion contend that Plaintiff's claim should be dismissed because there is insufficient factual matter that the individual defendants were not acting under color of state law.  Plaintiff's response, therefore, does not address those elements of this analysis.

Defendants nevertheless contend that the Complaint fails because Plaintiff did not include specific allegations that any of the individual defendants have the authority to provide the injunctive relief he seeks.  That is incorrect.

First, the cases relied upon by Defendant to state that Plaintiff failed to allege that the Defendants in this case cannot provide the injunctive relief sought present are inapposite to this case.  For example, in *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 245 (E.D.N.Y. 2015), the plaintiff filed a lawsuit asking the City University of New York system, and individuals associated with that system, to reinstate him as the Aquatics Director and head coach of the men's swim team at the College of Staten Island because his terminated violated several employment discrimination statutes.  Four of the individual defendants named by the plaintiff, however, were no longer employed by the college defendant.  And, the plaintiff failed to allege that the remaining individual defendants could reinstate him because the NCAA required that any member institution that sought to hire the plaintiff "schedule an appearance before the Committee on Infractions" before hiring him as a coach or athletic employee.  *Id.*  Therefore, the remaining individual defendants that were associate with the CUNY system did not have the authority to reinstate him.  This is distinguishable from this case.

All the individual defendants in this case remain employed by the University of New Mexico.  Moreover, the individual defendants in this case are the individuals who are alleged to have made the determination that Plaintiff violated University policy and imposed the discipline.  It is reasonable to conclude that the individuals with the power to find that Plaintiff violated University policy and the power to sanction Plaintiff are also the individuals that could reverse those actions.  Moreover, while the Plaintiff in *Soloviev* could not be reinstated without the

approval of the NCAA, there is no other, unrelated party that must approve the injunctive relief requested by Plaintiff.

And in *Klein v. University of Kansas Medical Center*, 975 F. Supp. 1408, 1417 (D. Kan. 1997), the district court dismissed a request for the prospective injunctive relief of reinstatement to a job the plaintiff was terminated from because the defendants demonstrated that Kansas's statutes only allowed the Chancellor of the University, who was not a named party, to "appoint" employees for the University of Kansas.  In contrast, Defendants point to no statute, case, or rule of law stating that the individual defendants in this case are unable to reverse their finding that Plaintiff violated University policy, reverse Plaintiff's sanction, or remove those findings from Plaintiff's personnel file.  To the extent, however, the Court determines that Plaintiff has not alleged individual defendants capable of providing the injunctive relief requested, then Plaintiff should be allowed to amend the complaint to effectuate a remedy for the constitutional violations raised in the complaint.  *See, e.g., Doe v. Univ. of Conn.*, No. 3:20-cv-00092, Dkt. No. 16 (D. Conn. Jan. 23, 2020) ("the Court expects to grant the plaintiff's motion for a temporary restraining order (TRO), provided that the plaintiff files an amended complaint by 5:00 PM today that names appropriate parties over whom the Court has jurisdiction and who have authority to effectuate the relief he is seeking").

### III.    Plaintiff's Complaint States a Plausible Claim for Relief Under the Declaratory Judgment Act.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an

opportunity, rather than a duty, to grant a new form of relief to qualifying litigations." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The Tenth Circuit applies a five-factor test to determine whether it will hear a claim brought according to the Declaratory Judgment Act:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).   As discussed above, Plaintiff's Complaint states a claim arising under § 1983 for violation of his rights to procedural due process.   Therefore, the Court should accept the claim pled under the Declaratory Judgment Act.

Applying the *St. Paul Fire & Marine Insurance Company* test confirms that the Court should allow this claim to proceed because there is no reason to abstain or decline to hear the Declaratory Judgment Act claim. *See Gerhard v. Mares*, 179 F. Supp. 3d 1006, 1057-68 (D.N.M. 2016) (accepting jurisdiction of a claim under the declaratory judgment act in a case raising § 1983 and constitutional claims because the plaintiff sought more than just declaratory relief).   Moreover, there is no pending state claim in this case, thus there is no chance of increasing friction between the state and federal courts. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002 (holding that "dismissal of a declaratory judgment action [was] an abuse of discretion because there was no pending state proceeding whatsoever").   And, deciding the claim brought according to Declaratory Judgment Act would help settle the controversy because it would decide whether there was a violation of Plaintiff's right to procedural due process, it would serve a useful

purpose in clarifying the complicated legal issues in this case by concluding whether the University's policies related to investigating and disciplining faculty members for sexual harassment and misconduct complaints include a procedure that violates due process, and there is no attempt to use the declaratory judgment act claim as a means to obtain res judicata because all claims have been brought through this single action.  Therefore, Defendants' motion should be denied, and Plaintiff's Declaratory Judgment Claim should be allowed to proceed to discovery.

**IV.    Plaintiff's Complaint States a Plausible Claim for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing.**

Defendants contend that Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing should be dismissed because Plaintiff does not plead sufficient facts to establish that there was a valid written contract between Plaintiff and the University of New Mexico.  Doc. 41, at 13-15.  New Mexico law recognizes a cause of action against government entities for breach of an implied employment contract when that implied contract is based upon written policies and procedures.  *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, 121 N.M. 728, 918 P.2d 7.  Such a contract exists if the employer's policies or manual if they control the employer-employee relations in such a manner that "an employee can reasonably expect his employer to conform to the procedures it outlines."  *Id.*, ¶ 11 (citing *Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, 108 N.M. 424, 773 P.2d 1231) (internal quotations omitted).  In *Garcia*, the New Mexico Supreme Court determined that because the Middle Rio Grande Conservancy District's personnel policy "contain[ed] provisions relating to most every aspect of an employment relationship, including job description, compensation . . . , overtime, compensatory time, time clock violations, tardiness, sick leave and annual leave, [] holidays," and a "section applicable when personnel actions result in suspension, termination, or demotion," then there was

an implied-in-fact contract enforceable against a government entity.  *Id.*, ¶ 12.  Plaintiff has pled sufficient facts to state a claim for breach of such a contract in this case.

For example, Plaintiff's complaint alleges that a University policy regarding investigating complaints of sexual harassment and misconduct and alleges that Defendants failed to follow that policy when they replaced the initial investigator for this case "because of a disagreement regarding that investigator's findings."  Doc. 17, ¶ 50.  The Complaint also alleges that, as a tenured professor, Plaintiff could only be disciplined according to University Policy C07.  *Id.*, ¶ 76. Plaintiff further alleges that Policy C07 put forward specific procedures to be followed before a tenured faculty member could be disciplined.  *Id.*, ¶¶ 77-81.  The Complaint then alleges that Defendants violated this policy when they removed Plaintiff's department chair, Mary Margaret Rogers, from her role as the sanctioning party based upon a fabricated conflict of interest, when Defendant Catena attempted to impose her own chosen discipline upon Plaintiff rather than that decided by Mary Margaret Rogers, when Defendant Catena requires that Dr. Rogers preclear her proposed discipline with Defendant Catena and Senior Vice Provost Rodriguez, and when Defendant Carey was appointed  to serve in place of Dr. Rogers as the sanctioning authority.  *Id.*, ¶¶ 82 – 102.  Plaintiff also alleged structural errors related to the peer hearing process, which is also a process derived from written University policy.  *Id.*, ¶¶ 148-58.

The Court can also take judicial notice of the large number of written policies that govern the relationship between the University of New Mexico and its faculty members.  *See Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 698 F. Supp. 2d 1259, 1263 (D. Colo. 2010) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment . . . . This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record.") (quoting *Tal v.*

*Hogan*, 453 F.3d 1244, 12 n. 10 (10th Cir. 2006)).  *See also Grynberg v. Koch Gateway Pipeline Co*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004); *Van Woudenberg v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other ground by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).  For example, University of New Mexico Regents Policy 5.4 addresses employee leaves of absence, Policy 5.6 address extra compensation paid by the University, and Policy 5.8 governs intellectual property while working for the University.  *See http://policy.unm.edu/regents-policies/index.html* (last accessed Jun. 5, 2020).  University Policy 6.2 address hiring, promotion, and transfer of employees, Policy 6.4 announces a code of conduct, and Policy 6.5 addresses issues related to political activities by employees.  *Id.* Section 3000 of the University's Administrative Policies include policies regarding equal opportunity and affirmative action, recruitment and hiring, employee classification, separation of employment, overtime, compensatory time, annual leave, holidays, sick leave, leave with pay, leave without pay, wage and salary information, retirement, and seniority.  *See http://policy.unm.edu/university-policies/index.html* (last accessed Jun. 5, 2020).  And the University issues a Faculty Handbook which, through Section C, includes policies related to faculty discipline, employment, faculty contracts, office hours, academic load and teaching assignments, outside employment, sabbatical leave, sick leave, parental leave, holidays, academic leave, jury and court duty, and leave without pay.  *See* https://handbook.unm.edu/policies/ (last accessed Jun. 5, 2020). These policies include a policy prohibiting outside employment for more than 39 days per year.  *See* Doc. 17, at ¶¶ 115-16.

The Complaint, when taken alongside publicly available records and documents, are sufficient to state a claim for breach of an implied employment contract against a government entity.  For example, the University of New Mexico, like the defendant in *Garcia*, has written policies governing nearly every aspect of the employment relationship between the University and

its faculty members.  And, like the defendant in *Garcia*, the University of New Mexico has a written policy regarding the discipline, suspension, and termination of tenured faculty members, which in this case is University Policy C07.  These policies are sufficient to create an enforceable implied employment contract between Plaintiff and the University.  And Plaintiff's allegations of deviations from this contract are sufficient to state a claim for violating the implied employment contract.

Defendants also argue that Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed because Plaintiff failed to allege a valid written contract. Doc. 41, at 15.  But, as discussed above, Plaintiff's complaint contains sufficient factual allegations to state a claim for breach of contract against the University.  Therefore, the Complaint also states sufficient facts regarding Plaintiff's claim for breach of the covenant of good faith and fair dealing. Defendants' motion should be denied.

## Conclusion

Defendants' University of New Mexico, Camille Carey, Angela Catena, and Sara Cliffe's Motion to Partially Dismiss First Amended Complaint should be denied.

Respectfully submitted,

*/s/ Nicholas T. Hart*

Carter B. Harrison, IV
Nicholas T. Hart
**HARRISON & HART, LLC**
1001 Luna Circle NW
Albuquerque, NM 87101
T: (505) 295-3261
F: (505) 341-9340
*carter@harrisonhartlaw.com*
*nick@harrisonhartlaw.com*

-and-

Samantha Harris
**MUDRICK & ZUCKER, P.C.**
325 Sentry Parkway
Building 5 West, Suite 320
Blue Bell, PA 19422
T: (610) 832-0100
F: (610) 279-3900
*samantha@mudrickzucker.com*

## <u>CERTIFICATE OF SERVICE</u>

I certify that Plaintiff's in Opposition to Defendants' University of New Mexico, Camille Carey, Angel Catena, and Sara Cliffe's Motion to Partially Dismiss First Amended Complaint was filed with the United States District Court for the District of New Mexico's CM/ECF e-filing system on June 5, 2020, which caused service upon all parties through counsel of record.

*/s/ Nicholas T. Hart*
Nicholas T. Hart