**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NICK VINCENT FLOR,

      Plaintiff,                                  Civ. No. 20-27 JAP/LF

v.

THE UNIVERITY OF NEW MEXICO;
CAMILLE CAREY, individually and in her
official capacity; ANGELA CATENA,
individually and in her official capacity;
SARA M. CLIFFE, individually and in her
official capacity; and EVA CHAVEZ,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Nick Flor asserts that Defendants the University of New Mexico, Camille Carey, Angela Catena, and Sara M. Cliffe (collectively, "University Defendants") violated his rights under the Fourteenth Amendment's Procedural Due Process Clause and under Title IX. Based on those purported wrongs, Plaintiff seeks a temporary restraining order and preliminary injunction to prevent University Defendants from carrying out their decision to, among other things, suspend him for one year without pay. As the Court details below, Plaintiff has not met his burden of establishing that such extraordinary relief is proper. In short, Plaintiff is not entitled to a temporary restraining order or a preliminary injunction.

PROCEDURAL HISTORY

On December 31, 2019, Plaintiff filed this lawsuit in New Mexico's Second Judicial District Court, seeking declaratory and injunctive relief as well as damages. *See* STATE COURT COMPLAINT (Doc. 1 at 5). University Defendants removed the case to this Court on January 9, 2020. *See* NOTICE OF REMOVAL (Doc. 1). Shortly thereafter, Plaintiff filed his FIRST

AMENDED COMPLAINT (Doc. 17). In it, he asserts various federal and state claims against University Defendants, including, *inter alia*, violations of procedural due process and violations of Title IX. *See id.* at 20–24, 25–29.

On March 16, 2020, Plaintiff filed a MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS THE UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA M. CLIFFE ("Motion") (Doc. 22).[1] The Court referred the Motion to United States Magistrate Judge Laura Fashing to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition under the provisions of 28 U.S.C. § 636(b). *See* ORDER OF REFERENCE (Doc. 28).

On April 20, 2020, Magistrate Judge Fashing filed PROPOSED FINDINGS AND RECOMMENDED DISPOSITION (Doc. 36) to which Plaintiff filed timely objections. *See* PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ("Objections") (Doc. 39). On May 18, 2020, University Defendants responded to Plaintiff's Objections. *See* DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDED DISPOSITION (Doc. 44). On June 1, 2020, Plaintiff filed a reply. *See* PLAINTIFF'S REPLY IN

---

[1] The Motion is fully briefed. *See* DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Doc. 30); PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS THE UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA M. CLIFFE (Doc. 33).

SUPPORT OF HIS OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ("Reply") (Doc. 48).[2]

The Court has considered the entire record and has made a *de novo* review and determination regarding those parts of the Magistrate Judge's Proposed Findings and Recommended Disposition to which Plaintiff objected. The Court finds that the Magistrate Judge's Proposed Findings and Recommended Disposition should be modified as set forth herein. With those modifications, the Court will overrule Plaintiff's objections and adopt the Magistrate Judge's recommended disposition.

## STANDARD OF REVIEW

District courts may refer dispositive motions to a magistrate judge for a recommended disposition. *See* Fed. R. Civ. P. 72(b)(1); *see also* 28 U.S.C. § 636(b). Federal Rule of Civil Procedure 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). When resolving objections to a magistrate judge's proposed findings and dispositions, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## FACTUAL BACKGROUND

Neither Plaintiff nor University Defendants object to the Magistrate Judge's factual description of the case. The Court's *de novo* review, however, unearthed a fact that warrants

---

[2] Federal Rule of Civil Procedure 72(b) does not contemplate replies in support of objections to proposed findings and recommended dispositions. Even so, Plaintiff has filed a reply brief without leave of the Court. Because University Defendants have not objected to Plaintiff's Reply, the Court will consider it.

correcting. The Proposed Findings and Recommended Disposition indicated that Plaintiff had not responded to the OEO's draft report. Doc. 36 at 4 n.4. But the Court's review of the record confirms that Plaintiff did respond to that report. *See* Doc. 22-1 at 2. The response itself, however, is not part of the record. With that correction, the Court will adopt the facts set forth in the Proposed Findings and Recommended Disposition.[3]

DISCUSSION

The Magistrate Judge recommended that the Court deny Plaintiff's Motion. Doc. 36 at 29. At bottom, the Magistrate Judge determined that Plaintiff had not met his burden of showing that a temporary restraining order or preliminary injunction is warranted. More specifically, the Magistrate Judge found that Plaintiff had not met his burden with respect to the factors of

---

[3] In fairness to Plaintiff, the Court notes its concern about the OEO's description of communications by Plaintiff and Ms. Chavez about a job offer and the beginning of their sexual statements. The Proposed Findings and Recommended Disposition quoted the OEO's Preliminary Letter of Determination findings that: "The parties first discussed an employment relationship, then [Prof. Flor] initiated sexual overtures, and then the parties exchanged . . . overtly sexual communications." Doc. 36 at 6. Importantly, Plaintiff admitted to making the "first comments of a sexually explicit nature," but claimed that Ms. Chavez "initiated the sexual communication." Doc. 22-1 at 5.

Depending on what reasonably can be considered (1) discussion of an "employment relationship" and (2) initiation of "sexual overtures," the OEO may have mixed up the communicants and reversed the chronology. Only if Plaintiff's question at 1:13 p.m. on May 14, 2018, "hey, are you working for RG during the summer?" can be treated as the beginning of a job offer, does discussion of an employment relationship clearly precede the initiation by Ms. Chavez (not Plaintiff) of "sexual overtures" when at 10:59 p.m. that same day Ms. Chavez sent Plaintiff an email with the subject "X files" and the first line "Xrated. Xfiles." Doc. 22-2 at 40; *Id.* at 42. Attached was a photograph of a couple, well-dressed in golfing attire, with the male's crotch encircled in red and the female's breasts similarly circled. *Id.* at 43. This was three days before Plaintiff first mentioned what might be characterized as a somewhat equivocal job offer to Chavez: "BTW, I have a GA for next semester BUT I am waiting for some grant money to come in and if it does I may be able to hire you (I don't want to promise because I don't want to disappoint you) . . . ." *Id.* at 53.

The next series of email exchanges that appear to contain sexual innuendos followed Ms. Chavez's complaint at 7:09 p.m. on May 21, 2018, of "severe intense pain" and Plaintiff's responding offer to help ease that pain. *Id.* at 130–31. The following three days were filled with communications full of sexual undertones that eventually morphed into more explicit, sometimes risible, sexual overtones. *See id.* at 130, 154–59, 169–73. If Ms. Chavez's May 14, 2020, email is not considered the first message with "sexual overtures," the first sexually explicit declamation might be found at various points within this rather vapid chitchat. Either way, at 9:13 p.m. on May 25, 2018, the banter culminated with what unquestionably was a sexually explicit declaration by Plaintiff when he very graphically described his anticipated sexual performance. *Id.* at 169.

Despite the possibility that the OEO's Proposed Letter of Determination got the sequence of events wrong, the Court believes that possible error does not change the ultimate result.

likelihood of success on the merits, irreparable injury, and public interest. *Id.* The balance of harms factor weighed neutral in her analysis. *Id.* Plaintiff objects to all the Magistrate Judge's conclusions, apart from the balance of harms factor. Doc. 39 at 2–28.

I.      Likelihood of Success on the Merits

a.   Procedural Due Process

Plaintiff objects to the Magistrate Judge's recommendation that he failed to establish a likelihood of success on the merits of his procedural due process claim. Doc. 39 at 3. In particular, he objects to the Magistrate Judge's recommendation that due process does not require that he be given a pre-suspension, in-person hearing where he could present a defense of his choosing and probe the credibility of his accuser. *Id.* The Court will adopt the Magistrate Judge's recommended disposition with the analytical modifications set forth below.

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996)). The parties agree that Plaintiff possessed a protected property interest in his continued employment without suspension. Doc. 36 at 16. The parties disagree, however, about what process Plaintiff was due.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). In particular, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity

to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009).

The Magistrate Judge found that Plaintiff received notice of the charges against him and an explanation of the University's evidence. Doc. 36 at 18. Neither party objects to those conclusions. Hence, the Court's inquiry is limited to whether Plaintiff received a hearing consistent with due process.

(i)   <u>Whether Plaintiff was entitled to an in-person hearing prior to his suspension</u>

Plaintiff objects to the Magistrate Judge's conclusion that he was not entitled to an in-person hearing prior to his suspension. Doc. 39 at 4. For the reasons below, the Court will overrule Plaintiff's objection.

In *Loudermill*, the Supreme Court held that a tenured employee's "pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46. Accordingly, "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 545; *Riggins*, 572 F.3d at 1108 (explaining that "[a] full evidentiary hearing is not required" to satisfy due process prior to an adverse employment action). Rather, the "opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Loudermill*, 470 U.S. at 546. But "[t]o require more than [that] prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* Consistent with that directive, the Tenth Circuit has "upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-

6

to-face meeting with supervisors, and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination." *Riggins*, 572 F.3d at 1108 (internal quotation marks and citations omitted). Indeed, the "hearing" requirement of the due process clause, "though necessary, need not be elaborate." *Loudermill*, 470 U.S. at 545.

The Magistrate Judge found that the minimum hearing requirements were satisfied because Plaintiff "received multiple opportunities to respond to the allegations against him." Doc. 36 at 18. The Court's *de novo* review confirms that is true. Plaintiff was initially interviewed by Mr. FitzSimons about Ms. Chavez's complaint. Doc. 22-1 at 2. The Tenth Circuit has upheld as sufficient to meet the due process hearing requirement informal conversations where an employee is permitted to rebut the charges against him. *See Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989) ("That conversation was, itself, the notification of the charges against him. At that time, Powell had an opportunity to rebut that charge but chose instead to admit to it."). Moreover, Plaintiff responded to the OEO's draft report and Letter of Preliminary Determination. Doc. 22-1 at 2; Doc. 22-5 at 1–3. Plaintiff's multiple responses during the OEO's investigation, combined with his conversation with Mr. FitzSimons, likely satisfied the requirements of pre-deprivation due process. *See Loudermill*, 470 U.S. at 542 (describing *Arnett v. Kennedy*, 416 U.S. 134 (1974), which held that due process was satisfied "where an employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits").

Furthermore, after the OEO determined that Plaintiff had violated University policy, Plaintiff, with the assistance of counsel, exercised his right to appeal that decision to the University President. Doc. 30 at 26. That appeal attempt was unsuccessful. *See* Doc. 22-6 at 1. The Board of

Regents declined to exercise jurisdiction over any further appeal. *See* Doc. 22-4 at 1; Doc. 22-7 at 1. Only then did Defendant Carey sanction Plaintiff. *See* Doc. 22-11 at 1.

As recounted above, Plaintiff received multiple opportunities to be heard prior to his suspension. That is more than due process requires. *See In re C.W. Mining Co.*, 625 F.3d 1240, 1245 (10th Cir. 2010) ("[D]ue process requires only an opportunity to be heard."). Plaintiff's position that he was entitled to an in-person hearing mischaracterizes the requirements of pre-deprivation due process. Indeed, the formal hearing that Plaintiff envisions is not a due process guarantee. *Id.* (rejecting the argument "that due process always requires an *actual* hearing" (emphasis in original)); *cf. West v. Grand Cty.*, 967 F.2d 362, 367 (10th Cir. 1992) ("A full evidentiary hearing is not required prior to an adverse employment action."). In short, Plaintiff has not established that his pre-deprivation process was constitutionally insufficient.

> (ii)    <u>Whether Plaintiff was entitled to probe his accuser's credibility prior to his suspension</u>

Despite the pre-deprivation process Plaintiff was afforded, Plaintiff maintains that the Magistrate Judge erred when she concluded that due process does not require that he be permitted to probe the credibility of Ms. Chavez through some kind of cross-examination prior to his suspension. Doc. 39 at 13; Doc. 22 at 17 ("Plaintiff should have been afforded a hearing, during which he could have . . . cross-examine[d] his accuser, *before* Defendants determined that Plaintiff had violated University policy and suspended him." (emphasis added)). Additionally, Plaintiff takes issue with the OEO's refusal to interview any of the witnesses he identified. *Id.* at 15.

Plaintiff relies on several district court cases from the Sixth Circuit, all of which are based on *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). In *Baum*, a student accused of sexual misconduct brought a due process challenge against his university for its disciplinary procedures. *Id.* at 580. The Sixth Circuit took that case as an opportunity to clarify its view on student disciplinary-

procedural due process protections. The court explained that "if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." *Id.* at 578. This must occur before the university imposes "a sanction as serious as expulsion or suspension." *Id.* at 581.[4]

District courts in the Sixth Circuit have extended *Baum* from student disciplinary proceedings to the employment context. *See, e.g.*, *Smock v. Bd. of Regents of Univ. of Michigan*, 353 F. Supp. 3d 651, 657 (E.D. Mich. 2018) (applying *Baum*'s cross-examination requirement to a university professor's pre-deprivation hearing for alleged misconduct); *Frost v. Univ. of Louisville*, 392 F. Supp. 3d 793, 804–06 (W.D. Ky. 2019) (same); *Kerber v. Wayne Cty. Employees Ret. Sys.*, No. 18-12049, 2019 WL 1354049, at *7 (E.D. Mich. Mar. 26, 2019) (explaining that *Baum*'s cross-examination requirement *may* apply to an employee's pension termination hearing where the decision-maker must choose between competing narratives to resolve the case). Notably, Plaintiff has not cited to a single case outside the Sixth Circuit where a court has held that due process is offended in the absence of cross-examination *prior* to any adverse employment action.

Even so, Plaintiff implores the Court to recognize that "[a] tenured public employee facing the loss of a week's pay can certainly be entitled to no less process than a schoolboy facing a few days' suspension from school." Doc. 39 at 4 (quoting *Brunn v. City of Cleveland*, 526 F. Supp. 564, 566 (N.D. Ohio 1981)). That language, cherry-picked from *Brunn*, does not extend the right Plaintiff implores the Court to recognize—i.e., a pre-deprivation right to cross-examine an accuser. *See* Doc. 22 at 17; Doc. 39 at 12–15. In *Brunn*, a city employee was suspended from her job without

---

[4] This district has followed the Sixth Circuit's approach to procedural due process in a student disciplinary case. *See Lee v. Univ. of New Mexico*, 2020 WL 1515381, at *36 (D.N.M. Mar. 30, 2020). For all the reasons set forth in this Memorandum Opinion and Order, the Court declines to extend the reasoning of *Lee* to this case.

pay for five days. *Id.* at 564. She then brought a 42 U.S.C. § 1983 lawsuit against the city alleging, *inter alia*, that the process the city employed to suspend her was constitutionally infirm. In determining whether the plaintiff had stated a valid due process claim, the Northern District of Ohio explained that

> [a]t a minimum . . . due process means that a person whose rights may be affected by a governmental decision about him must have notice and opportunity to be heard. In the context of a decision on whether to suspend a student from school, due process requires, at a minimum, that the student be confronted with the accusation against him, the grounds for the accusation, and be given the opportunity to explain his version of the facts in an "informal give and take."

*Id.* at 566.

The right to an "informal give and take" is far more reserved than the expansive right Plaintiff urges the Court to recognize. It is certainly not the formal hearing complete with the cross-examination of Ms. Chavez that Plaintiff envisions. Moreover, *Brunn* is factually inapposite to Plaintiff's case. In *Brunn*, the complaint alleged that she "was summarily suspended from her employment without any hearing," that Brunn was not "confronted with the accusation against her" until after her suspension, and that she "was not given any opportunity to question or challenge the charges against her." *Id.* In contrast, Plaintiff was given notice of the charges against him prior to any adverse employment action. Doc. 36 at 18. He had opportunities to respond to those allegations on multiple occasions. *Id.* And Plaintiff was not suspended until after the OEO found that he had violated policy and a separate sanctioning process had been conducted. *Id.* at 10.

Given that the right to cross-examination has not been widely recognized as a requirement of pre-deprivation due process, the Court is particularly reluctant to find it should be required at the early stage of these proceedings. This case is before the Court on Plaintiff's Motion seeking a temporary restraining order and preliminary injunction. *See generally* Doc. 22. Injunctions, like those Plaintiff seeks, are extraordinary remedies. *See Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 24 (2008). And the Court is disinclined to recognize a new pre-deprivation entitlement when tasked with determining whether an extraordinary remedy is appropriate.

But even if the Court were to assume that Plaintiff had a right to cross-examine Ms. Chavez prior to an adverse employment action, the Court believes that due process would not require cross-examination here. Plaintiff takes issue with the Magistrate Judge's conclusion that this "is not a case where the only evidence is one party's word against the other's," because "virtually all of the communications between [Plaintiff] and Ms. Chavez were conducted via email or text message." Doc. 36 at 21. Despite the very extensive record, Plaintiff still argues that this case "turns on credibility." Doc. 39 at 12. Plaintiff relies heavily on statements by Ms. Chavez that "she was uncomfortable with and did not know how to respond to [Plaintiff's] messages of a sexual nature," and that "she responded to [Plaintiff's] messages . . . due to the inherent power differential involved[.]" Doc. 22-1 at 3.

Unlike Plaintiff's suggestion, however, the OEO did not rely on Ms. Chavez's statements when concluding that Plaintiff violated university policy. Instead, the OEO determined that Plaintiff had violated the quid pro quo sexual harassment policy, because: (1) the conduct between Plaintiff and Ms. Chavez was sexual in nature; (2) the "chronology of communications establishes that [Ms. Chavez's] receptiveness and reciprocation to [Plaintiff's] sexual overtures was an implied term or condition of her hire;" and (3) because of the "inherent power differential between a faculty member and a student," "[a] reasonable college student in [Ms. Chavez's] position would feel pressure to please a person in [Plaintiff's] professional position."[5] *Id.* at 20–21 (internal

---

[5] The OEO did not credit Ms. Chavez's statement about an inherent power differential between herself and Plaintiff. Rather, the OEO cited to the University's policy on consensual relationships and noted that the University has explicitly recognized the inherent power differential that exists between faculty and students. Doc. 22-1 at 21.

quotation marks omitted).[6] The OEO's policy violation finding was divorced from any statements made by Ms. Chavez. Rather, it focused on the timing of Plaintiff and Ms. Chavez's sexually explicit communications and Plaintiff's job offer to Ms. Chavez.[7] The OEO's finding further rested on what a reasonable college student in a similar position would feel. Importantly, Plaintiff did not challenge the authenticity of the communications that the OEO used to determine that the timing of the communications supported its implicit finding. *Id.* at 20. Thus, Plaintiff failed to contest the very evidence on which the OEO relied when finding that he violated University policy.

With respect to the OEO's finding the Plaintiff violated policy by retaliating against Ms. Chavez, the OEO acknowledged Plaintiff's position that "[Ms. Chavez's] threats to forward their prior sexual communications to multiple individuals at the University was due to anger that he would no longer engage in the behavior and [her desire] to get revenge." Doc. 22-1 at 21. The OEO nevertheless found that even if that was Ms. Chavez's motivation, that "would not negate that [Ms. Chavez] . . . believed she had a rational good-faith complaint to make[.]" *Id.*; Doc. 30 at 25. The OEO went on to find that Plaintiff was aware that Ms. Chavez intended to engage in a protected activity and that he "complained to his Department Chair and to the Dean of Students

---

[6] These quotations are taken from the OEO's Preliminary Letter of Determination. *See* Doc. 22-1. The OEO, however, adopted all the findings included in the preliminary letter in its Final Letter of Determination. *See* Doc. 22-5 at 3 ("[P]lease be advised the Preliminary Letter of Determination is unchanged.").

[7] The Court previously noted its concern about the OEO's description of the timing of the job offer and the *beginning* of "sexual overtures" between Plaintiff and Ms. Chavez. *See supra* n.3. At this juncture, it is worth explaining why any potential error regarding that sequence of events does not impact the Court's analysis. Importantly, Plaintiff and Ms. Chavez were engaged in the mutual exchange of flirtatious emails by the time Plaintiff formally requested that a contract be prepared for Ms. Chavez's employment at 1:42 p.m. on May 21, 2018. Doc. 22-2 at 126. Following that email, however, sexual innuendo progressed to the overtly sexual, including Plaintiff's graphic description on May 25, 2018, of anticipated sexual acts. *Id.* at 169. The continued and escalating sexually explicit communications after Plaintiff requested that a contract be prepared for Ms. Chavez's hire, support the OEO's finding that Ms. Chavez's continued engagement in those communications was an implied term of her hire. *See* Doc. 22-1 at 21. As the OEO explained, "[a]n implicit term is the opposite of a direct statement." *Id.* Rather, in this case, the OEO found that Ms. Chavez's participation in those sexually explicit communications was "enfold[ed]" and "entwine[d]" in the offer of employment. *Id.* The Court agrees that the chronology of communications supports that finding.

12

because [Ms. Chavez] reported that she might report their sexual relationship to University authorities." Doc. 30 at 25. Again, the OEO made that determination based on the "*chronology of events*," not based on Ms. Chavez's statements identified by Plaintiff. *Id.* (emphasis added).[8]

Like the OEO's finding that Plaintiff violated the sexual misconduct policy through a quid pro quo job offer, the OEO's finding that Plaintiff retaliated against Ms. Chavez does not rely on any statements from Ms. Chavez about her relationship or feelings towards Plaintiff. Instead, the determination was based on the timing of their communications, which Plaintiff did not contest, and the timing of Plaintiff's reporting of Ms. Chavez's conduct. Doc. 22-1 at 20. Because the OEO's findings rely solely on uncontested evidence, the Court fails to see what Plaintiff sought to achieve by probing Ms. Chavez's credibility.

Plaintiff also complains that the OEO failed to interview any of the witnesses he submitted. Doc. 39 at 15. Plaintiff believes that these witnesses could have attacked Ms. Chavez's credibility. *Id.* But Plaintiff's position does not grapple with the OEO's reliance on uncontested written communications. The OEO found "beyond a preponderance of the evidence *through the documented communications*" that Plaintiff violated the University's sexual harassment quid pro quo policy. Doc. 22-5 at 1 (Final Letter of Determination) (emphasis added). The OEO further noted that "[n]either party presents a challenge to this evidence[.]" *Id.* With respect to the retaliation policy violation, the OEO declined to interview the witnesses identified by Plaintiff because he "does not indicate what relevant information these witnesses possess." *Id.* at 2. For example, in response to Plaintiff's request that the OEO interview Dr. Rogers, the OEO explained:

---

[8] For example, the OEO found that Plaintiff retaliated against Ms. Chavez based on the timing of emails between Plaintiff and Ms. Chavez and Plaintiff's reporting of Ms. Chavez's conduct. In particular, "on July 2, 2018, [Ms. Chavez] notified [Plaintiff] of a meeting with Associate Dean Kathryn Jacobson and additionally said she would eventually meet with 'CW' (believed to be Dean Craig White)." Doc. 30 at 25. The OEO observed that was "the very same day [Plaintiff] went to the Dean of Students' Office complaining about the volume of communications from [Ms. Chavez]." *Id.*

> the relevant and uncontested fact is simply that he brought his untoward relationship with [Ms. Chavez] to [Dr. Roger's] attention, resulting in [Dr. Rogers] filing a Title IX report on his behalf. What he said to [Dr.] Rogers . . . would not change the finding that he made the report in retaliation for [Ms. Chavez's] threats to report him, a finding based upon the chronology of events, not the substance of the report to [Dr.] Rogers itself.

*Id.*

The OEO's findings were based on uncontested communications between Plaintiff and Ms. Chavez. Because the relevant facts were not in dispute, the OEO did not need to interview additional witnesses. The Court overrules Plaintiff's assertion that he should have been entitled to probe Ms. Chavez's credibility prior to any adverse employment action against him.

(iii)   Whether Plaintiff received sufficient post-deprivation process

Finally, Plaintiff objects to the Magistrate Judge's conclusion that he likely received sufficient post-deprivation process. Doc. 39 at 15. Plaintiff suggests that he was entitled to greater post-deprivation protections because of the limited pre-deprivation process he received. Doc. 39 at 15–16.

"To evaluate the constitutionality of post-termination process," the Court "must view it in light of the pre-termination procedures it follows." *Copelin-Brown v. New Mexico State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005). The Court has already found it likely that Plaintiff received more pre-deprivation process than the Constitution requires. The Court now concludes that Plaintiff likely received constitutionally sound post-deprivation due process following his suspension.[9]

---

[9] The Magistrate Judge included Plaintiff's administrative appeals of the OEO's policy determinations as part of her post-deprivation analysis. Doc. 36 at 20. Accordingly, Plaintiff includes those administrative appeals as part of the post-deprivation process he challenges. Doc. 39 at 15. Because Plaintiff's appeal to the University President and the Board of Regents occurred prior to Plaintiff's suspension, the Court treats those administrative appeals as part of Plaintiff's pre-deprivation process. As noted above, the Court considers Plaintiff's suspension the adverse employment action against him.

"The standards for a pretermination hearing are not stringent because of the expectation that a more formal post-termination hearing will remedy any resulting deficiencies." *West*, 967 F.2d at 367. The Tenth Circuit has "indicated in dicta that [a] 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000) (quoting *Workman v. Jordan,* 32 F.3d 475, 480 (10th Cir. 1994)). But "when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings," then "simply giving the employee 'some opportunity' to present his side of the case 'will provide a meaningful hedge against erroneous action.'" *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996) (quoting *Loudermill*, 470 U.S. at 543).

First, the Court is skeptical that Plaintiff's post-deprivation hearing needed to be as formal as a "full-blown adversarial post-termination hearing." *Calhoun v. Gaines*, 982 F.2d 1470, 1477 (10th Cir. 1992). At its core, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus, a one-year suspension without pay—a lesser sanction than termination—likely requires less stringent procedural protections than termination. Instead, the Court, having already found that Plaintiff likely received more pre-deprivation process than is constitutionally required, believes that Plaintiff was entitled to something between a "full-blown, adversarial post-termination hearing," and "'some opportunity' to present his side of the case." *Calhoun*, 982 F.2d at 1477; *Benavidez*, 101 F.3d at 626. That is precisely what Plaintiff received.

Plaintiff sought review of his sanction by a peer review board. Doc. 22-9 at 1. As the Magistrate Judge explained, at that hearing Plaintiff was "permitted to present evidence and witnesses, testify, and cross-examine witnesses against him." Doc. 36 at 19–20 (citing Doc. 22-22

at 1, 3–4). Additionally, Plaintiff was permitted to have counsel present, and although counsel could not directly intervene, Plaintiff could consult counsel during the hearing. Doc. 22-22 at 1. Moreover, Plaintiff "was able to attack the process by which the University took adverse employment action against him." Doc. 36 at 20. Consistent with the procedures in place for the peer review hearing, Plaintiff submitted evidence, presented witness—although he chose not to testify—and cross-examined witnesses against him. *See* Doc. 22-9 at 3. In the end, the post-deprivation process that Plaintiff received was adequate in light of the due process interest at stake.[10]

Finally, the Court notes that Plaintiff does not argue that he is entitled to probe the credibility of his accuser during his *post-deprivation* hearing, although the Tenth Circuit has recognized a right to that effect in limited circumstances.[11] Even still, if Plaintiff had presented that argument, the Court would reject it for the same reasons that the Court concluded that Plaintiff was not entitled to probe the credibility of Ms. Chavez during a pre-deprivation hearing. Namely,

---

[10] Plaintiff seems to assert that the peer review hearing did not comport with due process because he "was specifically prohibited from challenging any of the conclusions or factual findings of the Office of Equal Opportunity." Doc. 39 at 15. But as the Court has repeatedly stressed, Plaintiff did not contest before the OEO, and has not contested before the Court, the authenticity of the documented communications between himself and Ms. Chavez. "[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee[.]" *Codd v. Velger*, 429 U.S. 624, 627 (1977) (discussing due process requirements of a non-tenured employee asserting a liberty interest claim). Here, just as in *Codd*, Plaintiff "does not challenge the substantial truth of the material in question[.]" *Id.* at 627–28. And like *Codd*, Plaintiff's characterization of the admitted facts is "not enough to raise an issue about the substantial accuracy" of the OEO's decision. *Id.* at 628. Plaintiff has already admitted all the relevant facts.

[11] The Tenth Circuit has stated that "[w]hile not necessary in every case, procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood." *West*, 967 F.2d at 369 (quoting *Walker v. United States*, 744 F.2d 67, 70 (10th Cir. 1984)); *see also Wolff v. McDonnell*, 418 U.S. 539, 567 (1974) ("[C]onfrontation and cross-examination . . . are not rights universally applicable to all hearings."). This is particularly true when allegations "might stain a reputation and threaten a livelihood." *McGhee v. Draper*, 564 F.2d 902, 911–12 (10th Cir. 1977). But the right to cross-examine an accuser appears to be limited to post-deprivation hearings. *See, e.g.*, *Williamson v. City of Edmond*, 201 F.3d 450, n.6 (10th Cir. 1999) (unpublished table decision) ("Cross-examination is generally considered a due process requirement at full-blown *post*-deprivation hearings." (emphasis in original)); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517–18 (10th Cir. 1998); *West*, 967 F.2d at 369; *McGhee*, 564 F.2d at 911 (considering what due process requires for post-termination proceedings).

Plaintiff did not contest the authenticity of the documented communications upon which the OEO relied when making its findings. *See Sutherland v. Tooele City Corp.*, 91 F. App'x 632, 639–40 (10th Cir. 2004) (unpublished table decision) (holding that due process was afforded during post-termination hearing even when employee not allowed to confront witnesses against him).

In sum, the Court overrules Plaintiff's objections and will adopt the Magistrate Judge's proposed disposition regarding the likelihood of success on the merits of Plaintiff's procedural due process claim.

b.   Title IX

The Magistrate Judge concluded that Plaintiff also failed to establish the likelihood-of-success-on-the-merits factor for his erroneous outcome and selective enforcement Title IX claims. Doc. 36 at 22, 24–25.[12] The Court will overrule Plaintiff's objections, *see* Doc. 39 at 17, 22, and will adopt the Magistrate Judge's recommended disposition.

(i)   Erroneous Outcome

"A successful erroneous outcome claim requires the plaintiff to show that the outcome of the University's disciplinary proceeding was erroneous because of sex bias." *Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1298 (D.N.M. 2017) (quoting *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (unpublished decision)). "Thus, to state an erroneous-outcome claim, a plaintiff must plead: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding[,] and (2) a particularized causal connection between the flawed outcome and gender bias." *Ruff*, 272 F. Supp. 3d at 1298 (internal

---

[12] The Magistrate Judge noted that Plaintiff appeared to raise a third Title IX claim in his Motion based on retaliation. *See* Doc. 36 at 21 n.9. Plaintiff failed, however, to argue that claim in his Motion, so the Magistrate Judge did not consider it. Further, Plaintiff failed to resurrect any Title IX retaliation claim in his Objections. Thus, to the extent Plaintiff asserted a Title IX retaliation claim in his Motion, that claim is waived.

quotation marks omitted) (bracket in original); *see also Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). Facts that cast doubt on the outcome of a disciplinary proceeding can include "procedural flaws affecting the proof." *Yusuf*, 35 F.3d at 715. Meanwhile, evidence demonstrating causation between the flawed outcome and a gender bias can be shown, for example, by "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Cummins*, 662 F. App'x at 452 (quoting *Yusuf*, 35 F.3d at 715).[13]

The Court concludes that Plaintiff has not established that he is likely to succeed on the merits of his erroneous outcome claim, because he has not met his burden of showing "a

---

[13] The Magistrate Judge explained that "[Plaintiff's] erroneous outcome claim is premised on his constitutional due process claim." Doc. 36 at 22. Indeed, Plaintiff argued in his Motion that he "was not afforded due process in that he was not given a hearing, an opportunity to present his own defense, or an opportunity to confront or cross-examine his own accuser." Doc. 22 at 21. Having concluded that Plaintiff had not shown that he was likely to succeed on his constitutional due process claim, the Magistrate Judge likewise concluded that Plaintiff "ha[d] not shown that the OEO's findings and the University's sanctioning process were the result of 'procedural flaws affecting the proof,' [and thus] he fail[ed] to establish a prima facie case for his erroneous outcome claim." Doc. 36 at 22 (internal citation and footnote omitted).

Now Plaintiff claims that "[t]his is simply incorrect: procedural flaws need not rise to the level of a constitutional violation in order to create articulable doubt for purposes of a Title IX erroneous outcome claim." Doc. 39 at 17. Instead of premising his Title IX claim on his procedural due process claim, Plaintiff repackages it. He maintains that in addressing his Title IX claim, the Magistrate Judge should have separately analyzed his assertions that he was denied an in-person hearing and the opportunity to cross-examine Ms. Chavez and to present witnesses. The Court interprets Plaintiff's arguments in his Objections to be inconsistent with the position he advanced in his Motion. Underscoring that conclusion is the single case that Plaintiff cited in his Motion in support of his Title IX erroneous outcome claim. That case, *Doe v. University of Connecticut*, 2020 WL 406356, at *3 (D. Conn. Jan 23, 2020), discusses procedural due process, not Title IX. Doc. 22 at 21. Because Plaintiff's new arguments are raised for the first time in his Objections to the Proposed Findings and Recommended Disposition, the Court deems them waived. *See Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1154 (10th Cir. 2020) ("[T]he Taxpayers have waived this argument by not raising it until objecting to the magistrate judge's recommendation.").

Plaintiff also asserts (again, for the first time in his Objections) that the "OEO removed the investigator originally assigned to his case," and that the investigator who was removed had "a more favorable tone towards Plaintiff than the final report issued by Defendant Cliffe." Doc. 39 at 18. Unlike the other alleged procedural irregularities identified by Plaintiff, his Motion did not take issue with that personnel change in either his procedural due process claim or his Title IX claims. It is procedurally improper for Plaintiff to raise new arguments in his Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition. *See Standing Akimbo, LLC*, 955 F.3d at 1154.

Nevertheless, overlooking that waiver would not help Plaintiff, because he has again failed to establish the prima facie case for an erroneous outcome claim. The Court considers the merits of Plaintiff's claim in the alternative above.

particularized causal connection between the flawed outcome and gender bias." *Ruff*, 272 F. Supp. 3d at 1298. Plaintiff argues that simple allegations of gender bias are sufficient to meet his burden for a temporary restraining order and preliminary injunction. Doc. 39 at 19–22. But mere allegations of gender bias fall short of satisfying that burden. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).[14] Indeed, in this circuit, "a ruling that a plaintiff has a strong likelihood of success on the merits is based on the evidence plaintiff intends to present at trial[.]" *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1253 (10th Cir. 2018); *see also Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190–91 (10th Cir. 2008) (affirming the district court's holding that the movant "failed to show a likelihood of success on the merits because it offered no evidence of a contract requiring Union Pacific to provide rail service to it."). Although Plaintiff states in his Motion that he "*will be able to show* that Defendants 'adopt[ed] . . . a policy of bias favoring one sex over the other in a disciplinary dispute,'" *see* Doc. 22 at 27 (emphasis added), at this stage he has not identified any specific evidence to that effect.[15]

Nevertheless, the Court will address Plaintiff's allegations of gender bias against the University. First, Plaintiff alleged that the University "acquiesced to public pressure in the media

---

[14] In *Mazurek*, the Supreme Court explained the clear showing requirement necessary to support injunctive relief. The Supreme Court observed:

> [i]f the motion at issue here were a defendant's motion for summary judgment, and if the plaintiff's only basis for proceeding with the suit were a claim of improper legislative purpose, one would demand *some* evidence of that improper purpose in order to avoid a nonsuit. And what is at issue here is not even a defendant's motion for summary judgment, but a plaintiff's motion for preliminary injunctive relief, as to which the requirement for substantial proof is much higher. "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995).

*Mazurek*, 520 U.S. at 972 (emphases in original).

[15] The allegations contained in Plaintiff's Objections were not advanced in his Motion. Rather, Plaintiff cites to allegations made in his Amended Complaint. *See* Doc. 39 at 20–21 (citing Doc. 17). Because Plaintiff did not raise these arguments in his Motion, the Court need not consider them. *See Standing Akimbo, LLC*, 955 F.3d at 1154. Even so, the Court will consider those allegations in the alternative above.

and from federal and state government demanding more swift and severe reaction to female complainants of sexual harassment at the expense of male accused faculty members." *Id.* at 20 (citing Doc. 17 at ¶ 221). Notably, between 2016 and 2019, the Department of Justice was monitoring the University of New Mexico's compliance with Title IX. *See* Press Release, University of New Mexico, UNM Released from DOJ Agreement to Address Sexual Misconduct on Campus (Dec. 10, 2019), https://news.unm.edu/news/unm-released-from-doj-agreement-to-address-sexual-misconduct-on-campus. Plaintiff, however, fails to connect the DOJ's compliance monitoring with his allegation of gender bias against male faculty members. *Cf. Doe v. Univ. of Denver*, 952 F.3d 1182, 1192–93 (10th Cir. 2020) (explaining that "evidence that a school felt pressured to conform with [the Dear Colleague Letter's] guidance cannot alone satisfy Title IX's fundamental requirement that the challenged action be on the basis of [gender]" (internal quotation marks omitted) (second bracket in original)).[16] Next, Plaintiff alleged—again without evidentiary support—that the University "initiated complaints against male faculty members while not initiating similar complaints against female faculty members." *Id*. (citing Doc. 17 at ¶ 224). Plaintiff's mere allegations of gender bias are insufficient.

Plaintiff advances just one argument that has some basis in the record, although that argument too fails. He claims that the OEO purportedly treated him and Ms. Chavez differently with respect to their competing complaints that the other party violated the OEO's no-contact directives. Doc. 39 at 22. Plaintiff did not advance that argument before the Magistrate Judge in support of his erroneous outcome claim. *See* Doc. 22 at 20–22. Instead, Plaintiff relied on

---

[16] Plaintiff asks the Court to follow *Lee*, where the district court credited statements that the DOJ's monitorship created pressure for University of New Mexico "to better respond to female complaints against male students, and not all sexual misconduct complaints against all students." *Lee*, 2020 WL 1515381, at *47. But *Lee* was decided on a motion to dismiss, and the district court emphasized that it was drawing all reasonable inferences in favor of the complaint. *Id.* at *48. As the Court has already explained, in order to be entitled to an injunction, Plaintiff must provide some evidence in support of his claims. *See Port City Props.*, 518 F.3d at 1190–91. Plaintiff has not done so.

purported violations of the OEO's no-contact directive to support his selective enforcement claim. *Id.* Because Plaintiff did not argue in his Motion that those same facts support his erroneous outcome claim, Plaintiff now has waived any argument to that effect. *See Standing Akimbo, LLC*, 955 F.3d at 1154.

But even if the Court were to excuse that waiver, the allegations Plaintiff relies on are insufficient to establish the requisite "particularized causal connection between the flawed outcome and gender bias." *Ruff*, 272 F. Supp. 3d at 1298. The Magistrate Judge found that Plaintiff had not established a prima facie case of selective enforcement based on those same facts, because Plaintiff's and Ms. Chavez's complaints to the OEO were materially different—the OEO had a basis for accepting jurisdiction over her complaint and not his. *See* Doc. 36 at 25 (explaining that "the record is devoid of evidence that Ms. Chavez had contact with the press, whereas [Plaintiff] clearly gave interviews about the University's sanctioning process." (citing Docs. 22-17, 22-18)). The Magistrate Judge then concluded that Plaintiff's failed to establish that he was treated differently from Ms. Chavez. *See* Doc. 36 at 25. Plaintiff has not directed the Court to anything in the record that would upset that conclusion. Plaintiff again fails to demonstrate that he was, in fact, treated differently.

The Court overrules Plaintiff's objections to the Magistrate Judge's analysis of Plaintiff's Title IX erroneous outcome claim. At this stage, Plaintiff has not established by a clear showing that he will succeed on the merits of that claim.

(ii)     <u>Selective Enforcement</u>

"[A] plaintiff demonstrates selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when

facing similar disciplinary charges." *Doe v. Case W. Reserve Univ.*, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) (citing *Yusuf*, 35 F.3d at 716).

The Magistrate Judge concluded that Plaintiff had not established a prima facie case of selective enforcement because Ms. Chavez was not a proper comparator for Plaintiff. Doc. 36 at 22–23. Her analysis rested upon the OEO's recognition of a power imbalance between faculty and students. *See id.* at 23. She reasoned that Ms. Chavez, a graduate student, was not a sufficiently similar comparator to Plaintiff, a tenured faculty member. *Id.* The Court agrees and will thus overrule Plaintiff's objections.

Plaintiff objects on the basis that the University's policy defining consensual relationships and conflicts of interest includes language recognizing that an "inherent power imbalance" exists when one party "has a formal instructional, supervisory, evaluative, or advisory role over the other party[.]" Doc. 39 at 22 (quoting University of New Mexico, *Administrative Policies and Procedures Manual: Policy 2215, Consensual Relationships and Conflicts of Interest* (Nov. 2014), https://policy.unm.edu/university-policies/2000/2215.html). Based on that language, Plaintiff suggests that those are the only circumstances in which the University recognizes an inherent power imbalance between faculty and students. *See* Doc. 39 at 22. The Court disagrees that the University's policy on consensual relationships creates an exhaustive list of circumstances in which a power imbalance may exist between students and faculty. Indeed, nothing in the quoted language of that policy suggests that the University's recognition of an inherent power imbalance is limited to those few examples. Moreover, Plaintiff ignores that he was able to offer Ms. Chavez a job, which would have resulted in a direct supervisory relationship. Surely Plaintiff's ability to extend Ms. Chavez a job offer underscores the power imbalance between a tenured faculty member and a graduate student. The Court will overrule Plaintiff's objection based on Policy 2215.

Additionally, the Magistrate Judge explained that the OEO's investigations into OEO Chavez v. Flor and OEO Flor v. Chavez focused on different conduct. Doc. 36 at 23. As the Magistrate Judge described, "OEO Chavez v. Flor focused on whether there was quid pro quo harassment or retaliation." *Id.* By way of contrast, in OEO Flor v. Chavez, the OEO examined whether Ms. Chavez sexually harassed Plaintiff and "found that the sexually explicit communications from Ms. Chavez were welcomed by Prof. Flor and that the 'communications neither interfered with [Prof. Flor's] work performance or advancement, or created an intimidating, hostile, or offensive work environment for him.'" *Id.* (citing Doc. 22-3 at 1, 16). The Court agrees and further concludes that Ms. Chavez is not a proper comparator on which Plaintiff may rely because Ms. Chavez was accused of a different policy violation and the OEO's investigation examined different issues. The Court will thus overrule Plaintiff's objections and adopt the Magistrate Judge's recommended disposition of this issue.[17]

The Court, having overruled all of Plaintiff's objections directed at the likelihood-of-success-on-the-merits factor for a temporary restraining order or preliminary injunction, finds that this factor does not weigh in favor of granting Plaintiff's requested relief.[18]

---

[17] Plaintiff does not object to the Magistrate Judge's conclusion regarding his claim that the parties were treated differently regarding potential violations of the OEO's no-contact directive until his Reply in support of his Objections. *See* Doc. 48 at 9. Plaintiff argues that it "defies credulity" that he and Ms. Chavez were treated differently when the OEO accepted jurisdiction over her claim that Plaintiff violated the OEO's no-contact directive, but not Plaintiff's claim that Ms. Chavez had engaged in similar conduct. Doc. 48 at 9.

As the Court has previously noted, Plaintiff did not seek leave of the Court to file his Reply. Nevertheless, the Court has considered it. But the Court will not consider new objections raised for the first time in a reply brief in support of objections to a proposed findings and recommended disposition. Plaintiff has waived any objection to the Magistrate Judge's conclusion that Plaintiff "fail[ed] to demonstrate that he was in fact treated differently[.]" Doc. 36 at 25.

But even if the Court were to consider Plaintiff's improperly raised objection, Plaintiff admitted that Ms. Chavez had not filed the IPRA Request with the Albuquerque Journal. Doc. 22-15 at 1. Based on that admission, the OEO was left with no basis to accept jurisdiction over her claim. Tr. at 74:23–25, 75:1–6. Plaintiff's assertion that he was treated differently than Ms. Chavez on account of his gender is not supported by the record.

[18] The Court's conclusion on this factor is not an indication of the Court's belief as to whether Plaintiff may ultimately succeed on the merits of these claims.

II.     Remaining Injunction Factors

Plaintiff objects to the Magistrate Judge's resolution of the irreparable injury and public interest factors for an injunction. The Magistrate Judge concluded that neither factor weighed in favor of granting Plaintiff an injunction. *See* Doc. 36 at 27, 28.

Plaintiff primarily argues that because he has shown that he will likely succeed on the merits of his claims, he has likewise established that he will be irreparably harmed absent an injunction and that the public interest will be served if an injunction is issued. Doc. 39 at 24 (describing how "[i]rreparable harm is often presumed in cases involving the enforcement of civil or constitutional rights."); *Id.* at 27 (maintaining that it is in the public interest to ensure "compliance with Title IX and the prevention of violations [sic] an individual's constitutional rights."). But Plaintiff has not demonstrated that he is likely to succeed on the merits of his due process or Title IX claims. Moreover, the Magistrate Judge more than adequately addressed these same arguments in the Proposed Findings and Recommended Disposition. Doc. 36 at 25–27, 28. Plaintiff's objections are overruled.

Finally, the Magistrate Judge determined that Plaintiff and University Defendants faced significant harm. Doc. 36 at 27. Given the real and competing interests of the parties, she concluded that this factor should weigh neutral in the Court's analysis. *Id.* Neither party objects to that recommendation. Accordingly, the Court adopts the Magistrate Judge's recommendation—this factor weighs neutral in the Court's analysis.

CONCLUSION

With the modifications explained above, the Court adopts the Magistrate Judge's conclusion that "[w]hen balanced against each other, the factors do not support the issuance of a temporary restraining order or preliminary injunction." Doc. 36 at 29.[19]

IT IS THEREFORE ODERED that

(1)     PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION (Doc. 39) are OVERRULED; and

(2)     PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS THE UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA M. CLIFFE (Doc. 22) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[19] The Court, like the Magistrate Judge, will not determine whether the injunctions Plaintiff seeks are mandatory in nature, such that a heightened showing is required. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). The Court adopts the Magistrate Judge's reasoning that "because [Plaintiff] has not satisfied the standard requirements for an injunction," it need not reach "a disposition regarding whether the injunction [Plaintiff] seeks is mandatory in nature." Doc. 36 at 14.