## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

      Plaintiff,

v.                                       Civ. No. 20-27 JAP/LF

THE UNIVERSITY OF NEW MEXICO;
CAMILLE CAREY, individually and in her
official capacity; ANGELA CATENA,
individually and in her official capacity;
SARA M. CLIFFE, individually and in her
official capacity; and EVA CHAVEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      Defendants University of New Mexico, Camille Carey, Angela Catena, and Sara Cliffe (collectively "University Defendants") seek dismissal of certain claims contained in Plaintiff Nick Flor's First Amended Complaint.[1] In particular, University Defendants assert, under Federal Rule of Civil Procedure 12(b)(6), that Plaintiff has failed to state a claim under the Procedural Due Process Clause of the United States Constitution, and has similarly failed to state a claim for breach of contract and breach of the implied covenant of good faith and fair dealing under New Mexico law. The parties fully briefed the Motion on June 29, 2020.[2] The Court held a hearing on the

---

[1] *See* DEFENDANTS UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA CLIFFE'S MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT (Doc. 40); MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA CLIFFE'S MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT ("Motion") (Doc. 41); FIRST AMENDED COMPLAINT ("Amended Complaint") (Doc. 17).

[2] *See* PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA CLIFFE'S MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT ("Response") (Doc. 52); REPLY BRIEF IN SUPPORT OF DEFENDANTS UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA CLIFFE'S MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT ("Reply") (Doc. 56).

Motion on July 15, 2020.[3] Now, being fully apprised of the allegations and arguments, the Court will grant University Defendants' Motion.

BACKGROUND[4]

The following facts are taken from Plaintiff's Amended Complaint, which the Court accepts as true and views in the light most favorable to Plaintiff. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147–48 (10th Cir. 2015).

Plaintiff is an Associate Professor in the University of New Mexico's Anderson School of Management. Doc. 17 at ¶ 4. Plaintiff and Defendant Eva Chavez, a graduate student in the Anderson School of Management, engaged in the exchange of flirtatious and overtly sexual emails and text messages. *Id.* at ¶¶ 17, 25–27.[5] At no time during the exchange of those messages did Plaintiff supervise, advise, grade, or "otherwise interact[] in any professional situation" with Defendant Chavez. *Id.* at ¶ 15.[6]

Eventually, Plaintiff cut off email communication with Defendant Chavez, at which point Defendant Chavez sent Plaintiff a series of text messages threatening to expose their emails to Plaintiff's Department Chair and other members of the University's faculty and administration. *Id.* at ¶¶ 30–32. Plaintiff disclosed to his faculty chair, Dr. Mary Margaret Rogers, that Defendant Chavez was sending him threatening and harassing text messages. *Id.* at ¶ 34. Plaintiff also

---

[3] *See* CLERK'S MINUTES, filed July 15, 2020 (Doc. 60).

[4] On June 20, 2020, the Court issued a MEMORANDUM OPINION AND ORDER (Doc. 55) denying PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS THE UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA M. CLIFFE ("Motion for a TRO and Preliminary Injunction") (Doc. 22). The Court's factual findings and conclusions of law from that opinion are not binding on it here. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting [or denying] a preliminary injunction are not binding at trial on the merits.").

[5] The Amended Complaint does not allege how long the exchange of those messages continued.

[6] While this is true in a strict sense, the Amended Complaint acknowledges that during their communications, the two discussed the possibility of Defendant Chavez working for Plaintiff. Doc. 17 at ¶ 19. In fact, the discussions progressed so far that Plaintiff offered Defendant Chavez a job. *Id.* at ¶ 22.

disclosed to Dr. Rogers that he had exchanged flirtatious and sexually explicit emails with Defendant Chavez. *Id.*

Dr. Rogers reported Defendant Chavez's harassment of Plaintiff to the University's Office of Equal Opportunity ("OEO"). *Id.* at ¶ 35. Additionally, Dr. Rogers filed a complaint with the OEO against Defendant Chavez on Plaintiff's behalf. *Id.* at ¶ 36. When the OEO informed Defendant Chavez of the complaint against her, Defendant Chavez filed a separate complaint against Plaintiff. *Id.* at ¶ 37.

Independent investigator Ben FitzSimons investigated both complaints and prepared an investigation report. *Id.* at ¶¶ 42, 44.[7] Mr. FitzSimons sent the investigation report to Plaintiff and Defendant Chavez and invited them to respond. *Id.* at ¶ 45. The report detailed witness testimony collected by Mr. FitzSimons but did not identify the names of those witnesses. *Id.* at ¶ 46. That, Plaintiff claims, deprived him of an opportunity to fully respond to the investigation report. *Id.* at ¶ 47.

Following the preparation of the investigation report, Mr. FitzSimons was removed (by whom, Plaintiff does not allege) as the investigator without explanation. *Id.* at ¶ 48.[8] The OEO appointed Defendant Sara Cliffe as investigator after Mr. FitzSimons' removal. *Id.* at ¶ 51. Defendant Cliffe used Mr. FitzSimons' findings to prepare a Preliminary Letter of Determination. *Id.* at ¶ 52. The Preliminary Letter of Determination included Defendant Cliffe's preliminary findings that Plaintiff violated the University's sexual harassment policy and anti-retaliation policy through his conduct with Defendant Chavez. *Id.* at ¶ 54. Meanwhile, the competing Preliminary

---

[7] Plaintiff asserts that he fully cooperated in the investigation, but that Defendant Chavez knowingly lied and presented false information to the University. *Id.* at ¶¶ 38–39.

[8] Plaintiff believes Mr. FitzSimons "was removed as the investigator because he intended to find that Plaintiff did not violate University policy." *Id.* at ¶ 49. Plaintiff further maintains that University policy does not provide that the OEO may replace an investigator from a case because of a disagreement regarding the investigator's findings. *Id.* at ¶ 50.

Letter of Determination involving the complaint against Defendant Chavez indicated the OEO did not believe that Defendant Chavez's conduct violated University policy. *Id.*

The Preliminary Letter of Determination invited Plaintiff to respond with new evidence. *Id.* at ¶ 55. Plaintiff responded by asking the OEO to interview twelve witnesses. *Id.* at ¶ 56. Three of those witnesses had allegedly submitted complaints against Defendant Chavez claiming that she engaged in inappropriate or retaliatory behavior, such as filing false complaints with the University. *Id.* at ¶ 57. Three other witnesses would have testified that Defendant Chavez never had a job contract with the University. *Id.* at ¶ 58. Finally, the remaining six witnesses were expected to testify about Plaintiff's interactions with students and "other information germane to allegations of sexual harassment." *Id.* at ¶ 59. Defendant Cliffe did not interview any of Plaintiff's proposed witnesses. *Id.* at ¶ 60. Additionally, one of Plaintiff's witnesses submitted a written statement to the OEO. *Id.* at ¶ 61. Plaintiff claims that Defendant Cliffe and the OEO refused to review that written statement. *Id.*

Defendant Cliffe, Title IX Coordinator Defendant Angela Catena, *id.* at ¶ 7, and the OEO issued a Final Letter of Determination, in which they found that Plaintiff had violated University policy, *id.* at ¶ 62. Plaintiff claims that before the Final Letter of Determination was issued, he should have been permitted to: (1) have a formal hearing, *id.* at ¶ 63; (2) cross-examine any witnesses interviewed during the investigation, *id.* at ¶ 64; (3) present a full and complete defense, *id.* at ¶ 65; (4) present witnesses of his choosing, *id.* at ¶ 66; (5) have a fair and equitable investigation, *id.* at ¶ 67; and (6) see all the evidence against him, *id.* at ¶ 68. Moreover, Plaintiff maintains that Defendant Cliffe, Defendant Catena, and Defendant University should have considered exculpatory evidence prior to issuing their findings. *Id.* at ¶ 69.

Plaintiff appealed the Final Letter of Determination's finding that he violated University policy to the University President. *Id.* at ¶ 70. The President denied Plaintiff's appeal. *Id.* at ¶ 71. Plaintiff then appealed to the Board of Regents of the University of New Mexico. *Id.* at ¶ 72. The Board declined to consider Plaintiff's appeal. *Id.* at ¶ 73.

Next, the sanctioning process began. *Id.* at ¶ 75. The process for sanctioning tenured faculty members for violations of University policy is laid out in University Policy C07: Faculty Disciplinary Policy. *Id.* at ¶ 76.[9] University Policy C07 requires a faculty member's Department Chair make a sanctioning decision, which is then reviewed and approved by that faculty member's Dean before the sanction is imposed. *Id.* at ¶ 77. In compliance with that policy, Senior Vice Provost Barbara Rodriguez appointed Plaintiff's department chair, Dr. Rogers, to propose a sanction for Plaintiff's conduct. *Id.* at ¶ 78.

Dr. Rogers reviewed the findings and recommended that Plaintiff's sanction be training and other corrective measures. *Id.* at ¶¶ 79–81. According to Plaintiff, Dr. Rogers did not recommend that Plaintiff be suspended. *Id.* at ¶ 81. Plaintiff further alleges that Dr. Rogers was required to share her proposed sanction with Defendant Catena and Senior Vice Provost Rodriguez before imposing it. *Id.* at ¶ 84. Plaintiff claims that sharing a proposed sanction is not part of the University's policy. *Id.* Rather, he asserts the policy gives the Department Chair the sole responsibility for determining the appropriate sanction and provides only for review and approval by the individual's Dean. *Id.* at ¶ 85.

---

[9] The Court takes judicial notice of University Policy C07, which was not attached to the Amended Complaint but is referenced in it, is central to this claim, and is a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *see also* Faculty Handbook, C07: Faculty Disciplinary Policy (Approved by the Faculty Senate March 22, 2011; Approved by Board of Regents December 13, 2011), https://handbook.unm.edu/c07/ (herein after, "University Policy C07").

Defendant Catena believed that Dr. Rogers' proposed sanction was too lenient and that Plaintiff "should receive a more punitive sanction." *Id.* at ¶¶ 86–87. To that end, Plaintiff contends that Defendant Catena prepared a letter to Senior Vice Provost Rodriguez explaining her opinion that Dr. Rogers' proposed sanction was not harsh enough. *Id.* at ¶ 88. Senior Vice Provost Rodriguez agreed with Defendant Catena, but under University Policy C07, neither Senior Vice Provost Rodriguez nor Defendant Catena had the authority to sanction Plaintiff. *Id.* at ¶¶ 89, 91.

Plaintiff alleges that Defendant Catena and Senior Vice Provost Rodriguez removed Dr. Rogers as the sanctioning party by claiming that Dr. Rogers had a conflict of interest that prevented her from serving in that role. *Id.* at ¶ 92. The conflict of interest was based on the following facts:

> 1) That Dr. Rogers initially reported conduct that was part of the investigation to the OEO; 2) that Dr. Rogers was later sanctioned by the University for failing to report Plaintiff's alleged sexual misconduct earlier than she had reported it; and 3) that Dr. Rogers expressed an inability to be impartial in a separate investigation regarding Defendant Chavez.

*Id.* at ¶ 93.

Plaintiff believes that those reasons were pretextual and that the University did not have a legitimate concern about Dr. Rogers' supposed conflict of interest. *Id.* at ¶¶ 94–95. According to Plaintiff, Defendant Catena and Senior Vice Provost Rodriguez knew (and were unconcerned) that Dr. Rogers "reported alleged misconduct by Plaintiff and Defendant Chavez" to the OEO before Dr. Rogers was tasked with determining Plaintiff's sanction. *Id.* at ¶¶ 96–97. Moreover, Plaintiff claims that Dr. Rogers was sanctioned for failing to report the alleged misconduct earlier. *Id.* at ¶ 98. The sanction against Dr. Rogers, however, was not imposed until after Dr. Rogers recommended a sanction against Plaintiff. *Id.* Finally, Plaintiff asserts that the perceived conflict

was pretextual because Dr. Rogers' statements about her ability to be objective were made only after the University sanctioned her for not reporting the misconduct earlier. *Id.* at ¶ 99.

Senior Vice Provost Rodriguez appointed Defendant Camille Carey, Vice Dean of the University of New Mexico School of Law, to replace Dr. Rogers as the sanctioning party. *Id.* at ¶ 103. Defendant Carey later proposed a one-year suspension without pay. *Id.* at ¶ 114. Interim Dean Shawn Berman approved Defendant Carey's proposed sanction, which was then imposed. *Id.* at ¶ 122.[10]

In addition to being suspended for one year without play, the sanction also prohibited Plaintiff from working more than 39 days for any employer other than the University under the University's Outside Employment policy. *Id.* at ¶ 115. That policy does not expressly apply to suspended employees, but "the University has made clear to Plaintiff that it expects him to abide by it." *Id.* at ¶ 116. Plaintiff views this sanction as an attempt to terminate him without going through the required process to terminate a tenured employee. *Id.* at ¶ 117. Moreover, the sanction prohibited Plaintiff from associating with the University of New Mexico if he were to publish his research during his suspension. *Id.* at ¶ 119. Plaintiff asserts that this prohibition caused him to violate the terms of his research grants that require him to publish his findings in association with a University. *Id.* at ¶ 120. Plaintiff maintains that Defendant Carey proposed this sanction without affording him an opportunity to have a hearing, to confront and cross-examine witnesses, to

---

[10] The Amended Complaint is unclear about who was responsible for imposing Plaintiff's sanction. For example, Plaintiff claims that under University Policy C07, the "Dean must review and approve the proposed sanction before it is imposed." Doc. 17 at . ¶ 77. But later allegations state that Defendant Carey was the individual who imposed Plaintiff's sanction, *id.* at ¶ 114, and that she merely "consulted" with the Dean prior to the imposition of Plaintiff's sanction. *Id.* at ¶ 122. At the July 15, 2020, hearing, Plaintiff clarified his position that Defendant Carey did not commit any policy violations as the sanctioning party. *See* July 15, 2020, Hr'g Tr. (Doc. 61 at 21:14–16) (noting that once Defendant Carey was appointed as the sanctioning party, she "followed the proper steps under C07"). Thus, the Court reads Plaintiff's allegations against Defendant Carey as being consistent with University Policy C07 as alleged in the Amended Complaint—that Dean Berman reviewed and approved Defendant Carey's proposed sanction.

present a full and complete defense, to submit exculpatory evidence, or to review all the evidence against him. *Id.* at ¶ 121.

On February 21, 2020, Plaintiff appealed his sanction to the University's Peer Review Committee. *Id.* at ¶ 148. At the hearing, Plaintiff could not challenge the OEO's finding that Plaintiff violated University policies. *Id.* at ¶ 150. Moreover, Plaintiff was not allowed to be represented by counsel, although Defendant Carey—a trained lawyer—defended the sanction, submitted motions, and advocated for the use of the New Mexico Rules of Evidence. *Id.* at ¶¶ 151– 54. At the time Plaintiff submitted his Amended Complaint, the decision of the Peer Review Committee had not yet been issued. *Id.* at ¶ 157. The Court, however, takes judicial notice of the Peer Review Committee's decision, which was released on March 5, 2020. *See* Doc. 22-9 at 1.[11] The hearing panel upheld Plaintiff's sanction. *Id.* at 8.

## STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Courts must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*,

---

[11] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment," including the Court's "own files and records, as well as facts which are a matter of public record." *Tal*, 453 F.3d at 1265 n.24. At the July 15, 2020, hearing, the parties agreed that the Court may take judicial notice of the uncontroverted record submitted in this case on Plaintiff's Motion for a TRO and Preliminary Injunction (Doc. 22). *See* Hr'g Tr. at 17:7–14. Because that record is properly the subject of judicial notice, *see Tal*, 453 F.3d at 1265 n.24, the Court takes judicial notice of the Peer Review Committee's decision without converting the Motion into a motion for summary judgment.

556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555—i.e., "that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

I.      Substitution of parties

First, the Court must address viability of Plaintiff's claims against Defendant University of New Mexico. The University of New Mexico is not the proper suable entity under New Mexico law. *See* NMSA 1978, § 21-7-4 (1889) ("The regents of the university and their successors in office shall constitute a body corporate under the name and style of, the regents of the university of New Mexico, with the right, as such, of suing and being sued . . . ."). Plaintiff concedes this is so and requests that the Court grant him leave to amend so that he may substitute the Board of Regents of the University of New Mexico as a defendant instead. *See* Doc. 52 at 7 n.2. University Defendants do not contest this substitution. *See* Doc. 56 at 2 n.2. Thus, the Court will dismiss Plaintiff's claims against Defendant University of New Mexico and will grant Plaintiff leave to amend his complaint to name the Board of Regents of the University of New Mexico.

II.       Count I: Procedural due process claims for damages

In Count I, Plaintiff alleges deprivations of his procedural due process rights under the Fourteenth Amendment of the United States Constitution.[12] Plaintiff brings Count I against Defendants Carey, Catena, and Cliffe ("individual defendants")[13] in their individual capacities.[14]

The thrust of University Defendants' argument is that Plaintiff's Amended Complaint fails to properly allege actions by each individual defendant that would constitute a constitutional due process violation. Doc. 41 at 7–9. It is well-established that a plaintiff must "identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (internal quotation marks omitted) (emphases in original); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) ("[A] defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation."). University Defendants contend that Plaintiff's Amended Complaint puts forth a collective theory of liability that is not based on the individual actions of each individual defendant. Doc. 41 at 8. They further assert that even if Plaintiff has sufficiently alleged conduct by each individual defendant, those allegations are legally insufficient to support Plaintiff's procedural due process claims. Doc. 56 at 3–4.

The Court rejects University Defendants' contention that Plaintiff has failed to set forth theories of individual liability against the individual defendants. As the Court will discuss in

---

[12] Plaintiff's Amended Complaint also alleges a violation of due process under Article II § 18 of the New Mexico Constitution. *See* Doc. 17 at 20. He now "concedes that he cannot maintain a claim . . . against [University] Defendants for damages because of violations of the New Mexico Constitution." Doc. 52 at 12 n.4. Thus, the Court will not dedicate any further time to that claim.

[13] Plaintiff also alleges procedural due process violations by Defendant University of New Mexico. Doc. 17 at 20. Because the Court will dismiss the University from this lawsuit, the Court does not discuss any of Plaintiff's allegations against it.

[14] Plaintiff's Amended Complaint does not clearly state whether this count is being pursued against the individual defendants in their official or individual capacities. Nevertheless, Plaintiff's Response clarifies that he intends for this claim to be against them in their individual capacities. Doc. 52 at 12 n.4.

greater detail below, Plaintiff has alleged specific facts against each individual defendant. The question is thus whether those allegations are sufficient to state a claim that each individual defendant is responsible for violations of Plaintiff's procedural due process rights. Ultimately, they are not.

### A. Allegations against Defendant Cliffe

Recall, Defendant Cliffe replaced Mr. FitzSimons as the OEO investigator on the dueling complaints against Plaintiff and Defendant Chavez. Doc. 17 at ¶ 51. She prepared the OEO's Preliminary Letter of Determination, which set forth the preliminary findings of the OEO investigation and invited Plaintiff to respond with any new evidence. *Id.* at ¶¶ 52–53, 55. As alleged, Defendant Cliffe refused to interview any of the twelve witnesses Plaintiff identified in response to the Preliminary Letter of Determination. *Id.* at ¶¶ 56, 60. Moreover, Plaintiff alleges that Defendant Cliffe refused to review a written statement submitted to the OEO by one of Plaintiff's witnesses. *Id.* at ¶ 61. Defendant Cliffe also prepared the Final Letter of Determination, which found that Plaintiff had violated University policy by engaging in quid pro quo sexual harassment and retaliation against Defendant Chavez. *Id.* at ¶¶ 60, 62.

Based on that conduct, Plaintiff alleges that Defendant Cliffe violated his procedural due process rights by: (1) failing to have a formal hearing prior to finding that Plaintiff violated University policies, *see id.* at ¶ 63; (2) not permitting Plaintiff to cross-examine any witnesses during the investigation, *id.* at ¶ 64; (3) preventing Plaintiff from presenting a full and complete defense, *id.* at ¶ 65; (4) precluding Plaintiff from presenting witnesses of his choosing, *id.* at ¶ 66; (5) failing to conduct a fair and equitable investigation, *id.* at ¶ 67; (6) not allowing Plaintiff to see all the evidence against him, *id.* at ¶ 68; and (7) failing to consider any of Plaintiff's purportedly

exculpatory evidence prior to issuing the findings that Plaintiff violated University policies, *id.* at ¶ 69.

Notably, Plaintiff's allegations against Defendant Cliffe are limited to the OEO's investigation and findings. As far as the Amended Complaint is concerned, Defendant Cliffe had no role in the sanction phase of Plaintiff's case.

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996)). University Defendants do not challenge Plaintiff's contention that he has a protected property right in his continued employment or a protected liberty interest "in his good name, reputation, honor, and integrity." Doc. 17 at ¶¶ 173, 175. The Court's inquiry is therefore limited to whether Plaintiff has alleged constitutionally inadequate process.

In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court discussed the minimum process to which tenured public employees are entitled prior to any adverse employment action. The Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. Those three requirements—(1) notice; (2) an explanation of the evidence; and (3) an opportunity to respond—satisfy the hearing requirements of pre-deprivation due process. *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009). "A full evidentiary hearing is not required prior to an adverse employment action." *West v. Grand Cty.*, 967 F.2d 362, 367 (10th Cir. 1992).

Plaintiff's allegations against Defendant Cliffe do not support a deprivation of Plaintiff's procedural due process rights. First, Plaintiff's allegations establish that he had notice of the OEO charges against him. Indeed, prior to any findings, Plaintiff received the Preliminary Letter of Determination prepared by Defendant Cliffe, thus putting Plaintiff on notice of the OEO charges against him.[15] Second, the Preliminary Letter of Determination also included "the results" of the OEO investigation and explained the OEO's proposed finding that Plaintiff violated the University's sexual harassment and retaliation policies. *Id.* at ¶ 53. Thus, Plaintiff received an "explanation of the employer's evidence." *Loudermill*, 470 U.S. at 546. Finally, Defendant Cliffe invited Plaintiff to respond to the Preliminary Letter of Determination with any new evidence, which Plaintiff did. Doc. 17 at ¶ 55–56. Surely, providing a written response to the Preliminary Letter of Determination constitutes "some opportunity" to present his side of the case. *Loudermill*, 470 U.S. at 543. The Court concludes that Defendant Cliffe did not deprive Plaintiff of any of the pre-deprivation process that he was due.[16]

Plaintiff's arguments misconstrue the requirements of pre-deprivation process. "The [pre-deprivation] hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that [the adverse employment action] is unwarranted." *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989). "It should be an initial check against mistaken decisions—essentially, a determination of whether there are *reasonable grounds* to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S.

---

[15] Plaintiff acknowledges in his Amended Complaint that he fully cooperated in the investigation. Doc. 17 at ¶ 38. The Court thus draws the reasonable inference that Plaintiff had notice of the complaint against him, such that he could cooperate in the investigation.

[16] The Court believes it worth highlighting that Defendant Cliffe's involvement in the OEO investigation only occurred after Mr. FitzSimons' investigation. Doc. 17 at ¶ 51. As the Amended Complaint lays out, Mr. FitzSimons prepared an even earlier investigation report, which also invited Plaintiff to respond. *Id.* at ¶¶ 44–46. Thus, as alleged in his Amended Complaint, Plaintiff received notice of charges against him, an explanation of the evidence, and an opportunity to respond at least twice during the OEO's investigation.

at 545–46 (emphasis added). Something less than a full evidentiary hearing is required. *Id.* at 545; *Riggins*, 572 F.3d at 1108. Rather, the "opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Loudermill*, 470 U.S. at 546. But "[t]o require more than [that] prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*

Because the Supreme Court has flatly rejected the notion of elaborate pre-deprivation process when post-deprivation procedures are available, *see id.* at 545, and because the facts alleged in the Amended Complaint establish that Defendant Cliffe provided Plaintiff all the requirements of a pre-deprivation hearing, Plaintiff has failed to state a claim that Defendant Cliffe is personally responsible for violating Plaintiff's procedural due process rights.

B.  Allegations against Defendant Catena

Plaintiff alleges that Defendant Catena violated his procedural due process rights through three actions: (1) requiring Dr. Rogers to share her proposed sanction with Defendant Catena, Doc. 17 at ¶ 83; (2) endeavoring to remove Dr. Rogers as the sanctioning party, *id.* at ¶¶ 88, 92; and (3) approving Defendant Cliffe's finding that Plaintiff violated University policies without first reviewing purportedly exculpatory evidence or affording Plaintiff a fair and equitable investigation, the opportunity to see all of the evidence against him, or a formal hearing where he could present, cross-examine, and confront witnesses, and present a full and complete defense, *id.* at ¶¶ 62–69.

First off, the Court rejects Plaintiff's argument that Defendant Catena violated his due process rights because of her approval of Defendant Cliffe's findings. As the Court discussed above, Plaintiff has failed to allege that his pre-deprivation process was constitutionally deficient

14

as to Defendant Cliffe. Similarly, he fails to establish that Defendant Catena's approval of that process, by way of her signature on the OEO's Final Letter of Determination, constitutes a due process violation.

Plaintiff's remaining two arguments aimed at Defendant Catena's purported liability rely on University Policy C07. *See* Doc. 17 at ¶¶ 76–78. As clarified during the July 15, 2020 hearing, Plaintiff alleges that (1) Defendant Catena's review of Dr. Rogers' proposed sanction and (2) her involvement in Dr. Roger's removal as sanctioning party were marked departures from University Policy C07 that violated Plaintiff's due process rights. Hr'g Tr. at 13:11–25, 12:1–9.

"[A] school's failure to follow its own procedures does not, in itself, give rise to a due process violation." *Dixon v. Regents of Univ. of New Mexico*, 242 F.3d 388, n.4 (10th Cir. 2000) (unpublished table decision) (observing that university did not violate student's due process rights by dismissing student without following its own procedures); *see also Trotter v. Regents of Univ. of New Mexico*, 219 F.3d 1179, 1185 (10th Cir. 2000) (collecting cases) (stating that failure to follow university's own procedures "would not, by itself, give rise to a constitutional claim under the Fourteenth Amendment"). Indeed,

> [i]t is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is *only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.*

*Atencio v. Bd. of Educ. of Penasco Indep. Sch. Dist. No. 4*, 658 F.2d 774, 779 (10th Cir. 1981) (emphasis added) (favorably quoting *Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir. 1976), which involved a dismissal of a tenured professor who alleged that the Board of Regents failed to observe procedural safeguards required by its own regulations); *see also Brown v. Youth Ctr. at Topeka*, 883 F. Supp. 572, 577 (D. Kan. 1995), *aff'd,* 74 F.3d 1248 (10th Cir. 1996) ("Defendants'

failure to follow established policy and procedure does not necessarily violate plaintiff's right to procedural due process."). The vital inquiry is thus not whether an internal policy was violated, but whether the individual received all the process required by the Due Process Clause. *See Brown*, 883 F. Supp. at 581 (concluding that "as a matter of law, defendants' failure to follow established policy and procedure did not deny plaintiff a fair forum for protecting his [protected property interest].").

As the Court has already explained, Plaintiff's allegations establish that he received all the pre-deprivation process he was due—notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond. The allegations in the Amended Complaint do not state a due process claim against Defendant Catena.

### C. Allegations against Defendant Carey

Plaintiff posits that Defendant Carey violated his due process rights because "she imposed an extreme sanction." Doc. 52 at 11. According to Plaintiff, that allegation is sufficient to state a claim against Defendant Carey. *Id.* Accepting that Defendant Carey, not Dean Berman, had the authority to impose Plaintiff's sanction, the Court still does not believe that Plaintiff has stated a due process claim against Defendant Carey. Plaintiff alleges that the sanction was extreme because, in addition to suspending Plaintiff for one year, the sanction prohibits him from working for more than 39 days for an outside organization. Doc. 17 at ¶ 115. This, Plaintiff believes, is an attempt to terminate him without going through the proper procedures for the termination of a tenured faculty member. *Id.* at ¶ 117.

But as the Court has previously explained, the question is not whether Defendant Carey followed the University's internal procedures if her actions were indeed an attempt to effectively terminate Plaintiff. Rather, the important inquiry is whether Plaintiff received the process he was

due under the Due Process Clause. *See See Brown*, 883 F. Supp. at 581. The Court concludes that the process Plaintiff received—as alleged by Plaintiff—would have been sufficient pre-deprivation process even in the event of termination. *See Loudermill*, 470 U.S. at 546 (describing the *pretermination* process required for a tenured employee as notice, an explanation of the employer's evidence, and an opportunity to respond).

At the July 15, 2020, hearing, Plaintiff also argued that Defendant Carey violated University Policy C07 by sanctioning Plaintiff at all and that Defendant Carey's replacement of Dr. Rogers as the sanctioning party violated Plaintiff's due process rights. Hr'g Tr. at 21: 9–14, 19–24. That argument, however, fails to grapple with Senior Vice Provost Rodriguez's responsibility as the individual Plaintiff alleges had the authority to appoint Defendant Carey as the sanctioning party. *See* Doc. 17 at ¶¶ 102–03. Thus, Plaintiff fails to allege that actions taken by Defendant Carey resulted in his purported harm—instead, it appears that his allegations concern the actions of Senior Vice Provost Rodriguez, who is not a party to this lawsuit.[17]

Finally, Plaintiff maintains that Defendant Carey violated Plaintiff's due process rights by denying him a formal hearing where he could present witnesses, cross-examine witnesses against him, present a complete defense, submit exculpatory evidence, or review the evidence against him—essentially the same allegations he raises against Defendants Cliffe and Catena. *See* Doc. 17 at ¶ 121. But like the arguments made against Defendants Cliffe and Catena, Plaintiff is not entitled to those due process protections before adverse action is taken against him. *See Riggins*, 572 F.3d at 1108 (describing the requirements of pre-deprivation process).

---

[17] At the July 15, 2020, hearing, Plaintiff requested leave to amend to add Senior Vice Provost Rodriguez as a party. Hr'g Tr. at 31:1–9. As described herein, the Court will allow Plaintiff to file a second amended complaint.

### D.  Relevance of post-deprivation process

Important to the Court's conclusion is the acknowledgment in Plaintiff's Amended Complaint that he received some post-deprivation process. Indeed, Plaintiff alleges that following his suspension he appealed his sanction to the University's Peer Review Committee. Doc. 17 at ¶ 148. The Committee held a hearing to determine the propriety of Plaintiff's sanction. *See id.* at ¶¶ 151, 155. But, as alleged, Plaintiff was not permitted to challenge Defendant Cliffe's findings during that hearing. *Id.* at ¶ 149. He was also prohibited from being represented by counsel at that hearing. *Id.* at ¶ 151.

"A full evidentiary hearing is not required prior to an adverse employment action," "[b]ecause the post-termination hearing is where the definitive fact-finding occurs." *West*, 967 F.2d at 367, 368 (internal quotation marks omitted). Indeed, "[a] 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Tonkovich*, 159 F.3d at 517–18 (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)); *but see McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000) (describing that statement as dicta). Thus, based on the allegations in the Amended Complaint, the Peer Review Committee's hearing contained procedural flaws—e.g., not permitting Plaintiff to be represented by counsel and prohibiting Plaintiff from challenging the OEO's factual findings. But Plaintiff does not allege which of the remaining defendants is responsible for the procedural deficiencies associated with his post-deprivation process. Because that essential allegation is missing, Plaintiff fails to state a claim that his post-deprivation process was deficient.[18]

---

[18] When post-deprivation process is not provided, the Tenth Circuit has applied the post-deprivation hearing requirements to the pre-deprivation analysis. *See McClure*, 228 F.3d at 1211 ("Although the hearing at issue was a pretermination hearing, it was the only one provided to Mrs. McClure. Consequently, our due process inquiry is

In sum, the Court concludes that Plaintiff has failed to state a claim for the deprivation of his pre-deprivation due process rights by any of the individual defendants. The Court further concludes that Plaintiff has failed to state a due process claim as to his post-deprivation process. The Court will thus dismiss Count I without prejudice.

III.     Count II: Injunctive relief for purported due process violations

Having determined that Plaintiff has failed to state a due process claim against any of the individual defendants, the Court will dismiss without prejudice Count II, which seeks injunctive relief for the same purported due process violations.

IV.     Count III: Declaratory relief for purported due process violations

For the same reasons as Count II, the Court will dismiss without prejudice Count III, where Plaintiff seeks declaratory relief for purported due process violations.

V.     Counts V and VI: Breach of contract and breach of the implied covenant of good faith and fair dealing

In Count V, Plaintiff alleges that "Defendant University, acting through its Board of Regents and employees, created express contracts when Plaintiff accepted an offer of employment as a faculty member and when Plaintiff was granted tenure as an Associate Professor at the Anderson School of Management." Doc. 17 at ¶ 230. In Count VI, Plaintiff further alleges that "Defendant University's express contracts with Plaintiff included an implied covenant of good faith and fair dealing which implicitly guaranteed that any investigatory and disciplinary proceedings would be conducted with basic fairness." *Id.* at ¶ 236.

---

governed by the requirements applied to post-termination hearings."). But here, Plaintiff clearly alleges that post-deprivation process was available to him, but was deficient.

As the Court has already explained, Defendant University of New Mexico is not the proper suable entity under New Mexico law. *See* NMSA § 21-7-4. Accordingly, the Court will dismiss Plaintiff's contractual claims against the University.

## VI.    The Court will allow Plaintiff to amend the complaint

"[T]he grant of leave to amend the pleadings pursuant to Federal Rule of Civil Procedure 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). The Rule itself states that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The purpose of Rule 15 is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Indeed, "Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham*, 364 U.S. 310, 316 (1960); *see also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) ("As a general rule, a plaintiff should not be prevented from pursuing a valid claim . . .  provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." (internal quotation marks omitted)).

In addition to the standard under Rule 15(a), the Court must also consider Rule 16 because the deadline set forth in the Court's scheduling order for such amendments has passed. *See* ORDER ADOPTING JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN AND SETTING CASE MANAGEMENT DEADLINES AND DISCOVERY PARAMETERS (Doc. 13 at 2) (setting a March 30, 2020, deadline for Plaintiff to amend). Rule 16 provides that "a scheduling order may be modified only for good cause and with the judge's consent." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Thus, "[a]fter

a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Id.* at 1240.

The Court finds that good cause exists to permit Plaintiff to file a second amended complaint and that University Defendant will not be prejudiced as a result. In doing so, the Court notes University Defendants' objection to any amendment beyond the substitution of the University of New Mexico Board of Regents for Defendant University of New Mexico. Doc. 56 at n.2. While the period for permissive amendment has passed, *see* Doc. 13 at 2, University Defendants will face little prejudice at this stage in the proceedings. Indeed, at the July 15, 2020, hearing, Plaintiff informed the Court that he had just served discovery, no depositions had yet been taken, and University Defendants had not engaged in any discovery. Hr'g Tr. at 34:7–9. Moreover, there is no indication that Plaintiff has not been diligent in pursuing his case—in fact, quite the opposite. The Court will thus allow Plaintiff to file a second amended complaint.

CONCLUSION

IT IS THEREFORE ORDERED THAT:

(1) DEFENDANTS UNIVERSITY OF NEW MEXICO, CAMILLE CAREY, ANGELA CATENA, AND SARA CLIFFE'S MOTION TO PARTIALLY DISMISS FIRST AMENDED COMPLAINT (Doc. 40) is GRANTED.

(2) Counts I, II, III, V, and VI are DISMISSED without prejudice.

(3) Plaintiff may, if he chooses, file a second amended complaint by August 31, 2020.

(4) If Plaintiff files a second amended complaint, Defendants must file any Rule 12(b)(6) motions by September 21, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE