## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NICK VINCENT FLOR,**

       **Plaintiff,**

**v.**                                 **Cause No. 1:20-cv-00027-JAP-LF**

**THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
STEPHEN BISHOP, LISA BROIDY,
KEVIN GICK, KARIN HIGH, ERIC LAU,
individually and in their official capacities,
and EVA CHAVEZ,**

       **Defendants.**

## INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S SECOND AMENDED COMPLAINT AND MOTION TO STAY DISCOVERY

Defendants Stephen Bishop, Lisa Broidy, Kevin Gick, Karin High, and Eric Lau (collectively "Individual Defendants"), by and through their attorneys, Conklin, Woodcock & Ziegler, P.C., pursuant to Fed. R. Civ. P. 56, move this Court for an Order entering judgment in their favor on Counts I, II, and III of the Second Amended Complaint (Doc. 68). The Individual Defendants are entitled to summary judgment under the doctrines of absolute immunity and qualified immunity with respect to Count I. The Individual Defendants ae entitled to summary judgment with respect to Counts II and III as these Defendants are unable and have no authority to provide Plaintiff with the type of injunctive relief or declaratory relief sought. Finally, because the issues of qualified immunity have been raised, the Individual Defendants seek a stay of all discovery until the present Motion is ruled upon.

Pursuant to D. N.M. LR-Civ. 7.1(a), the present Motion is opposed.

## INTRODUCTION

Plaintiff is a tenured Associate Professor with the Anderson School of Management at the University of New Mexico ("UNM") currently serving a one-year suspension for policy violations related to an improper and sexually explicit relationship he had with a graduate student. Specifically, it was found that Plaintiff's conduct violated UNM policies against sexual harassment (quid pro quo) and retaliation after a lengthy and thorough administrative investigation process conducted by the Office of Equal Opportunity ("OEO") at UNM, and the denial of two appeals by the President of UNM and the Board of Regents. Plaintiff was sanctioned for his policy violations in accordance with UNM policy and procedure, and following an evidentiary Peer Hearing on February 21, 2020, the sanction was upheld.

After Plaintiff was sanctioned but before the Peer Hearing, on December 31, 2019, Plaintiff filed his original complaint alleging, in part, violations of procedural due process under 42 U.S.C. § 1983. He sought money damages and injunctive and declaratory relief claiming that the Defendants had conducted a biased and incomplete investigation leading to an erroneous finding of policy violations without affording him a due process protections to include a pre and post deprivation hearing. The original complaint named a number of individual Defendants to include Garnett S. Stokes, Camille Carey, Francie Cordova, Angela Catena, Sara Cliffe, Emma Rodriguez, and Kevin Gick. *See* Notice of Removal (Doc. 1), Exhibit A. After the Defendants removed the matter to Federal Court, on February 26, 2020 Plaintiff voluntarily amended his pleading and in doing so, dropped several of the individual Defendants, and alleged claims only against Camille

Carey, Angela Catena, and Sara Cliffe[1].  *See* First Amended Complaint (Doc. 17).  Tellingly, the First Amended Complaint was filed *after* the Peer Hearing.

Defendants moved for a partial dismissal of the claims alleged in the First Amended Complaint focusing largely on the claims alleged against the individual Defendants.  After full briefing and a hearing, on August 4, 2020, the Motion was granted.  *See* Memorandum Opinion and Order (Doc. 64).  As part of that ruling, Plaintiff was allowed leave to file a second amended pleading.  *Id.*

On August 31, 2020, Plaintiff filed his Second Amended Complaint again alleging violations of procedural due process under 42 U.S.C. § 1983 seeking money damages and injunctive and declaratory relief.  With the amendment, Plaintiff dropped all claims against the previously named individuals (with the exception of Ms. Chavez), and sought relief against four new individual Defendants, Stephen Bishop, Lisa Broidy, Karin High, and Eric Lau, and revived claims against a previously dismissed Defendant, Kevin Gick.  *See* Second Amended Complaint (Doc. 68) (hereinafter "Complaint").  All claims against the Individual Defendants are premised upon their role in facilitating and conducting the Peer Hearing on February 21, 2020, and upholding the sanction levied against Plaintiff.  *Id.*, ¶¶ 141 – 179.  Plaintiff's claims against the Individual Defendants fail as a matter of law as these Defendants are immune from suit under the doctrines of absolute and qualified immunity for all claims seeking money damages (Count I).  Plaintiff's claims against the Individual Defendants seeking injunctive or declaratory relief (Counts II and III) fail as a matter of law because these Defendants lack any decision-making

---

[1] The First Amended Complaint also added Eva Chavez as a named Defendant.  Undersigned counsel does not represent Ms. Chavez.

authority to afford Plaintiff any of the injunctive or declaratory relief sought. Judgment should be entered in favor of the Individual Defendants and against Plaintiff.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted); and see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once this burden is met, the opposing party must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Ind.*, 912 F.2d 1238, 1241 (10th Cir. 1990), and see *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.") (internal quotations omitted), and Fed. R. Civ. P. 56(e)(2) ("an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."). Finally, the opposing party cannot escape summary judgment "by repeating conclusory opinions, allegations unsupported by specific facts, or speculation," but must instead demonstrate the existence of a genuine factual issue to be tried. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

"There is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable…or is not significantly probative…summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).  A mere "scintilla" of evidence is not enough to defeat summary judgment.  *Id.* at 248.  Similarly, there is no genuine issue for trial if, in considering the record as a whole, a rational fact finder could not find in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## UNDISPUTED MATERIAL FACTS

1.  At all relevant times, Stephen Bishop was the Chair of the Faculty Ethics and Advisory Committee, and in this capacity, received Plaintiff's request for a Peer Hearing pursuant to UNM Policy C07.  *See* Declaration of Stephen Bishop, attached as Exhibit A.

2.  As Chair, Defendant Bishop had communications with the Plaintiff about the scope of review of the Peer Hearing based upon UNM Policy C07.  *Id.*

3.  As Chair, Defendant Bishop helped to secure two other Faculty Ethics and Advisory Committee members to serve on the Peer Hearing panel involving Plaintiff.  *Id.*

4.  Defendant Bishop did not serve on the Peer Hearing panel.  *Id.*

5.  At all relevant times, Defendant Broidy was a member of the Faculty Ethics and Advisory Committee and agreed to serve as the Chair of the panel for the Peer Hearing of Plaintiff.  *See* Declaration of Lisa Broidy, attached as Exhibit B.

6.  At all relevant times, Defendant High was a member of the Faculty Ethics and Advisory Committee and agreed to serve as a panel member for the Peer Hearing of Plaintiff.  *See* Declaration of Karin High, attached as Exhibit C.

7.   At all relevant times, Defendant Lau was the Chair of the Music Department, and pursuant to UNM Policy C07, was requested and agreed to serve as an independent panel member for the Peer Hearing of Plaintiff.  *See* Declaration of Eric Lau, attached as Exhibit D.

8.   At all relevant times, Defendant Gick was Associate University Counsel.   In this capacity, Defendant Gick consulted with and advised the Peer Hearing panel members about the process and procedure in conducting the Peer Hearing.  *See* Declaration of Kevin Gick, attached as Exhibit E.

9.   The scope, procedure, and process of the Peer Hearing was controlled by UNM Policy C07.  *See* Exhibits A through E.

10.   Policy C07 allowed a faculty member to request a Peer Hearing before the Faculty Ethics and Advisory Committee when the faculty member was suspended without pay, and in accordance with Policy C07, Plaintiff requested a Peer Hearing.  *See* Exhibit A and referenced Policy C07.

11.   Plaintiff's Peer Hearing panel was selected pursuant to Policy C07 and encompassed two members of the Faculty Ethics and Advisory Committee and one uninvolved department chair. All three panel members were from outside the Anderson School of Management.  *See* Exhibits A through D.

12.   Based upon Policy C07, the scope of review of the Peer Hearing was to "uphold or reverse the proposal to suspend the faculty member without pay."  *Id.*

13.   The Chair of the Faculty Ethics and Advisory Committee and the Peer Hearing panel members did not have discretion to deviate from the scope of review.  *Id.*

14.   Based upon Policy C07, the panel members considered the following issues at the Peer Hearing:

- Procedural Questions – Was the sanctioning process consistent with relevant University policy? Were there any procedural irregularities that should invalidate the sanctioning outcome?

- Substantive Questions – Was the sanction appropriate and proportionate given the OEO violations for which the sanction was issued?

*See* Exhibits B through D.

15.  Pursuant to Policy C07, the Peer Hearing panel provided copies of the Model Hearing Procedure Rules to all parties, imposed the requirements of those procedural rules on all parties, and followed all Policy C07 requirements.  *Id.* and referenced Model Hearing Procedure Rules, and Dispute Resolution Hearing Procedure.

16.  The parties submitted witness and exhibit lists to the Peer Hearing panel.  *Id.*

17.  Plaintiff was not instructed by the panel members that he was unable to call any particular witness (including Ms. Chavez) or that he was unable to introduce documentary evidence.  *Id.*

18.  After Plaintiff submitted his witness list, the inclusion of one of the witnesses identified by Plaintiff, Ms. Samantha Harris[2], was called into question by the panel members.  During discussions about the scope of her potential testimony and any direct knowledge of events she may have, Plaintiff voluntarily withdrew Ms. Harris as a witness.  *Id.*

---

[2] At the time of the panel hearing, Ms. Harris was known to be an attorney associated with the Foundation for Individual Rights in Education ("FIRE"), whose "mission is to defend and sustain the individual rights of students and faculty members at America's colleges and universities."  *See* www.thefire.org.  Ms. Harris had authored blog entries about Plaintiff's claims against UNM during the OEO investigation and up to the filing of his original Complaint in state court on December 31, 2019.  Ms. Harris is now listed as counsel of record for Plaintiff in the present lawsuit.

19.  Plaintiff's witness list did not include Eva Chavez or any other witness who he now claims had exculpatory information.  *Id.*

20.  The panel did not exclude any witnesses or exhibits identified by Plaintiff.  *Id.*

21.  Pursuant to the Model Hearing Procedure Rules, the Dispute Resolution Hearing Procedure Rules, and consistent with Policy C07, Plaintiff was advised that his attorney could consult with him during the Peer Hearing but could not actively present Plaintiff's case. *Id.*

22.  Plaintiff's attorney was present during the Peer Hearing and routinely consulted with Plaintiff throughout the Peer Hearing.  *Id.*

23.  The panel conducted an on-record closed Peer Hearing on February 21, 2020, considering all witnesses and evidence submitted by both parties and consistent with its scope of review defined by Policy C07.  *Id.*

24.  Plaintiff cross-examined all adverse witnesses.  *Id.*

25.  Plaintiff did not testify.  *Id.*

26.  Based upon its review, the panel upheld the sanction against Plaintiff – suspension for one year without pay.  *Id.*

27.  Pursuant to Policy C07, Plaintiff was able to request a record review of the Peer Hearing decision by the Provost/Chancellor.  Plaintiff did not submit a request for a record review. *See* Exhibits A E, and *see* Declaration of Barbara Rodriguez, attached as Exhibit F.

28.  There is no procedural process contained in Policy C07 or any other UNM policy that would permit the panel members to reverse the panel decision on its own without a request for a record review.  *See* Exhibits A and E.

29.  The Individual Defendants have no decision making authority to alter or change UNM policy or procedures with respect to the OEO investigative process, the  sanctioning process, the

peer review appeal process, Policy C07, or the scope of representation provided by the Office of University Counsel.  *See* Exhibits A through E.

30.  Outside of the context of the Peer Hearing, the Individual Defendants have no decision making authority, or ability to reverse the outcomes and findings of the OEO investigation.  The Individual Defendants have no decision making authority or ability to  expunge Plaintiff's personnel file of any matter, control the disclosure of or contents of Plaintiff's personnel file, and/or to lift the one-year suspension against Plaintiff.  *Id.*

**ARGUMENTS AND AUTHORITY**

**I.      THE DOCTRINE OF ABSOLUTE IMMUNITY BARS ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SEEKING MONEY DAMAGES.**

Absolute immunity "defeats a suit at the outset, so long as the official's actions were within the scope of immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976).  "In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we apply a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (internal citations omitted) (citing to *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)).  The functional approach focuses "on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Id.*  Absolute immunity, therefore, applies in such instances "to ensure the unhindered performance of a public official's duties essential to the proper functioning of that process." *Imbler*, 424 U.S. at 427-28.  These instances include quasi-judicial processes, such as administrative hearings.  *See Saavedra v. City of Albuquerque*, 859 F.Supp. 526, (D. N.M. 1994) (applying absolute immunity to personnel hearing officers conducting hearings regarding the validity of the City of Albuquerque's termination of an Albuquerque Fire Fighter);

*Atiya v. Salt Lake County*, 988 F.2d 1013, 1017 (10th Cir. 1993) (applying quasi-judicial immunity to career services council members hearing appeals of employee grievances because their duties were "functionally comparable" to those of a state judge.); and *Gressley v. Deutsch*, 890 F.Supp. 1474, 1489-90 (D. Wyo. 1994) (applying absolute immunity to University Board of Trustees who acted in a quasi-judicial role in reviewing and sustaining the faculty hearing committee's recommendation to dismiss the plaintiff for cause in accordance with university policy and procedures).

### A.  The *Horwitz* elements

Absolute immunity is applicable where:

> the following formula is satisfied: (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must be sufficient safeguards in the regulatory framework to control unconstitutional conduct.

*Gressely*, 890 F.Supp. at 1490 (citing to *Horwitz v. Bd. Of Med. Examiners*, 822 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 484 U.S. 964 (1987)).  In *Gressely*, the court found that each of the *Horwitz* elements were satisfied.  First, relying upon a University Regulation, the court held that the Board of Trustees were performing functions similar to those involved in a judicial proceeding.  The regulation, 801 (3)(e)(2) and (3), prescribed the duties of the Board of Trustees, as follows:

> (2) If the hearing Committee recommend[ed] dismissal,…the Trustees review will be based upon the record of the hearing, and it will provide opportunity for argument, oral or written or both, by the principals at the hearing or by their representatives.
> (3) The decisions of the Hearing Committee will either be sustained by the Trustees, or the proceeding returned to the Committee with specific objections.  If returned, the Committee will then reconsider, taking into account the stated objections and receiving new evidence, if necessary.  The Trustees will make a final decision only after study of the Committee's reconsideration.

*Id.*, at 1491.  Because the Board of Trustees' "sole purpose was to sit as an appellate body" only acting upon the request of plaintiff for review "pursuant to the University Regulations," it was "beyond question that the Board of Trustees' function was similar to those involved in the judicial process."  *Id.*  Similarly, the second element was satisfied as the subsequent lawsuit following the Board of Trustees' decision "was ample proof that the Board of Trustees' determination has and likely would frequently result in damage lawsuits by disappointed parties."  *Id.*  As to the final element, the court noted that proper procedural safeguards were in place as the scope of review was limited to the committee hearing record, which in turn, required verbatim records of the hearing and a written decision and provided for the possibility of judicial review.  *Id.*

**B.  The conduct of the Individual Defendants satisfies the *Horwitz* elements.**

All claims against the Individual Defendants are premised upon their role in facilitating and conducting the Peer Hearing on February 21, 2020, and upholding the sanction levied against Plaintiff.  *Id.*, ¶¶ 141 – 179.  Defendant Bishop was the Chair of the Faculty Ethics and Advisory Committee, and while not a member of the Peer Hearing panel, communicated with Plaintiff about the scope of the Peer Hearing and helped to secure Committee members to serve on the panel.  *See* Undisputed Material Fact ("UMF") Nos.1-4.   Defendants Broidy and High were members of the Faculty Ethics and Advisory Committee and served on the Peer Hearing panel of Plaintiff.  UMF Nos. 5-6.  Pursuant to UNM Policy C07, Defendant Lau was requested to serve on the Peer Hearing panel as an uninvolved third member and agreed to serve in this capacity at the Peer Hearing.  UMF No. 7.  Defendant Gick was Associate University Counsel who advised the Peer Hearing panel members about process and procedure in conducting the Peer Hearing.  UMF No. 8.

Because Plaintiff was suspended without pay, paragraphs 10 and 11 of Policy C07 controlled the Peer Hearing process, which required Plaintiff to request a Peer Hearing within five working days of the dean's determination (which was done), and mandated the following process:

> 11. If a faculty peer hearing is requested as provided in this Policy, the chair of the Faculty Ethics Committee will arrange for a hearing before two members of that Committee from outside the faculty member's department, chosen by the Ethics Committee, and one uninvolved department chair from a different school or college chosen by the Provost/Chancellor. The hearing will be held as soon as reasonably possible and shall be conducted according to the University's Dispute Resolution Hearing Procedures. The University Secretary's office shall make arrangements for the hearing. Hearings shall be recorded and shall be private unless both parties agree that the hearing be open. The hearing panel may uphold or reverse the proposal to suspend the faculty member without pay. If the panel's decision is to reverse the proposal, the panel may direct the chair and dean to impose a lesser disciplinary measure. The panel's decision may be reviewed on the record by the Provost/Chancellor, but the panel's decision shall not be reversed or modified except in the case of clear error, which shall be detailed in writing by the Provost/Chancellor. The decision of the Provost/Chancellor is subject to discretionary review by the President or the Board of Regents if requested by the faculty member.

UMF Nos. 9-13. The Peer Hearing panel provided copies of the Model Hearing Procedure rules to all parties, imposed the requirements of those procedural rules on all parties[3], and followed Policy C07 requirements. UMF No. 15 and corresponding Model Hearing Procedure rules and, Dispute Resolution Hearing Procedure.

As defined by Policy C07, the scope of review of the Peer Hearing is limited to the validity of the sanction and sanctioning process as the panel "may uphold or reverse the proposal to suspend the faculty member without pay." *See* Policy C07, and UMF Nos. 13-14. The Individual Defendants did not have the discretion to deviate from this scope of review. *Id.* The panel

---

[3] The Model Hearing Procedure rules mimic UNM's Dispute Resolution Hearing Procedure rules.

conducted an on-record closed Peer Hearing on February 21, 2020, considering all witnesses and evidence submitted by both parties and consistent with its scope of review defined by Policy C07. UMF No. 23.  No witnesses or evidence submitted by the parties was excluded by the Peer Hearing panel.  While Plaintiff alleges in his Complaint that he was told he could not call Ms. Chavez and other third-party witnesses with exculpatory information, Plaintiff was never instructed that he could not call any particular witness.  UMF Nos. 17-19.  While Plaintiff's attorney could not actively present Plaintiff's case in the Peer Hearing pursuant to Policy C07, his attorney was present throughout the Peer Hearing and actively consulted with Plaintiff during the Peer Hearing. UMF Nos. 21-22.  In the Peer Hearing, Plaintiff cross-examined all adverse witnesses.  UMF No. 24.  Notably, Plaintiff's witness list did not include Ms. Chavez or any third-party witness with purported exculpatory information, and Plaintiff himself did not testify, such that Plaintiff did not present these witnesses for any type of examination.  UMF Nos. 17-19, 25. The Peer Hearing panel made its decision based upon all evidence submitted by the parties and within its scope of review. UMF Nos. 23-26.[4]

The functions performed by the Individual Defendants relative to the Peer Hearing demonstrate that the conduct at issue satisfies each of the *Horwitz* elements.  Clearly, the Individual Defendants were acting in a quasi-judicial role in their review of the sanction and the sanctioning process to satisfy the first element.  As defined by policy and procedure, the Individual Defendants imposed and followed procedural rules for conducting the Peer Hearing, reviewed the testimony and documentary evidence submitted by the parties, and rendered a decision upholding the

---

[4] Following a Peer Hearing decision, an aggrieved faculty member may pursue a review of the "record" by the Provost/Chancellor, and a discretionary review of the Provost/Chancellor's decision with the President or the Board of Regents.  Notably, Plaintiff did not request a record review by the Provost/Chancellor of the Peer Hearing decision.  UMF No. 27.

sanction – suspension for one year without pay.   With respect to the second element, just as in *Gresseley*, the present lawsuit is "ample proof" that the Peer Hearing panel's decision has and would likely result in other damage lawsuits by disappointed parties.  Finally, the Peer Hearing was conducted with procedural safeguards in place and conducted on the record.  Because each of the *Horwitz* elements are satisfied, the Individual Defendants are immune from the claims alleged in Count I seeking money damages under the Doctrine of Absolute Immunity.

It is anticipated that Plaintiff will focus on the third *Horwitz* element and argue that procedural safeguards were not met largely relying upon the allegations of his Complaint and purported due process violations.  Additionally, it is anticipated that Plaintiff will argue that the Peer Hearing decision is not subject to judicial review.  These arguments are properly rejected.  As explained in *Saavedra*:

> analysis of the procedural safeguards in the context of deciding whether to extend absolute immunity to quasi-judicial officers need not, and should not, take the form of a rigorous evaluation of whether the procedures in question independently satisfy due process in each individual case.  A quasi-judicial officer is entitled to absolute immunity for adjudicative acts even if his exercise of authority is flawed by the commission of grave procedural errors.

*Saavedra*, 859 F.Supp. at 532 (internal quotations omitted).  The procedural safeguards at issue for purposes of applying absolute immunity do not mandate a rigorous constitutional due process analysis.  Further, while admittedly the Peer Hearing decision was not subject to judicial review, it was subject to additional review by the Provost/Chancellor, and the President or the Board of Regents.  Plaintiff did not seek additional review of the Peer Hearing decision.  UMF No. 27.  Plaintiff should not be permitted to complain about a lack of judicial review when he did not afford himself of the review process under Policy C07 to correct "clear error."

Judgment should be entered in favor of the Individual Defendants and against Plaintiff for Count I of the Complaint under the Doctrine of Absolute Immunity.

## II.   THE DOCTRINE OF QUALIFIED IMMUNITY BARS ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

Government officials are entitled to qualified immunity from suit when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity…shields [officials] who have 'reasonable, but mistaken beliefs' and operates to protect [officials] from the sometimes 'hazy border[s]' of the law." *Tanner v. San Juan County Sheriff's Office*, 864 F.Supp.2d 1090, 1108 (D. N.M. 2012).  It is designed "to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow*, 457 U.S. at 807.  Qualified immunity "represents 'the norm' for public officials…and serves to insulate from suit 'all but the plainly incompetent or those who knowingly violate the law.'" *Lewis v. Tripp*, 604 F.3d 1221, 1224-25 (10th Cir. 2010).   "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Tanner* 864 F.Supp.2d at 1108 (citing *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010).  As the Tenth Circuit has noted:

> [a]lthough actions for damages provide an important remedy for individuals injured by governmental officials' abuse of authority, such actions sometimes subject officials to costly and harassing litigation and potentially inhibit officials from performing their official duties. In order to balance these competing interests, courts recognize the affirmative defense of qualified immunity, which protects all but the plainly incompetent and those who knowingly violate the law. The Supreme Court has emphasized the broad protection qualified immunity affords, giving officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery. Consequently, courts should resolve the purely legal question raised by a qualified immunity defense at the earliest possible stage in litigation.

*Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001) (quotation marks, quoted authorities, and internal citations omitted).

### A.  Plaintiff's burden to defeat qualified immunity defense.

Once a Defendant raises qualified immunity as a defense on summary judgment, Plaintiff must meet a "heavy two-part burden" and demonstrate "on facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity." *Tanner*, 864 F.Supp.2d at 1108 (citing *Medina v. Cram*, 252 F.3d at 1128 and *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Accordingly, it is Plaintiff's burden to point to particular facts that overcome the defense. *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985).  To do so, Plaintiff must do more than merely identify a clearly established legal test, and then allege that the Defendants violated it.  Instead, the Plaintiff must demonstrate a substantial connection between the actual conduct in question and prior law allegedly establishing that the Defendant's actions were clearly prohibited.  The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Consistent with the guidance of the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, (2009), the Court should proceed first to the "clearly established" prong of qualified immunity analysis when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Kerns v. Bader*, 663 F.3d 1173, 1180-81 (10th Cir. 2011) (citing to *Pearson v. Callahan*, 555 U.S. at 236-42).

> The key to the analysis is notice – an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights.  There need not be precedent declaring the exact conduct at issue to be unlawful, as long as the alleged

16

> unlawfulness was apparent in light of preexisting law. For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. There is no need that the very action in question have previously been held unlawful. Rather, it is only necessary that the unlawfulness of the conduct be apparent in light of the existing law. The plaintiff has the burden to cite to law he believes is clearly established.

*Springer v. Albin*, 398 Fed. Appx. 427, 434 (10th Cir. 2010) (internal citations and quotations omitted). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223 (2009)). Likewise, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

**B. The Individual Defendants are entitled to qualified immunity because it was not clearly established law on February 21, 2020 that a post-deprivation evidentiary hearing must be provided to Plaintiff to address his one-year suspension.**

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996)). Here, Plaintiff alleges he had a protected property right in his continued employment, and a protected liberty interest in his good name, reputation, honor, and integrity to satisfy the first element. *See* Complaint, ¶¶ 227 and 229. For purposes of this Motion, the Individual Defendants do not dispute these allegations. Assuming due process protections apply, the question is whether Plaintiff was afforded an appropriate level of process. Plaintiff's constitutional due process claim against the Individual Defendants is

17

limited to their role in the Peer Hearing, or the post-deprivation process. Complaint, ¶¶ 141-178. The Individual Defendants played no part in the OEO investigation, the OEO findings, the appeals afforded to Plaintiff, or the sanctioning process.  *See* Complaint, ¶¶ 1-140.  Accordingly, the relevant inquiry is whether it is was clearly established law that Plaintiff was entitled to an evidentiary hearing following his one-year suspension from UNM different than what was received and that it would be clear to a reasonable official that conducting the Peer Hearing in the manner provided to Plaintiff was unlawful.  Plaintiff cannot make such a showing.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Flor v. University of New Mexico*, 2020 WL 3410823, at * 3 (D. N.M. June 20, 2020) (citing to *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  In the context of public employment, due process protections require that a "tenured public employee" be provided "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.*, (citing to *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); and *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009)).  Further the purpose of an providing an employee a meaningful opportunity to respond and present his side of the case is to prevent erroneous action.  *Benavidez v. City of Albuquerque,* 101 F.3d 620, 626 (10th Cir. 1996) (citing to *Loudermill*, 470 U.S. at 543).

Here, it is undisputed that Plaintiff received a post-deprivation evidentiary Peer Hearing. UMF Nos. 15-16, 20, 23-26.  As such, Plaintiff's claim against the Individual Defendants is not based upon a lack of evidentiary hearing, but rather, premised on purported procedural deficiencies in the manner in which the hearing was conducted.  Specifically, Plaintiff alleges that the hearing failed to satisfy due process requirements because:

- The scope of the hearing was too narrow because was unable to attack the factual findings or conclusions of the OEO (Complaint, ¶¶142 -144);

- Plaintiff was prohibited from being represented by counsel at the Peer Hearing and at the pre-hearing meeting (Complaint, ¶¶ 145-157, 166);

- Plaintiff was prohibited from cross-examining Ms. Chavez and prohibited from calling key witnesses who Plaintiff claimed had exculpatory information.  (Complaint, ¶¶ 158, 161-163); and

- Plaintiff was prohibited from introducing evidence and/or limited in particular questions about evidence based upon the alleged improper scope of the hearing (Complaint, ¶¶ 164,167-178).

In order to defeat qualified immunity, Plaintiff must be able to demonstrate that it was established law at the time of the Peer Hearing that a reasonable official would know that utilizing the above alleged procedures in conducting the Peer Hearing was unlawful.  In undertaking this showing, Plaintiff must focus on "the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

A key fact in this analysis is Plaintiff's sanction.  It is undisputed that Plaintiff was not terminated.  Rather, due to policy violations, he was suspended for one-year without pay.  UMF No. 26.  In this factual context, there is no clearly established law mandating a full-blown evidentiary hearing in the specific manner advocated by Plaintiff to review the propriety of a sanction that is less than a termination.

For instance, even in the context of a post-termination hearing, the Tenth Circuit "indicated *in dicta* that [a] 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses."  *Flor*, 2020 WL 3410823, at * 8

(emphasis added) (citing *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000) (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)). Stated differently, even when a public employee has been terminated, requiring a higher level of inquiry, the Tenth Circuit has not mandated that the discharged employee be represented by counsel or be given the right to cross-examine adverse witnesses.  *Id.*, and *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands."); and *West v. Grand County*, 967 F.2d 362, 369 (10th Cir. 1992) ("[C]onfrontation and cross-examination…are not rights universally applicable to all hearings…Thus, whether the Due Process Clause requires that the terminated employee be offered the right to cross-examine or confront witnesses depends upon the significance and nature of the *factual disputes at issue*.") (emphasis added).

Again, in the context of a discharged employee, it is only in those cases where the pre-termination process is less elaborate that "a full-blown, adversarial post-termination hearing, held at a meaningful time, is necessary to determine the ultimate propriety of the discharge." *Calhoun v. Gaines*, 982 F.2d 1470 (10th Cir. 1992) (relying upon *Loudermill*, 470 U.S. 532); and *see Flor*, 2020 WL 3410823, at * 8  ("'To evaluate the constitutionality of the post-termination process', the Court 'must view it in light of the pre-termination procedures it follows.'" (citing to *Copelin-Brown v. New Mexico State Pers. Office*, 339 F.3d 1248, 1255 (10th Cir. 2005)).

The Court has already found in denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction that the pre-deprivation due process requirements afforded to Plaintiff were more than due process required as "Plaintiff received multiple opportunities to he heard prior to his suspension." *Flor*, 2020 WL 3410823, at * 4.  More importantly, the Court has found that Plaintiff "already admitted all the relevant facts" relied upon by the OEO to support its

decision as he never contested the authenticity of the communications between Ms. Chavez and himself.  *Id.*, 2020 WL 3410823, n. 10, and *see Codd v. Velger*, 429 U.S. 624, 627 (1977) ("[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee.").

As explained in *Benavidez v. City of Albuquerque*, 101 F.3d 620 (10th Cir. 1996):

> [w]hen the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the *post-termination hearing* become much more important. Such a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action, and requiring a dismissed employee to prove in this context that he was terminated without just cause may increase the risk of an erroneous deprivation. It is often difficult to prove a negative, and where the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing. *In contrast, when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great.* In this type of post-termination hearing, simply giving the employee "some opportunity" to present his side of the case "will provide a meaningful hedge against erroneous action." *See Loudermill,* 470 U.S. at 543 n. 8, 105 S.Ct. at 1494 n. 8.

*Id.*, at 626 (emphasis added, internal quotations and citations omitted, citing to *Loudermill*, 470 U.S. at 543, n. 8).

Even accepting Plaintiff's claimed procedural deficiencies in the Peer Hearing as true, Plaintiff cannot establish as a matter of law that he had a clearly established right to an evidentiary hearing in the manner he is advocating.  It is undisputed that he was afforded an evidentiary hearing.  While Plaintiff may disagree with the procedures used, it is clear that no reasonable official would believe that conducting the Peer Hearing in the manner afforded to Plaintiff was unlawful as the hearing included a right to cross-examine all adverse witnesses (with the exception

of Ms. Chavez[5]), the right to be advised by his counsel throughout the hearing process, the right

to introduce all documentary evidence he sought to introduce, and the right to call witnesses and

introduce evidence to support his belief that the sanctioning process was inconsistent with UNM

policy and the sanction was inappropriate and disproportionate to the policy violations at issue.

UMF Nos. 9-26.  The Individual Defendants are entitled to Qualified Immunity and judgment

should be entered in their favor for Count I of the Complaint.

## IV.    JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE INDIVIDUAL DEFENDANTS FOR ALL CLAIMS SEEKING INJUNCTIVE AND DECLARATORY RELIEF.

In Counts II and III of the Complaint, Plaintiff seeks injunctive and declaratory relief for

the same alleged violations of his federal constitutional rights to due process against the Individual

Defendants in their official capacities. Specifically, in Count II, and as previously alleged, Plaintiff

seeks "a reversal of the outcome and findings of the UNM investigation, expungement of

Plaintiff's personnel file reflecting the improper findings, discipline, and sanction, production of

verification of such expungement to Plaintiff, prohibiting UNM from disclosing Plaintiff's

personnel files reflecting the finding of a policy violation and discipline, and lifting of the one-

year suspension so that Plaintiff may return to work at UNM." Complaint ¶ 257. In Count III,

Plaintiff seeks a determination pursuant to the Declaratory Judgment Act, 28 U.S.C. § 220 and the

New Mexico Declaratory Judgment Act that:

---

[5] For the first time in his Second Amended Complaint, Plaintiff alleges that he was discouraged from calling Eva Chavez as a witness at the Peer Hearing as well as "key witnesses" who he believed had exculpatory evidence.

- "the investigative and sanctioning process utilized by Defendants are unconstitutional, improper, and violative of Plaintiff's rights, and, as such, inadequate and invalid as a matter of law[;]"

-  "the peer review appeal process is unconstitutional, improper, and violative of Plaintiff's rights, and as such, inadequate and invalid as a matter of law[;]" [and]

- "the Office of University Counsel's representation of the University in the sanctioning and review process that Plaintiff has undergone presents such a clear conflict of interest that results in the process being unconstitutional, improper, and violative of Plaintiff's rights, and as such, inadequate and invalid as a matter of law."

Complaint, ¶¶ 261 – 263.

As argued previously in Defendant's Motion to Dismiss, to state a viable claim for prospective injunctive relief against the Individual Defendants, Plaintiff must allege facts to demonstrate that these Defendants have the authority to provide the injunctive relief sought by Plaintiff. *See Soloviev v. Goldstein*, 104 F.Supp.3d 232, 245 (E.D.N.Y. 2015) (dismissing claim for reinstatement against state college officials because the plaintiff failed to allege that the individuals were in a position to grant the plaintiff's reinstatement); and *Klein v. Univ. of Kan. Med. Ctr.*, 975 F.Supp. 1408, 1417 (D. Kan. 1997) (dismissing claim against individual defendants in their official capacities because "[n]one of the individuals that [plaintiff] has sued has the power to provide him with the relief he seeks—reinstatement"). At the summary judgment stage, Plaintiff must point this Court to competent evidence demonstrating that the Individual Defendants have the authority to provide Plaintiff with the injunctive relief sought.  Fed. R. Civ. P. 56.

Tellingly, Plaintiff has not alleged—nor could he truthfully allege—that any of the named Individual Defendants have the authority to provide the injunctive relief or declaratory relief that

he seeks; to wit, reversal of the UNM OEO findings, expungement of his personnel records, and lifting of the suspension so that he may return to work.  Further, it is undisputed that none of the Individual Defendants have the authority to provide the injunctive relief Plaintiff is seeking.  *See* UMF Nos. 28-30.

Finally, and most importantly, injunctive relief and declaratory relief are remedies, not causes of action. *See, e.g., Leon v. Summit Cnty*. 2017 WL 5891771, at *5 (D. Utah Nov. 28, 2017) (slip op.) ("Injunctive relief is a remedy, not an independent cause of action. Injunctive relief is available as a remedy only where a party prevails on a separate legal theory. Because [plaintiff's] Section 1983 claims fail, so too does her request for injunctive relief."); *Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F.Supp.2d 971, 984 (D. Minn. 2004) ("A successful action for declaratory judgment requires a viable underlying cause of action."). Because there is no viable cause of action against the Individual Defendants, Plaintiff cannot proceed on his theories against these Defendants seeking injunctive and declaratory relief.  For these reasons, the Court should enter judgment in favor of the Individual Defendants and against Plaintiff for his requests for injunctive and declaratory relief as pled in Counts II and III of the Complaint.

## V.    DISCOVERY SHOULD BE STAYED FOR ALL DEFENDANTS.

As a general rule, once any defendant files a dispositive motion raising qualified immunity, a stay of discovery as to all Defendants is appropriate.  *See Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992); and *Ashcroft Iqbal*, 556 U.S. 662, 685-86 (2009).

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery" ... There are serious and legitimate reasons for this. If a government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is

> attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the government....

*Iqbal*, 556 U.S. at 685. In accordance with this general rule, the Individual Defendants seek an Order staying all discovery for all Defendants pending a decision on the present Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request Judgment be entered in their favor for Counts I, II, and III and an Order Staying Discovery as to all Defendants for the reasons discussed herein, and for such other and further relief the Court deems just.

Respectfully Submitted,

CONKLIN, WOODCOCK & ZIEGLER, P.C.

By: */s/ Alisa Wigley-DeLara*
    Alisa Wigley-DeLara
    320 Gold Ave., Suite 800
    Albuquerque NM 87102
    Telephone: (505) 224-9160
    *Attorneys for Defendants*

### Certificate of Service

I HEREBY CERTIFY that on October 15, 2020 , a true and correct copy of the above and foregoing was electronically filed with the clerk of the court by using the CM/ECF system which caused all counsel of record to be served by electronic means.

*/s/ Alisa Wigley-DeLara*
Alisa Wigley-DeLara