IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NICK VINCENT FLOR,**

        **Plaintiff,**

v.                                   Cause No. 1:20-cv-00027-JAP-LF

**THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
STEPHEN BISHOP, LISA BROIDY,
KEVIN GICK, KARIN HIGH, ERIC LAU,
individually and in their official capacities,
and EVA CHAVEZ,**

        **Defendants.**

### DECLARATION OF STEPHEN BISHOP

Stephen Bishop, being duly sworn under oath and deposes as follows:

1. I am over the age of 18, and the information contained in this declaration is based upon my personal knowledge.

2. At all relevant times and currently, I was the Chair of the Faculty Ethics and Advisory Committee at the University of New Mexico. I am also an Associate Professor of French with the University of New Mexico ("UNM").

3. In my capacity as Chair of the Faculty Ethics and Advisory Committee, I received Professor Flor's request for a Peer Hearing pursuant to UNM Policy C07 in the Faculty Handbook. A true and correct copy of Policy C07 is referred to herein and listed as Attachment 1. The request was made by Professor Flor because he had been suspended from his position without pay. *See* Policy C07.

4. After I received the request, I had communications with Professor Flor about the scope of review of the Faculty Ethics and Advisory Committee based upon requirements of UNM Policy

1

**EXHIBIT A**

C07.

5. I advised Professor Flor that the Faculty Ethics and Advisory Committee would be tasked to review the sanction against him and would not review the investigation of the Office of Equal Opportunity and its findings and determinations with respect to Professor Flor. This scope of review was consistent with Policy C07, which tasked the panel with "uphold[ing] or revers[ing] the proposal to suspend the faculty member without pay." *Id.*

6. In my capacity as Chair of the Faculty Ethics and Advisory Committee and consistent with Policy C07, I helped secure other Faculty and Ethics and Advisory Committee members to serve on the Peer Hearing panel of Professor Flor. Two Committee members, Lisa Broidy and Karin High agreed to serve.

7. The third Peer Hearing panel member was selected by the Provost's office per Policy C07.

8. The scope, procedure, and process of the Peer Hearing was controlled by UNM Policy C07. *Id.*

9. As Chair of the Faculty Ethics and Advisory Committee, I did not have discretion to deviate from the scope of review as set forth in Policy C07.

10. I did not serve on the Peer Hearing panel, did not participate in the Peer Hearing, and played no role in the Peer Hearing review.

11. Following a decision by the Peer Hearing panel, pursuant to Policy C07, Professor Flor was able to request a record review of the panel decision to be conducted by the Provost/Chancellor.

12. There is no procedural process contained in Policy C07 or any other UNM policy that would permit the Peer Hearing panel to reverse the Peer Hearing panel decision on its own.

13. In my capacity as Chair of the Faculty Ethics and Advisory Committee and as an Associate

Professor, I have no decision making authority to alter or change UNM policy or procedures regarding the OEO investigative and sanctioning process, the peer review appeal process, Policy C07, or the scope of representation provided by the Office of University Counsel. Similarly, I have no decision making authority or ability to reverse the outcomes and findings of the OEO investigation, expunge Professor Flor's personnel file of any matter, control the disclosure of or contents of Professor Flor's personnel file, and/or to lift the one-year suspension against Professor Flor.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October _15_, 2020

*Stephen Bishop*
Stephen Bishop

# C07: Faculty Disciplinary Policy

*Policy*

(Approved by the Faculty Senate March 22, 2011; Approved by Board of Regents December 13, 2011)

1. The University encourages a supportive problem-solving approach to workplace problems, but the University recognizes that misconduct may require disciplinary action. The University normally uses progressive discipline to address possible misconduct. Progressive discipline is intended to be corrective, not punitive in nature. It is designed to provide faculty with notice of deficiencies and an opportunity to improve. However, some violations of policies and procedures, or continued negative behavior, may be of such serious nature that suspension without pay or discharge pursuant to Faculty Handbook policies may be appropriate.

2. Any member of the faculty, including any serving as an academic administrator, who violates a published University policy may be subject to warning, censure, suspension without pay, or dismissal. Teaching or research assistants in their faculty capacity are considered faculty members for purposes of this Policy.

a) "Warning" means an oral reprimand or expression of disapproval.

b) "Censure" means a written reprimand or expression of disapproval, which should include an explanation of the nature of the misconduct, and the specific action to be taken by the faculty member and/or chair to correct the problem, including mentoring, if appropriate, and a statement that further disciplinary action could occur should the problem persists.

c) "Suspension without pay" means disciplinary suspension without regular salary for a stated period of time.

d) "Dismissal" means termination of employment (see Faculty Handbook sections B.5.3, B.6.4.3, and B.5.4).

3. The procedures specified in this Policy provide for the consideration and determination of proposed disciplinary actions against faculty members short of dismissal. Consideration and determination of disciplinary actions that may result in a proposed dismissal of a tenured faculty member, or dismissal of an untenured faculty member prior to expiration of his or her contract term, are governed by sections B.5.3, B.6.4.3, or B.5.4, respectively, of the Faculty Handbook and are not covered by these procedures. However, cases in which faculty dismissal has been considered pursuant to sections B.5.3, B.6.4.3, or B.5.4, and a lesser sanction is ultimately proposed instead by the administration, shall be handled under this policy, without duplicating steps that have already taken place. In particular, if the chair and dean conclude that suspension without pay is appropriate in a case in which dismissal was considered but rejected, the faculty

member is entitled to request a peer hearing as provided below in sections 10 and 11.

4. In the case of allegations against a faculty member that appear to be within the scope of another specific University policy that has its own procedures for investigation and resolution (including but not limited to allegations of research misconduct, discrimination, or sexual harassment), the chair or dean shall forward such allegations to the appropriate person or department for handling pursuant to the applicable policy. If such a process requires the chair to make a disciplinary determination after an investigation and recommendation from another University body, this policy will be followed in determining the appropriate discipline. If the other procedure involved a hearing before a faculty committee, any factual determinations will not be subject to reconsideration by faculty peer review under this policy.

5. References to the department chair in this policy also include the program director or associate or vice dean in a non-departmentalized school or college. If allegations are made against a department chair or other administrator, the next higher academic authority shall perform the functions assigned in this Policy to the chair, and the provisions shall be modified as appropriate. Any individual(s) bringing an allegation of faculty misconduct to the chair's attention is protected by, and subject to, the University's policy on reporting misconduct (UBPPM section 2200, Whistleblower Protection and Reporting Suspected Misconduct and Retaliation).

6. In all cases other than those set forth in paragraphs 3 and 4 above, if a member of the faculty is alleged to have violated a policy of the University, the department chair shall provide the faculty member a written notice explaining the nature and specific content of the alleged violation, together with a copy of this policy, and shall discuss the alleged violation with the faculty member. The written notice shall be given to the faculty member within ninety (90) days of the chair learning of the apparent violation of policy. The faculty member may be accompanied by one person in meeting with the chair. The faculty member and the chair shall notify each other at least two working days prior to the scheduled meeting who, if anyone, will be accompanying them at the meeting. The chair should issue a written report within five (5) working days after the meeting summarizing the discussion with the faculty member, keep a copy in the faculty member's file, and send a signed copy to the faculty member. Before, during or after the meeting, the chair may ask the faculty member to respond in writing to the notice and present any relevant written material within a reasonable time specified by the chair. Likewise the faculty member shall be free to submit any materials reasonably desired on his/her own volition, no later than five (5) working days after meeting with the chair unless the chair grants additional time in writing. The matter may be concluded at this point by the mutual consent of all parties.

7. The department chair or the faculty member may initiate conciliation proceedings at any time prior to the chair's decision by contacting the Ombuds Dispute Resolution Services for Faculty program as provided in Section C345 with notice to the other parties. Conciliation may be undertaken if both parties agree.

8. If a mutually agreeable resolution (with or without conciliation) is not achieved, the department chair shall make a decision in the matter and communicate it to the faculty member in writing within ten (10) working days after meeting with the faculty member or the termination of conciliation efforts if they are unsuccessful, whichever is later. The faculty member shall have ten (10) working days from receipt of the written decision to submit a written request for review by the appropriate dean, who will issue a written decision concerning whether the chair's decision is upheld, modified or reversed. Prior to making a decision, the dean shall meet with the department chair and the faculty member, and their representatives if desired, together or separately, and shall receive and consider any documents the parties wish to submit. Documents shall be submitted within five (5) working days of the faculty member's request for review. If formal conciliation has not been attempted previously, the dean may refer the matter to Ombuds Dispute Resolution Services for Faculty. The dean will communicate his/her decision to the parties in writing within ten (10) working days after meeting with the faculty member or the termination of conciliation efforts if they are unsuccessful, whichever is later.

9. If the faculty member does not agree with the dean's action, he/she may submit a written request for review by the Provost or Chancellor within five (5) working days of receipt of the dean's decision. The Provost/Chancellor will decide the matter on the record unless he/she determines that it would be helpful to meet with the parties, together or separately. Within ten (10) working days after receipt of the complete record or after meeting with the parties, whichever is later, the Provost/Chancellor shall uphold, modify or reverse the dean's decision by written notice to the parties. The Provost/Chancellor may seek an advisory investigation and opinion from the Faculty Ethics Committee. The decision of the Provost/Chancellor is subject to discretionary review by the President or Board of Regents if requested by the faculty member.

10. If the chair, after meeting with the faculty member and considering all materials submitted pursuant to section 6, proposes to suspend the faculty member without pay, the chair shall meet with the dean to review the matter. If the proposal is supported by the dean after meeting with the chair and the faculty member, the faculty member is entitled to a faculty peer hearing. The faculty member shall send such a request to the Provost/Chancellor within five (5) working days of receipt of the dean's determination.

11. If a faculty peer hearing is requested as provided in this Policy, the chair of the Faculty Ethics Committee will arrange for a hearing before two members of that Committee from outside the faculty member's department, chosen by the Ethics Committee, and one uninvolved department chair from a different school or college chosen by the Provost/Chancellor. The hearing will be held as soon as reasonably possible and shall be conducted according to the University's Dispute Resolution Hearing Procedures. The University Secretary's office shall make arrangements for the hearing. Hearings shall be recorded and shall be private unless both parties agree that the hearing be open. The hearing panel may uphold or reverse the proposal to suspend the faculty member without pay. If the panel's decision is to reverse the proposal, the panel may direct the chair and dean to impose a lesser disciplinary measure. The panel's decision may be reviewed on the record by the Provost/Chancellor, but the panel's decision shall not be reversed or

modified except in the case of clear error, which shall be detailed in writing by the Provost/Chancellor. The decision of the Provost/Chancellor is subject to discretionary review by the President or Board of Regents if requested by the faculty member.

12. The faculty member may bring a complaint before the Committee on Academic Freedom and Tenure (AF&T) if he/she believes the matter or its handling is within the jurisdiction of the Committee. The Committee will determine whether the matter is within its jurisdiction and, if so, shall handle the matter under the Policy on Academic Freedom and Tenure. Normally, review by the AF&T Committee should be sought after the determination by the Provost/Chancellor. If the faculty member pursues the matter before the AF&T Committee, AF&T shall accept the facts as determined by the faculty peer hearing, if one was held.

13. If the final determination is that no misconduct occurred, efforts shall be undertaken to the extent possible and appropriate to fully protect, restore, or maintain the reputation of the faculty member.

14. These procedures do not supersede Appendix VIII to Part B of the Faculty Handbook, concerning the Faculty Ethics Committee, and a faculty member who believes that he/she has been improperly accused of unethical behavior may bring the matter to the attention of the Ethics Committee under Appendix VIII after determination by the Provost/Chancellor.