**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**NICK VINCENT FLOR,**

   **Plaintiff,**

**v.**              **Cause No. 1:20-cv-00027-JAP-LF**

**THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
STEPHEN BISHOP, LISA BROIDY,
KEVIN GICK, KARIN HIGH, ERIC LAU,
individually and in their official capacities,
and EVA CHAVEZ,**

   **Defendants.**

**DECLARATION OF LISA BROIDY**

   Lisa Broidy, being duly sworn under oath and deposes as follows:

 1. I am over the age of 18, and the information contained in this declaration is based upon my personal knowledge.

 2. At all relevant times, I was a committee member of the Faculty Ethics and Advisory Committee at the University of New Mexico.  At all relevant times and currently, I was a Professor of Sociology with the University of New Mexico ("UNM").

 3. In my capacity as a committee member of the Faculty Ethics and Advisory Committee, I was advised of Professor Flor's request for a Peer Hearing pursuant to UNM Policy C07 in the Faculty Handbook, and agreed to serve on his Peer Hearing panel.  I served as the Chair of the Peer Hearing panel.

 4. Consistent with Policy C07, as a committee member of the Faculty Ethics and Advisory Committee, and as Chair of the Peer Hearing panel for Professor Flor, I understood that the scope of review of the Peer Hearing panel was limited to "uphold[ing] or revers[ing] the proposal to

**EXHIBIT B**

suspend the faculty member without pay." *See* UNM Policy C07.

5. I advised Professor Flor directly and jointly with the Peer Hearing panel that the scope of review at the Peer Hearing would be limited to:

- Procedural Questions – Was the sanctioning process consistent with relevant University policy? Were there any procedural irregularities that should invalidate the sanctioning outcome?
- Substantive Questions – Was the sanction appropriate and proportionate given the OEO violations for which the sanction was issued?

Again, this scope of review was consistent with Policy C07.

6. The scope, procedure, and process of the Peer Hearing was controlled by UNM Policy C07. *Id.* As a committee member of the Faculty Ethics and Advisory Committee and as the Chair of the Peer Hearing Panel of Professor Flor, I did not have discretion to deviate from the scope of review as set forth in Policy C07.

7. Pursuant to Policy C07, the Peer Hearing panel provided copies of the Model Hearing Procedure Rules to all parties, imposed the requirements of those procedural rules on all parties, and followed all Policy C07 requirements. *See* true and correct copies of the Model Hearing Procedure Rules, and Dispute Resolution Hearing Procedure referenced herein and attached as Attachments 1 and 2 respectively.

8. Pursuant to these rules of procedure, the parties submitted witness and exhibit lists to the Peer Hearing panel.

9. At no time before Professor Flor submitted his witness and exhibit lists or after did I instruct him that he could not call any particular witness (including Eva Chavez) or that he was unable to introduce documentary evidence.

10.   Regarding Professor Flor's proposed witnesses, he included a witness by the name of Samantha Harris, an individual not associated with UNM.  It was unclear to myself and the other panel members what information she could provide that would assist the panel in its review. Before any decision was made about the ability of Ms. Harris to testify, Professor Flor voluntarily withdrew this witness.

11.   Professor Flor's witness list did not include Eva Chavez or any other witness who he now claims had exculpatory information.

12.   The Peer Hearing panel did not exclude any witnesses or exhibits identified by Professor Flor before the hearing or during the hearing.

13.   Before the Peer Hearing and pursuant to the Model Hearing Procedure Rules, the Dispute Resolution Hearing Procedure Rules, and consistent with Policy C07, Professor Flor was advised that his attorney could consult with him during the Peer Hearing but could not actively present his case at the Peer Hearing.

14.   Professor Flor's attorney was present during the Peer Hearing and routinely consulted with Professor Flor throughout the Peer Hearing.

15.   The panel conducted an on-record closed Peer Hearing on February 21, 2020, considering all witnesses and evidence submitted by both parties and consistent with its scope of review defined by Policy C07.

16.   During the Peer Hearing, Professor Flor cross-examined all adverse witnesses.

17.   Professor Flor did not testify on his own behalf at the Peer Hearing.

18.   Based upon its review, the panel upheld the sanction against Professor Flor – suspension for one year without pay.

19.   I no longer serve on the Faculty Ethics and Advisory Committee and I am currently on

sabbatical.  At the time of the Peer Hearing and currently, I had no decision making authority to alter or change UNM policy or procedures regarding the OEO investigative process, the faculty sanctioning process detailed in Policy C07, the peer review appeal process detailed in Policy CO7, or the scope of representation provided by the Office of University Counsel.  I have no decision making authority or ability to reverse the outcomes and findings of the OEO investigation, to expunge Professor Flor's personnel file of any matter, and/or to control the disclosure of or contents of Professor Flor's personnel file.  In my present capacity and outside of the context of the Peer Hearing itself, I have no decision making authority to lift the one-year suspension against Professor Flor.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 14, 2020

Lisa Broidy

APPENDIX

## MODEL HEARING PROCEDURE

<u>MODEL HEARING PROCEDURE</u>

### ARTICLE 1.  INTRODUCTION

1.1   <u>General</u>.  This document provides a standard operating procedure for formal hearings to resolve

conflicts at institutions of higher education.  This procedure may be incorporated in another

procedure by reference, either as is or with appropriate modifications as set forth in the other

procedure.

This procedure may also be used on an <u>ad</u> <u>hoc</u> basis to handle individual situations where

the decisionmaker determines that a formal hearing is an appropriate means to resolve the issue

in question.  In such case the decisionmaker will inform the parties in writing that this Procedure

will be followed, and will specify any variations from this Procedure.

Normally, a hearing will be held only after the parties and appropriate institutional

officials have attempted to resolve the dispute informally.

1.2   <u>Definitions</u>.  For purposes of this Procedure, the person initiating the grievance or challenging

an earlier decision is the "complainant;" the person responding to the grievance or seeking to

uphold the earlier decision is the "respondent."  This Procedure assumes that a hearing panel has

been appointed by the appropriate authority and that an Administrator has been designated to

serve the panel.

### ARTICLE 2.  PREHEARING MATTERS

2.1   <u>Preparation of Evidence</u>.

2.1.1        If any material facts are believed to be in dispute, the parties shall prepare

evidence for the hearing which may be in the form of documents, testimony of

A-1

witnesses, or other materials.

2.1.2    All members of the institutional community shall cooperate with the parties' reasonable requests to provide evidence and to appear at the hearing as witnesses. If a party is having difficulty getting cooperation from a potential witness or source of evidence, he or she shall file a request for assistance with the Administrator, who shall forward it to the panel. If the panel determines that the request is reasonable, it shall assist the party in gaining the necessary cooperation within the community.

2.2    Notice Requirements. At least five (5) working days before the hearing, each party shall provide the Administrator with ____ copies (1 for the Administrator, 1 for the other party, and ____ for the panel) of the following information, who shall distribute copies to the other party and to the panel:

2.2.1    A list of intended witnesses, or a statement that no witnesses will be called. The panel may place reasonable limitations on the number of witnesses, either before or after the list is submitted, but in no event more than three (3) working days prior to the hearing. No witnesses other than those on the list may testify without the consent of the panel.

2.2.2    Any witness statement submitted pursuant to Section 3.5.

2.2.3    The name of any advisor appearing with the party at the hearing and whether the advisor is an attorney. A party may not bring an advisor without such notification, unless one of the following exceptions applies.

2.2.3.1    A party may bring any advisor if the other party and the Administrator or Panel consent.

A-2

2.2.3.2    If a party does not designate an advisor, and the other party designates a non-attorney advisor, the first party may bring a non-attorney advisor without prior notification.

2.2.3.3    If a party does not designate an attorney advisor and the other party does designate an attorney advisor, the first party may bring an attorney advisor without prior notification.

2.2.4    Whether the party requests that his advisor be allowed to present the case, in whole or in part

2.2.5    Whether the party requests a public hearing. The hearing shall be private unless both parties agree to a public hearing.

2.2.6    Copies of documents the party plans to introduce into evidence. No other documents may be introduced into evidence without notification unless the other party or the Panel consents. Approval of the Panel shall depend on the importance of the document, whether the party could have obtained it earlier, the time remaining until the hearing, and the degree of prejudice to the other party.

2.3    <u>Order of Arguments and Evidence</u>. The panel may, at least three (3) days before the hearing, specify the order in which the parties present their arguments and any evidence. If the panel does not specify within this time frame, the order specified in Section 3.4 shall be used.

2.4    <u>Pre-Hearing Conference</u>. After receipt of the information specified in Section 2.2, the Administrator and/or the Chair of the hearing panel may meet with the parties and/or their advisors to consider clarifying or simplifying the issues to be heard by the panel, answering any procedural questions, limiting the number of witnesses, or considering any other matters which may aid the conduct of the hearing.

A-3

## ARTICLE 3.  HEARINGS

3.1 Evidence. If any material facts are in dispute, the parties may testify and may present testimony of other witnesses and introduce and explain documents and other evidence at the hearing. The panel may exclude unfair and irrelevant evidence, but is not required to follow judicial rules of evidence.

The panel may require the production of further evidence beyond that presented by the parties (including the testimony of other witnesses) if it believes such evidence is available and material to the issues in dispute. Either the parties or the Administrator may be asked to obtain such evidence. The hearing shall be resumed when such evidence is produced.

3.2 Absent Parties. All panel members and both parties shall be present at hearings. Failure by either party to appear at the hearing may be grounds for summary finding against the absent party. Alternatively, the Panel may choose to proceed with the hearing without the absent party, and make its decision based upon the evidence available. Failure to comply with the notification provisions of Section 2.2 may be construed as failure to appear, for the purposes of this section. Upon request of the absent party, a finding made under this section may be set aside and a new hearing scheduled if the absentee shows he or she could neither attend the hearing nor request a postponement of the hearing in a timely manner.

3.3 Advisors. Each party may have one advisor at the hearing, who may be an attorney. Parties may consult freely with their advisors throughout the hearing, but advisors may not speak for the parties unless the panel determines that one or both parties are unable fairly to present their case except through their advisor.

3.4 Order of Evidence. The panel may, pursuant to Section 2.3, determine the order in which the parties present their arguments and any evidence. If the panel does not specify, the following order shall be used:

A-4

(1)     complainant presents his or her case;

(2)     respondent presents his or her case;

(3)     in the discretion of the panel, rebuttal by complainant and respondent may be allowed;

(4)     complainant makes closing arguments;

(5)     respondent makes closing arguments.

With permission of the panel, evidence may be introduced out of order and additional evidence may be introduced.

3.5     Witnesses. The parties may present the testimony of witnesses in support of their case.

When a witness is unable to attend a scheduled hearing, the witness may make an affidavit which may be introduced at the hearing. The affidavit shall be disclosed to the other party pursuant to Section 2.2.2 in order to permit the other party to contact the witness and to prepare for appropriate rebuttal at the hearing. The panel shall exclude the affidavit if the other party has been unable to secure the cooperation of the witness in spite of diligent attempts to do so.

The parties and panel members shall have the right, within reasonable limits set by the panel, to question the parties and all witnesses who testify orally. Reasonable limits may include requiring that questions be directed through the panel.

3.6     Record of Hearing. The Administrator shall make a tape recording of the proceedings. The parties and their representatives may listen to the tape. At a party's request, the Administrator shall provide the party with a duplicate of the tape at the party's cost.

The record of the hearing shall consist of the tape recording and all physical items or documents introduced as evidence. The record shall be kept by the Administrator for five years after all appeals have been concluded or after the time for appeal has expired.

A-5

3.7    Written Arguments.  After hearing the evidence, the panel may request or accept written arguments from the parties and defer consideration of the case for up to two weeks until such written arguments have been submitted.  Each party shall submit five copies of such written arguments to the Administrator, who shall distribute them to the other party and the panel.  Time limits for the panel's decision shall be extended accordingly.

## ARTICLE 4.  GENERAL PROVISIONS

4.1    Time Limits.  For good cause, the panel shall extend any time limit set forth in these rules. Good cause shall include the fact that a time limit includes finals week or periods such as vacations, holidays, or intersessions if parties or decisionmakers are absent from the institution. Any time extension shall be communicated in writing to all interested parties along with a new written schedule.

4.2    Absent Party.  If one party is absent from the institution, the decisionmaker, with both parties' permission, may permit the absent party to participate in a hearing or interview by conference call or otherwise.

4.3    Mailing.  All documents sent by the Administrator to the parties shall be sent by certified mail or personal delivery.

3247-E.reb

A-6



# HLC Accreditation
# **Evidence Document**

**Title:  UAPPM Policy 3220: Ombuds Services and Dispute Resolution for Staff**

**Office of Origin:  University Administrative Policies and Procedures Manual**

**Description:**  The general policy in the UAPPM that puts forward the Ombuds/Dispute Resolution Services for Staff.

**Date:  2014**





This version was in effect
for the period of 5-29-14 to _____ .

# Administrative Policies and Procedures Manual - Policy 3220: Ombuds/Dispute Resolution Services for Staff

**Date Originally Issued: 11-01-1994**
**Revised: 04-01-2003, 05-29-2014**
**Subject to Change Without Notice**

## 1. General

Ombuds/Dispute Resolution Services for Staff ("Ombuds/DR") provides independent, impartial, confidential, and informal processes for managing or resolving work-related issues and problems. Except as limited in <u>Section 3.</u> herein, Ombuds/DR is available to staff and their co-workers ("employees") and supervisors, as well as to faculty who supervise employees. Emphasis is on early and informal identification and resolution with fair consideration of all sides of an issue or problem. The procedures in this policy should be administered flexibly and expeditiously at the lowest possible level with the cooperation of all concerned.

### 1.1. Retaliation

Retaliation against an employee for raising an issue or participating in any way in dispute resolution under this policy is strictly forbidden and shall be cause for disciplinary action if found to have occurred. Refer to <u>UAP 2200</u> <u>("Whistleblower Protection and Reporting Suspected Misconduct and Retaliation")</u> for policies and procedures on retaliation.

## 2. Confidentiality

Information obtained by Ombuds/DR staff in the course of facilitation, informal attempts at resolution, mediation, or other activities is confidential to the extent permitted by law. At the initial visit, Ombuds/DR staff will explain any limitations to confidentiality before discussing specific issues. With permission from the employee, Ombuds/DR staff may seek assistance from various University offices such as the Office of Equal Opportunity (OEO); Counseling, Assistance, and Referral Service (CARS); Human Resources; Risk Management; and Internal Audit to resolve issues or problems in a flexible, cooperative, and responsive manner.

## 3. Scope

This policy is intended to help employees with issues or problems that affect them in the workplace. Ombuds/DR staff serve in a neutral role and use alternative dispute resolution methods, described in <u>Section 6.</u> herein, to return the primary responsibility for resolving conflicts to the individuals involved. If an individual believes there is a conflict of interest with Ombuds/DR staff conducting the dispute resolution process, a mediator selected by mutual agreement from a panel of outside mediators is available to conduct dispute resolution. Ombuds/DR staff assist and guide individuals or groups in their efforts to identify mutually agreeable solutions. The Faculty Dispute Resolution Office offers alternative dispute resolution methods to faculty. Ombuds/DR Department may work with the Faculty Ombuds/Dispute Resolution Office in instances of faculty/staff disputes with appropriate consent and releases from all

participants. Both programs coordinate services and protocols to assist faculty and staff, in accordance with the "best practices" of the International Ombudsman Association Standards of Practice and Code of Ethics, and applicable University policies and procedures.

Employees with concerns about possible violations of University policy or state or federal laws or regulations that are more general in nature (sometimes called "whistleblowing"), should report such concerns according to UAP 2200 ("Whistleblower Protection and Reporting Suspected Misconduct and Retaliation"). Allegations of unlawful discrimination or sexual harassment are handled by the Office of Equal Opportunity (OEO) in accordance with UAP 2720 ("Equal Opportunity, Non-Discrimination, and Affirmative Action") and UAP 2730 ("Sexual Harassment"). Ombuds/DR staff will refer employees to report such allegations to OEO.

Employees who are members of a collective bargaining unit have specific grievance procedures, some of which include participation in the Ombuds/DR process. These employees should refer to their specific collective bargaining agreements. Employees should be aware that there may be federal or state laws and remedies pertaining to workplace complaints, and that use of the dispute resolution process under this policy does not extend the deadlines within which to seek assistance from outside agencies or file legal proceedings.

## 4. Resources

The University has a number of resources that can provide employees with advice and assistance in resolving work-related issues and problems. These resources include:

- the management chain
- Ombuds/DR
- the Faculty Ombuds/Dispute Resolution Office
- the Human Resources Division
- OEO

If employees are working with more than one (1) of the offices mentioned above concerning the same issue or problem, they should inform the other offices involved, in order to avoid duplication of services.

## 5. Supervisor Responsibilities

Supervisors at all levels, are responsible for resolving work-related issues and problems in an appropriate, fair, and prompt manner as soon as reasonably possible after becoming aware of the issues or problems. Supervisors are responsible for participating in training offered by the University on management and supervisory skills. Supervisors should seek advice and assistance in resolving issues and problems, as appropriate, from the University resources listed in Section 4. above.

## 6. Employee Responsibilities

Employees should try to resolve work-related issues or problems as soon as reasonably possible after becoming aware of the issues or problems. Employees are encouraged to consider their supervisors as resources in their problem-solving efforts. Employees are also encouraged to go to Ombuds/DR for assistance with constructive dispute resolution efforts.

Non-bargaining unit employees in the DR process may request and have advisors of their choice present for all Ombuds/DR processes listed herein. Bargaining unit employees may request advisors if defined in their collective

bargaining agreement. Advisors provide support and assistance to employees using the Ombuds/DR process. The extent of the advisor's role may vary on a case-by-case basis. Advisors share the responsibility with employees of making efforts to resolve concerns in a collaborative manner and observe the confidentiality of all relevant Ombuds services and DR processes.

To assist employees in resolving work-related problems and issues, the University offers communication skills and conflict resolution training. Employees may seek advice and assistance in resolving work-related issues or problems, as appropriate, from the University resources listed in Section 4. above.

# 7. Dispute Resolution Processes

In all instances Ombuds/DR staff serve in a neutral role. In collaboration with Ombuds/DR staff, the individuals affected by the issue or problem will select one or more of the appropriate dispute resolution methods described below.

- Collaborative problem solving: Ombuds/DR staff facilitates conversations with individuals involved in a conflict in finding ways to work together to acknowledge their interests and improve their relationship.

- Employee/supervisor consultation: Ombuds/DR staff assists employees and supervisors with problem solving, effective communication, management skills, and/or preventing conflicts.

- Mediation: Ombuds/DR staff assists individuals in reaching a mutually acceptable resolution to workplace issues.

- Staff as Mediators Program: UNM employees coordinated by the Ombuds/DR staff are available to assist employees on request.

- Ombuds/DR staff reviews and assesses situations and makes recommendations.

- Formal policy interpretation obtained from the applicable office.

- Departmental consultations, assistance, and training designed to improve interactions and productivity and reduce conflict.

- Facilitation: Ombuds/DR staff creates a process intended to encourage ongoing communication and problem solving.

- Training: Ombuds/DR staff provides training in dispute resolution and other related issues.

- Referral to other University resources.

All individuals involved in an issue or problem are required to participate in the dispute resolution process unless otherwise provided by in the applicable collective bargaining agreement. If one or more of the involved individuals does not participate, the Ombuds/DR has the discretion to pursue resolution through the applicable management chain or appropriate administrators. The Ombuds/DR may also bring forward to the appropriate administrators concerns about specific supervisors or employees when a policy violation or pattern of inappropriate behavior is observed, subject to the confidentiality requirements described in Section 2. herein.

## 7.1. Progressive Discipline

Upon request, Ombuds/DR staff will assist employees and supervisors in their efforts to resolve disagreements or conflicts. This assistance may eliminate the need for disciplinary action. If a supervisor initiates disciplinary action, non-bargaining unit employees may request an advisor of their choice be present at any meeting with the supervisor where the disciplinary action is initiated, but such meetings must be coordinated by Ombuds/DR. Bargaining unit employees may request advisors if defined in their collective bargaining agreement.

Ombuds/DR is intended to supplement, not replace, formal procedures. Employees can contest any disciplinary action through Ombuds/DR, although the final decision on disciplinary action is made by the employee's supervisor. Participating in an informal dispute resolution process does not necessarily put discipline on hold. However, supervisors in consultation with the Ombuds may choose to place disciplinary action on hold pending the results of dispute resolution process. Refer to UAP 3215 ("Performance Management").

## 8. Dean or Director's Decision

If after a good faith effort the individuals have not resolved the conflict, any party involved in the dispute resolution process may ask Ombuds/DR to forward a request for a decision to the cognizant dean or director. The dean or director will issue a written decision within four (4) weeks concerning the issues raised unless extenuating circumstances delay such action. If the dean or director was involved in the dispute resolution process, the request shall be forwarded to the next level supervisor or cognizant vice president not involved in the dispute resolution process.

Ombuds/DR will forward the dean or director any written concerns provided by either party to the issue. The dean or director shall meet with the parties involved and consult with Ombuds/DR before making a decision. In most circumstances the dean or director may choose to meet separately with each of the parties. Non-bargaining unit employees may request an advisor of their choice be present in the meeting with dean or director. Bargaining unit employees may request advisors if defined in their collective bargaining agreement. Meetings in which an employee wishes to have an advisor present must be coordinated by Ombuds/DR. The decision of the dean or director shall be final, unless there is discretionary review by the President or Board of Regents as provided in Section 10. herein.

## 9. Review of Suspension Without Pay or Termination

If post-probationary employee has been suspended without pay or discharged, the employee is entitled to a peer hearing or arbitration upon request. The employee should send the request, with the Notice of Final Action, to Ombuds/DR within two (2) weeks of the employee's receipt of the Notice of Final Action per Section 6.5. UAP 3215 ("Performance Management"). Failure to do so may have legal consequences. Because a peer hearing or arbitration is a process with significant legal implications, the employee may wish to seek the advice of a private attorney in considering how to proceed. Upon receiving the request for a peer hearing, Ombuds/DR forwards the request to the Office of University Counsel, which appoints an attorney to advise the peer panel. Ombuds/DR's role in peer hearings and arbitration is limited to providing administrative support.

### 9.1. Peer Hearing

If a peer hearing is requested, Ombuds/DR will arrange for the hearing. Identification of potential Peer Review Panel members will begin within five (5) working days from the date of the request and Notice of Final Action. The hearing will be held as soon as reasonably possible before a Peer Review Panel. The decision of the Panel is final, unless a discretionary appeal is allowed by the President or the Board of Regents, as provided in this policy (Section 10.). Non-bargaining unit employees may request an advisor of their choice be present at the peer hearing. Bargaining unit employees may request advisors if defined in their collective bargaining agreement. Hearings shall be conducted according to the University's Dispute Resolution Hearing Procedures (Exhibit B.). A copy of these procedures may also be obtained from Ombuds/DR. Hearings shall be recorded and shall be private unless both parties agree that the hearing be open.

#### 9.1.1. Peer Review Panel

The Peer Review Panel shall consist of three (3) uninvolved University employees who have no connection with the dispute, nor any interest in the outcome of the hearing. All faculty and staff who are called upon to serve on a

Panel are required to participate in peer hearings. Individuals will be excused only in extreme circumstances as determined by Ombuds/DR. Members of the Peer Review Panel will be randomly selected from a pool consisting of all University employees as follows.

Names of five (5) individuals from the same "Primary Occupational Activity" in the University's biennial EEO-6 Report as the complainant will be drawn at random by computer. Two (2) of these individuals will serve on the Panel and a third will be an alternate who will sit on the Panel should one of the two (2) selected individuals be unable to serve on the Panel.

Names of four (4) individuals from the same "Primary Occupational Activity" in the University's biennial EEO-6 Report as the respondent will be drawn at random by computer. One (1) of these individuals will serve on the Panel and a second will be an alternate who will sit on the Panel should the selected individual be unable to serve on the Panel.

The nine (9) individuals randomly selected will complete a screening form to determine whether any individual has a conflict of interest that would prohibit him/her from serving in a neutral capacity. The complainant and respondent will then select the Panel members from the randomly chosen names. The members of the Panel will select one of their number to serve as chair. University Counsel will provide the Panel with training on conducting hearings and will also serve as legal advisor to the Panel

## 9.2. Arbitration

If both parties agree, the dispute may be submitted for final and legally binding arbitration instead of a peer hearing. Non-bargaining unit employees may request an advisor of their choice be present at the arbitration. Bargaining unit employees may request advisors if defined in their collective bargaining agreement. If arbitration is requested, Ombuds/DR will arrange for the arbitration as soon as reasonably possible. Arbitrators are non-UNM employees selected by mutual agreement from a pool of professional arbitrators.

# 10. Discretionary Review by President and Board of Regents

The President and the Board of Regents reserve the discretionary authority to review all decisions other than final and binding arbitration. The President and the Regents will normally accept review only in extraordinary cases, such as those where proper procedures have apparently not been followed, where the decision appears to be unsupported by the facts, or where the decision appears to violate University policy. If an appeal is accepted, it will first go to the President. The Board of Regents has the discretion to review the President's decision. Any appeal will be handled pursuant to the policies of the President and Regents concerning discretionary reviews.

# 11. Attachments

Exhibit A. Dispute Resolution Process Flowchart
Exhibit B. Dispute Resolution Hearing Procedures

© The University of New Mexico, Albuquerque, NM 87131, (505) 277-0111
New Mexico's Flagship University




Can employee discuss dispute with supervisor?
yes
Parties work to resolve dispute
no
Seek assistance from Dispute Resolution or other University resource
Is there a conflict of interest?
yes
Parties work with outside mediators to resolve dispute
no
Parties and DR Staff select one or more DR methods
-- collaborative problem solving
-- employee/supervisor consultation
-- mediation
-- staff as mediators program
-- DR staff review and assess dispute
-- formal policy interpretation
-- departmental consultations
-- facilitation
-- training
--referral to other University resources
Is dispute resolved?
yes
End of process
no
Request a decision from dean or director
Dean or director meets with all parities to dispute and DR manager
Dean or director renders a decision
Does decision involve suspension without pay or discharge?
no
End of process
yes
Does affected employee want to request a peer hearing or arbitration?
no
Yes
Do both parties agree to binding arbitration?
yes
no
yes
Peer Review
Binding Arbitration
Decision rendered
Decision rendered
Discretionary Review by President and Board of Regents
Only by request of President
End of process

UNM | *Policy Office*

# Dispute Resolution Hearing Procedure

# ARTICLE 1. INTRODUCTION

## 1.1. General:

This procedure applies to all sides in a dispute.

## 1.2. Informal Resolution:

Normally, a hearing will be held only after all sides and appropriate University officials have attempted to resolve the dispute informally.

## 1.3. Attorney for Panel:

The panel will consult with its University Counsel attorney prior to the hearing. The panel will also consult with its University Counsel attorney on any issues it can't resolve. The panel's University Counsel attorney either will also be present at the hearing or will be available for consultation.

## 1.4. Persons with Disabilities:

Persons with disabilities who want accommodations should let the Dispute Resolution Coordinator know at least ten (10) days before the accommodation is required.

## 1.5. Interpreter:

Sign and language interpreters are available upon request. Please let the Dispute Resolution Coordinator know at least ten (10) days before the accommodation is required.

# ARTICLE 2. PREHEARING MATTERS

## 2.1. Preparation of Evidence:

**2.1.1.** You are responsible for your own evidence. Evidence can be documents, witnesses, or other materials.

**2.1.2.** All students, faculty and staff must cooperate with your reasonable requests to provide evidence and to be witnesses. If you are having difficulty getting cooperation from a potential witness or source of evidence, ask the Dispute Resolution Coordinator for help. You may use reasonable and equitable University work time, equipment, and support staff assistance in preparing for the hearing.

**2.1.3.** The University will advise you about procedures and give you a general overview of the type of evidence that is usually submitted in these kinds of matters. If the person bringing the complaint hires a lawyer, then the person responding may request a lawyer from University Counsel's Office.

## 2.2. Notice Requirements:

Ten (10) working days before the hearing, you must tell or give the Dispute Resolution Coordinator:

**2.2.1.** A list of your witnesses. Only those witnesses may testify at the hearing, unless the panel gives permission for additional witnesses to testify.

**2.2.2.** The name of any advisor you will be bringing to the hearing. If your advisor is a lawyer you must specifically notify the Dispute Resolution Coordinator that your advisor is a lawyer. Generally, if you don't give the Dispute Resolution Coordinator the name of your advisor, you may not bring one. But, if the other side gives the Dispute Resolution Coordinator the name of its advisor, then you can bring an advisor, too.

**2.2.3.** One copy of your evidence. If you request a document from any employee in the University who has custody of that document, that person must give either you or the Dispute Resolution Coordinator the original or a copy of that document within one work day, unless the document is confidential. The Dispute Resolution Coordinator will make and distribute copies to all sides. Only this evidence may be used unless the panel gives permission to use other evidence.

## 2.3. Time Limits.

The panel may set reasonable time limits for the hearing.

# ARTICLE 3. HEARINGS

## 3.1. Evidence:

You may testify, present witnesses, and introduce and explain documents and other evidence. The panel may exclude evidence only in special situations, such as evidence that is very personal and not very relevant, or when there are many witnesses testifying to the same thing. At your request, the panel will consult with its University Counsel attorney on evidence issues. The panel may request evidence or witnesses in addition to what you bring.

## 3.2. Absent Parties:

All panel members and both parties shall be present at hearings. If you do not appear, you may lose the hearing. But first, the panel must find out why you were not present.

## 3.3. Advisors:

You may bring an advisor. If you tell the Dispute Resolution Coordinator that you are bringing an advisor as described in Section 2.2.2 above, you may consult freely with your advisor throughout the hearing, but your advisor may not speak for you unless the panel decides that you need such assistance.

## 3.4 Order of Evidence:

(1) the person raising the issues presents his or her case;

(2) the person responding presents his or her case;

(3) in the discretion of the panel, follow-up by both sides may be allowed;

(4) the person raising the issues makes a final statement;

(5) the person responding makes a final statement.

## 3.5. Witnesses:

You may present witnesses. When a witness is unable to attend a scheduled hearing, the witness may make an affidavit which may be used as evidence. It must be submitted ahead of time, like other evidence. All sides and the panel members may question all witnesses, but the panel may set reasonable limits on this. The panel may require that questions be directed through the panel.

## 3.6. Record of Hearing:

The Dispute Resolution Department shall make a tape recording of the proceedings. You may get a copy of the tape. The record of the hearing shall be the tape recording and all documents or physical objects introduced as evidence. The record shall be kept by the Dispute Resolution Department for five years after all appeals have been concluded or after the time for appeal has expired.

# ARTICLE 4. GENERAL PROVISIONS

## 4.1. Time Limits:

For good cause, the panel shall extend any time limit set forth in these rules. Good cause shall include the fact that a time limit includes finals week or periods such as vacations, holidays, or intersessions if parties or decision makers are absent from the University. Any time extension shall be communicated in writing to the Dispute Resolution Coordinator and everyone else involved, along with a new written schedule for the hearing.

# ARTICLE 5. CONFLICTS

## 5.1. Conflicts:

Prior to selecting a person to be a panel member, the Dispute Resolution Coordinator will ask the person whether they have any prior familiarity with either the parties or the subject matter of the dispute such that he or she would be unable to be objective.

© The University of New Mexico, Albuquerque, NM 87131, (505) 277-0111
New Mexico's Flagship University