IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

     Plaintiff,

     v.                                   No. 1:20-cv-00027-JAP-LF

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, STEPHEN
BISHOP, LISA BROIDY, KEVIN GICK,
KARIN HIGH, ERIC LAU, individually and in
their official capacities, and EVA CHAVEZ,

     Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

     The Individual Defendants in this case argue that this Court should enter judgment in their favor on Counts I, II, and III of Plaintiff's Second Amended Complaint. *See* Doc. 79.  After flagrantly violating Plaintiff's procedural due process rights and leaving him with no way to support himself or his family for the past year, Defendants now allege that they are entitled not only to qualified immunity but also to absolute quasi-judicial immunity for their actions. They also allege that Counts II and III should be dismissed because they have no authority to provide the injunctive or declaratory relief sought. For the following reasons, this Court should deny the Individual Defendants' Motion for Summary Judgment.

### PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

     Plaintiff does not dispute Defendants' undisputed material facts numbers 1 – 8, 10 – 12, 16, 20, 25, and 27.  Plaintiff disputes Defendants' remaining undisputed material facts.

     <u>Response to Defendants' Undisputed Material Fact No. 9</u>. Plaintiff disputes this fact to the extent that Policy C07 and its related procedures, including the Model Hearing Procedure Rules

1

and the Dispute Resolution Hearing Procedure, leave certain critical matters – including whether or not to make an exception to the rule that a party may not be represented by counsel, and including decisions on the degree to which the panel will follow formal rules of evidence – to the discretion of the peer hearing panel. Model Hearing Procedure Rules, attached as Exhibit A.

Response to Defendants' Undisputed Material Fact No. 13. Plaintiff disputes this fact to the extent that the language of C07, which directs the hearing panel to "uphold or reverse the proposal to suspend the faculty member without pay," does not itself prohibit the hearing panel from taking account of the underlying factual disputes when making this determination. In fact, the peer hearing panel held a pre-hearing meeting on December 17, 2019, the purpose of which was to "develop consensus about the scope of the Peer Hearing – specifically 'to identify a mutually agreeable statement of the issue(s) that they would like the Panel to consider." Faculty Peer Hearing Panel, Decision in Regard to Sanction Review Requested by Dr. Flor, March 5, 2020, attached as Exhibit B.

Response to Defendants' Undisputed Material Fact No. 14. Plaintiff disputes Defendants' statement that the panel members considered whether there were "any procedural irregularities" that should invalidate the sanctioning outcome. The only "procedural irregularities" considered by the hearing panel were those alleged in the *sanctioning* process, not in the underlying investigative and adjudicative processes, even though those were also relevant to the appropriateness of the sanction. *Id.* ("The hearing will NOT consider whether OEO followed appropriate policy and process in arriving at their decision.")

Response to Defendants' Undisputed Material Fact No. 15. Plaintiff disputes this fact, specifically that the Peer Hearing panel "imposed the requirements of those procedural rules on all parties and followed all Policy C07 requirements." In fact, the panel imposed different procedural

requirements on the two parties. While Plaintiff, the complainant, was not permitted to be represented by counsel, the panel permitted the respondent, an attorney, to utilize formal legal procedures that were not contemplated by the procedural rules or by the letter sent by Defendant Broidy to the parties on January 13, 2020. While that letter stated, consistent with the procedural rules, that the hearing panel would "not follow formal court rules and procedures," the panel then permitted the respondent, Dean Carey, to submit formal evidentiary motions that Plaintiff, who does not have legal training and whose advisor was not allowed to actively participate on his behalf, could not properly respond to. Lisa Broidy, Memorandum on Hearing Information, January 13, 2020, attached as Exhibit C; Respondent's Motion to Exclude Certain Evidence and Witness, attached as Exhibit D.

    <u>Response to Defendants' Undisputed Material Fact No. 17.</u> Plaintiff disputes this fact to the extent that, despite the peer hearing panel's discretion with regard to the scope of the hearing as described above, he was informed that nothing he might ask Defendant Chavez would be relevant to the hearing panel's decision and thus that there would be no point in calling her or in submitting any other documentary evidence pertaining to anything other than the sanctioning decision. Declaration of Plaintiff Nick Flor, Exhibit E.

    <u>Response to Defendants' Undisputed Material Fact No. 18.</u> Plaintiff disputes this fact to the extent that the inclusion of Samantha Harris as a witness was first called into question not by the panel members, but by respondent Camille Carey in her formal legal Motion to Exclude Certain Exhibits and Witness, which the Individual Defendants accepted and considered despite the fact that Plaintiff was not permitted the active assistance of an attorney. Respondent's Motion to Exclude Certain Evidence and Witness, Exhibit D.

Response to Defendants' Undisputed Material Fact No. 19. Plaintiff disputes this fact to the extent that some of his witnesses, in particular Mary Margaret Rogers, *did* have exculpatory information, but Plaintiff was not permitted to ask questions about that information because it was considered beyond the scope of the hearing. Faculty Peer Hearing Panel, Decision in Regard to Sanction Review Requested by Dr. Flor, Exhibit B.

Response to Defendants' Undisputed Material Fact No. 21. Plaintiff disputes this fact to the extent it is an incomplete account of the limitations on his attorney's participation. While he was permitted to consult with his attorney during the peer hearing, his attorney was not present at the pre-hearing meeting where critical issues – such as the scope of the peer hearing panel's review – were discussed and decided. Faculty Peer Hearing Panel, Decision in Regard to Sanction Review Requested by Dr. Flor, Exhibit B.

Response to Defendants' Undisputed Material Fact No. 22. Plaintiff disputes this fact to the extent that it severely downplays the extent to which Plaintiff was prejudiced by his attorney's inability to participate in previous meetings (see Material Fact No. 21, above) and his inability to have his attorney speak on his behalf when the respondent in the hearing was an experienced litigator who treated the process like a formal legal proceeding.

Response to Defendants' Undisputed Material Fact No. 23. Plaintiff disputes this fact to the extent it states that the scope of the hearing panel's review was "consistent with its scope of review defined by Policy C07." To the contrary, while Policy C07 states that the peer hearing panel's task is to review the sanction imposed by the sanctioning party, Policy C07 does not define the scope of what the hearing panel may review – including the underlying facts -– in determining whether the sanction was reasonable. Rather, the scope of review at the hearing was defined by the parties present at the December 17, 2019 pre-hearing meeting, which Plaintiff's attorney was

not permitted to attend. Faculty Peer Hearing Panel, Decision in Regard to Sanction Review Requested by Dr. Flor, Exhibit B.

Response to Defendants' Undisputed Material Fact No. 24. Plaintiff disputes this fact to the extent that only adverse witnesses whose testimony related to the sanctioning process – not *all* adverse witnesses – were permitted to testify at the peer hearing. Email from Stephen Bishop to Nick Flor, November 12, 2019, attached as Exhibit F (defining a witness as "someone who has some possibly relevant knowledge about the sanction and/or the sanctioning process.") Because he had no hearing at the adjudication stage and no subsequent opportunity to challenge OEO's underlying factual findings, Plaintiff never cross-examined all adverse witnesses.

Response to Defendants' Undisputed Material Fact No. 26. Plaintiff disputes this fact to the extent that the panel's "review" is undefined, *see* Paragraph 15 above, but does not dispute that based upon its review of the sanctioning process only, the panel upheld the sanction against Plaintiff.

Response to Defendants' Undisputed Material Fact No. 28. Plaintiff disputes this fact to the extent that no university policy explicitly prohibits the panel members from *sua sponte* reversing their decision, and throughout the process the panel has taken actions – such as accepting formal evidentiary motions from the respondent, Camille Carey – that are not explicitly provided for nor explicitly prohibited by university policy.

Response to Defendants' Undisputed Material Fact No. 29. Plaintiff disputes this fact to the extent that Defendant Kevin Gick, an attorney in the Office of University Counsel and that office's liaison to the Office of Equal Opportunity, may have decision making authority over various aspects of the process to which Plaintiff was subjected, including but not limited to the OEO investigative process and the scope of representation provided by the Office of University

Counsel. Office of University Counsel, Main Campus Attorneys, attached as Exhibit G. Plaintiff also disputes this fact to the extent that all of the Individual Defendants had decision making authority over the peer review appeal process and the interpretation of Policy C07, as evidenced by the discussions at the pre-hearing meeting on December 17, 2019. Faculty Peer Hearing Panel, Decision in Regard to Sanction Review Requested by Dr. Flor, Exhibit B.

Response to Defendants' Undisputed Material Fact No. 30. Plaintiff disputes this fact to the extent that Defendant Kevin Gick, in his role as a university attorney and liaison between the Office of University Counsel and the Office of Equal Opportunity, may have decision making authority or ability to reverse the outcomes and findings of the OEO investigation. Office of University Counsel, Main Campus Attorneys, Exhibit G. Plaintiff also disputes that Defendants Bishop, Broidy, and High, as members of the Faculty Ethics Committee, have no authority related to Plaintiff's personnel file. Faculty Handbook: Faculty Ethics and Advisory Committee, attached as Exhibit H.

**PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

Plaintiff's Undisputed Material Fact No. 1: All of the members of the faculty peer hearing panel are employees of the University of New Mexico and are subordinates of the Provost and the President. *See* Declarations of Lisa Broidy, Karin High, and Eric Lau, Exhibits B-D to Individual Defendants' Motion for Summary Judgment. *See also* Office of the Provost – EVP for Academic Affairs, attached as Exhibit I.

Plaintiff's Undisputed Material Fact No. 2: Pursuant to University Policy C07, Defendant Lau was chosen directly by the Provost to serve on the faculty peer hearing panel for Plaintiff's case. Declaration of Eric Lau, Exhibit D to Individual Defendants' Motion for Summary Judgment.

<u>Plaintiff's Undisputed Material Fact No. 3</u>: The faculty peer hearing panel's decision can be reviewed by the Provost, whose decision can in turn be reviewed by the President. Policy C07: Faculty Disciplinary Policy, attached as Exhibit J.

<u>Plaintiff's Undisputed Material Fact No. 4</u>: While on suspension, Plaintiff was subject to the University's Regents' Policy 5.5 on Outside Employment, which prohibits full-time employees from working outside of the university for more than 39 days per academic year. Regents' Policy Manual – Section 5.5: Outside Employment, attached as Exhibit K; Email from Barbara Rodriguez to Plaintiff, Oct. 28, 2019, attached as Exhibit L ("Yes, the Regents' Policy Manual – Section 5.5: Outside Employment – applies to you during your suspension.")

<u>Plaintiff's Undisputed Material Fact No. 5</u>: Camille Carey, Vice Dean of the University's School of Law, and the respondent in the faculty peer hearing, is an attorney. Biography of Professor Camille Carey, attached as Exhibit M.

<u>Plaintiff's Undisputed Material Fact No. 6</u>: Prior to the peer hearing, Camille Carey submitted to the hearing panel a formal, 18-page motion to exclude evidence. Respondent's Motion to Exclude Certain Evidence and Witness, Exhibit D.

<u>Plaintiff's Undisputed Material Fact No. 7</u>: The panel accepted and considered this motion despite previously having told the parties that the hearing was "not a formal court of law and we will not follow formal court rules and procedures." Lisa Broidy, Memorandum on Hearing Information, January 13, 2020, Exhibit C; Email from Kenedi Hubbard to Camille Carey and Nick Flor, February 19, 2020, attached as Exhibit N ("The faculty peer hearing panel met regarding the *Motion to Exclude* submitted by Dr. Carey and made the following decisions regarding the key concerns Dr. Carey outlines….").

Plaintiff's Undisputed Material Fact No. 8: Plaintiff did not have a hearing or an opportunity to cross-examine witnesses before the Office of Equal Opportunity found him responsible for sexual harassment and retaliation. Preliminary Letter of Determination for OEO #I-2018-08-43, attached as Exhibit O, Final Letter of Determination in Case OEO # I-2018-08-43, attached as Exhibit P.

Plaintiff's Undisputed Material Fact No. 9: Plaintiff was never given an opportunity to challenge either the factual findings or the procedural shortcomings of the OEO investigation. Email from Lisa Broidy to Nick Flor, December 18, 2019, attached as Exhibit Q ("the hearing will not re-weigh the evidence OEO gathered or considered, nor will it re-evaluate their process or determination.")

## LEGAL ARGUMENT

Rule 56(a) of the Federal Rules of Civil Procedure allows a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case." *Corman v. JWS of New Mexico, Inc.*, 356 F. Supp. 3d 1148, 1169 (D.N.M. 2018) (internal alterations, quotations, and citation omitted). When reviewing motions for summary judgment, the courts are guided by four principles. First, the district courts do not, at this stage of the proceeding, weigh the evidence; rather, they assess whether a genuine issue of material fact exists which merits a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Second, the district court must apply the ultimate standard of proof which would be applied at a trial on the merits. *Id.* at 254. Third, the court must resolve all reasonable inference and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving

party. *Id.*, at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). *See also Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999). And fourth, the district court cannot decide issues of credibility at the summary judgment stage. *Liberty Lobby*, 477 U.S. at 255. Applying these principles to the Individual Defendants' motion, the motion for summary judgment should be denied.

**I.     The Individual Defendants are Not Entitled to Absolute Quasi-Judicial Immunity.**

"Given the sparing recognition of absolute immunity by both the Supreme Court and this court, one claiming such immunity must demonstrate clear entitlement," *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1370 (10th Cir. 1991). The Individual Defendants in this case have, for several reasons, failed to demonstrate that they are clearly entitled – or entitled at all, for that matter – to absolute immunity.

The Tenth Circuit has held that to be entitled absolute immunity "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508, 1513 (10th Cir. 1987). The Individual Defendants clearly fail to satisfy elements (a) and (c) of the test the Tenth Circuit set forth in *Horwitz*. In *Cleavinger v. Saxner*, 474 U.S. 193, 204 (1985), the Supreme Court held that members of a prison hearing board were not entitled to absolute immunity because they were "officials…temporarily diverted from their usual duties." Applying *Cleavinger*, the Tenth Circuit noted in *Ramirez v. Oklahoma Department of Mental Health*, 41 F.3d 584, 592 (10th Cir. 1994), that disciplinary committees comprised of employees of a state agency, rather than professional hearing officers, have "an inherent tendency to undermine the objectivity and impartiality required for absolute immunity to apply." And in a

case directly on point, a district court of this circuit held in *Tonkovich v. Kansas Board of Regents*, 1996 U.S. Dist. LEXIS 18323, *34-37 (D. Kan. Nov. 21, 1996) that a faculty hearing panel was not entitled to absolute quasi-judicial immunity in part because those faculty members "were not professional hearing officers, but were professors being diverted from their usual duties." *Id.* at 37. *See also Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1422 (6th Cir. 1996) (faculty hearing panel "does not possess the independence required for quasi-judicial immunity").

In the instant case, all of the members of the faculty peer hearing panel are employees of the University and are subordinates of the Provost and the President, who review their decisions. Moreover, pursuant to University Policy C07, one of the three members of the hearing panel is chosen directly by the Provost/Chancellor (the remaining two are drawn from the Faculty Ethics Committee). What's more, unlike the hearing bodies in the cases cited above, the Individual Defendants did not actually adjudicate the case in front of them. Two of the Individual Defendants, Steven Bishop and Kevin Gick, were not even members of the hearing panel at all. But even for those on the hearing panel, their function was limited to reviewing the sanction imposed by OEO. The limited scope of their review is yet another way in which their functions differ from those involved in a judicial process.

The *Horwitz* test also requires that for absolute immunity to attach, there must be sufficient procedural safeguards in place to "control unconstitutional conduct." *Horwitz*, 822 F.2d at 1513. In this case, there were not. Most significantly, Plaintiff was denied the right to representation by counsel – something other courts have deemed dispositive in deciding cases of absolute immunity. In *Purisch*, for example, the Sixth Circuit held that "the Tennessee Tech grievance process does not provide the safeguards that this court has required for quasi-judicial immunity. A grievant at Tennessee Tech may have an advisor at the hearing, *but that advisor cannot act as an advocate*,

so a grievant does not have the same right to counsel as in a judicial proceeding." *Purisch*, 76 F.3d at 1422 (emphasis added). In this case, the very claim for which the Individual Defendants seek quasi-judicial immunity is a due process claim that stems from, in part, Defendants' denial of Plaintiff's right to counsel. Particularly given the strong presumption against quasi-judicial immunity, *see Burns v. Reed*, 500 U.S. 478, 486-87 (1991), this is not a case in which it would be appropriate for the Individual Defendants to be granted such immunity.

## II.     The Individual Defendants are Not Entitled to Qualified Immunity.

"Because of the underlying purposes of qualified immunity, [the Tenth Circuit] review[s] summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). That burden requires a plaintiff to show that the state official "(1) [] violated a federal statutory or constitutional right, and (2) the unlawfulness of [the official's] conduct was clearly established at the time." *District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 589 (2019).

### A. Plaintiff should be allowed to conduct limited discovery regarding Plaintiff's claims against the Individual Defendants.

According to Rule 56(d), Plaintiff is entitled to discovery before the Court rules on the Individual Defendants' summary judgment motion. Defendants' summary judgment motion contains a lengthy "Statement of Undisputed Material Facts," which are based upon affidavits from the Individual Defendants and a number of attached exhibits. Without the time and the opportunity to conduct discovery, Plaintiff cannot fully and fairly contest these facts. This lack of a fair

opportunity to test these asserted facts necessarily hinder Plaintiff's efforts to oppose Defendants' summary judgment motion.

"[Rule 56(d)] allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). To prevail on a Rule 56(d) request, Plaintiff must satisfy four requirements: (1) "identify the probable facts not available," and (2) "explain why those facts cannot be presented currently," (3) "what steps have been taken to obtain these facts," and (4) h"ow additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Price ex rel. Price v. W. Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 1993).  And where, as here, "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[(d)] motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. Assiniboine Tribe*, 323 F.3d 767, 773 (9th Cir. 2003); *see also Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (holding that Rule 56(d) motions are granted "almost as a matter of course unless the nonmoving party has not diligently pursued discovery of the evidence") (citation and quotation omitted); *Jensen v. Redevelopment Agency,* 998 F.2d 1550, 1553-54 (10th Cir. 1993) (explaining that "unless dilatory or lacking in merit," a party's 56(d) application "should be liberally treated").

Here, there can be no serious dispute that Plaintiff's request is timely.  Plaintiff has not previously had an opportunity to fully pursue discovery in this case.  In fact, as discussed in Plaintiff's opposition to Defendants' Motion for a Protective Order, Plaintiff has attempted to conduct discovery by serving requests for production and requesting availability for depositions, but Defendants have refused to participate in the discovery process. *See* Doc. 78.  Moreover, the

discovery is not scheduled to be completed until January 21, 2021. The scheduling order in this case places Defendants' expert disclosure deadline on December 3, 2020. And, the scheduling order places the dispositive motions deadline as February 22, 2021.

Plaintiff, moreover, has satisfied his burden of showing how discovery will likely reveal relevant information. The attached declaration sets forth the specific facts Plaintiff hopes to elicit through discovery and the reasons those sought-after facts would create a genuine issue of material fact. *See*, Ex. S, Decl. of Nicholas T. Hart (Nov. 11, 2020). The declaration satisfies the requirements of Rule 56(d), because, at the very least, it "give[s] the [] court some idea of how the sought-after discovery might reasonably be supposed to create a factual dispute." *Emplanar, Inc. v. Marsh*, 11 F.3d 1284, 1292 (5th Cir. 1994).

Finally, a non-movant has "clearly met" its burden under Rule 56(d) when it is "not seeking additional discovery, but discovery at all." *Xerox Corp. v. Gernmoora Corp.*, 888 F.2d 345 (5th Cir. 1989). "[R]ush[ing] to summary judgment" without allowing the non-movant to engage in any discovery would "substantially handicap[]" the non-movant "in any attack on the facts asserted by the [summary judgment movant]." *Id.* at 355. Instead, a court "must afford" a non-movant "some protective armor . . . to properly defend against" a motion for summary judgment. *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1268 (5th Cir. 1991); *see, e.g., Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 245 (4th Cir. 2002) (holding that a court improperly denied Rule 56(d) relief where summary judgment was granted when there had been almost no discovery conducted in the case).

This analysis does not change merely because Defendants have raised a qualified immunity defense. "[Q]ualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Garrett v. Stratman,* 254 F.3d 946,

953 (10th Cir. 2001) (internal alterations, quotations, and citation omitted). "Thus, where the claim turns at least partially on a factual question for which the district court needs more facts to answer, courts should allow discovery, but limit the discovery to allow the plaintiff to uncover only the necessary facts to decide the immunity claim." *Herrera v. Santa Fe Pub. Sch.*, No. CIV 11-042 JB/KBM, 2012 WL 6846393, at *8 (D.N.M. Dec. 20, 2012). This is because, as the Supreme Court has recognized, a qualified immunity defense does not protect an official from *all* discovery, but only from discovery which is "broad-reaching." *Crawford-El v. Britton,* 523 U.S. 574, 593 n. 14 (1998).

Accordingly, the Court should not "substantially handicap" Plaintiff by denying him the time and opportunity to take discovery necessary to determine whether Defendants' factual assertions are accurate and complete, and whether Defendants should be afforded qualified immunity. Because Defendants have refused to participate in discovery, Plaintiff has had no opportunity to pursue and complete discovery. The Court, therefore, should not rely upon Defendants' Statement of Undisputed Facts without first allowing Plaintiff discovery to test those assertions and uncover other material facts relevant to the summary judgment motions.

### B. The Individual Defendants are not entitled to qualified immunity because their actions violated Plaintiff's clearly established constitutional rights.

The Individual Defendants assert that they are entitled to qualified immunity because it is not clearly established "that a post-deprivation evidentiary hearing must be provided to Plaintiff to address his one-year suspension." *See* Doc. 79 at 17. While it is true that the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), this does not mean that a court must go on "a scavenger hunt for prior cases with precisely the same facts," *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal citations omitted) (quoting *Casey v. City of Fed. Heights*, 509 F.3d

1278, 1284 (10th Cir. 2007)). Rather, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* In other words, the inquiry that this Court must answer is whether the "state of the law . . . gave [Defendants] fair warning that their alleged [actions] . . . were unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Such an inquiry does not require a factually identical case; rather, the inquiry may be satisfied by "a general constitutional rule already identified in the decisional law" which can be "appl[ied] with obvious clarity to the specific conduct in question." *Id. See also Taylor v. Riojas*, --- U.S. ----, 2020 WL 6385693, at *1-2 (U.S. Nov. 2, 2020) (applying *Hope v. Pelzer* to summarily reverse a grant of qualified immunity because several similar, but not factually identical, cases gave the officials fair warning that their actions were unconstitutional).

In this case, the Tenth Circuit has announced, in several factually similar cases, general constitutional principles that apply to the Individual Defendants' actions in this case, which amount to deliberate and egregious violations of Plaintiff's constitutional rights. The Individual Defendants' effort to draw a distinction between the level of process owed to Plaintiff in connection with his suspension and with a termination is disingenuous and unavailing. The University not only suspended Plaintiff for one year, but also subjected him to the University's "Outside Employment" policy – a policy that does not appear on its face to apply to suspended employees – that prohibited him from working more than 39 days at any outside employment. (Regents' Policy Manual – Section 5.5, Outside Employment, Exhibit K). This was a deliberate attempt by the University to constructively terminate Plaintiff without having to use the more stringent procedures it applies in termination cases, and this Court should not permit the Individual Defendants to now escape liability by saying it was "just" a suspension. In reality, Plaintiff was

faced with the choice of resigning his position at the University or earning *no more than one month of income* during his suspension. While Plaintiff narrowly avoided having to resign and seek employment elsewhere by going heavily into credit card debt and draining his family's savings, this would not have been an option for many employees in his situation. The University's officials cannot be permitted to escape liability for deliberately circumventing termination procedures by instead attempting to constructively terminate an employee by depriving him of any means of supporting himself.

This Court has already acknowledged that the post-deprivation process afforded to Plaintiff suffered from "procedural flaws." *Flor v. Univ. of N.M.*, 2020 U.S. Dist. LEXIS 138536, *25 (D.N.M. Aug. 4, 2020). What is of particular significance to the qualified immunity analysis is the fact that the procedural flaws in Plaintiff's hearing were not a bug in the University's system, but rather a feature of their disciplinary regime.

For example, this Court rightly expressed concern with the fact that Plaintiff was not permitted to be represented by counsel at the hearing despite the fact that the Tenth Circuit has repeatedly opined that a post-deprivation hearing "is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Workman v. Jordan,* 32 F.3d 475, 480 (10th Cir. 1994). But in this case, the unfairness went beyond simply denying Plaintiff the right to be actively represented by counsel. At the same time the Individual Defendants denied him this right, they permitted Dean Carey – the respondent in the hearing and an experienced litigator – to treat the hearing like a judicial proceeding, accepting formal legal motions from her such as an 18-page Motion to Exclude Plaintiff's evidence. (Respondent's Motion to Exclude Certain Exhibits and Witness, Exhibit D). The Individual Defendants also prohibited Plaintiff's attorney-advisor from even *attending* a pre-hearing meeting held on

December 17, 2019, to determine the issues that the hearing panel would consider – one of the greatest sources of dispute surrounding the hearing. (Faculty Peer Hearing Panel, Decision in Regard to Sanction Review Requested by Dr. Flor, Exhibit B).

When asking for the ability to be represented by counsel, Plaintiff specifically cited Dean Carey's extensive legal experience, but was rebuffed by Defendants Broidy, High, and Lau, who stated in a letter dated December 9, 2019, that Plaintiff had not identified "a sufficient reason for the Panel to grant your request for a deviation from standard procedure prohibiting advisors from directly represent [sic] faculty during these types of administrative hearings." (Letter from Lisa Broidy, Karin High, and Eric Lau to Nick Flor, December 9, 2019, attached as Exhibit R). Any reasonable official in the Individual Defendants' position would have known that allowing an experienced attorney to proceed as though this were a formal legal proceeding complete with rules of evidence, while denying Plaintiff, a non-lawyer, the right to legal representation, was a violation of Plaintiff's due process rights.

This Court also noted that Plaintiff never had the opportunity to challenge OEO's factual findings, findings which were made in the course of an investigation that afforded the parties no opportunity to confront each other or to otherwise challenge each other's credibility. And while OEO found that credibility was not a significant issue in this case because the content of the written communications between Plaintiff and Defendant Chavez were uncontested, Plaintiff has maintained from the beginning that the parties' respective credibility does not turn on the content of these communications. Rather, it turns on the question of whether Defendant Chavez actually interpreted these communications as making a job offer contingent on participation in sexual communications, or whether she lied about interpreting them that way in order to retaliate against Plaintiff for ending their sexual correspondence. And OEO ignored evidence about Defendant

Chavez's history and practice of submitting false complaints against University faculty members, evidence that would have borne directly on the central credibility question.

It is clearly established that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses," *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). This is true not only of civil and criminal proceedings, but of administrative proceedings as well. *Id.* at 270. *See also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 517-18 (10th Cir. 1998), quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses"); *Norris v. Univ. of Colo.*, 362 F. Supp. 3d 1001, 1020 (D. Colo. 2019) ("with the credibility of the parties in the investigation at issue, the lack of a full hearing with cross-examination provides evidence supporting a claim for a violation of his due process rights.") While the University's faculty peer hearing procedure does involve a live hearing with the opportunity to question witnesses, the scope of Plaintiff's hearing was limited exclusively to challenging the sanctioning process. Therefore, Plaintiff was never given a hearing or the opportunity to question witnesses in a context that would have allowed him to exonerate himself of the university's charges against him, in clear violation of his right to due process.

As the Supreme Court has explained, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Too often, however, qualified immunity today functions as a sword rather than a shield, allowing public officials to escape accountability even for deliberately depriving an individual of his or her constitutional rights. The

intent of the judiciary in crafting the doctrine of qualified immunity was never to allow public officials to violate individuals' rights with impunity, but that is too often the result as courts have "defin[ed] reasonability down" over the years.[1] This Court should not permit the Individual Defendants to escape liability for their knowing violation of Plaintiff's due process rights even in the absence of a case with this precise fact pattern. In denying Plaintiff any opportunity to challenge OEO's finding of responsibility, and in allowing Dean Carey to turn the peer hearing into her own personal judicial proceeding while denying Plaintiff the right to representation by counsel over his repeated objections, the Individual Defendants knowingly and callously violated his due process rights and must be denied qualified immunity.

### C.  The courts should revisit the doctrine of qualified immunity.

The Individual Defendants raise the judge-made doctrine of qualified immunity as a bar to all claims against the claims raised against them. The doctrine has long been questioned by several courts around the country, including Justices of the Supreme Court of the United States, and even has come into question by the public. In fact, a growing number of federal judges have harshly criticized the doctrine and called for its elimination.  *See, e.g., Manzanares v. Roosevelt County Adult Detention Ctr.,* 331 F. Supp. 3d 1260, 1294 n.10 (D.N.M. Aug. 30, 2018) (stating, while announcing its disagreement with the doctrine of qualified immunity, that "[t]he most conservative, principled decision is to minimize the expansion of the judicially created clearly establish prong [of the qualified immunity analysis], so that it does not eclipse the congressional create § 1983 remedy, . . . [because] [t]he judiciary should be true to § 1983 as Congress wrote

---

[1] Ilya Somin, "Supreme Court Rejects Qualified Immunity Defense for the First Time in Years," The Volokh Conspiracy (Nov. 2, 2020, 10:21 PM), https://reason.com/volokh/2020/11/02/supreme-court-rejects-qualified-immunity-defense-for-the-first-time-in-years.

it."); *Zadeh v. Robinson,* 902 F.3d 483, 498 (5th Cir. 2018) (Willet, J. concurring) (criticizing qualified immunity as a "Catch-22" that "smacks as unqualified impunity, letting public officials duck consequences for bad behavior—no matter how palpably unreasonable—as long as they were the *first* to behave badly); *Estate of Jones v. City of Martinsburg,* 961 F.3d 661, 673 (4th Cir. 2020) (exclaiming "This has to stop" when analyzing a request for qualified immunity); *Jamison v. McClendon,* --- F. Supp. 3d ----, 2020 WL 4497723, at *3 (S.D. Miss. Aug. 4, 2020) (describing qualified immunity as "legal jargon," and stating "[i]mmunity is not exoneration" because "the harm in this case to one man sheds light on the harm done to the nation by this manufactured doctrine." Plaintiff respectfully requests that this Court begin the abolishment of the judge-created doctrine of qualified immunity because the text of the statute does not provide for an immunity.

"Statutory interpretation . . . begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Yet few judicial doctrines have deviated so sharply from this axiomatic proposition as qualified immunity. Rarely can one comfortably cite the entirety of an applicable federal statute in a brief, but this case is an exception. As currently codified, 42 U.S.C. § 1983 ("Section 1983") provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such oficer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. Section 1983 "on its face does not provide for any immunities." *Malley v. Briggs*, 475 U.S. 335, 342 (1986). The language of the statute merely states that any person acting

under state authority who causes the violation of any federal constitutional right "shall be liable to the party injured." Thus, under the negative-implication canon, the ex-pression of one limitation on the scope of relief implies the exclusion of other such limitations. *See Cipollone v. Liggett Grp.*, 505 U.S. 504, 517 (1992); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 107-11 (2012).

Over the last half-century, the doctrine of qualified immunity has increasingly diverged from the statutory and historical framework on which it is supposed to be based. Judges and scholars alike have thus increasingly arrived at the conclusion that the contemporary doctrine of qualified immunity is unmoored from any lawful justification—and in serious need of correction. *See, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and concurring in the judgment) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence."); Lynn Adelman, The Supreme Court's Quiet As-sault on Civil Rights, DISSENT (Fall 2017) (essay by judge on the U.S. District Court for the Eastern District of Wisconsin); William Baude, Is Qualified Immunity Unlawful?, 106 CAL. L. REV. 45 (2018); Jon O. Newman, Opinion, Here's a Better Way to Punish the Police: Sue Them for Money, WASHINGTON POST (June 23, 2016), https://perma.cc/9R6N-323Z (article by senior judge on the U.S. Court of Appeals for the Second Circuit). At least one judge in this district court has also questioned the validity of the judge-made doctrine of qualified immunity. Judge Browning has expressed disagreement with the Supreme Court's approach to Section 1983 cases. *Green v. Padilla*, No. CIV 19-0751 JB\JFR, 2020 WL 5350175, at *23 n.9 (D.N.M. Sept. 4, 2020) ("The most conservative, principled approach is to minimize the expansion of the judicially created clearly established prong, so that it does not eclipse the congressionally enacted § 1983 remedy."). Based on a simple reading of the statute, this Court is able to abolish the judge-made doctrine of qualified immunity.

Finally, to always decide the clearly established prong first and then to always say that the law is not clearly established is stunting the development of constitutional law. *See* Aaron L. Nielson & Christopher J. Walker, The New Qualified Immunity, 89 S. CAL. L. REV. 1, 6 (2015). If a district court and an appellate court never decide the constitutional violation prong of the qualified immunity test, then any factual scenario of a case will never be clearly established. Therefore, Plaintiff respectfully requests that the Court analyze both prongs of the qualified immunity doctrine if it decides to not abolish it.

III.     **The Individual Defendants are Not Entitled to Summary Judgment on Plaintiff's Claims for Injunctive and Declaratory Relief.**

The Individual Defendants allege that they cannot provide the relief sought by Counts II and III for injunctive and declaratory relief. They contend that this Court must thus grant summary judgment on those counts, arguing that at the summary judgment stage, a plaintiff must provide "competent evidence" demonstrating that the Individual Defendants can provide the relief sought. The irony here, of course, is that at the same time they have moved for summary judgment, the Individual Defendants have also moved to stay discovery in this case – the very discovery that would allow Plaintiff and this Court to determine whether the Individual Defendants can, in fact, provide the relief sought. Despite repeated requests, the University of New Mexico has thus far refused to provide the Court or Plaintiff with any information about who it believes the appropriate parties to this action are with regard to effectuating relief, and now seeks to stay discovery while seeking dismissal of these claims against Plaintiff for failing to produce evidence that he could only produce through discovery. As discussed in more detail above, Plaintiff requests additional discovery as detailed in the attached affidavit of Nicholas T. Hart.  This request meets all of the criteria for additional, limited discovery under Rule 56(d).  Without discovery, the Individual Defendants' motion for summary judgment on these claims is premature and should be denied.

Moreover, Plaintiff is correct to assert that the individuals who violated his constitutional rights can also remedy the violation of those rights.  *See, e.g., Buchwald v. University of New Mexico School of Medicine,* 159 F.3d 487, 498 (10th Cir. 1998) (holding that a plaintiff could sustain an prospective injunctive relief claim against two individuals on the medical school admission committee who refused to admit her to the medical school because those two individuals made the decision not to admit her to the medical school).  The cases cited by Defendants' are inapposite and do nothing to counteract this presumption.  For example, in *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 245 (E.D.N.Y. 2015), the plaintiff filed a lawsuit asking the City University of New York system, and individuals associated with that system, to reinstate him as the Aquatics Director and head coach of the men's swim team at the College of Staten Island because his termination violated several employment discrimination statutes.  Four of the individual defendants named by the plaintiff, however, were no longer employed by the college defendant. And, the plaintiff failed to allege that the remaining individual defendants could reinstate him because the NCAA required that any member institution that sought to hire the plaintiff "schedule an appearance before the Committee on Infractions" before hiring him as a coach or athletic employee.  *Id.*  Therefore, the remaining individual defendants that were associate with the CUNY system did not have the authority to reinstate him.  This is distinguishable from this case.

All the Individual Defendants in this case remain employed by the University of New Mexico.  Moreover, the Individual Defendants in this case are the individuals who are alleged to have made deprived Plaintiff of serious constitutional rights when reviewing his sanction.  It is reasonable to conclude that the individuals with the power to find that Plaintiff violated University policy and the power to sanction Plaintiff are also the individuals who could reverse those actions. Moreover, while the Plaintiff in *Soloviev* could not be reinstated without the approval of the

NCAA, there is no other, unrelated party that must approve the injunctive relief requested by Plaintiff.

And in *Klein v. University of Kansas Medical Center*, 975 F. Supp. 1408, 1417 (D. Kan. 1997), the district court dismissed a request for the prospective injunctive relief of reinstatement to a job the plaintiff was terminated from because the defendants demonstrated that Kansas's statutes only allowed the Chancellor of the University, who was not a named party, to "appoint" employees for the University of Kansas.  In contrast, Defendants point to no statute, case, or rule of law stating that the Individual Defendants in this case are unable to reverse their finding that Plaintiff violated University policy, reverse Plaintiff's sanction, or remove those findings from Plaintiff's personnel file.  Given the lack of support for Defendants' position, and Defendants failure to engage in discovery on this issue, Defendants' motion should be denied or deferred until Plaintiff has the ability to conduct further discovery on this issue.

**IV.  Discovery Should Not Be Stayed Merely Because the Individual Defendants Raised a Qualified Immunity Defense.**

The Individual Defendants, in a single paragraph and a block quote, attempt to persuade this Court to stay all discovery. Individual Defendants' Motion at 24-25. As explained in Plaintiff's Response to Defendant University's Second Motion for Protective Order to Plaintiff's First Set of Requests for Production, the moving party must articulate a basis for such a stay and address several factors for this Court to consider. *See* Doc. 83 and 84.  Individual Defendants have failed to do so. Instead, their only position is that discovery should be stayed because it has raised the judge-made doctrine of qualified immunity. This is not enough.

"[Q]ualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Garrett*, 254 F.3d at 953.  This well-settled rule has been consistently applied to allow at least some discovery during cases where a

qualified immunity defense is raised.    In fact, as discussed above and in Plaintiff's Response to Defendant's Motion for a Protective Order, the Supreme Court has already conclusively stated that, even when a qualified immunity defense is asserted, some limited discovery is still permitted. *Crawford-El,* 523 U.S. at 593 n. 14.

The Individual Defendants have not articulated what, if anything, in Plaintiff's first set of discovery requests and any other potential discovery is so broad reaching that it necessitates a discovery stay. Plaintiff has already addressed these issues in his Response to Defendant University's Second Motion for Protective Order.  *See* Doc. 83 and 84. Plaintiff incorporates by reference the arguments made therein. A stay of discovery is not warranted in this case.

### CONCLUSION

For these reasons, the Court should defer ruling on Defendants' motion for summary judgment under Rule 56(d) to allow Plaintiff to take discovery, after which they may supplement this Response in Opposition to the summary judgment motion.   Alternatively, the Individual Defendants' Motion for Summary Judgment and Motion to Stay Discovery should be denied.

Respectfully submitted,

*/s/ Nicholas T. Hart*

Carter B. Harrison, IV
Nicholas T. Hart
**HARRISON & HART, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87101
T: (505) 295-3261
F: (505) 341-9340
*carter@harrisonhartlaw.com*
*nick@harrisonhartlaw.com*

-and-

Samantha Harris
**MUDRICK & ZUCKER, P.C.**
325 Sentry Parkway
Building 5 West, Suite 320
Blue Bell, PA 19422
T: (610) 832-0100
F: (610) 279-3900
*samantha@mudrickzucker.com*

## CERTIFICATE OF SERVICE

I certify that Plaintiff's Response in Opposition to Individual Defendants' Motion for Summary Judgment was filed with the United States District Court for the District of New Mexico's CM/ECF e-filing system on November 11, 2020, which caused service upon all parties through counsel of record.

*/s/ Nicholas T. Hart*
Nicholas T. Hart