IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

    Plaintiff,

v.                 Cause No. 1:20-cv-00027-JAP-LF

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
STEPHEN BISHOP, LISA BROIDY,
KEVIN GICK, KARIN HIGH, ERIC LAU,
individually and in their official capacities,
and EVA CHAVEZ,

    Defendants.

## INDIVIDUAL DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

  Defendants Stephen Bishop, Lisa Broidy, Kevin Gick, Karin High, and Eric Lau (collectively "Individual Defendants"), by and through their attorneys, Conklin, Woodcock & Ziegler, P.C., submit their Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment (Doc. 85).  Plaintiff failed to refute the Individual Defendants showing of an entitlement to summary judgment.  Accordingly, the Individual Defendants are entitled to summary judgment under the doctrines of absolute immunity and qualified immunity with respect to Count I of Plaintiff's Second Amended Complaint.  Similarly, the Individual Defendants are entitled to summary judgment with respect to Counts II and III of the Second Amended Complaint as these Defendants are unable and have no authority to provide Plaintiff with the type of injunctive relief or declaratory relief sought.

**I.     The Individual Defendants are entitled to summary judgment as Plaintiff failed to refute the undisputed material facts with competent evidence.**

In his response, Plaintiff claims to refute undisputed material fact ("UMF") Nos. 9, 13, 14, 15, 17, 18, 19, 21, 22, 23, 24, 26, 28, 29, and 30.  UMF Nos. 9, 13, 14, 23, and 26 addressed the permissible scope of review for the Peer Hearing pursuant to UNM Policy C07 contained within the Faculty Handbook.  Despite having a declaration from the Chair of the Faculty Ethics Committee and declarations from each of the Peer Hearing panel members setting forth the scope of review, the procedure and process to be used, and the lack of discretion of the panel members to deviate from UNM Policy C07, Plaintiff argues, without support, that the panel members *might have* had the ability to exercise discretion.

It is undisputed that the scope, procedure, and process of the Peer Hearing was controlled by UNM Policy C07.  *See* Exhibits A through E.  As set forth in the supporting declarations, the hearing procedures were followed by the panel members and the Peer Hearing was conducted in accordance with the defined scope of review contained in UNM Policy C07.  *See* Exhibits A through D.  The panel considered all evidence submitted by the parties within its pre-defined scope of review.  *See* Exhibits A through D.  The panel did not have discretion to deviate from the defined scope of review.  *Id.* The panel did not have discretion to deviate from the procedures to be followed.  *Id.*  Accordingly, the panel did not deviate from the rule that a party may not be represented by counsel; a rule acknowledged by Plaintiff.  *Id.* and *see* Response, p. 2.

While Plaintiff argues that UNM Policy C07 potentially allowed the panel to take "into account the underlying factual disputes" when making its determination, this argument is based upon the absence of language in UNM Policy C07.  The explicit language of UNM Policy C07 limited the scope of review to "uphold[ing] or revers[ing] the proposal to suspend the faculty member without pay."  UMF No. 12.  Plaintiff's argument is contrary to the explicit language of

UNM Policy C07 and the panel's sworn testimony. Exhibits A through D. Further, the pre-hearing meeting on December 17, 2019 was not conducted to expand the defined scope of review contained in UNM Policy C07, but rather "to identify a mutually agreeable statement of the issue(s) that [the parties] would like the panel to consider." *See* Plaintiff's Exhibit B, p. 2, and December 18, 2019 email communication, attached as Exhibit B to Plaintiff's Exhibit D ("The panel considered this carefully and it is our understanding that the process for appealing the OEO process and determination has already been exhausted via appropriate channels (appeal to the Present and Board of Regents). As such the hearing will not re-weigh the evidence OEO gathered or considered, nor will it re-evaluate their process or determination. We understand Dr. Flor's concerns that the OEO process was unfair, however, *as per policy*, this should have been reviewed in the official appeal of the OEO process and/or outcome….") (emphasis added).

UMF Nos. 15, 17, 18, and 19 addressed evidentiary decisions made by the panel. Plaintiff argues that different procedural rules were applied to the parties. In making this argument, Plaintiff argues that he was not permitted to be represented by counsel and ignores the fact that the Respondent was also not permitted to be represented by counsel. While Dean Carey is an attorney by training, she did not participate in the Peer Hearing in a representative capacity, but rather in her role as the sanctioning party. Like Plaintiff, she had access to an attorney advisor, but this advisor was not permitted to actively participate in the process in accordance with the Hearing Procedure rules. *See* Exhibits B through E. Further, while Dean Carey submitted an evidentiary motion, there was nothing to prevent Plaintiff from submitting his own motion with the assistance of his attorney, or from responding to the motion with the assistance of his attorney. More importantly, however, Plaintiff's focus on the Motion to Exclude does nothing to establish that different rules were applied to the parties as no witnesses or documentary evidence was excluded

3

by the hearing panel. *See* UMF No. 20. Stated differently, all evidence submitted by either party was reviewed by the panel.

With respect to UMF Nos. 17, 18, 19,[1] and 24 and potential witnesses to be called by Plaintiff, Plaintiff does not establish in his declaration that he was specifically instructed that he could not call any particular witness. Rather, he was instructed on the pre-defined scope of review under UNM Policy C07. In advance of the Peer Hearing, Plaintiff was certainly able to determine what evidence and witness testimony he wanted to introduce into evidence, presumably in consultation with his attorney. Plaintiff (and his attorney) made such decisions. Accordingly, while he decided not to call Eva Chavez or any other third-party witness, seemingly at odds with the position he is now taking, he still submitted "numerous emails and text messages between himself and the graduate student involved in the initial OEO complaint/violations that lead to the sanction under the appeal." *See* Plaintiff's Exhibit B, p. 3. This evidence was accepted and reviewed by the panel. Curiously, however, Plaintiff did not testify at the Peer Hearing to explain "why or how the [above] evidence he submitted… [was] relevant to his appeal of the sanction." *See* Plaintiff's Exhibit B, p. 3 and UMF No. 25. Again, the panel considered and reviewed all evidence submitted by Plaintiff.

With respect to UMF Nos. 21 and 22, Plaintiff admits that the procedure followed by the Individual Defendants with respect to his attorney's participation comported with the Hearing Procedure Rules. *See* Response, p. 2. Further, his attorney's inability (based on lack of availability) to attend the pre-hearing conference is not critical as neither Plaintiff, nor his attorney,

---

[1] In relation to UMF No. 19, Plaintiff argues that Mary Margaret Rogers had exculpatory information, and that such information was excluded by the panel citing to Exhibit B. Exhibit B is silent on any exculpatory information that Dr. Rogers may have had that was not considered by the panel. Plaintiff does not identify any exculpatory information that Dr. Rogers had that was not considered by the panel.

4

could alter the defined scope of review of the Peer Hearing as set forth in UNM Policy C07. *See* Exhibits A through D, and discussion *supra*.

Plaintiff purports to refute UMF Nos. 28, 29, and 30. However, he cites to no competent evidence to refute the Individual Defendants showing as set forth in the sworn declarations. *See* Exhibits A and E.

Finally, Plaintiff's "Statement of Additional Undisputed Material Facts" does not refute the Individual Defendants' showing of an entitlement to summary judgment. Fact Nos. 1 through 7 are not disputed by the Individual Defendants, do not refute any of the material facts set forth by the Individual Defendants, and notably, are not material to the present Motion for the reasons set forth above. The Individual Defendants refute the statements made by Plaintiff in Fact Nos. 8 and 9. As already noted by the Court, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Flor v. University of New Mexico*, 2020 WL 3410823, at * 3 (D. N.M. June 20, 2020). The Court has already found in denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction that the pre-deprivation due process requirements afforded to Plaintiff were more than due process required as "Plaintiff received multiple opportunities to he heard prior to his suspension." *Flor*, 2020 WL 3410823, at * 4. Likewise, the Court found that Plaintiff "already admitted all the relevant facts" relied upon by the OEO to support its decision as he never contested the authenticity of the communications between Ms. Chavez and himself. *Id.*, 2020 WL 3410823, n. 10.

**II.      Based on the undisputed material facts, the doctrine of absolute immunity bars all claims against the Individual Defendants seeking money damages.**

Absolute immunity is applicable where:

> the following formula is satisfied: (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed

>    parties, and (c) there must be sufficient safeguards in the regulatory framework to control unconstitutional conduct.

*Gressely v. Deutsch*, 890 F.Supp. 1474, 1490 (D. Wyo. 1994) (citing to *Horwitz v. Bd. Of Med. Examiners*, 822 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 484 U.S. 964 (1987)).

As set forth in the undisputed material facts, the Peer Hearing was clearly a quasi-judicial proceeding. The Individual Defendants were acting in a quasi-judicial role in their review of the sanction and the sanctioning process to satisfy the first *Horwitz* element. As defined by policy and procedure, the Individual Defendants imposed and followed procedural rules for conducting the Peer Hearing, reviewed the testimony and documentary evidence submitted by the parties, and rendered a decision upholding the sanction – suspension for one year without pay. With respect to the second element, just as in *Gressely*, the present lawsuit is "ample proof" that the Peer Hearing panel's decision has and would likely result in other damage lawsuits by disappointed parties. Finally, the Peer Hearing was conducted with procedural safeguards in place and conducted on the record. Because each of the *Horwitz* elements are satisfied, the Individual Defendants are immune from the claims alleged in Count I seeking money damages under the doctrine of Absolute Immunity.

Plaintiff argues that the Individual Defendants are not immune because they are not independent from the University and/or not professional hearing officers. This is not the proper inquiry, however, as the Peer Hearing process was designed to be an independent hearing body. Pursuant to UNM Policy C07, two members of the panel were chosen from the Faculty Ethics Committee "from outside the faculty member's department." *See* Exhibit A, attachment 1. The third panel member was an "uninvolved department chair from a different school or college chosen by the Provost/Chancellor." *Id.* Thus, while the Individual Defendants were and are employees of the University, the panel was designed by policy to be an independent adjudicatory body.

6

Next, Plaintiff argues that under the third *Horwitz* element that procedural safeguards were not met because Plaintiff was denied the right to representation by counsel. *See* Response, p. 10. Plaintiff cites no controlling authority to support this argument. As explained in *Saavedra*:

> analysis of the procedural safeguards in the context of deciding whether to extend absolute immunity to quasi-judicial officers need not, and should not, take the form of a rigorous evaluation of whether the procedures in question independently satisfy due process in each individual case. A quasi-judicial officer is entitled to absolute immunity for adjudicative acts even if his exercise of authority is flawed by the commission of grave procedural errors.

*Saavedra v. City of Albuquerque*, 859 F.Supp. 526, 532 (D. N.M. 1994) (internal quotations omitted). Thus, even if the decision to follow the Model Hearing Procedure rules was flawed and Plaintiff's attorney should have been able to present his case at the Peer Hearing, the undisputed material facts demonstrate that the Individual Defendants applied hearing procedures equally to both parties and considered all evidence submitted by the parties, including the decision that attorneys could not actively participate in the presentation of the parties' case. The Individual Defendants were acting within an independent adjudicatory role and entitled to absolute immunity.

Judgment should be entered in favor of the Individual Defendants and against Plaintiff for Count I of the Complaint under the Doctrine of Absolute Immunity.

**III. The doctrine of qualified immunity bars all claims against the Individual Defendants in their individual capacities.**

**A. Plaintiff's request for additional limited discovery in an attempt to defeat summary judgment is without support.**

While limited discovery may be allowed in certain circumstances to address specific factual issues raised in a Motion for Summary Judgment asserting qualified immunity, Plaintiff has failed to set forth what discovery is needed that could potentially reveal information to defeat summary judgment. In his Response, Plaintiff refers to Exhibit S, identified as the Declaration of

Nicholas T. Hart, but the referenced Declaration was not attached to the Response brief. *See* Response, p. 13 and missing Exhibit S. Likewise, the Response does not set forth what the missing Declaration stated or what information is being sought. As such, there are no specific facts articulated by Plaintiff that he hopes to elicit through additional discovery. There is no analysis explaining how any such facts would create a factual dispute to defeat summary judgment. Absent compliance with the express requirements of Fed. R. Civ. P. 56(d), Plaintiff's request for limited discovery is properly denied.

> **B. Plaintiff's request to ignore United States Supreme Court and Tenth Circuit Precedent is properly rejected.**

It has long been established that government officials are entitled to qualified immunity from suit when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); and *see Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001) and *Lewis v. Tripp*, 604 F.3d 1221, 1224-25 (10th Cir. 2010). Further, the doctrine of qualified immunity serves an important function. As explained by the Tenth Circuit:

> [a]lthough actions for damages provide an important remedy for individuals injured by governmental officials' abuse of authority, such actions sometimes subject officials to costly and harassing litigation and potentially inhibit officials from performing their official duties. In order to balance these competing interests, courts recognize the affirmative defense of qualified immunity, which protects all but the plainly incompetent and those who knowingly violate the law. The Supreme Court has emphasized the broad protection qualified immunity affords, giving officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery. Consequently, courts should resolve the purely legal question raised by a qualified immunity defense at the earliest possible stage in litigation.

*Medina*, 252 F.3d at 1127-28 (quotation marks, quoted authorities, and internal citation omitted).

Plaintiff sets forth unpersuasive, non-binding authority criticizing the application of qualified immunity, but fails to point to any controlling authority rejecting the qualified immunity

doctrine. For instance, Plaintiff cites *Manzanares v. Roosevelt County Adult Detention Ctr.*, 331 F.Supp.3d 1260 (D. N.M. 2018) for the proposition that the Tenth Circuit and/or the District of New Mexico has called for the elimination of the qualified immunity doctrine, but Plaintiff misstates the discussion. In *Manzanares*, Judge Browning discussed Tenth Circuit and Supreme Court precedent in applying qualified immunity in the context of police excessive force cases and addressed the potential danger of expanding the doctrine through the application of the clearly established prong of the qualified immunity analysis. *See Manzanares*, 331 F.Supp.3d at 1294, n.10. Despite this concern, the court dismissed the individual defendant on qualified immunity grounds because the law was not clearly established. *Manzanares*, 331 F.Supp.3d at 1306.

Here, the Individual Defendants are not advocating for the expansion of the qualified immunity doctrine. Rather, the Individual Defendants are seeking to apply the well-established doctrine to protect government officials who are just doing their job. Plaintiff's request to ignore established precedent is properly rejected.

### C. Plaintiff has not refuted the Individual Defendants showing of an entitlement to a qualified immunity defense.

Plaintiff's constitutional due process claim is limited to the Individual Defendants role in the Peer Hearing, or the post-deprivation process. Second Amended Complaint, ¶¶ 141-178. It is undisputed that Plaintiff received a post-deprivation evidentiary hearing. UMF Nos. 15-16, 20, 23-26. Accordingly, the dispositive inquiry is whether it is was clearly established law that Plaintiff was entitled to an evidentiary hearing following his one-year suspension from UNM *different than* what was received and that it would be clear to a reasonable official that conducting the Peer Hearing in the manner provided to Plaintiff was unlawful. Plaintiff has not made such a showing to defeat summary judgment.

Plaintiff attempts to recast his one-year suspension as a constructive termination, which he argues entitles him to a higher level of process. While such an argument might be more suitable for Plaintiff to try to defeat summary judgment, the argument ignores that Plaintiff was not terminated and will be able to resume his position at the University in less than a month. UMF No. 26. In this factual context, there was no clearly established law mandating an evidentiary hearing in the specific manner advocated by Plaintiff. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (The clearly established law analysis requires a Plaintiff to focus on "the specific context of the case, not as a broad general proposition."). Certainly, Plaintiff has not directed the Court to Supreme Court or Tenth Circuit precedent showing that it was clearly established that he was entitled to an evidentiary hearing in the manner advocated to redress his suspension without pay. *See* Response, pp. 14-19.

Assuming *arguendo* that the Court accepted Plaintiff's constructive termination argument, Plaintiff has still failed to direct this Court to Supreme Court or Tenth Circuit precedent showing that he was entitled to an evidentiary hearing in the manner he is advocating. For instance, the Tenth Circuit "indicated *in dicta* that [a] 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Flor*, 2020 WL 3410823, at * 8 (emphasis added) (citing *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000) (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)). Thus, even in the context of termination, the Tenth Circuit has not mandated that the discharged employee be represented by counsel or be given the right to cross-examine adverse witnesses. *Id.*, and *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands."); and *West v. Grand County*, 967 F.2d 362, 369 (10th Cir. 1992) ("[C]onfrontation and cross-examination…are not rights universally

applicable to all hearings…Thus, whether the Due Process Clause requires that the terminated employee be offered the right to cross-examine or confront witnesses depends upon the significance and nature of the *factual disputes at issue*.") (emphasis added).

To create the needed factual dispute to support his argument, Plaintiff attempts to redirect the focus of inquiry away from the content of the explicit email communications between Plaintiff and Defendant Chavez.  Instead, he argues that Defendant Chavez's interpretation of the communications are key, such that the cross-examination of Defendant Chavez in an evidentiary hearing was critical and constitutionally mandated. *See* Response, p. 17.  This argument blatantly ignores the OEO investigation and findings that were based on the content of the email communications as well as this Court's finding that Plaintiff "already admitted all the relevant facts" relied upon by the OEO to support its decision. *Flor*, 2020 WL 3410823, n. 10.  Defendant Chavez's interpretation of the communications is irrelevant and does not create a factual dispute between Plaintiff and his employer.

Accordingly, Plaintiff fails to direct this Court to any U.S. Supreme Court or Tenth Circuit authority establishing a clearly defined right to an evidentiary hearing mandating representation by counsel or the right to cross-examine or confront witnesses in the present factual context. *See* Response, pp. 16-19; and *see West v. Grand County*, 967 F.2d at 369 (("[C]onfrontation and cross-examination…are not rights universally applicable to all hearings…).  As explained in *Benavidez v. City of Albuquerque*, 101 F.3d 620 (10th Cir. 1996):

> [w]hen the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the *post-termination hearing* become much more important. Such a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action, and requiring a dismissed employee to prove in this context that he was terminated without just cause may increase the risk of an erroneous deprivation. It is often difficult to prove a negative, and

11

> where the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing. *In contrast, when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great.* In this type of post-termination hearing, simply giving the employee "some opportunity" to present his side of the case "will provide a meaningful hedge against erroneous action." *See Loudermill,* 470 U.S. at 543 n. 8, 105 S.Ct. at 1494 n. 8.

*Id.*, at 626 (emphasis added).

Even accepting Plaintiff's claimed procedural deficiencies in the Peer Hearing as true and even accepting his theory that he was constructively terminated, Plaintiff cannot establish as a matter of law that he had a clearly established right to an evidentiary hearing that was different than what he received. It is clear that no reasonable official would believe that conducting the Peer Hearing in the manner afforded to Plaintiff was unlawful. The Individual Defendants are entitled to Qualified Immunity and judgment should be entered in their favor.

**IV.     Summary judgment is properly entered in favor of the Individual Defendants for Counts II and III of the Second Amended Complaint.**

In Counts II and III of the Complaint, Plaintiff seeks injunctive and declaratory relief for the same alleged violations of his federal constitutional rights to due process against the Individual Defendants in their official capacities. As set forth in the Individual Defendants' declarations, the Individual Defendants have no authority to afford Plaintiff any of the injunctive or declaratory relief sought. *See* Exhibits A through E. Despite this showing, Plaintiff argues that because the Individual Defendants are still employed by the University and purportedly deprived Plaintiff of his due process constitutional rights in reviewing his sanction, "[i]t is reasonable to conclude" that the Individual Defendants "could reverse those actions." *See* Response, p. 23.

Plaintiff does not direct this Court to any competent evidence to support this argument or to refute the Individual Defendants showing. *See* UMF Nos. 28-30. Further, Plaintiff's request

12

for injunctive and declaratory relief goes well beyond reversing the Peer Hearing decision. *See* Second Amended Complaint ¶¶ 257, 261-63.

It is black letter law that to sustain a claim for injunctive relief against the Individual Defendants, Plaintiff must set forth facts sufficient to demonstrate that the Individual Defendants have the authority to provide the injunctive relief sought by Plaintiff. *See Soloviev v. Goldstein*, 104 F.Supp.3d 232, 245 (E.D.N.Y. 2015) (dismissing claim for reinstatement against state college officials because the plaintiff failed to allege that the individuals were in a position to grant the plaintiff's reinstatement); and *Klein v. Univ. of Kan. Med. Ctr.*, 975 F.Supp. 1408, 1417 (D. Kan. 1997) (dismissing claim against individual defendants in their official capacities because "[n]one of the individuals that [plaintiff] has sued has the power to provide him with the relief he seeks—reinstatement"). Plaintiff presents no authority contrary to this position. In the single case cited by Plaintiff, *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487 (10th Cir. 1998), the court was not tasked with deciding whether the individual defendants named in their official capacities had authority to provide the requested injunctive relief, but rather, whether the individual defendants were subject to suit under the *Ex Parte Young* exception to Eleventh Amendment immunity. *See Buchwald*, 159 F.3d at 495-96, n. 7 ("Because the district court did not reach this issue below, we express no view on the merits of plaintiff's claim for an injunction. The only issue before us is whether—or which—defendants are entitled to Eleventh Amendment immunity.").

Alternatively, Plaintiff argues that he should be permitted to conduct discovery on this issue. Again, there are no specific facts set forth by Plaintiff that he hopes to elicit through additional discovery. There is no analysis provided by Plaintiff explaining to the Court how any such facts would create a factual dispute to defeat summary judgment.

Finally, and not addressed by Plaintiff in his Response, injunctive relief and declaratory relief are remedies, not causes of action. *See, e.g., Leon v. Summit Cnty*. 2017 WL 5891771, at *5 (D. Utah Nov. 28, 2017) (slip op.) ("Injunctive relief is a remedy, not an independent cause of action. Injunctive relief is available as a remedy only where a party prevails on a separate legal theory. Because [plaintiff's] Section 1983 claims fail, so too does her request for injunctive relief."); *Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F.Supp.2d 971, 984 (D. Minn. 2004) ("A successful action for declaratory judgment requires a viable underlying cause of action."). Because there is no viable cause of action against the Individual Defendants, Plaintiff cannot proceed on his theories against these Defendants seeking injunctive and declaratory relief. Judgment should be entered in favor of the Individual Defendants and against Plaintiff for his requests for injunctive and declaratory relief as pled in Counts II and III of the Second Amended Complaint.

**V.     Discovery should be stayed for all Defendants.**

As a general rule, once any defendant files a dispositive motion raising qualified immunity, a stay of discovery as to all Defendants is appropriate. *See Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992); and *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009). The purpose of this general rule is to protect government officials from participating in the demands and expense of litigation while the issue of qualified immunity is being resolved so that the government officials may direct their attention to the "execution of the work of the government." *Iqbal*, 556 U.S. at 685.

Contrary to this general rule, Plaintiff argues that some discovery should be permitted, but does not identify the scope of any such discovery or explain how any such discovery would not thwart the very purpose of imposing a discovery stay when a qualified immunity defense is raised.

In accordance with the general rule, the Individual Defendants seek a stay of all discovery pending a decision on the present Motion for Summary Judgment.

## CONCLUSION

WHEREFORE, the Individual Defendants respectfully request Judgment be entered in their favor for Counts I, II, and III and an Order Staying Discovery as to all Defendants for the reasons discussed herein, and for such other and further relief the Court deems just.

Respectfully Submitted,

CONKLIN, WOODCOCK & ZIEGLER, P.C.

By: */s/ Alisa Wigley-DeLara*
Alisa Wigley-DeLara
320 Gold Ave., Suite 800
Albuquerque NM 87102
Telephone: (505) 224-9160
*Attorneys for Defendants*

## Certificate of Service

I HEREBY CERTIFY that on December 9, 2020, a true and correct copy of the above and foregoing was electronically filed with the clerk of the court by using the CM/ECF system which caused all counsel of record to be served by electronic means.

*/s/ Alisa Wigley-DeLara*
Alisa Wigley-DeLara