IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

        Plaintiff,

    v.                                      No. 1:20-cv-00027-MIS-LF

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, *et al.,*

        Defendants.

## PLAINTIFF NICK FLOR'S OPPOSED MOTION TO COMPEL DEPOSITION ANSWERS FROM DR. BARBARA RODRIGUEZ, DR. SHAWN BERMAN, AND DEAN CAMILLE CAREY

Plaintiff Nick Flor, by and through undersigned counsel, hereby files this Motion to Compel Deposition Answers from Dr. Barbara Rodriguez, Dr. Shawn Berman, and Dean Camille Carey ("Motion"). Counsel for Defendant, Alisa Wigley-DeLara opposes this Motion. During three depositions, Defendant the Board of Regents of the University of New Mexico ("Defendant UNM") objected to various questions on the grounds of attorney-client privilege. Plaintiff seeks to compel answers to these questions pursuant to Fed.R.Civ.P. 37(a)(3)(C) because Defendant UNM failed to establish that the privilege applied and that it prevented the witnesses from answering those questions. Specifically, Defendant UNM directed the witnesses to not answer merely because an attorney at the University of New Mexico's Office of University Counsel, Emma Rodriguez, Esq., was present during these conversations. However, as it will be demonstrated below, the mere fact that Ms. Rodriguez is present during these conversations does not grant Defendant UNM a blanket objection based on attorney-client privilege. Defendant UNM also directed a witness to not answer several questions based on this privilege, but as further explained below, the privilege does not apply because the questions did not seek to reveal

privileged communications. Therefore, Dr. Rodriguez, Dr. Berman, and Dean Carey must be compelled to answer the questions they were asked at the depositions.

**Factual Background**

On May 10, 2022, Plaintiff took the deposition of Dr. Barbara Rodriguez. *See* Plaintiff's Exhibit A (Dr. Rodriguez Dep. (May 10, 2022)); and Doc. 151. The deposition was taken by undersigned counsel and was defended by Defendant UNM's counsel, Alisa Wigley-DeLara, Esq. Also present was Emma Rodriguez, Esq., an attorney at the University of New Mexico's Office of University Counsel. On May 19, 2022, Plaintiff took the deposition of Dr. Shaw Berman. *See* Plaintiff's Exhibit B (Dr. Berman Dep. (May 19, 2022)); and Doc. 155. This deposition was taken by undersigned counsel and was defended by Ms. Wigley-DeLara. On May 21, 2022, Plaintiff took the deposition of Dean Camille Carey. *See* Plaintiff's Exhibit C (Dean Carey Dep. (May 21, 2022)); and Doc. 164. This deposition was taken by undersigned counsel and was defended by Ms. Wigley-DeLara.

During the deposition of Dr. Barbara Rodriguez, Dr. Rodriguez was asked by Plaintiff's counsel, "Did you meet with Dean [Carey] prior to testifying?" *See* Ex. A (Dr. Rodriguez Dep. 55:13-55:14). Dr. Rodriguez replied, "Yes." *See id.* (Dr. Rodriguez Dep. 55:15). Then she was asked, "What did you discuss with her?" *See id.* (Dr. Rodriguez Dep. 55:16). Defendant UNM's counsel interjected and stated, "[I]f counsel was not present then you can testify as to those discussions." *See id.* (Dr. Rodriguez Dep. 55:19-55:20). Dr. Rodriguez clarified that Ms. Rodriguez was present during these communications. *See id.* (Dr. Rodriguez Dep. 55:21). Defendant UNM's counsel instructed Dr. Rodriguez not to "divulge communications that occurred between [Dr. Rodriguez,] Dean [Carey,] and counsel [….]" *See id.* (Dr. Rodriguez Dep. 55:24-56:2). Plaintiff's counsel then asked whether Dr. Rodriguez had any communications with

Dean Carey regarding her testimony without the presence of Ms. Rodriguez. *See id.* (Dr. Rodriguez Dep. 56:4-56:7). Dr. Rodriguez stated that she did not recall. *See id.* (Dr. Rodriguez Dep. 56:8-56:9).  The deposition ended with the pertinent question not being answered based on Defendant UNM's objection.

During the deposition of Dr. Shawn Berman, Dr. Berman was asked by Plaintiff's counsel, "Did you meet with Dean Carey prior to the peer hearings to discuss your testimony?" *See* Ex. B (Dr. Berman Dep. 52:2-52:3). Dr. Berman replied, "I met with Dean, Vice Dean Carey and University counsel." *See id.* (Dr. Berman Dep. 52:4-52:5). Plaintiff's counsel followed up, "What did you discuss with Dean Carey about your testimony at the peer hearing." *See id.* (Dr. Berman Dep. 52:6-52:7). Defendant UNM's counsel objected on the basis that these communications were protected by the attorney-client privilege and instructed Dr. Berman not to answer as to any communications he had with Dean Carey in the presence of University counsel. *See id.* (Dr. Berman Dep. 52:10-52:13). Plaintiff's counsel then asked Dr. Berman whether he had any communications with Dean Carey regarding his testimony outside of the presence of University counsel to which Dr. Berman replied that he did not. *See id.* (Dr. Berman Dep. 52:25-53:3). The deposition ended with the pertinent question not being answered based on Defendant UNM's objection.

During the deposition of Dean Camille Carey, Plaintiff's counsel asked Dean Carey whether she consulted with Ms. Rodriguez regarding the peer hearing. *See* Ex. C (Dean Carey Dep. 72:7-72:12). Plaintiff's counsel asked Dean Carey whether she consulted with Ms. Rodriguez about whether an appropriate topic at a peer hearing was whether the University of New Mexico's Office of Equal Opportunity followed appropriate policy and process in arriving at their decision. *See id.* Defendant UNM's counsel instructed Dean Carey to not answer based

on the attorney-client privilege. *See id.* (Dean Carey Dep. 72:13-72:14). Plaintiff's counsel then asked Dean Carey whether it was her understanding that Ms. Rodriguez represented her at the hearing to which Dean Carey answered in the affirmative. *See id.* (Dean Carey Dep. 72:15-72:18). Plaintiff's counsel further asked whether Dean Carey believed that Ms. Rodriguez was also representing Defendant UNM to which Dean Carey responded Ms. Rodriguez is an employee of Defendant UNM who represented her in this case. *See id.* (Dean Carey Dep. 72:19-72:24). Plaintiff's counsel next asked whether Ms. Rodriguez was her source of information about the process for the peer hearing to which Defendant UNM's counsel objected based on the attorney-client privilege and instructed Dean Carey not to answer the question. *See id.* (Dean Carey Dep. 72:25-73:5). Plaintiff's counsel asked whether Ms. Rodriguez helped Dean Carey prepare her defense as the respondent at the peer hearing. *See id.* (Dean Carey Dep. 73:6-73:8). Dean Carey stated that she did. *See id.* (Dean Carey Dep. 73:9). Next, Plaintiff's counsel asked Dean Carey, "As part of […] preparing for the hearing did your conversations with Emma Rodriguez include the scope of the peer hearing?" *See id.* (Dean Carey Dep. 73:13-73:16). Defendant UNM's counsel objected again based on the attorney-client privilege. *See id.* (Dean Carey Dep. 73:17-73:18). Plaintiff's counsel next asked whether the communications with Ms. Rodriguez included what witnesses and what exhibits, or evidence, would be appropriate at the hearing to which Defendant UNM's counsel objected based on the attorney-client privilege. *See id.* (Dean Carey Dep. 73:19-74:4). Plaintiff's counsel next asked whether the communications with Ms. Rodriguez include the process the provost office followed during the sanctioning process for Plaintiff to which Defendant UNM's counsel objected based on the attorney-client privilege and as ambiguous. *See id.* (Dean Carey Dep. 74:5-74:11).  Next, Plaintiff's counsel asked Dean Carey a few questions regarding Ms. Rodriguez's involvement during the peer

hearing process to which Dean Carey stated that she does not recall whether Ms. Rodriguez was involved during meetings or telephone conversations with witnesses. *See id.* (Dean Carey Dep. 74:19-75:9). Dean Carey was also asked whether Ms. Rodriguez participated in the preparation of the witness and exhibit lists for the peer hearing to which she stated, "Probably. It's been a long time." *See id.* (Dean Carey Dep. 75:10-75:16). Dean Carey also stated that Ms. Rodriguez helped her "draft a motion to exclude some evidence from the peer hearing." *See id.* (Dean Carey Dep. 74:12-74:18).

Plaintiff's counsel also asked whether Dean Carey remembered any discussion involving the university counsel's office or the provost office telling her that as part of the sanction process Plaintiff could not argue findings. *See id.* (Dean Carey Dep. 84:4-84:7). Defendant UNM's counsel objected based on the attorney-client privilege but instructed that if Dean Carey could answer without divulging privileged communications, she could answer the question. *See id.* (Dean Carey Dep. 84:9-84:16). Dean Carey stated that she did not remember the specifics. *See id.* (Dean Carey Dep. 84:17-84:18). Immediately after Dean Carey answered, Plaintiff's counsel stated to Defendant UNM's counsel, "And can I just ask to clarify on the privilege question. Is the position that what was discussed at this meeting based on these notes is privileged just because Emma Rodriguez was present?" *See id.* (Dean Carey Dep. 84:19-84:22). Defendant UNM's counsel responded, "No, not necessarily. I'm -- the scope of the privilege would be any actual communications or legal advice made at the meeting. I don't believe that this particular document encompasses any such communications, so that is the scope that I'm discussing." *See id.* (Dean Carey Dep. 84:23-85:3). Plaintiff's counsel sought further clarification by asking, "As part of this privilege instruction regarding legal advice, that includes statements made to Dean Carey about the scope of the sanctioning process?" *See id.* (Dean Carey Dep. 85:8-85:11).

Defendant UNM's counsel responded, "If the communications were made by legal counsel, then yes. That would be encompassed within objections of the attorney/client communication. If there are discussions separate and apart from attorney/client communications, those can be asked about." *See id.* (Dean Carey Dep. 85:12-85:16). The deposition ended with the pertinent questions not being answered based on Defendant UNM's objections.

**Legal Argument**

I.     **Defendant UNM did not establish that the attorney-client privilege applies in these situations, the mere fact Ms. Rodriguez was present during these communications does not mean the privilege applies, and the attorney-client privilege only applies to communications.**

"Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006). The Tenth Circuit has thus stated that, for claims of privilege where "both federal claims and pendent state law claims [are] implicated," courts "should consider both bodies of law." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997); *Navajo Nation v. Urb. Outfitters, Inc.*, No. 12CV0195 BB/LAM, 2016 WL 3475340, at *3 n.2 (D.N.M. Mar. 25, 2016). This case involves claims under the United States Constitution, federal law, and state law. *See* Doc. 68 at 28-40 (bringing claims for violation of Due Process under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, Injunctive Relief, Declaratory Relief according to 28 U.S.C. § 2201 and NMSA 1978, § 44-6-1, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Violation of

Title IX, and Malicious Abuse of Process).[1] Therefore, both bodies of law should be applied in this case.

Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (Browning, J.) (applying New Mexico state law regarding attorney-client privilege). "Under rule 11-503, the elements of attorney-client privilege are: '(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client.'" *Tyler Grp. Partners, LLC v. Madera*, 564 F. Supp. 3d 944, 989 (D.N.M. 2021) (quoting *Albuquerque J. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 2019-NMCA-012, ¶ 19, 436 P.3d 1, 9 (quoting *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14, 143 N.M. 215, 175 P.3d 309, and citing NMRA § 11-503(B))).

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The party seeking to assert the attorney-client privilege has the burden of establishing its applicability. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir.1995). "If the party asserting the attorney-client privilege meets its burden of establishing the existence of the privilege, the burden shifts to the

---

[1] Plaintiff's contractual claims arise under state law. *See Guardian Nat. Acceptance Corp. v. Swartzlander Motors, Inc.*, 962 F. Supp. 1137, 1142 (N.D. Ind. 1997) ("Ordinarily, breach of contract claims arise under state law.").

opposing party to establish that some exception to the privilege is present, such as waiver." *Id.* (citing *Perkins v. Gregg County*, 891 F.Supp. 361, 363 (E.D.Tex.1995)).

"The attorney-client privilege is a narrow one and was not intended to be a catch-all exception to a process of broad and liberal discovery." *See Sanchez v. Matta*, 229 F.R.D. 649, 655 (D.N.M. 2004) (citing *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir.1991) ("The privilege 'protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'") (quoting *Fisher v. United States*, 425 U.S. at 403, 96 S.Ct. 1569) (emphasis added by *Westinghouse* court)). "[I]f all activities of a lawyer are classified as warranting the bar of discovery proceedings because of the attorney-client privilege, then it would be appropriate for clients to retain lawyers as investigators, custodians of records and the like, thereby turning the shield of the privilege into the sword of injustice." *Id.* (quoting *Payton v. New Jersey Turnpike Authority*, 148 N.J. 524, 691 A.2d 321, 334 (1997) (quoting *Metalsalts Corp. v. Weiss*, 76 N.J.Super. 291, 184 A.2d 435, 440 (1962))).

### a. Defendant UNM did not establish that the attorney-client privilege applied to the communications between Dr. Rodriguez and Dean Carey merely because Ms. Rodriguez was present.

During the deposition of Dr. Barbara Rodriguez, Dr. Rodriguez was asked by Plaintiff's counsel whether she met with Dean Carey prior to testifying. Dr. Rodriguez confirmed that she did. Then she was asked what was discussed between Dean Carey and Dr. Rodriguez. Defendant UNM's counsel interjected and instructed Dr. Rodriguez that she could testify only if Ms. Rodriguez was not present. Dr. Rodriguez clarified that Ms. Rodriguez was present during these communications. Defendant UNM's counsel instructed the witness not to discuss the communications. Plaintiff's counsel then asked whether Dr. Rodriguez had any communications

with Dean Carey regarding her testimony without the presence of Ms. Rodriguez. Dr. Rodriguez stated that she did not recall. The deposition ended with the pertinent question not being answered based on Defendant UNM's objection.

Defendant UNM did not establish that the communications between Dr. Rodriguez and Dean Carey were protected by the attorney-client privilege merely because Ms. Rodriguez was present during these communications. Rather, Defendant UNM asserted the privilege and instructed Dr. Rodriguez not to answer the question. This is not a proper basis for the objection. *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–1551 (10th Cir.1995))). In fact, Defendant UNM can be determined to have waived the privilege for failing to explain the basis of its objection at the deposition. *See United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 267, 96 N.M. 155, 217, 629 P.2d 231, 293 ("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor. General objections without specific support may result in waiver of the objections.") (internal quotation marks and citations omitted)); *see also Pina v. Espinoza*, 2001–NMCA–055, ¶ 24, 130 N.M. 661, 29 P.3d 1062, 1069 (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability). Therefore, Defendant UNM's assertion of the privilege was inappropriate, and these witnesses must be compelled to answer the deposition question.

> **b. Defendant UNM did not establish that the attorney-client privilege applied to the communications between Dr. Berman and Dean Carey merely because University counsel was present.**

During the deposition of Dr. Shawn Berman, Dr. Berman was asked by Plaintiff's counsel whether he met with Dean Carey prior to the peer hearings to discuss his testimony. Dr. Berman confirmed that he did meet with Dean Carey and with University counsel. Plaintiff's counsel followed up and asked what he discussed with Dean Carey. Defendant UNM's counsel objected on the basis that these communications were protected by the attorney-client privilege and instructed Dr. Berman not to answer as to any communications he had with Dean Carey in the presence of University counsel. Plaintiff's counsel then asked Dr. Berman whether he had any communications with Dean Carey regarding his testimony outside of the presence of University counsel to which Dr. Berman replied that he did not. The deposition ended with the pertinent question not being answered based on Defendant UNM's objection.

Defendant UNM did not establish that the communications between Dr. Berman and Dean Carey were protected by the attorney-client privilege merely because University counsel was present during these communications. Rather, Defendant UNM asserted the privilege and instructed Dr. Berman not to answer the question. This is not a proper basis for the objection. *Anaya*, 251 F.R.D. at 650 ("[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." (quoting *Motley*, 71 F.3d at 1550–1551)). In fact, Defendant UNM can be determined to have waived the privilege for failing to explain the basis of its objection at the deposition. *See United Nuclear Corp.*, 1980-NMSC-094, ¶ 267 ("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor.

General objections without specific support may result in waiver of the objections.") (internal quotation marks and citations omitted)); *see also Pina*, 2001–NMCA–055, ¶ 24 (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability). Therefore, Defendant UNM's assertion of the privilege was inappropriate, and these witnesses must be compelled to answer the deposition question.

> **c.  Defendant UNM failed to establish that the attorney-client privilege applied to the questions asked at the deposition of Dean Carey because the questions asked by Plaintiff's counsel did not seek to reveal the communications but rather sought to establish the underlying facts of the peer hearing, its process, and its investigation.**

During the deposition of Dean Carey, Plaintiff's counsel asked several questions that sought facts that would establish whether Dean Carey and Ms. Rodriguez were covered under the attorney-client relationship, and Plaintiff asked questions that would demonstrate the underlying facts regarding the peer hearing, its process, and its investigation.

Defendant UNM's blanket assertion of the privilege was inappropriate when Plaintiff's counsel asked Dean Carey whether she consulted with Ms. Rodriguez about whether an appropriate topic at a peer hearing was whether OEO followed appropriate policy and process in arriving at their decision. This question merely sought a simple yes or no answer. This is not a communication that would be protected under the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (holding that privilege "only protects disclosure of communications" not "the underlying facts"); *see also Equal Emp. Opportunity Comm'n v. Bok Fin. Corp.*, No. CIV 11-1132 RB/LFG, 2013 WL 12045019, at *3 (D.N.M. Apr. 19, 2013) (finding that question that sought a yes or no answer sought factual information and was not protected by the attorney-client privilege). Similarly, Defendant UNM's blanket assertion of the attorney-client privilege when Plaintiff's counsel asked Dean Carey whether Ms. Rodriguez was

her source of information about the process for the hearing was inappropriate because this question also sought a simple yes or no answer. *Id.* Next, Defendant UNM's blanket assertion of the attorney-client privilege when Plaintiff's counsel asked Dean Carey whether Ms. Rodriguez helped her prepare her defense as the respondent at the peer hearing was inappropriate because this question merely sought a simple yes or no answer. *Id.* Likewise, Defendant UNM's blanket assertion of the attorney-client privilege when Plaintiff's counsel asked Dean Carey whether the conversations with Ms. Rodriguez included the scope of the peer hearing was inappropriate because this question also sought a simple yes or no answer. *Id.*

Plaintiff's counsel next asked whether the communications with Ms. Rodriguez included what witnesses and what exhibits, or evidence, would be appropriate at the hearing to which Defendant UNM objected based on the attorney-client privilege. This objection was also inappropriate because, again, the questions sought a simple a yes or no answer that would demonstrate the facts of the questions that were asked. *Id.* Plaintiff's counsel next asked whether the communications with Ms. Rodriguez included the process the provost office followed during the sanctioning process for Plaintiff to which Defendant UNM objected based on the attorney-client privilege and as ambiguous. This objection was inappropriate because this question also sought a simple yes or no answer. *Id.* Last, the objection to the question asking Dean Carey whether she remembered any discussion involving the University counsel's office or the provost office telling her that as part of the sanction process Plaintiff could not argue findings was inappropriate because this question did not seek to reveal any privileged communication but rather the underlying facts of this case. *Id.*

It is also important to note that Dean Carey would be allowed to answer some questions that asked whether Ms. Rodriguez participated in decisions regarding the peer hearing. This

demonstrates that the assertion of the privilege was a mere ploy to prevent Plaintiff from conducting the deposition of Dean Carey. Also, Defendant UNM's explanation for asserting the privilege is telling. Defendant UNM admits that the assertion of the privilege only applies to communications, not the underlying facts of the case. Therefore, Dean Carey must be compelled to answer the deposition questions.

## II.     Request for Reasonable Expenses if Motion is Granted

Plaintiff respectfully requests an award of reasonable expenses made for the drafting and filing of this motion. *See* Fed.R.Civ.P 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion to Compel and that it grant Plaintiff reasonable costs and attorney's fees for the filing of this Motion.

Dated: June 20, 2022                                    Respectfully submitted,

*/s/ Nicholas T. Hart*

Nicholas T. Hart
Ramón A. Soto
**HARRISON, HART & DAVIS, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
T: (505) 295-3261
F: (505) 341-9340
nick@harrisonhartlaw.com
ramon@harrisonhartlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that Plaintiff's Motion Compel Deposition Answers was filed with the clerk of this Court on June 20, 2022, and I mailed/emailed the parties through counsel of record.

*<u>/s/ Nicholas T. Hart</u>*
Nicholas T. Hart