IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

    *Plaintiff,*

v.   No. 1:20-cv-00027-MLG-LF

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
STEPHEN BISHOP, LISA BROIDY,
KEVIN GICK, KAREN HIGH, ERIC LAU,
individually and in their official capacities,
and EVA CHAVEZ,

    *Defendants.*

## SUPPLEMENTAL BRIEFING REGARDING MOTION FOR SUMMARY JUDGMENT

On February 12, 2025, this Court ordered supplemental briefing in this case. Doc. 217. That order limited the briefing to "addressing current standards under Title IX, 20 U.S.C. §§ 1681-88 (1988), in light of the Tenth Circuit's decision in *Doe v. University of Denver*, 1 F.4th 822, 829 (10th Cir. 2021), and how the holding in that case bears on the issues raised in the parties' summary judgment briefs." *Id.* Dr. Flor now submits this briefing to address that narrow issue.

    **I.**    ***Doe v. University of Denver* counsels the Court to deny the University's motion for summary judgment.**

In *Doe v. University of Denver*, the Tenth Circuit applied well-settled rules of proving discrimination through circumstantial evidence that have been developed in the Title VII and Title IX context. In that case, a student was expelled from school following a sexual encounter with another student, which the university

1

found to have violated the Title IX policy. While the facts are not like this case—*Doe* involved an allegation of sexual assault; this case involves an allegation of quid pro quo sexual harassment—the methods the court used to determine whether there was an inference of discrimination apply here.

For example, the Tenth Circuit explained that courts are to engage in the *McDonnell Douglas* framework to determine if there is circumstantial evidence of discrimination. Under that framework, a plaintiff "has the burden of showing that his sex was a motivating factor in the school's investigation and disciplinary action." *Doe*, 1 F.4th at 829. If the plaintiff clears that hurdle, "then the burden shifts to the University to articulate a legitimate, nondiscriminatory reason for its decision." *Id.* "If the University does so, then the burden shifts back to [the plaintiff] to show a genuine issue of material fact as to whether the proffered reason is pretextual." *Id.* Pretext can be proven through "evidence of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the University's proffered legitimate reasons for its action," which allow "a reasonable factfinder . . . [to] infer that the University did not act for the asserted nondiscriminatory reasons." *Id.* at 829. Dr. Flor can pass each step of this analysis, and summary judgment should thus not be granted.

### A. Dr. Flor showed that sex was a motivating factor in the University's investigation and his discipline.

The *McDonnell Douglas* framework, and by extension *Doe*, initially places the burden on Dr. Flor to prove that sex was a motivating factor in the University's investigation and his discipline. This is a low bar, and Dr. Flor clears it.

In *Doe*, the Tenth Circuit held that the plaintiff established a prima facie case of sex discrimination when the university engaged in a "one-sided investigation." 1 F.4th at 831. In making that decision, the court also cited to cases finding that a prima face case was made because "procedural irregularity alone already suggests bias," requiring only "minimal evidence of sex-based pressure on the university . . . to establish bias on account of sex." *Id.* (citing *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019) (quotations omitted). *See also Doe v. Univ. of Arkansas*, 974 F.3d 858, 865 (8th Cir. 2020) (cited by the *Doe* panel for the conclusion that a "dubious [disciplinary] decision . . . taken against the backdrop of substantial pressure on the University to demonstrate that it was responsive to female complainants" supports "an inference that a university is biased on sex"). And the *Doe* panel cited to *Doe v. Oberlin College*, 963 F.3d 580 (6th Cir. 2020), which held that a plaintiff had "amply stated a claim for sex discrimination" where there were "clear procedural irregularities," "the Department of Education's Office of Civil Rights was engaged in a systemic investigation of the College's policies," and the "facts of the case. . . doubt on the accuracy of the disciplinary proceeding's outcome." *Id.* at 586-88. Such evidence is present here.

For example, there is significant evidence of procedural irregularities, such as conflicting findings by the University under different policies. *See* Doc. 198, at 2 (explaining that Dr. Flor was found to have not violated University Policy 2215, which prohibits superior-subordinate relationships). There is also evidence that the University deviated from policy to discipline Dr. Flor. *Id.* at 6-7 (explaining that

3

requiring approval of the Title IX coordinator of any proposed disciplinary action deviated from University policy); 8 (explaining that the removal of his department chair from the disciplinary process deviated from University policy); 10-12 (explaining that the University deviated from the peer hearing policies to uphold the discipline against him). There is evidence that the University was pressured to support Ms. Chavez rather than Dr. Flor. *Id.* at 4 (discussing Ms. Chavez's pressure campaign through the filing of complaints); 6 (Response to Fact No. 35). And the University treated Dr. Flor's complaints differently from those of Ms. Chavez by rejecting his attempts to bring complaints against Ms. Chavez while investigating similar complaints brought by her. *Id.* at 5 (Response to Fact No. 20); 6 (Response to Fact No. 35). Dr. Flor has, like the plaintiff in *Doe,* established a prima facie case of sex discrimination.

### B. There is sufficient evidence of irregularities, inconsistencies, weaknesses, contradictions, and incoherencies to create a reasonable dispute of fact that the University disciplined Dr. Flor because of his sex.

The University proffers a nondiscriminatory reason—that Dr. Flor violated University policy by engaging in quid pro quo sexual harassment—to support its decision. The burden therefore shifts back to Dr. Flor to show that the decision was pretextual. The *Doe* panel recognized several ways that Dr. Flor can do so.

First, the *Doe* panel found that procedural irregularities that favor a female complainant over a male respondent "can be sufficient to call into question the University's honesty and good faith in making the disciplinary decision, and consequently, establish pretext." 1 F.4th at 831-32. The procedural irregularities

4

relied on by the *Doe* panel were a failure to interview the male respondent's witnesses, crediting the female complainant's statement without examining inconsistencies or bias, and failing to review a female complainant's motives in bringing the complaint. *Id.* at 832-33. Each are present here.

In his response, Dr. Flor presented evidence that the University agreed to talk to one of his witnesses, but that the University "asked him very little about Professor Flor." Doc. 198, at 5 (Response to Facts No. 29 and 30). There is also evidence that Dr. Flor was told that the complainant, Eva Chavez, would not be a proper witness at his peer hearing. *Id.* at 12 (Response to Fact No. 75). There is evidence that the University disregarded that the female complainant, Eva Chavez, only filed a complaint after Dr. Flor did so and that Ms. Chavez was threatening Dr. Flor with disclosing their communications to other faculty and staff in retaliation for him deciding that he no longer wanted to talk with her. *Id.* at 3-5 (Response to Fact No. 16 and 20). This counsels against summary judgment.

Second, the *Doe* panel looked for other procedural irregularities. Here, there is evidence that the University applied an incorrect definition of sexual harassment that conflicted with University policy. For example, University policy defined sexual harassment as "unwelcome conduct of a sexual nature" and the University trained its faculty that "if sexual contact is mutually desired, it is not harassment." Doc. 198, at 15 (Plaintiff's Additional Fact F). Despite this definition, the University refused to engage in any welcomeness analysis when reviewing Ms. Chavez's complaint against Dr. Flor, instead asserting that quid pro quo sexual harassment

5

does not have as an element that the sexual contact, or in this case communication, be unwelcome. *Id.* Yet the University applied the welcomeness standard to Dr. Flor's complaint against Ms. Chavez, finding that Ms. Chavez did not sexually harass Dr. Flor because the communications were welcomed. *Id.* Those conflicting standards counsel against summary judgment.

The University also investigated Dr. Flor after the media published an article covering the complaints and disciplinary actions taken against him when Ms. Chavez alleged that his participation in the news coverage was retaliation against her. Doc. 198, at 17 (Plaintiff's Additional Fact G). The University, however, refused to investigate Dr. Flor's complaint that Ms. Chavez was retaliating against him when she filed a meritless petition for a temporary restraining order. *Id.* Investigating complaints against Dr. Flor but not investigating similar complaints by Dr. Flor against Ms. Chavez also counsels against summary judgment.

Dr. Flor was also subjected to conflicting findings by the University. For example, the Office of Equal Opportunity found, through application of Policy 2215, which is the policy requiring disclosure of consensual superior-subordinate relationships, that Dr. Flor had sufficient authority of Ms. Chavez for there to be quid pro quo sexual harassment. Doc. 198, at 17 (Plaintiff's Additional Fact H). But a separate University investigation to determine whether Dr. Flor violated Policy 2215 by engaging in sexual communications with Ms. Chavez found that there was no policy violation because Dr. Flor did not have authority over Ms. Chavez. *Id.*

These conflicting decisions call into question the propriety of the University's findings, and counsel against summary judgment.

Dr. Flor was also subject to procedural irregularities during the disciplinary process. For example, the University's faculty disciplinary policy stated at the time that a faculty member could only be disciplined by their department chair. That chair was Dr. Mary Margaret Rogers. Doc. 198, at 8 (Response to Fact Nos. 46-51, and 60). Dr. Rogers reviewed the University's findings and decided to censure Dr. Flor for the alleged violation of policy. *Id.* Yet the University believed that sanction was not sufficiently punitive, so the University concocted a false conflict of interest to remove Dr. Rogers from sanctioning Dr. Flor and asked the law school's Vice Dean, who had no history or experience with Dr. Flor, to impose discipline. *Id.* That this violated University policy cannot reasonably be in dispute, as the University later amended the faculty disciplinary policy to add a provision stating that, prior to imposing discipline, a "department chair should determine if they can impartially review the allegation; if not, they should recuse themselves." *Id.* at 9 (Response to Fact No. 52 and 60). Dr. Flor also suffered procedural irregularities during his peer hearing. For example, the University limited the peer hearing to review of whether the sanction (a one-year suspension) was appropriate, but did not allow Dr. Flor to challenge the underlying investigation or its findings. *See* Doc. 198, at 11 (Response to Fact No. 67). At the time of Dr. Flor's peer hearing, this restriction was not found in the University policies related to the peer hearing process. And just like with the recusal of Dr. Rogers, the University later amended its policy to state, for the first

7

time, that the peer "hearing panel's role is to review the disciplinary action and not to reconsider the finding of misconduct." *Id.* The result was that the peer hearing panel never reviewed the factual findings underlying the alleged misconduct. *Id.* (Response to Fact No. 71). In fact, two members of the panel admitted during their depositions that they did not review the materials submitted as exhibits by Dr. Flor because they were the materials underlying the misconduct allegation rather than the sanction itself. *Id.* at 11-12 (Response to Fact Nos. 72 and 74). These procedural irregularities also counsel against summary judgment.

And third, the *Doe* panel found that evidence that a university formally investigated claims brought by women but did not investigate claims brought by men or that the university disciplined only men rather than women for sex-related allegations was evidence of pretext. 1 F.4th at 835. Here, there is evidence that the University formally investigated 13 complaints of Title IX violations from 2016 through 2021. Doc. 198, at 14. Of those 13 complaints, 11 were complaints against men brought by women. *Id.* The University also disciplined five faculty and staff members for alleged violations of the Title IX and sexual harassment policy. *Id.* All five of those disciplinary actions were against men following a complaint from women. *Id.* This also discourages summary judgment.

## Conclusion

*Doe v. University of Denver* held that evidence of procedural irregularities, when combined with other evidence of disparate or unfair treatment because of gender, sufficiently raises a question about gender discrimination that must be

decided by a jury. *Doe*, 1 F.4th at 836 ("[W]here there is a one-sided investigation *plus* some evidence that sex may have played a role in a school's disciplinary decision, it should be up to a jury to determine whether the school's bias was based on a protected trait or merely a non-protected trait that breaks down across gender lines."). The same is true here. Dr. Flor received differential treatment because of his gender. The University's motion for summary judgment should be denied.[1]

Respectfully submitted,

*/s/ Nicholas T. Hart*

Nicholas T. Hart
**HARRISON & HART, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com

*Counsel for Dr. Flor*

Dated:      March 4, 2025

---

[1] Dr. Flor extensively briefed *Doe v. University of Denver* and applied to the facts of this case in his response in opposition to the University's motion for summary judgment. *See* Doc. 198 at 30-38. While Dr. Flor engaged in additional analysis here, he was cognizant to not repeat that analysis. Dr. Flor does, however, ask that the Court review this supplemental briefing alongside his previous briefing related to the *Doe* case in his response.

## CERTIFICATE OF SERVICE

I certify that, on March 4, 2025, I electronically filed this supplemental briefing with the United States District Court for the District of New Mexico's CM/ECF system. All parties were served by that system as reflected in the Notice of Electronic Filing.

*/s/ Nicholas T. Hart*
Nicholas T. Hart