IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK VINCENT FLOR,

     Plaintiff,

v.                                  Cause No. 1:20-cv-00027-MLG-LF

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
STEPHEN BISHOP, LISA BROIDY,
KEVIN GICK, KARIN HIGH, ERIC LAU,
individually and in their official capacities,
and EVAL CHAVEZ,

     Defendants.

### UNM DEFENDANTS' SUPPLEMENTAL BRIEF PURSUANT TO COURT'S FEBRUARY 12, 2025 ORDER (DOC. 217)

Defendants Board of Regents of the University of New Mexico ("UNM"), Stephen Bishop, Lisa Broidy, Kevin Gick, Karin High, and Eric Lau (collectively "UNM Defendants"), through their attorneys, Conklin, Woodcock, Ziegler & Hazlett, P.C. (John K. Ziegler and Taylor F. Hartstein), hereby submit this Supplemental Brief Pursuant to Court's February 12, 2025 Order (Doc. 217).

### INTRODUCTION

The Court's Order instructed the parties to submit supplemental briefing addressing current standards under Title IX considering the Tenth Circuit's decision in *Doe v. Univ. of Denver (Doe II)*, 1 F.4th 822, 829 (10th Cir. 2021), and how the holding in that case bears on the issues raised in the parties' summary judgment briefs. In *Doe II*, the Tenth Circuit clarified its analytical framework for summary judgment in cases alleging sex discrimination under Title IX. Specifically, *Doe II* posed the "operative question for summary judgment," as, "[c]ould a

reasonable jury—presented with the facts alleged—find that sex was a motivating factor in the University's disciplinary decision?" *Id.*, 1 F.4th at 830. In articulating this "operative question," *Doe II* "recognize[d] that evidence of an erroneous outcome or selective enforcement are means by which a plaintiff *might* show that sex was a motivating factor in a university's disciplinary decision." *Id.* (emphasis added). *Doe II* and other cases have made clear, however, that these two analytical tests are not necessarily the *only* means by which a plaintiff may show that sex was a motivating factor in a university's disciplinary decision. Specifically, courts have considered whether "disturbing procedural irregularities," combined with "external pressure" and/or "statistical evidence of sex bias" can give rise to a showing that sex was a motivating factor for university disciplinary decisions. *Doe II*, 1 F. 4th at 831-32; *see also Kincaid v. Unified Sch. Dist. No.* 500, 94 F. 4th 936, 948-50 (10th Cir. 2024); *Menaker v. Hofstra Univ.*, 935 F. 3d 20, 33-37 (2d Cir. 2019).[1]

UNM Defendants addressed Plaintiff's Title IX claim in § III(C) of the Motion for Summary Judgment (Doc. 191 at 21-29).[2] Section III(C) argued for summary judgment denying Plaintiff's Title IX claim under theories of both erroneous outcome and selective enforcement.[3] In this Supplemental Brief, UNM Defendants argue that, regardless of the analytical framework applied, summary judgment is appropriate because no reasonable jury presented with the facts

---

[1] In its prior summary judgment briefing, UNM Defendants stated that, although *Doe II*'s "operative question was adopted by the Tenth Circuit in the context of a Title IX analysis, it did not displace the erroneous outcome or selective enforcement analyses that may still be used to determine if sex was a motivating factor in a university's disciplinary decision." Reply (Doc. 208 at 21); *see Dimas v. Pecos Indep. Sch. Dist. Bd. Of Educ.*, 2023 U.S. Dist. LEXIS 46892, at *11 (D.N.M. Mar. 20, 2023), *aff'd* 2024 U.S. App. LEXIS 10378 (10th Cir. Apr. 30, 2024) ("A plaintiff may use, but is not limited to, the 'erroneous outcome' and 'selective enforcement' frameworks to establish that sex was a motivating factor in the school's decision." (citing *Doe II* at 829)).

[2] Section III(C) also addressed retaliation and damages under Title IX. Because *Doe II* did not address those issues, however, UNM Defendants do not discuss them in this Supplemental Brief.

[3] UNM Defendants focused on the "erroneous outcome" and "selective enforcement" analyses because they were the frameworks used by Plaintiff in the Second Amended Complaint (Doc. 68 ¶¶ 283-284, 292-294).

alleged could find that sex was a motivating factor in the university's disciplinary decision in this case.

## ARGUMENT

### A.  Legal Standards

Title IX prohibits sex discrimination by recipients of federal education funding. *Jackson v. Birmingham Board of Education,* 544 U.S. 167, 173 (2005). Therefore, "Title IX 'bars the imposition of university discipline where [sex] is a motivating factor in the decision to discipline.'" *Doe II*, 1 F. 4th at 829 (internal citation omitted). A plaintiff can offer direct evidence of sex-based bias, but where no such direct evidence exists, a plaintiff can try to establish a prima facie case with indirect evidence by using the *McDonnell-Douglas* burden shifting framework. *Doe II*, 1 F.4th at 829 (the burden shifting framework provides a method of proving discrimination by indirect evidence where direct evidence is unavailable).

Direct evidence of sex-based bias would include such evidence as UNM policies that are discriminatory towards men on their face. *See TWA, Inc. v. Thurston,* 469 U.S. 111, 121 (1985) (a discriminatory policy requirement is direct evidence of discrimination); *Heim v. Utah,* 8 F. 3d 1541; 1546 (10th Cir. 1993) (discussing direct evidence and indirect evidence of discrimination in the Title VII context); *Hill v. Downs at Abq., Inc.,* No. 09-cv-0009-JP-GBW, 2010 U.S. Dist. LEXIS 160329, at *9-17 (D.N.M. Jan. 4, 2010) (same). Plaintiff here, however, has not relied on direct evidence of discrimination. Plaintiff instead asserts indirect evidence of discrimination.

When a Title IX plaintiff relies on indirect evidence to establish a prima facie case of discrimination, the same *McDonnell-Douglas* burden shifting framework applies that courts use in the Title VII context: First, the plaintiff has the burden of showing that his sex was a motivating factor in the university's investigation and/or disciplinary decision. *Doe II*, 1 F. 4th at 829; *see also*

3

*Dimas v. Pecos Indep. Sch. Dist.,* No. 23-2064, 2023 U.S. Dist. LEXIS 46892, at *10-11 (10th Cir. Apr. 30, 2024) (relying on *Doe II* for the proposition that the *McDonnell Douglas* burden shifting framework applies to a Title IX analysis absent direct proof of discrimination). If a plaintiff can meet that burden, then the burden shifts to the university to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* The burden then shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination. *Id.* As set forth in UNM Defendants' summary judgment briefing, Plaintiff has failed to meet his burden to show that sex was a motivating factor in UNM Defendants' disciplinary decision. To the extent a prima facie case of discrimination is established, however, UNM Defendants have offered legitimate, nondiscriminatory reasons for their disciplinary decisions and Plaintiff has failed to establish that these reasons are pretextual.

To meet his initial burden, Plaintiff must point to facts sufficient for a reasonable jury to conclude that sex was a motivating factor in UNM Defendants' disciplinary decision. *Doe II*, 1 F. 4th at 829-30; s*ee also Holmstrom v. Univ. of Tulsa,* 2023 U.S. Dist. LEXIS 79478, at *7-12 (N.D. Okla. May 8, 2023). Two of the analytical frameworks Plaintiff can use to show such bias are the "erroneous outcome" theory and the "selective enforcement" theory. *Doe II,* 1 F. 4th at 829. Under an erroneous outcome theory, a plaintiff can raise an inference of anti-male bias by asserting facts sufficient to cause some articulable doubt as to the accuracy of the outcome of the disciplinary proceedings. *Id.* at 830. However, to create such an inference, Plaintiff must also show that there is a causal connection between the flawed outcome and gender bias. *Id.* Under the "selective enforcement" theory, a plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably and that the favorable treatment was due to her gender. *Id.* Finally, pursuant to the holding of *Doe II*—as explained above—Plaintiff may seek to establish that sex

4

was a motivating factor in the university's disciplinary decision through other means than the "erroneous outcome" and "selective enforcement" theories. Specifically, courts have considered whether "disturbing procedural irregularities," combined with "external pressure" and/or "statistical evidence of sex bias" can give rise to a showing that sex was a motivating factor for university disciplinary decisions. *Doe II*, 1 F. 4th at 830-31; *see also Kincaid*, 94 F. 4th at 948-50; *Menaker*, 935 F. 3d at 33-37.

Evidence of erroneous outcome, selective enforcement, or other indicia of bias is not sufficient to show that sex was a motivating factor in a university's disciplinary decision unless it is specifically linked to the plaintiff's sex. *See Doe II,* 1 F.4th at 829-31. "Generalized evidence, standing alone, cannot satisfy a Title IX plaintiff's summary judgment burden 'unless combined with a particularized something more . . . that would indicate that [the university]'s decision in his particular case was based on his gender.'" *Id.* at 831 (*quoting Doe v. Univ. of Denver (Doe I)*, 952 F.3d 1182, 1192-93 (10th Cir. 2020). The key consideration in this case, therefore, is whether Plaintiff can demonstrate that an erroneous outcome, selective enforcement, or other indicia of bias occurred because Plaintiff is male, such that a reasonable jury could find that his sex was a "motivating factor" in UNM Defendants' disciplinary decisions. *See id.* Because Plaintiff cannot establish sufficient support that his sex was a motivating factor in UNM Defendants' disciplinary decisions in this case, the Court should issue summary judgment denying Counts III, IV, V, and VI of the Second Amended Complaint (i.e., Plaintiff's Title IX claim and related claims).

## B. A Reasonable Jury, Presented with the Facts Alleged, Could not Find that Sex was a Motivating Factor in UNM Defendants' Disciplinary Decisions

Plaintiff's allegations of sex discrimination focus on alleged procedural flaws in UNM's investigation and disciplinary process. In the Title IX context, procedural deficiencies are considered to undermine the legitimacy of disciplinary proceedings if such deficiencies affect

proof. *Flor,* 469 F. Supp. 3d 1143, 1158 (D.N.M. 2020) (quoting *Yusuf v. Vassar Coll.*, 35 F. 3d

709, 715 (2d Cir. 1994)). To create an inference of bias under an "erroneous outcome" theory, a

plaintiff must show that there is a causal connection between the flawed outcome and gender bias.

*Doe II,* 1 F. 4th at 830. Beyond the "erroneous outcome" framework, *Doe II* and other cases

establish that other evidence, including "disturbing procedural irregularities" combined with

"external pressure" and/or "statistical evidence of sex bias," can also establish a sufficient basis to

infer that sex was a motivating factor for university disciplinary decisions. *Doe II*, 1 F. 4th at 830-

31; *Kincaid*, 94 F. 4th at 948-50; *Menaker*, 935 F. 3d at 33-37.

      1.   *The Purported Procedural Deficiencies Identified by Plaintiff are not Sufficient to Support a Title IX Claim for Sex Discrimination.*

      The purported procedural flaws identified by Plaintiff do not rise to the level of "disturbing

procedural irregularities" supporting an inference of sex bias. For example, in *Doe v. Purdue Univ.*,

the court found a sufficient inference of sex discrimination, for purposes of denying a motion to

dismiss, where the procedural irregularities included the following: (1) the determination was

based solely on the accusation, without considering any other evidence, (2) the university's Title

IX coordinator concluded that the purported victim was credible without ever talking to her or

reading any statement she prepared, (3) the university did not provide the plaintiff with the

evidence against him, and (4) the university did not interview the plaintiff's alibi witness, who

plaintiff claimed would have stated that plaintiff was with him at the time of the alleged sexual

assault. 928 F.3d 652, 667-670 (7th Cir. 2019).

      The Tenth Circuit has explained that "an inference of pretext does not follow from every

departure from standard procedure." *Kincaid*, 94 F. 4th at 949. To support an inference of

discrimination, procedural irregularities must be severe. For example, "'[w]hen the evidence

substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion

in favor of the other side (without an apparent reason based in evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias.'" *Menaker*, 935 F. 3d at 34 (quoting *Doe v. Columbia*, 831 F.3d 46, 57 (2d Cir. 2016)). "Similarly, where decision-makers choose 'to accept an unsupported accusatory version over [that of the accused], and declined even to explore the testimony of [the accused's] witnesses,' this too 'gives plausible support to the proposition that they were motivated by bias." *Id.*

In *Menaker*, the court vacated the district court's dismissal of the plaintiff's Title IX action because it found the allegations sufficient to support an inference of sex bias. Specifically, *Menaker* emphasized the plaintiff's allegations that (1) "[the University] failed to interview relevant witnesses whom he brought to the University's attention," (2) "that he was terminated despite the fact that [the University Vice President] *knew* that at least one of the accusations against him was false and believed the complaint to be a 'ploy,'" (3) despite express promises that the plaintiff would receive a report of the investigation, he did not receive a report, and (4) "[the University] completely disregarded the process provided for in its written 'Harassment Policy,'" by declining to interview witnesses identified by the plaintiff, not allowing the plaintiff to submit a written response, and not producing a written determination of probable cause. *Menaker*, 935 F.3d at 34-35.

The alleged procedural irregularities identified by Plaintiff in this matter center on (1) the removal of the original sanctioning authority due to a conflict of interest and (2) the purported differential treatment of Plaintiff and Chavez. These purported deficiencies are far more minor than the "disturbing procedural irregularities" identified in *Doe II* and other relevant cases. Furthermore, UNM Defendants explain their legitimate reasons for these decisions and Plaintiff fails to supply sufficient facts to create a jury issue as to whether these reasons are pretexts to cover

up sex discrimination. Motion for Summary Judgment (Doc. 191 at 23-28); Reply (Doc. 208 at 4-5, 8, 18-19, 25).

> 2. *The Purported Procedural Deficiencies Identified by Plaintiff were not related to his Sex.*

Even if Plaintiff is considered to have identified "disturbing procedural irregularities," the Court should grant summary judgment because he cannot establish that any such treatment related to his sex. *See Doe II,* 1 F. 4th at 830; *Flor*, 469 F. Supp. 3d at 1158. The existence of procedural irregularities alone is insufficient to survive summary judgment on a Title IX claim.[4] The court in *French v. Denver Publ. Schools* explained that "[i]f procedural irregularities are sufficiently numerous, lopsided, and/or important, they can sometimes support an inference of sex discrimination," but "a plaintiff cannot prove sex discrimination by merely identifying mistakes or imperfections in the process." 2024 U.S. Dist. LEXIS 116912, at *47 (D. Colo. Dec. 19, 2024) (internal citations omitted).

In *French*, despite the plaintiff's numerous allegations of a "sham grievance process," the court granted the defendant's motion to dismiss on the basis that "Mr. French fails to allege any non-conclusory facts to suggest any sex-based motivation," and, "[h]is entirely conclusory allegations that he 'was subject to sex-based discrimination' and 'false allegations of touching . . . based on his gender' . . . are not entitled to the presumption of truth and fall short of plausibly suggesting that any bias was sex motivated." *Id.* at *51-52.

There is no evidence in this case that the investigator, the sanctioning official, President Stokes, or any members of the peer review panel were biased against men or were influenced by

---

[4] UNM Defendants argued in the original summary judgment briefing that there were no significant procedural irregularities in this matter. *See* Motion for Summary Judgment (Doc. 191 at 10-14, 18-19, 22-28); Reply (Doc. 208 at 2-12, 18-19). UNM Defendants will not reiterate those arguments in this Supplemental Brief, but instead incorporate those arguments herein. The Court has already considered and rejected Plaintiff's procedural arguments in the Due Process context. *Flor v. UNM,* 469 F. Supp. 3d 1143 (D.N.M. 2020).

gender in their decision-making. Likewise, there is no evidence that the investigative or disciplinary process itself was inherently biased against men. To the contrary, the available evidence indicates that the procedural irregularities alleged by Plaintiff are explained by considerations other than his sex. For example, as argued in the original summary judgment briefing, differences in treatment between Plaintiff and Chavez can be attributed to the fact that he was a faculty member, and she was a graduate student. Motion for Summary Judgment (Doc. 191 at 28-29). Furthermore, UNM Defendants have explained the conflict-of-interest issues underlying the decision to replace the original sanctioning official, Dr. Mary Margaret Rogers. Even if this official was removed because, as Plaintiff alleges, other University personnel believed that the original proposed sanction was not harsh enough, this does not establish that the removal of Dr. Rogers had anything to due to with Plaintiff's sex. *See* Second Amended Complaint (Doc. 68 ¶¶ 77-109).

Plaintiff's attempt to use statistical evidence, *see Response* at Exh. V (Doc. 198-22), to establish bias is also unavailing because this evidence is inconsequential under *Doe I* and *Doe II*. In *Doe I*, for example, the court recognized that the extent to which a discriminatory motive may reasonably be inferred from evidence of statistical disparity depends on the ability to eliminate obvious, nondiscriminatory explanations for the disparity. 952 F.3d at 1193-94 (collecting cases: *Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011) ("In order to be probative of discrimination, statistical evidence must eliminate nondiscriminatory explanations for the disparity" (internal quotation marks and citation omitted)); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1147 (10th Cir. 2009) ("In order for statistical evidence to create an inference of discrimination, the statistics must show a significant disparity and eliminate nondiscriminatory explanations for the disparity" (brackets omitted) (*quoting Fallis v. Kerr-McGee Corp.*, 944 F.2d

743, 746 (10th Cir. 1991)); *Schulte v. Potter*, 218 Fed. Appx. 703, 714 (10th Cir. 2007) (explaining that, where evidence "wholly fail[s] to eliminate nondiscriminatory explanations for" disparate treatment, "[i]t would be unreasonable to draw an inference of" intentional discrimination (internal quotation marks and citation omitted)).

In *Doe II,* the court considered the statistical disparity showing that during a two-year period, of five complaints against women, four complainants were men and one was a woman, but the university *only* investigated the female-initiated complaint. 1 F. 4th at 835. The court contrasted these statistics to those in *Doe I* because the statistics in *Doe II*, along with the explanations provided for not investigating male-initiated complaints that involved highly subjective decisions, suggested a possible anti-male bias. *Id.*

In this case, the statistics do not follow the same pattern as those in *Doe II* and Plaintiff has produced no evidence of any subjective reasoning that could be construed as influenced by anti-male bias, as was the case in *Doe II. See id.* For example, as set forth in UNM Defendants' Reply, none of the evidence Plaintiff relies on shows that UNM investigated only female-initiated complaints or that UNM found policy violations every time it investigated a male respondent. Reply (Doc. 208 at 7-8).

Moreover, *Doe II* emphasized that a one-sided investigation, standing alone, is not sufficient to submit a Title IX claim to the jury; it is only where there is a one-sided investigation *plus* evidence that sex played a role in the disciplinary decision that summary judgment is inappropriate. *See* 1 F. 4th at 836. Even if the statistical evidence relied on by Plaintiff here showed a disparity in how UNM investigated complaints brought by women versus by men, which it does not, there is still no evidence that there was sex bias in the disciplinary decision. Accordingly, the statistical evidence is insufficient for Plaintiff to survive summary judgment.

Finally, Plaintiff's attempt to emphasize the external pressure on the University to pursue sexual harassment actions against men is insufficient to establish facts from which a reasonable jury could conclude that sex was a motivating factor in UNM Defendants' disciplinary decisions. Plaintiff cites *Menaker* for the proposition that "[i]t is precisely because procedural irregularity alone already suggests bias that even minimal evidence of sex-based pressure on the university is sufficient to establish bias on account of sex." Plaintiff's Response (Doc. 198 at 31) (citing *Menaker*, 935 F.3d at 33). In *Menaker*, however, the Second Circuit was considering an appeal from the district court's judgment granting a motion to dismiss for failure to state a claim, which the Second Circuit vacated. It was sufficient for the purposes of the *Menaker* court that Plaintiff had alleged the influence of external pressure on the decision making of the university decision makers. To defend against summary judgment, by contrast, Plaintiff must point to evidence that the alleged external pressure actually influenced the relevant decision makers. Because Plaintiff has not provided such evidence, the Court should reject his arguments regarding external pressure and grant summary judgment in this case.

3. *There is no evidence to support an inference of sex discrimination based on a selective enforcement theory.*

To create an inference of discrimination under a selective enforcement theory, *Doe II* requires Plaintiff to show that a similarly-situated member of the opposite sex was treated more favorably. *See* 1 F. 4th at 830. In other words, Plaintiff here must point to a direct comparator. *Tucker v. UNM Board of Regents,* 618 F. Supp. 3d 1201, 1220 (D.N.M. 2022). There is no evidence here that a similarly situated woman was treated more favorably than Plaintiff. However, even if Plaintiff could show disparate treatment, he must also point to evidence that the disparate treatment was due to gender to prevail on a selective enforcement theory. *See Doe II,* 1 F. 4th at 830. Relying on *Doe II,* the *Dimas* court explained its conclusion that the plaintiff had failed to make a prima

facie showing of sex-based discrimination under a selective enforcement theory absent evidence that either there was an employment policy that was adopted for discriminatory reasons or that sex was a motivating factor in enforcing the policy. *Dimas*, 2023 U.S. Dist. LEXIS 46892, at \*12-13. Because, like *Dimas*, no evidence exists here that any employment policies were selectively enforced due to sex, Plaintiff cannot establish a prima facie case of Title IX discrimination under the selective enforcement theory.

For example, in *Lee v. Univ. of New Mexico*, the plaintiff sued following UNM's decision expelling him for nonconsensual sexual contact. 500 F. Supp. 3d 1181 (D.N.M. 2020). His claims included one for Title IX violations. Absent any demonstration of actual bias in the investigative or factfinding process, the *Lee* court found that there was no genuine issue of fact as to whether there decision-making was influenced by sex. *Id.* at 1247. "'Because honesty and integrity are presumed on the part of a tribunal, there must be some countervailing reason to conclude that the decisionmaker is actually biased with respect to the factual issues being adjudicated.'" *Id.* (quoting *Mangels v. Pena,* 789 F.2d 836, 838 (10th Cir. 1986)) (internal quotations and citation omitted). Therefore, to rebut the presumption of a lack of bias on the part of a tribunal, a plaintiff must point to facts of prejudice or prejudgment such that there is a probability of actual bias. *Id.* Given that "[f]actfinding is a difficult process," the burden to rebut the presumption is heavy. *Id.* Concrete examples of bias are necessary. *Id.* at 1247-48.

In this case, Plaintiff has not pointed to any concrete examples of sex bias on the part of any of the decision makers in connection with the investigation or disciplinary process.

## CONCLUSION

In conclusion, there is no direct evidence of anti-male bias and Plaintiff cannot establish a prima facie Title IX claim indirectly under either an erroneous outcome theory, a selective

enforcement theory, or any other analytical framework based on the guidance provided by the *Doe II* decision. Accordingly, the Court should grant summary judgment on Counts III, IV, V, and VI of the Second Amended Complaint.

Respectfully Submitted,


CONKLIN, WOODCOCK, ZIEGLER & HAZLETT, P.C.

By: _/s/ Taylor F. Hartstein_
John K. Ziegler
Taylor F. Hartstein
320 Gold SW, Suite 800
Albuquerque, NM 87102
Tel. (505) 224-9160
Fax (505) 224-9161
jkz@conklinfirm.com
tfh@conklinfirm.com
*Attorneys for UNM Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2025, I filed the foregoing electronically through

the CM/ECF system, which caused all counsel of record to be served by electronic means, as more

fully reflected on the Notice of Electronic Filing.


 */s/ Taylor F. Hartstein*
Taylor F. Hartstein